FILED
CLERK, U.S. DISTRICT COURT
5/13/25
CENTRAL DISTRICT OF CALIFORNIA
BY CS DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

CASE NO.:

THE UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA

CV25-4317-AH(ADS)

**DANIELLE VICTOR,**

Plaintiff

v.

**THE STATE OF CALIFORNIA;** ET AL

Defendant

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
**JURY TRIAL DEMANDED**

CASE NO.:

Danielle Victor
In Pro Se
daniellekvictor@gmail.com
4 Loring Road
Methuen, MA 01844
978-857-4885

THE LIGHT OF GOD NEVER FAILS!

**TABLE OF CONTENTS**

I. Introduction……………………………………………………………1-6

II. Continuous Violations Doctrine………………………………………6-9

III. Argument Regarding Statutes of Limitations…………………9-12

IV. Demand for Jury Trial…………………………………………………13

V. Jurisdiction and Venue………………………………………………13-17

VI. Parties……………………………………………………………………17-120

VII. Factual Allegations Already Submitted to This Court…120-283

VIII. Additional Factual Allegations…………………………………283-288

IX. Causes of Action……………………………………………………288-427

X. Prayer For Relief…………………………………………………….427-431

Verification…………………………………………………………………432

**I. INTRODUCTION**

1. Plaintiff brings this civil rights and constitutional tort action against numerous defendants, both private and public, arising out of a far-reaching scheme of unlawful discrimination, sexual exploitation, retaliation, judicial misconduct, and fraudulent legal proceedings that began in the State of California and continue to cause ongoing harm, including in the Commonwealth of Massachusetts where Plaintiff currently resides. This is a federal civil rights and tort action arising from years of egregious misconduct, abuse of process, public corruption, discrimination, and retaliation suffered by Plaintiff, a Black woman and former restaurant hostess, after she reported and objected to sexual harassment, racial bias, and civil rights violations committed by her employer and its powerful affiliates.

2. This action stems in large part from Plaintiff's employment at Southwest Wine & Spirits, LLC ("Wally's" or "Wally's Beverly Hills"), a luxury restaurant and wine bar, where she was subjected to sexual assault, pervasive sexual harassment, and discrimination based on her race (Black) and gender (female). When Plaintiff reported the misconduct and refused to participate in unlawful activities, including an attempted sex trafficking arrangement disguised as a "poker

night" for wealthy VIP clientele, Defendants retaliated. Plaintiff was subjected to unwanted sexual touching and harassment by high-profile customers while working at Wally's, a luxury establishment with ties to major corporations and political donors. Management and ownership not only failed to intervene but actively enabled this conduct and retaliated against Plaintiff for reporting it.

3. In retaliation, Plaintiff was wrongfully terminated and subsequently subjected to a series of coordinated legal abuses designed to silence her, discredit her, and obstruct justice. These included the forgery of legal documents, unauthorized arbitration agreements, the submission of false information and perjured testimony to courts, and an alleged illicit arrangement between private parties and Judge Yolanda Orozco of the Los Angeles Superior Court, who presided over Plaintiff's civil litigation without disclosing financial and procedural conflicts of interest. Judge Yolanda Orozco is now "retired" shortly after the Plaintiff's whistleblowing attempt.

4. The retaliation escalated far beyond employment-related misconduct. Plaintiff's litigation was sabotaged by her own attorneys and by defense counsel acting in collusion with court officers, arbitrators, and judicial actors. Multiple fraudulent documents, some bearing forged signatures, were submitted to

courts to derail her claims and cover up wrongdoing. Numerous attempts were made to force Plaintiff into arbitration based on falsified stipulations and fabricated retainer agreements.

5. Plaintiff was subjected to a pattern of litigation abuse, including collusion between Plaintiff's former counsel and Defendant's attorneys at Thompson Coburn LLP, who acted in concert to sabotage Plaintiff's legal claims. In addition to the above, Plaintiff was subjected to the misuse of HIPAA to authorize an unauthorized psychological evaluation by a therapist financially and personally tied to Defendant Paul Marciano and Defendant Christian Navarro, and the presentation of false and perjured filings to the court to shield Defendants from accountability.

6. Judicial actors, including Judge Yolanda Orozco, presided over Plaintiff's state court proceedings under compromised and undisclosed circumstances. Without Plaintiff's knowledge or consent, Judge Yolanda Orozco acted as both a sitting Superior Court judge and a private judge affiliated with AAA Arbitration. Plaintiff filed a motion demanding that Judge Orozco declare the capacity in which she was presiding: referee, private judge, or otherwise; but the judge refused to respond.

7. Plaintiff's employment-related legal claims were improperly forced into arbitration through deceit, despite the

fact that Plaintiff had alleged sexual assault, claims which cannot be legally compelled into arbitration under federal law. Plaintiff was denied due process through this fraudulent maneuvering, and the case was ultimately dismissed in favor of the Defendants based on falsified evidence, coerced agreements, and procedural manipulation.

8. When Plaintiff attempted to expose the judicial and attorney misconduct surrounding her case, she was met with further retaliation, including cyberstalking, surveillance, and the illegal interception of her private communications. Defense attorneys, including those from Thompson Coburn LLP, submitted false testimony, forged records, and defamatory statements, such as accusing Plaintiff of being a sex worker, to sabotage her credibility and suppress her voice.

9. The extent of the misconduct also included the unlawful closing of Plaintiff's labor claims without her knowledge or consent with the California Labor Commissioner's office, failures by state and federal employment agencies including the DFEH and EEOC to investigate or act, and the systemic refusal of judicial officers to examine obvious evidence of forgery, HIPAA violations, and legal malpractice.

10. Despite Plaintiff's active litigation efforts in the U.S. District Court for the Central District of California

beginning in 2023, that case, *Danielle Victor v. Southwest Wine and Spirits, LLC et al*, ***Case No.*** *2:23-cy-00690*, remains pending and improperly stagnated. For over 672 days, no meaningful action has been taken by any clerk, magistrate, or judge assigned to that case, even after Plaintiff submitted a motion requesting a formal statement from the court explaining the failure to diligently prosecute and serve defendants. Despite a fee waiver having been granted, the court has refused to effectuate service. This dereliction of duty has denied Plaintiff access to justice and due process. Despite initiating multiple complaints through appropriate channels, including the California Labor Commissioner and federal and state courts, Plaintiff was denied fair process. Clerks and officials ignored Plaintiff's filings and refused to acknowledge her rights under due process and equal protection.

11. The systemic failure of the judicial system in California to fairly adjudicate Plaintiff's claims necessitates this new, detailed civil rights complaint in order to document the full scope of the harms endured. Plaintiff has exhausted all administrative remedies, including filing with the California Labor Commissioner and the Department of Fair Employment and Housing, amongst other governmental agencies.

12. The defendants include private corporations, law firms, court officers, and federal and state officials, each playing a role in a broader conspiracy to silence and retaliate against Plaintiff for exercising her constitutional rights, reporting crimes, and demanding accountability.

13. Plaintiff seeks redress for the violation of her constitutional rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments, actionable under **42 U.S.C. §1981, 1983, 1985**, and **1986**; as well as numerous violations of federal criminal statutes, California employment laws, and common law torts. The United States of America is named as a defendant where applicable for its agents' participation in unlawful conduct under color of law and for failure to remedy ongoing constitutional violations.

13. This lawsuit seeks damages, declaratory and injunctive relief, and accountability for the years of harm and deprivation Plaintiff has endured at the hands of actors who weaponized the justice system to conceal sexual misconduct, public corruption, discrimination, and fraud.

**II. Continuous Violations Doctrine**

1. Plaintiff alleges that the actions described herein are part of an ongoing pattern of misconduct that extends over a period of time, and that Defendants' wrongful acts were

continuous and interconnected. As such, Plaintiff asserts that the statute of limitations for these claims should be tolled under the Continuous Violations Doctrine, which allows for the extension of time to file claims when the violations are part of a continuous or repeated course of conduct.

2. Plaintiff alleges that the unlawful acts and omissions committed by Defendants, both known and unknown, constitute a continuing course of misconduct that began in California and has persisted across jurisdictions, including in the Commonwealth of Massachusetts, through the present day. The pattern of misconduct includes but is not limited to: wrongful termination, ongoing retaliation, attorney and judicial misconduct, conspiracy to obstruct justice, defamation, harassment, unlawful disclosure and use of Plaintiff’s private and medical information, and abuse of process.

3. Plaintiff further contends that Defendants’ actions were not isolated incidents, but instead constituted a systematic and ongoing violation of Plaintiff’s rights, with the unlawful conduct continuing throughout the relevant period. Additionally, Plaintiff was unable to discover the full extent of these violations until very recently, due to Defendants’ active concealment of their actions and their refusal to investigate and address Plaintiff’s complaints in a timely manner. These

actions formed a systematic, coordinated effort among various individual and institutional defendants to silence, retaliate against, and discredit Plaintiff following her attempts to report and expose unlawful conduct, including employment discrimination, civil rights violations, and judicial corruption. Each act in this series reinforced and advanced the prior acts, creating a continuous violation of Plaintiff’s constitutional and statutory rights.

4. Plaintiff further alleges that Defendants continued to use falsified documents, engage in fraudulent litigation tactics, and interfere with ongoing and potential litigation even after Plaintiff’s wrongful termination. As recently as May 5, 2025, Defendants knowingly participated in conduct that contributed to the ongoing pattern of retaliation and harm, including the submission of fraudulent evidence, ex parte communications, and unauthorized access and use of Plaintiff’s confidential data.

5. Accordingly, under the Continuous Violations Doctrine, the statute of limitations has not lapsed, and Plaintiff’s claims are timely. Each act in furtherance of the conspiracy and retaliation constitutes a new violation, thereby tolling the statute of limitations up to and including the date of the last wrongful act.

6. Therefore, Plaintiff seeks to toll the statute of limitations for all claims arising from this continuous and ongoing misconduct, as the full scope of the violations could not have been reasonably discovered until recently, and the wrongful acts are still ongoing.

**III. Argument Regarding Statute of Limitations**

1. Plaintiff contends that the statute of limitations should not bar the claims in this action, as the equitable doctrine of "tolling" applies under the exceptional circumstances present in this case. The Plaintiff previously filed a federal lawsuit in 2023, within the three-year window for the discovery of fraud, which forms the basis for the current claims. However, due to significant public corruption, the court's refusal to serve the defendants, and its failure to prosecute the case diligently, Plaintiff has been unable to obtain a resolution of the claims within the applicable time period. Plaintiff acknowledges that certain claims may, on their face, appear to fall outside the standard limitations periods. However, multiple legal doctrines apply to toll or extend these periods, rendering the claims timely.

2. First, under the **Continuous Violations Doctrine**, Plaintiff has alleged an ongoing pattern of unlawful conduct,

spanning employment discrimination, retaliation, civil rights violations, abuse of process, and fraud, that did not occur as discrete acts, but rather as part of a systematic and continuing course of misconduct. Defendants' conduct continued through the present, with recent retaliatory and obstructive acts occurring as late as May 5, 2025, which serve to refresh the statute of limitations with each related violation.

3. Second, the **Equitable Tolling Doctrine** applies because Plaintiff was reasonably diligent in attempting to assert her rights, but was prevented from doing so by extraordinary circumstances, including ongoing obstruction by Defendants, court clerks, state actors, and legal professionals. This includes acts such as: refusal to file pleadings, denial of service of process, judicial delay exceeding 600 days, and the submission of falsified evidence by the defense. The equitable tolling doctrine exists to prevent unjust results where plaintiffs have been prevented from timely asserting their claims due to circumstances beyond their control. In this case, the Plaintiff was delayed from bringing the current action due to the actions of public officials, which led to a lack of service and the failure of the legal system to ensure proper and timely prosecution of the initial claims.

4. Third, **Fraudulent Concealment** by Defendants further tolls the limitations periods. Defendants actively concealed material facts necessary for Plaintiff to assert her claims, including their roles in falsifying evidence, coordinating retaliation, and engaging in ex parte communications. Plaintiff was misled as to who was responsible for certain acts, and only through independent investigation and recently discovered documents did she uncover the full scope of the misconduct. The claims of fraud and other related misconduct were not reasonably discoverable by the Plaintiff until after the passage of time. Given the fraudulent conduct and cover-ups by the defendants, Plaintiff was unable to uncover the full extent of the harm and misconduct until after the original case was filed. As a result, the statute of limitations should be equitably tolled to prevent the defendants from evading justice by virtue of their own fraudulent actions.

5. Fourth, **Public Corruption and Court Inaction**- The Plaintiff alleges that systemic public corruption within the court system, including fraudulent actions by certain individuals involved in the litigation, directly interfered with the proper processing and prosecution of the case. These actions contributed to substantial delays and hindered the Plaintiff's ability to fully assert their legal rights. These circumstances

constitute exceptional and extraordinary factors justifying the equitable tolling of the statute of limitations.

6. Fifth, **Failure to Serve Defendants** - Despite the case being filed within the applicable statute of limitations, the court's refusal or failure to diligently serve the defendants, including delays and improper handling of service of process, further prevented the case from moving forward. The delay in service was not caused by any fault of the Plaintiff but was instead the result of systemic failures and irregularities within the legal system.

7. Finally, given the nature of many claims asserted, including civil rights violations, constitutional deprivations, and intentional torts, Plaintiff's allegations warrant liberal construction in favor of adjudication on the merits. Strict application of limitations doctrines would unjustly reward Defendants for their sustained campaign of deception and retaliation. For these reasons, Plaintiff respectfully requests that the Court find the statute of limitations inapplicable to the claims in this case and allow the Plaintiff to pursue the claims on the merits, as the Plaintiff has been prevented from timely asserting them due to the actions and omissions of the defendants and the court.

8. Accordingly, all claims asserted herein are timely as a matter of law and equity.

**IV. DEMAND FOR JURY TRIAL**

1. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

**V. JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this action pursuant to **28 U.S.C. §1331** because the claims arise under the Constitution, laws, and treaties of the United States, including but not limited to:

• 42 U.S.C. §1981, 1983, 1985, 1986;

• Title VII of the Civil Rights Act (42 U.S.C. § 2000e et seq.);

• 18 U.S.C. §201, 208, 241, 242, 641, 872, 873, 1001, 1035, 1341, 1347, 1349, 1510, 1513, 1519, and other federal statutes concerning public corruption, obstruction of justice, retaliation, and fraud;

• The First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

2. This Court has jurisdiction over the United States of America pursuant to **28 U.S.C. § 1346(b)** and the **Federal Tort Claims Act (FTCA)** to the extent Plaintiff alleges injury caused

by the negligent or wrongful acts or omissions of federal employees acting within the scope of their employment, as well as under **28 U.S.C. §1331** (named above) and other applicable constitutional and statutory provisions for non-FTCA claims based on constitutional violations and systemic abuse.

3. This Court has jurisdiction pursuant to **28 U.S.C. §1343(a)(3)**, which confers original jurisdiction upon federal district courts for any civil action to redress the deprivation, under color of any state or federal law, of rights, privileges, or immunities secured by the Constitution of the United States or by any Act of Congress providing for equal rights.

4. Venue is proper in the United States District Court for the Central District of California under **28 U.S.C. §1391(b)** because a substantial part of the events or omissions giving rise to the claims occurred in this District. Plaintiff was employed, harmed, and retaliated against in this District, and many of the Defendants reside and/or conduct business here. Defendants, including public officials, private entities, attorneys, and institutions, acted individually and in concert to carry out unlawful conduct primarily within Los Angeles County, California.

5. While Plaintiff is presently a citizen of the Commonwealth of Massachusetts, she was employed in Los Angeles

at the time of the alleged civil rights violations, and many of the unlawful actions, including but not limited to sexual harassment, retaliation, judicial and attorney misconduct, obstruction of justice, and fraud upon the court, originated in California and were carried out by actors based in or acting under the jurisdiction of the state of California.

6. The misconduct extended across state lines, as Defendants knowingly sent fraudulent legal mail to Plaintiff's address in Massachusetts, attempted to continue unlawful proceedings across jurisdictions, and caused ongoing harm in Plaintiff's home state. Nonetheless, Plaintiff acknowledges that the nucleus of operative facts giving rise to the claims lies in California, and thus venue and jurisdiction are proper in the Central District of California.

7. This Court also has jurisdiction over any claims asserted against the United States of America and its officers, agencies, and employees pursuant to **5 U.S.C. §70**2, which waives sovereign immunity in suits for non-monetary relief against the federal government, and under **28 U.S.C. § 133**1, as this action includes claims against government officials for violations of Plaintiff's constitutional and statutory rights.

8. This Court also has supplemental jurisdiction over Plaintiff's related state law claims under **28 U.S.C. §1367**, as

they arise from the same case or controversy as the federal claims, including but not limited to **California's Fair Employment and Housing Act** (**Cal. Gov't Code § 12900 et seq.**), California Labor Code violations, defamation, and related tort claims pursuant to **28 U.S.C. §1367(a)**, as they arise from the same common nucleus of operative facts.

9. Plaintiff also notes that this Court has had a related and pending matter since 2023, which court officials have refused to prosecute or adjudicate. Clerks and judicial officers failed to serve defendants despite Plaintiff's approved fee waiver and failed to respond to Plaintiff's motion demanding an explanation for the more than a 672-day delay in case processing. This ongoing inaction and denial of access to justice is part of the pattern of systemic misconduct and abuse of process forming the basis of this Complaint.

10. Plaintiff has exhausted all administrative remedies to the extent required by law. She filed timely complaints with the California Labor Commissioners Office, California Department of Fair Employment and Housing (DFEH) and the Equal Employment Opportunity Commission (EEOC). Upon the discovery of attorney misconduct, judicial misconduct, and abuse of process Plaintiff also recontacted all these governmental agencies whom did not investigate nor prevent. In addition to contacting other federal

& governmental agencies such as the F.B.I and the Department of Justice. To the extent any administrative process was obstructed, Plaintiff alleges such obstruction resulted from misconduct by the Defendants and affiliated entities.

**VI. PARTIES**

**I. PLAINTIFF**

1. Plaintiff, **Danielle Victor**, is a Black female and individual who was formerly employed by Southwest Wine & Spirits, LLC, dba Wally's or Wally's Beverly Hills, in Los Angeles, California. Plaintiff is a resident of the Commonwealth of Massachusetts. Plaintiff was subjected to severe and unlawful workplace conduct including sexual harassment, discrimination, retaliation, wrongful termination, wage theft, fraud, perjury, and HIPAA violations, among other forms of misconduct. Plaintiff also alleges unlawful arbitration practices, attorney misconduct, and corruption in the handling of her prior state court case and related administrative complaints. Plaintiff also alleges actions, including being defamed and targeted for whistleblowing on misconduct involving the defendants and third parties. Plaintiff has standing to bring this action under federal and state law.

**II. DEFENDANTS**

**1. Southwest Wine & Spirits, LLC dba Wally's or Wally's Beverly Hills ("Wally's")**

Defendant Southwest Wine & Spirits, LLC, ("Southwest Wine & Spirits") doing business as Wally's or Wally's Beverly Hills (collectively, "Wally's"), is a Delaware limited liability company authorized to do business in California. Wally's is a prominent luxury wine and dining establishment located in Beverly Hills, California, and is one of the primary entities through which the unlawful conduct alleged in this Complaint was executed. Wally's, acting through its executives, agents, and employees, engaged in discriminatory, retaliatory, and conspiratorial conduct against the Plaintiff. This includes, but is not limited to, unlawful employment practices, wrongful termination, participation in coordinated efforts to defame Plaintiff, and abuse of legal process in ongoing litigation. Wally's knowingly participated in a scheme to silence Plaintiff's protected activity and to protect high-profile individuals connected to the company. At all times relevant to this Complaint, Wally's acted with knowledge, intent, and coordination with other Defendants to injure Plaintiff's rights, reputation, and career.

**2. Wally's Auction House, LLC**

Defendant Wally's Auction House, LLC ("Wally's Auction") is a California limited liability company that conducts auction and retail operations related to luxury wine, spirits, and collectibles. At all relevant times, Wally's Auction acted in concert with Southwest Wine & Spirits, LLC and other Defendants named herein to facilitate and conceal misconduct, including discriminatory practices, fraudulent business operations, and retaliatory acts against the Plaintiff. Wally's Auction knowingly allowed itself to be used as a tool to legitimize falsified documents and records submitted in legal proceedings and internal investigations, including participation in the creation and use of a fabricated employee handbook. This handbook was created after litigation had already commenced and was falsely presented as contemporaneous, in an attempt to mislead the court, harm Plaintiff's credibility, and shield the individuals and entities engaged in coordinated unlawful behavior. At all times material to this Complaint, Wally's Auction acted with knowledge, intent, and coordination with others in furtherance of a conspiracy to obstruct justice and retaliate against Plaintiff for engaging in protected activity.

**3. MEL-JEN**

Defendant MEL-JEN ("Mel-Jen" or "Wally's") is a California limited liability company that has operated in concert with,

under the guise of, or interchangeably as "Wally's," including Wally's Beverly Hills and Wally's Auction House, LLC. At times material to this Complaint, MEL-JEN was used as a shell or alter ego entity to shield individual and corporate actors from liability, obscure financial transactions, and facilitate coordinated retaliation and discrimination against Plaintiff. MEL-JEN played a material role in the administration and execution of policies and business practices that were discriminatory in nature, including the selective enforcement of workplace rules, improper documentation of employee conduct, and retaliation against employees, particularly Black women, who challenged unethical conduct or attempted to assert their legal rights. MEL-JEN was further involved in the post hoc creation of fraudulent records, including but not limited to an employee handbook, for submission in judicial proceedings in order to mislead the court, defame Plaintiff, and interfere with the administration of justice. MEL-JEN's conduct formed a critical part of the broader conspiracy among Defendants to silence Plaintiff, deprive her of due process, and shield culpable individuals and entities from accountability.

**4. Paul Marciano**

Defendant Paul Marciano ("Marciano") is an individual, a resident of California, and a principal figure in the ongoing

conspiracy to discriminate against, defame, and retaliate against Plaintiff. Marciano is a co-founder and key executive of Guess?, Inc., and played a direct role in the discriminatory practices that resulted in Plaintiff's wrongful termination and the harassment she endured throughout her employment. Marciano made numerous discriminatory remarks based on race and gender, directly targeting Plaintiff, who is a Black woman. Marciano's conduct included making sexually suggestive comments toward Plaintiff and engaging in acts that amounted to unlawful sexual harassment, creating a hostile work environment. He further participated in the illegal suppression of Plaintiff's complaints, manipulating evidence, and obstructing investigations into her claims of unlawful treatment. As the principal figure at Wally's and of Guess?, Marciano had the power to control, direct, or intervene in the unlawful practices and conspiracies set forth in this Complaint, which were specifically designed to intimidate, retaliate, and silence Plaintiff from pursuing legal redress for her grievances. Marciano's actions were taken with the intention of maintaining a toxic and discriminatory work environment, contributing to systemic abuse within the corporate structure.

**5. Maurice Marciano**

Defendant Maurice Marciano ("Maurice Marciano") is an individual and a resident of California. Maurice Marciano is a senior executive at Guess?, Inc., and like his co-defendant Paul Marciano, is a key figure in the unlawful actions outlined in this Complaint. Maurice Marciano acted in concert with his brother, Paul Marciano, to orchestrate and perpetuate a culture of discrimination, retaliation, and harassment within the workplace. Maurice Marciano was involved in decision-making processes that allowed discriminatory practices based on race and gender to flourish, directly affecting Plaintiff and others in a similar position. He participated in the suppression of Plaintiff's complaints and failed to take meaningful action to address the harassment and retaliation Plaintiff experienced. Maurice Marciano, either directly or through corporate influence, was part of a concerted effort to obstruct the legal process by creating a hostile work environment that violated Plaintiff's constitutional and civil rights. At times material to this Complaint, Maurice Marciano was aware of the discriminatory actions taking place but chose to ignore or tacitly support them, ultimately contributing to Plaintiff's emotional distress and professional harm.

**6. Christian Navarro**

Defendant Christian Navarro ("Navarro") is an individual and a resident of California. Navarro is a co-founder and executive associated with Wally's Wine & Spirits and various affiliated entities. He played a direct role in the unlawful and discriminatory actions outlined in this Complaint. Navarro not only participated in the hostile work environment and discriminatory conduct toward the Plaintiff, but also engaged in acts of intimidation, manipulation, and coercion to silence Plaintiff's protected complaints. Navarro maintained close personal and financial relationships with other named defendants, including Paul and Maurice Marciano, and actively facilitated unlawful retaliation against Plaintiff.

Navarro used his executive influence to conceal evidence, discredit Plaintiff, and interfere with due process by engaging with corrupted legal and mental health professionals to undermine Plaintiff's claims and credibility. He had access to Plaintiff's confidential information and improperly used it to strategize the defense's retaliation. At times material to this Complaint, Navarro was involved in planning, approving, or directly executing acts of retaliation, fraud, and abuse of process. Navarro transacts, or has transacted, business in the state of California and is being sued in both his personal and professional capacity.

**7. NAVARRO ONLINE, LLC**

Defendant Navarro Online, LLC ("Navarro Online") is a Delaware limited liability company. Upon information and belief, Navarro Online is owned, operated, and/or controlled by Christian Navarro, and it served as an alter ego or affiliated entity used to facilitate, conceal, and profit from the unlawful conduct alleged in this Complaint. Plaintiff alleges that Navarro Online was used to launder reputational or financial benefits derived from unlawful retaliation, workplace discrimination, and coordinated legal manipulation.

Navarro Online is believed to have been utilized to enter into transactions or manage business relationships that enabled Christian Navarro and other defendants to continue or cover up discriminatory, harassing, or retaliatory practices under the veil of legitimacy. Its corporate structure and separation were intentionally manipulated to evade liability, obscure relevant financial dealings, and insulate Navarro and his co-conspirators from exposure and accountability in connection with the events described herein.

At all relevant times, Navarro Online operated in substantial connection with the other named defendants, including Wally's and its associated entities, and transacts business within the State of California. It is being named in this action as a

corporate participant in, and beneficiary of, the pattern of misconduct alleged.

**8. THOMAS KACHANI**

Defendant Thomas Kachani ("Kachani") is an individual and, upon information and belief, a resident of California. Kachani is a principal actor in the discriminatory, retaliatory, and conspiratorial conduct described in this Complaint. He held a position of authority and influence within the business operations of Wally's and/or its affiliated entities and worked closely with other named defendants, including Paul Marciano and Christian Navarro, to facilitate and execute acts of discrimination, harassment, and litigation abuse against the Plaintiff.

At times relevant to this action, Kachani directly participated in or knowingly permitted the wrongful termination of Plaintiff, the creation and circulation of defamatory narratives about her, and the obstruction of her legal rights. Kachani is further alleged to have engaged in coordinated efforts to discredit Plaintiff's character and to weaponize both the legal and employment systems in order to silence her.

Plaintiff alleges that Kachani acted in concert with others named herein, and either possessed or exercised the authority to prevent the misconduct, but failed to do so. He transacts or has

transacted business in and around the State of California and is being sued in his individual capacity for his role in the harm inflicted upon Plaintiff.

**9. Matthew Marciano**

Defendant Matthew Marciano ("Matthew Marciano") is an individual and, upon information and belief, a resident of California. He is a relative of Paul Marciano and was directly involved in the discriminatory and retaliatory schemes outlined in this Complaint. Plaintiff alleges that Matthew Marciano engaged in and facilitated acts of employment discrimination, retaliation, and coordinated misconduct alongside other defendants named herein.

At all times relevant, Matthew Marciano worked in close connection with Wally's and its executive leadership, including Christian Navarro and Thomas Kachani, and used his influence to propagate a hostile and abusive environment. He is further believed to have participated in the fabrication and dissemination of false documentation, defamatory internal narratives, and other materially false representations to government agencies and courts for the purpose of silencing Plaintiff and undermining her claims.

Matthew Marciano is sued in his individual capacity for his knowing and willful participation in the campaign to harm

Plaintiff personally, professionally, and legally, and for his refusal to intervene despite having the authority and opportunity to do so.

**10. Nancy Hunter**

Defendant Nancy Hunter ("Hunter") is an individual and, upon information and belief, a resident of California. At all times relevant to this Complaint, Hunter served as the Head of Human Resources for Wally's Beverly Hills and/or its related entities. In her professional capacity, Hunter had a duty to uphold the company's employment policies, respond to employee grievances, and ensure compliance with applicable state and federal labor laws. However, she willfully failed to fulfill these obligations in Plaintiff's case.

Hunter refused to return any of Plaintiff's communications following her unlawful termination and failed to administer Plaintiff's final wages and benefits as required by law. In addition to this gross negligence and deliberate indifference, Hunter participated in creating false and misleading internal email correspondence with other members of Wally's executive team, including Sami Fromer and Matthew Marciano. These falsified communications were later submitted to the court as genuine and true, with the intent to obstruct justice and deceive the tribunal.

Moreover, Hunter never provided Plaintiff with formal written notice of termination, nor was Plaintiff given any opportunity for a Skelly hearing or other due process procedures typically afforded to employees facing adverse employment actions. Hunter's conduct further involved fabricating defamatory narratives about Plaintiff in conspiracy with other co-defendants to sabotage her reputation and future employment prospects, and to undermine the credibility and viability of her legal claims.

**11. Sami Fromer**

Defendant Sami Fromer ("Fromer") is an individual and, upon information and belief, a resident of California. At all times relevant to this Complaint, Fromer was an employee of Wally's Beverly Hills and/or its affiliated entities. Fromer actively participated in the conspiracy to defame, discredit, and wrongfully terminate Plaintiff from her position.

Fromer collaborated with Nancy Hunter and other members of Wally's management, including Matthew Marciano, to fabricate internal communications and false narratives about Plaintiff. These falsified statements and emails were later submitted to the court as authentic in an attempt to obstruct justice and sabotage Plaintiff's claims. Fromer's false statements were instrumental in constructing a misleading justification for

Plaintiff's termination and were used to discredit her professional conduct and integrity.

Fromer also made discriminatory and defamatory comments regarding Plaintiff's protected characteristics and engaged in retaliatory behavior that contributed to a hostile work environment. Fromer's conduct was not only unlawful but done with actual malice and in furtherance of a broader scheme to cover up Wally's pattern of discriminatory and retaliatory practices. Fromer acted individually and in concert with others to harm the Plaintiff personally, professionally, and legally.

**12. Keith Bjelajac**

Defendant Keith Bjelajac ("Bjelajac") is an individual and, upon information and belief, a resident of California. At all times relevant to this Complaint, Bjelajac served as the Head of Finance for Southwest Wine & Spirits, LLC dba Wally's or Wally's Beverly Hills. Bjelajac is identified in email correspondence, obtained by Plaintiff through prior counsel, as having directly communicated with the California Labor Commissioner's Office regarding Plaintiff's claims. Despite the nature of this formal engagement, Bjelajac failed to compel arbitration or raise any arbitration defense, thereby waiving such a right and reinforcing the Plaintiff's procedural standing. Bjelajac's conduct constitutes an active role in the mishandling and

obstruction of Plaintiff's labor complaints. He is further alleged to have contributed to the broader conspiracy of retaliation, discriminatory practices, and obstruction of justice carried out by Wally's management and legal representatives. Bjelajac's participation reflects both willful misconduct and complicity in efforts to damage Plaintiff's legal position, employment record, and reputation.

**13. Laura Burns**

Defendant Laura Burns ("Burns") is an individual and, upon information and belief, a resident of California. At all times relevant to this Complaint, Burns was employed by Wally's and worked closely with members of upper management including Christian Navarro and Nancy Hunter. Burns was involved in internal communications concerning Plaintiff's employment, and is believed to have contributed to the fabrication of false narratives later submitted to the court. Upon information and belief, Burns either authored or supported the creation of documentation and correspondence used to justify Plaintiff's wrongful termination, despite such records being knowingly misleading or entirely false. Burns acted in furtherance of the retaliatory and discriminatory objectives of Wally's management, and engaged in conduct intended to harm Plaintiff's credibility, interfere with her legal claims, and conceal internal

wrongdoing. Her actions reflect participation in a pattern of bad faith, coordinated retaliation, and the perpetuation of workplace hostility directed at Plaintiff.

**14. Mina Jones**

Defendant Mina Jones ("Jones") is an individual, and at all times relevant to this Complaint, was employed as a manager at Wally's. Jones is a white female who directly supervised Plaintiff and engaged in a pattern of discriminatory, harassing, and retaliatory behavior. During Plaintiff's employment, Jones subjected Plaintiff to continuous emotional distress and degrading treatment. On several occasions, Jones called Plaintiff into her office, where she displayed images of tall, skinny white models from Guess?, Inc., and directly told Plaintiff that she needed to look like them, or else she would face consequences. Jones's conduct was not only unprofessional but also racially discriminatory and sexist, as she set unrealistic and harmful standards based on Plaintiff's appearance. Additionally, Jones repeatedly sent Plaintiff home for alleged dress code violations while allowing white hostesses to dress in a manner that violated the same policy without consequence. This disparate treatment exemplifies the systemic discrimination that Plaintiff endured while under Jones's supervision. Jones's actions were calculated and designed to

humiliate Plaintiff, undermine her confidence, and create a hostile work environment, all of which were furthered by the tacit approval of upper management at Wally's.

**15. Christie Baker**

Defendant Christie Baker ("Baker") is an individual and at all times relevant to this Complaint was employed as a manager at Wally's. Baker worked directly with Plaintiff and played a key role in subjecting Plaintiff to a hostile and discriminatory work environment. On more than three separate occasions, Baker made highly inappropriate and demeaning comments to Plaintiff, including telling Plaintiff that her body made female customers uncomfortable while dining with their husbands. These remarks were not only unprofessional but also reflective of a discriminatory and hostile attitude toward Plaintiff's appearance and gender. Baker also failed to intervene or stop male harassment directed at Plaintiff, and instead, she encouraged such behavior. Furthermore, Baker made several crude and sexually suggestive comments about Plaintiff's body, including remarks about Plaintiff's nipples, which were offensive, objectifying, and entirely inappropriate in a professional setting.

In addition to her discriminatory behavior, Baker was actively involved in efforts to sabotage Plaintiff's employment.

Plaintiff was informed by another manager that Baker held multiple meetings with other managers and company owners to discuss how to remove Plaintiff from her position. Baker's malicious intent culminated in a voicemail left for Plaintiff, in which she was told that she was no longer allowed to step foot into Wally's pending an investigation. This action was taken without due process or any formal explanation, further illustrating the retaliatory and discriminatory motives that guided Baker's actions.

**16. Jonathan Poulin**

Defendant Jonathan Poulin ("Poulin") is an individual and, at all times relevant to this Complaint, was employed as an assistant manager at Wally's. Poulin played a central and enabling role in fostering a workplace culture steeped in sexual misconduct, discrimination, and hostility. He regularly engaged in sexually derogatory discussions within the workplace, including explicit commentary about women's bodies. For example, on one occasion witnessed by others, Poulin made objectifying and inappropriate remarks about actress Amber Heard's breasts while discussing her appearance at the restaurant, exemplifying the pervasive and toxic nature of the work environment he helped to cultivate.

Poulin contributed significantly to the hostile workplace culture by tolerating, encouraging, and participating in sexually inappropriate conversations and behavior, particularly directed at or in the presence of Plaintiff. He did so with knowledge of its damaging impact. Although he once confided to Plaintiff that he had warned other managers and owners to stop harassing her or risk legal consequences, this acknowledgment further underscores his awareness of the pervasive misconduct and his failure to take meaningful corrective action.

Moreover, Poulin participated in efforts to justify Plaintiff's wrongful termination through the creation and dissemination of fabricated email communications. These emails, later submitted as evidence, were part of a concerted effort to defame Plaintiff and obstruct the investigation into her claims. Poulin's conduct directly contributed to the broader conspiracy to retaliate against and silence Plaintiff, and his actions constitute willful obstruction of justice and participation in unlawful employment practices.

**17. Christie's Wine, Inc.**

Defendant Christie's Wine, Inc. ("Christie's Wine") is, and at all relevant times was, a corporation organized and existing under the laws of the State of Delaware. Christie's Wine conducts business in the State of California and elsewhere in

the United States. At all times material to this Complaint, Christie's Wine played a complicit and enabling role in the broader scheme to unlawfully discriminate against, retaliate against, and obstruct justice in relation to the Plaintiff's claims.

Christie's Wine maintained a close and coordinated business relationship with key individuals and entities involved in Plaintiff's employment, litigation, and subsequent retaliation, including Wally's and affiliated management. Upon information and belief, Christie's Wine either knew or should have known of the discriminatory and retaliatory practices carried out by Wally's and its agents and took no steps to intervene, report, or mitigate such misconduct. Instead, Christie's Wine benefited from the unlawful practices and engaged in ongoing cooperation that served to protect wrongdoers and preserve business interests at the expense of Plaintiff's rights.

Christie's Wine is further implicated in a pattern of misconduct through its participation in obstructive practices, including but not limited to coordinated efforts to deny Plaintiff access to relevant evidence, delay or manipulate legal proceedings, and insulate involved parties from liability. At times relevant to this Complaint, Christie's Wine operated under the authority,

control, or influence of individuals named herein and was used as a vehicle to further their collective unlawful objectives.

**18. Christie's Inc. (New York)**

Defendant Christie's Inc. ("Christie's – New York") is, and at all relevant times was, a corporation organized and existing under the laws of the State of New York. Christie's – New York regularly conducts business throughout the United States, including in California. It is a parent, affiliate, or coordinating entity with Christie's Wine, Inc., and operates in close commercial and legal alignment with Christie's offices and subsidiaries across jurisdictions.

Christie's – New York is implicated in Plaintiff's claims as a willful participant in, or beneficiary of, a coordinated scheme involving retaliation, obstruction of justice, discrimination, and suppression of civil and constitutional rights. Upon information and belief, Christie's – New York either directly received or exchanged communications and reports regarding Plaintiff and her legal claims, and facilitated or authorized decisions meant to interfere with Plaintiff's right to lawful recourse.

At times material to this Complaint, Christie's – New York acted with knowledge of the pattern of unlawful conduct carried out by Wally's and its owners and managers, and failed to take any

corrective or preventative measures. Instead, it permitted its agents, affiliates, and representatives to support and participate in actions that included retaliation, interference with protected activity, and the dissemination of false information intended to damage Plaintiff’s credibility and obstruct formal investigations.

**19. Christie’s Inc. (New Jersey)**

Defendant Christie’s Inc. (“Christie’s – New Jersey”) is, and at all relevant times was, a corporation organized and existing under the laws of the State of New Jersey. It maintains offices and operations in the state of New Jersey and is affiliated with other Christie’s entities, including Christie’s Inc. in New York and Christie’s Wine, Inc. It regularly conducts business throughout the United States, including in California, and participates in intra-entity decision-making processes. Christie’s – New Jersey, upon information and belief, engaged in coordinated activity with Christie’s – New York and Christie’s Wine, Inc., which contributed to the discriminatory, retaliatory, and obstructive acts against Plaintiff. This included the processing or distribution of confidential, privileged, or fabricated communications designed to interfere with Plaintiff’s legal claims. Christie’s – New Jersey, through its personnel or affiliated representatives, knowingly allowed

misuse of internal processes and business relationships to suppress Plaintiff's rights and further retaliatory efforts. Christie's – New Jersey had the capacity, authority, and duty to prevent, object to, or disclose these improper activities but failed to do so, thereby enabling a continuing pattern of misconduct. At all times relevant to this Complaint, Christie's – New Jersey participated in or aided unlawful practices described herein.

**20. 3900 WA ASSOCIATES, LLC**

Defendant 3900 WA ASSOCIATES, LLC ("3900 WA") is, and at all times relevant was, a limited liability company organized under the laws of the State of Delaware, and operating in the State of California, including through ownership, operation, or financial interest in the physical premises located at or near 447 N Canon Dr, Beverly Hills, CA 90210, or other relevant business properties associated with Wally's or its affiliates.

Upon information and belief, 3900 WA had a direct financial, managerial, or operational relationship with Southwest Wine & Spirits, LLC and/or Wally's Beverly Hills, and exercised ownership or control over property or assets material to Plaintiff's employment and/or litigation. 3900 WA's principals or agents were on notice of the pattern of harassment,

discrimination, and retaliation occurring on its premises and failed to act to prevent or remedy the harm.

Further, 3900 WA aided or enabled certain defendants named herein in the concealment or falsification of evidence, evasion of lawful oversight, or misrepresentations to government agencies or judicial bodies, thereby contributing to obstruction of justice and denial of Plaintiff's constitutional and civil rights.

**21. DELTA AIR LINES, INC.**

Defendant DELTA AIR LINES, INC. ("Delta") is, and at all times relevant was, a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of Georgia. Delta conducts substantial business in the State of California, including in Los Angeles County, and is subject to the jurisdiction of this Court.

Upon information and belief, Delta maintains an ongoing business partnership or promotional affiliation with Wally's Beverly Hills and/or its associated entities. At this time, Plaintiff believes that Delta directly participated in the retaliatory and discriminatory acts set forth in this Complaint. Delta is also named as a Defendant due to its commercial relationship with certain Defendants accused herein of engaging in unlawful activity and civil rights violations.

This inclusion preserves Plaintiff's right to seek discovery as to whether any collaboration, influence, or indirect coordination may have occurred between Delta and other named Defendants that could have impacted Plaintiff's rights, including but not limited to potential interference with her travel, communication, or professional opportunities. Plaintiff reserves the right to amend her claims as more information is revealed through the discovery process.

**22. GUESS? RETAIL, INC.**

Defendant GUESS? RETAIL, INC. ("GUESS?") is, and at all times relevant was, a corporation organized under the laws of the State of Delaware, with its principal place of business in California. GUESS? operates retail clothing stores and fashion-related commercial enterprises internationally and within the State of California.

GUESS? played a central role in the conspiracy to retaliate against, defame, and suppress Plaintiff, particularly after Plaintiff began asserting her legal rights in connection with wrongful termination, discrimination, harassment, and broader patterns of misconduct involving GUESS? affiliates and executives. Plaintiff discovered this pattern when looking into Marciano's other businesses and related cases that were in Superior or District Courts. GUESS? acted through its

leadership, including but not limited to Paul Marciano, Maurice Marciano, and possibly Matthew Marciano, who are named Defendants herein.

Plaintiff alleges that GUESS? knowingly supported, funded, or was otherwise complicit in efforts to obstruct justice, intimidate Plaintiff, tamper with legal proceedings, and misrepresent material facts to courts and administrative bodies. These efforts included the generation and dissemination of false narratives, misuse of confidential records, and unlawful coordination with third parties to deter Plaintiff from pursuing justice.

GUESS? had the authority to prevent the misconduct and unlawful retaliation described in this Complaint but instead participated in, encouraged, or facilitated the ongoing conspiracy to violate Plaintiff's civil and constitutional rights. At all times material hereto, GUESS? transacted business in California and elsewhere and is subject to the jurisdiction of this Court.

**23. Walter Mosley**

Defendant Walter Mosley ("Mosley") is an individual and a resident of California. Mosley is an attorney licensed to practice law in the State of California, holding California **State Bar No. 244169**, and conducts business throughout the state and within this judicial district through his law practice and

related entities, including Walter Mosley, A Professional Corporation.

At all times relevant, Mosley served as legal counsel for the Plaintiff and owed her fiduciary duties as her attorney. During the course of his representation, Mosley committed severe legal malpractice and misconduct, including but not limited to: breaching attorney-client privilege, engaging in conflicts of interest, undermining Plaintiff's legal claims, and facilitating obstruction of justice. Mosley misrepresented material facts, failed to advocate zealously on Plaintiff's behalf, and ultimately sabotaged her case.

Mosley is further alleged to have colluded with opposing counsel and other third parties, some of whom are also named defendants in this action, in an effort to derail Plaintiff's litigation. These actions included the improper sharing of confidential information, deliberate failure to act in Plaintiff's legal interests, involvement in or acquiescence to the submission of false or fabricated documents, and participation in a broader conspiracy involving Plaintiff's wrongful termination, retaliation, and civil rights violations.

Upon information and belief, Mosley maintained undisclosed relationships with individuals and law firms adverse to Plaintiff, including but not limited to co-counsel, arbitrators,

and opposing counsel, thereby violating ethical obligations, California legal standards, and constitutional protections. These actions directly contributed to the denial of due process, obstruction of access to the courts, and injury to Plaintiff's reputation and career.

Mosley's conduct as alleged herein forms part of a coordinated scheme involving multiple individuals and entities designed to conceal misconduct, suppress Plaintiff's legal claims, and protect institutional interests at Plaintiff's expense.

**24. Walter Mosley, A Professional Corporation**

Defendant Walter Mosley, A Professional Corporation ("Walter Mosley Corp.") is a California professional corporation operating under the laws of the State of California, with its principal place of business located within this judicial district. At all times relevant to this Complaint, the corporation functioned as the law firm through which attorney Walter Mosley (California State Bar No. 244169) conducted his legal practice, including his representation of the Plaintiff. Walter Mosley Corp. is legally and vicariously liable for the actions and omissions of its principal, Walter Mosley, and any staff, associates, or representatives acting on its behalf in the course and scope of their duties. The firm failed to uphold

fundamental duties of competence, loyalty, confidentiality, and zealous advocacy owed to Plaintiff, a former client.

The law firm, through its agents and attorneys, is alleged to have participated in misconduct including but not limited to: legal malpractice, conflict of interest, breach of fiduciary duty, failure to disclose material relationships with adverse parties, and participation in a coordinated scheme with other defendants to obstruct justice, falsify records, and suppress Plaintiff's legal claims. Upon information and belief, Walter Mosley Corp. was a knowing and willful participant in activities that harmed Plaintiff's access to justice and violated her constitutional and civil rights.

**25. Nathalie Meza Contreras**

Defendant Nathalie Meza Contreras ("Contreras") is an individual and licensed attorney, admitted to the State Bar of California under **Bar Number 322545.** At all times relevant to this Complaint, Contreras acted as legal counsel for the Plaintiff and practiced law within the State of California, including in this judicial district. She is believed to reside in California and transacted business related to this case within the state. Contreras represented Plaintiff during a crucial period of litigation but is alleged to have egregiously breached her duties as an attorney, both ethically and professionally.

Plaintiff asserts that Contreras engaged in conduct amounting to legal malpractice and intentional misconduct, including, but not limited to, failure to communicate material facts, neglect of critical legal responsibilities, and complicity in prejudicing Plaintiff’s claims.

Upon information and belief, Contreras conspired with other defendants, such as Walter Mosley, certain defense counsel, and parties involved in arbitration proceedings, to undermine Plaintiff’s position and shield individuals and entities accused of serious legal violations. Contreras is further alleged to have participated in the submission of misleading court filings, permitted or facilitated tampered or falsified evidence, and breached fiduciary duties owed to Plaintiff.

Contreras’s conduct was not only a dereliction of her duties as counsel, but part of a broader pattern of obstruction and collusion designed to derail Plaintiff’s case, violate her constitutional rights, and protect influential figures from accountability. These actions constitute violations of the California Rules of Professional Conduct, legal malpractice, and active participation in a scheme to defraud and retaliate against Plaintiff.

**26. Nathalie Meza Contreras Law, A Professional Corporation**

Defendant Nathalie Meza Contreras Law, A Professional Corporation ("Contreras Law") is, upon information and belief, a California domestic stock corporation operating and registered under the laws of the State of California. Contreras Law was at all relevant times owned and operated by Nathalie Meza Contreras (CA State Bar No. 322545), who represented the Plaintiff during key periods of litigation in the underlying matters.

Contreras Law held itself out as a legitimate legal entity engaged in the practice of law within California, including within this judicial district. However, Plaintiff had no knowledge during the attorney-client relationship that Contreras was acting under the auspices of her own corporation; instead, Contreras presented herself as an employee or associate of Walter Mosley, A Professional Corporation, another Defendant herein. This concealment contributed to the Plaintiff's confusion about legal representation and deprived her of critical transparency regarding who was legally responsible for the decisions and actions that ultimately harmed her.

Plaintiff alleges that Contreras Law was used, in part, as a vehicle to carry out or conceal unethical and unlawful conduct, including participation in a coordinated scheme with other individuals and entities, such as Walter Mosley, prior defense counsel, and parties affiliated with arbitration forums, to

obstruct justice, sabotage litigation, and enable retaliation against Plaintiff. The corporate veil of Contreras Law should not shield it from liability for its role in the conspiracy and misconduct detailed in this Complaint.

Plaintiff further alleges that acts taken by Contreras Law, through its principal Nathalie Meza Contreras, violated fiduciary duties, ethical rules under the California Rules of Professional Conduct, and contributed directly to damages suffered by Plaintiff as part of a broader legal malpractice and civil rights conspiracy.

Walter Mosley Corp. is jointly and severally liable for the harm and damages Plaintiff sustained as a result of the unethical, illegal, and conspiratorial conduct carried out through its platform and legal representation.

**27. Carlos Eduardo Montoya Solis**

Defendant Carlos Eduardo Montoya Solis ("Montoya Solis") is an individual and a licensed attorney in the State of California, **State Bar No. 317057.** At all times relevant to this Complaint, Montoya Solis acted as legal counsel for Plaintiff during critical stages of her litigation. Despite his fiduciary obligations, Montoya Solis engaged in misconduct that

substantially harmed Plaintiff's interests and violated his ethical and legal duties.

Montoya Solis knowingly committed recorded perjury during a hearing held on August 3, 2021, at the Stanley Mosk Courthouse, in the presence of the Plaintiff. During this proceeding, Montoya Solis knowingly made false representations of material fact to the Court that contradicted both the actual record and Plaintiff's direct knowledge and experience. His knowingly false statements, made under oath and on the record, contributed to court rulings that harmed Plaintiff and suppressed her ability to seek redress.

In addition to perjuring himself in open court, Montoya Solis signed and submitted legal documents under penalty of perjury, including declarations and filings falsely presented as genuine and true. Upon information and belief, these submissions were made at the direction and coordination of Defendant Walter Mosley and other members of Plaintiff's prior legal team. Montoya Solis thereby participated in a broader effort to mislead the court, obstruct justice, and undermine Plaintiff's claims.

Montoya Solis further failed to advocate for Plaintiff's interests, ignored or concealed material facts, failed to inform Plaintiff of critical developments, and enabled adverse

counsel's strategic misconduct. Despite holding himself out as independent counsel, he functioned in coordination with parties adverse to Plaintiff in violation of California law, professional rules of conduct, and basic standards of due process.

Montoya Solis resides and/or transacts business in the State of California and is subject to the jurisdiction of this Court. His conduct, as described herein, forms part of a deliberate and coordinated conspiracy to sabotage Plaintiff's legal position, violate her civil rights, and obstruct justice. He is jointly and severally liable for all resulting harms.

**28. Gracie Esparza**

Defendant Gracie Esparza ("Esparza") is an individual who, at all relevant times, worked closely with Plaintiff's prior legal counsel. Esparza was not a licensed attorney or certified paralegal under California law during the time she worked on Plaintiff's case, yet she unlawfully acted as a paralegal, dispensed legal advice, and made authoritative demands upon Plaintiff without any legal authority or oversight.

Esparza was instrumental in the conspiracy to sabotage Plaintiff's litigation, operating under the direction of Plaintiff's former counsel, including Defendants Walter Mosley, Nathalie Meza Contreras, and Carlos Eduardo Montoya Solis.

Esparza routinely communicated legal instructions to Plaintiff, misrepresented her qualifications, and coerced Plaintiff into compliance with legal strategies designed to undermine her case.

She also collaborated closely with Defendant Montoya Solis in preparing and supporting perjured statements made in open court during a hearing on August 3, 2021, at the Stanley Mosk Courthouse. These knowingly false statements, which included the defamatory accusation that Plaintiff was "difficult to work with," were intended to discredit Plaintiff and mislead the court. Esparza worked diligently behind the scenes to support this perjury and to construct a false narrative in defense of her co-conspirators.

Esparza's conduct was not the result of mistake or misunderstanding; rather, it was deliberate, coordinated, and malicious, designed to obstruct justice, defame Plaintiff, and deprive her of a fair legal process. She directly contributed to the filing of fraudulent documents, misrepresentation of facts, and manipulation of court proceedings.

Esparza resides in and/or transacts business in the State of California and is subject to the jurisdiction of this Court. Her actions, taken under color of legal authority without legal qualification, form part of a broader pattern of civil rights

violations, legal malpractice, and intentional misconduct. Esparza is jointly and severally liable for the harm caused to Plaintiff by the conspiracy and unlawful conduct detailed in this Complaint.

**29. Amanda Headworth**

Defendant Amanda Headworth ("Headworth") is an individual who, during the events described in this Complaint, misrepresented her legal role and professional affiliations in connection with Plaintiff's legal representation. Initially introduced to Plaintiff as a paralegal for The Dominguez Firm, Headworth maintained that role for several months following Plaintiff's execution of a retainer agreement with the firm.

However, approximately six months after that retainer was signed, The Dominguez Firm sent Plaintiff a termination letter, formally ending its representation without providing a clear explanation or appropriate transition. Despite this termination, Headworth inexplicably remained active on Plaintiff's case, presenting herself as a paralegal now working for Walter Mosley and/or his affiliated professional corporation. This was a false and misleading representation.

In reality, Headworth did not lawfully work for Walter Mosley or his firm at that time and continued to act under a co-counsel arrangement that was deliberately concealed from Plaintiff. This

secretive agreement allowed her to maintain involvement in the litigation without proper disclosure or consent, and to actively coordinate with defense counsel in a manner adverse to Plaintiff's interests.

Headworth's misconduct extended to direct participation in official proceedings, including a critical hearing before the California Labor Commissioner's Office. During this proceeding, Headworth, in coordination with Defendant Nathalie Meza Contreras, signed documentation on Plaintiff's behalf without authorization to voluntarily close a labor claim that would have supported Plaintiff's active litigation in Los Angeles Superior Court. This act was deliberate sabotage designed to favor the defense in Plaintiff's Superior Court action and deprive her of administrative remedies.

Headworth's actions were knowing, intentional, and malicious, executed in bad faith and in violation of professional ethics, state law, and Plaintiff's constitutional rights. She directly participated in a broader conspiracy to undermine Plaintiff's case, deceive her regarding legal representation, and obstruct justice through fraudulent legal filings and unauthorized settlements.

Headworth resides in and/or transacts business in the State of California and is subject to the jurisdiction of this Court. She is jointly and severally liable for the injuries and damages sustained by Plaintiff as a result of the conduct alleged herein.

**30. Juan J. Dominguez**

Defendant Juan J. Dominguez ("Dominguez") is an individual licensed to practice law in the State of California, **State Bar No. 131538**, and the principal and owner of The Dominguez Firm, PLLC ("TDF"), a law firm that represented the Plaintiff during a key period relevant to the allegations in this Complaint. Dominguez is a prominent figure in the legal community, operating a high-volume personal injury and employment law practice in California, and is responsible for the acts, omissions, and misconduct carried out by his firm and its agents, including Amanda Headworth and Carlos Eduardo Montoya Solis, Jace H. Kim, under his authority.

At all times relevant to this Complaint, Dominguez, acting individually and as the head of TDF, knowingly participated in a scheme to deceive Plaintiff about the true nature of her legal representation, concealed material facts, and allowed or directed agents of his firm to act in concert with adverse

parties, including Walter Mosley, to sabotage Plaintiff's pending legal claims.

While Plaintiff was under the impression that TDF was actively pursuing her case, Dominguez's firm quietly withdrew from representation without proper explanation, leaving Plaintiff without adequate legal support or notification. Despite this purported withdrawal, Dominguez's agents, including Amanda Headworth, continued to participate in Plaintiff's case under the false pretense of working for successor counsel, creating an unethical and undisclosed co-counsel arrangement between TDF and Mosley's firm, which Plaintiff never approved nor consented to. Dominguez further bears responsibility for his firm's participation in unauthorized settlements and procedural maneuvers, including the closure of Plaintiff's labor commissioner claim, which directly benefited the defendants in Plaintiff's Superior Court action. Plaintiff was never fully informed of these decisions, nor were they made with her consent. These actions materially damaged Plaintiff's position in her litigation and denied her access to due process and meaningful legal advocacy.

Dominguez resides in, and conducts substantial business in, the State of California, and his misconduct, as alleged herein, occurred within this jurisdiction. He had both knowledge of and

authority over the unethical and potentially unlawful conduct of his employees, and as such, is jointly and severally liable for the damages sustained by Plaintiff as a direct and proximate result of this conduct.

**31. The Dominguez Firm, PLLC**

Defendant The Dominguez Firm, PLLC ("TDF") is a professional limited liability company operating under the laws of the State of Florida, and doing business in the State of California. TDF is a well-known high-volume personal injury and employment law firm that, at times relevant to this Complaint, was retained by Plaintiff to represent her in employment-related litigation. TDF acted through its owner and managing attorney, Juan J. Dominguez (State Bar No. 131538), and agents including Carlos Eduardo Montoya Solis, Amanda Headworth, Jae H. Kim, and others.

TDF knowingly engaged in deceptive practices and legal malpractice in its representation of Plaintiff. Despite being Plaintiff's retained counsel, TDF terminated its services without explanation, and without ensuring that Plaintiff's legal claims were protected. Even after issuing a termination letter, TDF's staff, including Amanda Headworth, continued to participate in Plaintiff's case, pretending to be working for successor counsel, Walter Mosley, when in fact no formal transition or disclosure was made. TDF and its agents were

actively involved in a covert co-counsel agreement with Mosley, which Plaintiff never consented to, nor was made aware of. TDF's involvement included the unauthorized closure of Plaintiff's claim with the California Labor Commissioner's Office, which had direct and negative implications for her parallel civil action. TDF and its agents falsely claimed to represent Plaintiff in administrative hearings and filed documents on her behalf without authority, further obstructing her access to justice and undermining her claims.

The firm also aided and abetted other defendants, including Walter Mosley and prior defense counsel, by failing to disclose material conflicts of interest, sharing sensitive client information, and participating in strategies aimed at undermining Plaintiff's legal position. These acts represent a flagrant violation of professional responsibilities, attorney-client duties, and California ethics rules.

TDF transacts business in California and committed the acts alleged herein within this jurisdiction. As such, TDF is jointly and severally liable for the injuries and damages Plaintiff sustained as a result of the acts and omissions described in this Complaint.

**32. Jae Hyun Kim**

Defendant Jae Hyun Kim ("Kim") is an individual and attorney licensed to practice law in the State of California, holding California **State Bar Number 282039.** At all times relevant to this Complaint, Kim was acting in his capacity as legal counsel affiliated with The Dominguez Firm, PLLC ("TDF"), and was assigned to represent the Plaintiff in connection with her employment-related claims.

Kim's interaction with the Plaintiff was limited exclusively to email communication, and he deliberately failed to provide substantive legal guidance, transparency, or proper advocacy. Upon the termination of Plaintiff's relationship with TDF, Kim refused to return Plaintiff's full client file, did not offer any direction or transitional legal assistance, and failed to provide or file a valid substitution of counsel, effectively abandoning Plaintiff in the midst of active litigation. Moreover, Kim knowingly executed a fraudulent co-counsel and fee-splitting agreement with attorney Walter Mosley, which included a forged signature purporting to be Plaintiff's. Plaintiff never reviewed, approved, or signed the document in question. Kim's involvement in this scheme represents intentional misrepresentation, breach of fiduciary duty, and a serious violation of the California Rules of Professional Conduct. His conduct also facilitated unauthorized sharing of

confidential client information and contributed to the obstruction and sabotage of Plaintiff's legal claims.

Kim's actions occurred within the jurisdiction of the State of California and form part of the broader conspiracy and pattern of misconduct outlined in this Complaint. He is jointly and severally liable for all resulting harm and damages.

**33. Kacey Riccomini**

Defendant Kacey Riccomini ("Riccomini") is an individual and an attorney licensed to practice law in the State of California, **State Bar Number: 292340.** At all times material to this Complaint, Riccomini acted as defense counsel on behalf of one or more Defendants named herein and was employed by or affiliated with Thompson Coburn LLP, a law firm also named as a Defendant in this action.

Riccomini engaged in a series of grossly unethical, malicious, and retaliatory actions, constituting defamation, obstruction of justice, abuse of process, and legal malpractice, with the intent to defame, intimidate, silence, and destroy the credibility of the Plaintiff. These actions included, but were not limited to, authoring several legal filings that defamed the Plaintiff by calling her a prostitute and falsely accusing her of solicitation of sex. These accusations were entirely baseless, offensive, and strategically designed to subject

Plaintiff to shame, reputational harm, and legal disadvantage. Such conduct is in direct violation of the Rules of Professional Conduct governing California attorneys.

Riccomini further attempted to file Temporary Restraining Order (TRO) motions disguised as "status reports", not once, but twice, in a deliberate attempt to deprive the Plaintiff of due process and infringe on her First Amendment rights. These disguised motions, which lacked procedural validity and evidentiary support, were intended solely to intimidate the Plaintiff and obstruct the litigation process.

In a coordinated scheme that points to broader collusion between defense and prior counsel, Riccomini worked directly with Plaintiff's former attorneys to produce and submit fraudulent documents. Among the most egregious examples was a Case Management Statement that was authored and signed by Thompson Coburn LLP before Plaintiff's own counsel ever saw or signed the document. This document was then submitted to the court as legitimate, evidencing a fraudulent and pre-arranged conspiracy to manipulate judicial proceedings. These actions and the underlying documentation have been submitted to Judge Yolanda Orozco and the State Bar of California.

Further evidencing jurisdictional misconduct, Riccomini sent a 998 settlement offer signed under penalty of perjury with an AAA reference number and header, despite the case being actively under JAMS arbitration at the time. This intentional misrepresentation demonstrates deliberate procedural fraud and an intent to confuse or mislead both Plaintiff and the forum. While Riccomini's illegal actions have shockingly remained unpunished by the California State Bar as of the filing of this Complaint, the egregiousness of her conduct has had significant repercussions, including consequences for a partner at Thompson Coburn LLP, further highlighting the severity and systemic nature of the misconduct alleged.

Riccomini is sued in her individual capacity and is jointly and severally liable with other named Defendants for the harms caused to the Plaintiff, including but not limited to emotional distress, reputational damage, litigation sabotage, and constitutional violations.

**34. Arthur F. Silbergeld**

Defendant Arthur F. Silbergeld ("Silbergeld") is an individual and an attorney licensed to practice law in the State of California, holding **State Bar Number 81093.** At all times relevant to this Complaint, Silbergeld acted as defense counsel for one or more Defendants named herein and was affiliated with

Thompson Coburn LLP, a Defendant law firm alleged to have engaged in widespread legal misconduct, collusion, and litigation sabotage.

Silbergeld personally participated in procedural fraud and willful misrepresentation before the court. Specifically, prior to a hearing in 2021 at the Stanley Mosk Courthouse, Silbergeld appeared and falsely represented to the court that he was present "on behalf of all plaintiffs," despite lacking any legal authority to do so and without the consent or knowledge of the Plaintiff. This misrepresentation caused Plaintiff to question whether her case had been coordinated with or secretly merged into other active civil actions, including but not limited to the matter of Jane Doe v. Paul Marciano, a case involving attorneys Lisa Bloom, Alan Goldstein, and their firms, The Bloom Firm, Inc. and The Bloom Firm, A Professional Corporation, who had previously interviewed key individuals involved in Plaintiff's case, including the witness Victor.

When Plaintiff directly inquired whether her case was being improperly coordinated or administratively related to other matters involving Paul Marciano, Silbergeld and other counsel refused to answer, further raising alarms of strategic collusion and concealment. Plaintiff subsequently discovered that numerous related civil cases filed against Paul Marciano and his

companies were pending before the Los Angeles Superior Court, yet none had been designated as related cases pursuant to California Rule of Court 3.300, despite overlapping facts, witnesses, defendants, and legal claims. This deliberate failure to relate cases deprived Plaintiff of judicial transparency, violated procedural due process, and insulated wealthy defendants from coordinated judicial oversight.

These acts, in coordination with those of Walter Mosley (Plaintiff's prior counsel) and other defense attorneys, support well-pled allegations of misrepresentation, court fraud, collusion, and obstruction of justice. Silbergeld's actions furthered a scheme to suppress, discredit, and sabotage Plaintiff's case through deceptive legal maneuvering, thereby contributing to the violation of Plaintiff's civil and constitutional rights.

He is sued in his individual capacity and is jointly and severally liable with other Defendants named herein for the resulting harm, including but not limited to reputational damage, emotional distress, unlawful interference with judicial proceedings, and the deprivation of due process.

**35. Thompson Coburn LLP**

Defendant Thompson Coburn LLP ("Thompson Coburn") is a limited liability partnership organized and existing under the laws of

the District of Columbia, with additional operations under the laws of the State of Missouri and/or Washington, and regularly conducts business within the State of California. At all times relevant to this Complaint, Thompson Coburn acted as lead defense counsel for one or more named Defendants and is alleged to have engaged in a sustained pattern of judicial misconduct, professional negligence, and willful collusion with Plaintiff's prior counsel for the purpose of sabotaging Plaintiff's civil litigation and undermining her constitutional rights.

Thompson Coburn attorneys, including Kacey Riccomini, Richard Gene Reinis, and Arthur F. Silbergeld, prepared, signed, and submitted legal documents on behalf of Wally's entities and other defendants, often under penalty of perjury, which included false statements, procedural misrepresentations, and defamatory accusations against Plaintiff, including the false claim that Plaintiff was engaged in prostitution and sexual solicitation, statements wholly fabricated and designed to irreparably damage Plaintiff's credibility and livelihood.

Thompson Coburn was directly involved in drafting and executing case management documents and motions that bore signatures of both defense and Plaintiff's counsel, even though Plaintiff had no knowledge of, nor gave consent to, the preparation or filing of these documents. In one instance, a case management statement

was prepared, finalized, and signed by Thompson Coburn days before Plaintiff's own attorney signed it, and was then submitted to the court as a joint filing, an act of procedural fraud and misrepresentation to the court.

Thompson Coburn further engaged in inappropriate and potentially unlawful conduct by facilitating the unauthorized involvement of Amanda Headworth, a paralegal who continued to operate on Plaintiff's case despite having been employed by a firm that had formally withdrawn from representation months earlier. The firm's paralegals and attorneys coordinated directly with Plaintiff's former attorneys in secret, without her consent, and worked to close out Plaintiff's labor claim with the California Labor Commissioner's Office, thereby undermining her pending Superior Court case.

Thompson Coburn's repeated misconduct also extended to arbitration fraud, as they knowingly submitted a statutorily invalid 998 offer to Plaintiff during a period in which her case had already been transitioned from AAA to JAMs, using conflicting arbitration references and signatures under penalty of perjury, a maneuver believed to be intended to mislead and entrap Plaintiff.

This defendant is sued in its entity capacity, and is jointly and severally liable for the acts of its employees, partners,

associates, and agents. Thompson Coburn's actions constitute abuse of process, conspiracy, obstruction of justice, civil rights violations, and gross legal malpractice and directly contributed to the emotional, reputational, and financial harm suffered by Plaintiff, and to the denial of due process and access to a fair tribunal.

**36. Richard Gene Reinis**

Defendant Richard Gene Reinis ("Reinis") is an individual and an attorney licensed to practice law in the State of California, **State Bar No. 45811.** At all relevant times, Reinis acted as counsel for Defendants and worked closely with Kacey Riccomini and other members of the law firm Thompson Coburn LLP in connection with the representation of various defendants named in this action, including Wally's-related entities.

Reinis is alleged to have actively participated in and facilitated acts of legal misconduct, fraud upon the court, and civil rights violations against Plaintiff. Specifically, Reinis collaborated in the preparation, filing, and strategic use of legal documents that contained knowingly false and defamatory statements about Plaintiff, including accusations of prostitution, sexual solicitation, and being "difficult to work with." These documents were signed and submitted under penalty

of perjury and presented to the court as truthful despite their fabricated and malicious content.

Reinis also engaged in procedural misconduct, including participation in the creation and submission of joint case filings with Plaintiff's prior counsel, documents which were often signed by Thompson Coburn and filed with the court before Plaintiff's own counsel had even reviewed or signed them. These filings, presented as cooperative and mutually agreed upon, were used to manipulate court proceedings and deprive Plaintiff of a fair litigation process.

Reinis is further believed to have had knowledge of and involvement in the undisclosed co-counsel relationship between Plaintiff's prior attorneys and defense counsel, including the improper continued involvement of paralegal Amanda Headworth after her employing firm had withdrawn from representation.

These actions, carried out under Reinis's supervision or with his complicity, helped undermine Plaintiff's labor claim and sabotage her concurrent civil litigation.

At all times relevant, Reinis acted under color of law and in the scope of his duties as a defense attorney but did so in a manner that constitutes abuse of process, obstruction of justice, defamation, professional misconduct, and civil rights

violations. His conduct contributed directly to Plaintiff's emotional trauma, reputational harm, economic injury, and the systematic denial of her constitutional rights, including her right to a fair trial and meaningful access to the courts.

**37. Blanca M. Gutierrez**

Defendant Blanca M. Gutierrez ("Gutierrez") is an individual who, at all relevant times, acted as a paralegal or legal support staff for the law firm Thompson Coburn LLP, a firm that represented various defendants in this action. Upon information and belief, Gutierrez was directly involved in the handling, preparation, mailing, and electronic filing of legal documents on behalf of Thompson Coburn, including communications and filings in the matters concerning Plaintiff.

Gutierrez signed and certified multiple legal filings under penalty of perjury, verifying that they were true, correct, and properly served, despite numerous indications that the documents included false information, defamatory content, and were part of a broader strategy of obstruction, deceit, and harassment against Plaintiff. These documents included motions, oppositions, case management statements, and service declarations, some of which were allegedly submitted to the court before Plaintiff's counsel had even signed them, suggesting active participation in coordinated misconduct.

Plaintiff further alleges that Gutierrez knew or should have known that she was enabling a pattern of civil rights violations, procedural abuse, and fraud upon the court through her conduct. Her certifications and deliveries were critical to legitimizing filings that were later used to slander Plaintiff's character, sabotage her claims, and unlawfully manipulate the judicial process in favor of wealthy and politically connected defendants.

As an employee or agent of Thompson Coburn LLP, Gutierrez acted within the scope of her employment but in a manner that constitutes gross negligence, professional misconduct, abuse of process, and civil rights violations, all of which caused Plaintiff substantial harm, including emotional distress, reputational damage, and denial of fair access to legal remedies.

**38. Alan Goldstein**

Defendant Alan Goldstein ("Goldstein"), **State Bar No. 296430,** is an individual and licensed attorney in the State of California. At all relevant times, Goldstein was employed by or otherwise acting as legal counsel for The Bloom Firm, Inc. and The Bloom Firm, A Professional Corporation, a California based law firm known for its representation of high-profile clients in civil

litigation, including sexual misconduct and workplace discrimination cases.

Plaintiff alleges that Goldstein engaged in serious ethical violations and collusion during his involvement in matters related to the misconduct of defendant Paul Marciano and Guess? Retail, Inc. According to Plaintiff, in or around the relevant period, Walter Mosley, Plaintiff's then-legal counsel, organized a phone call between Plaintiff and Goldstein, misrepresenting the nature of the conversation by asserting that Goldstein was representing another victim of Marciano and that the Bloom Firm was collaborating with Mosley's firm to "*take all cases to the media*" in a public strategy to expose systemic abuse at Guess?, Inc. and Wally's. Plaintiff was led to believe this was a coordinated and lawful legal strategy that would benefit all victims involved.

However, Plaintiff later discovered this representation was false and intentionally misleading. At no point did Mosley or Goldstein explain the serious breach of confidentiality this phone call posed. Moreover, during the call, Goldstein violated the confidentiality of his own client, a woman he represented under the pseudonym "*Jane Doe*," by disclosing her real name to Plaintiff, another clear ethical violation and a breach of attorney-client trust and professional conduct rules.

Plaintiff later realized that she had been previously contacted by the same "*Jane Doe*" via Instagram after Jane Doe had viewed Plaintiff's YouTube video detailing her experience of rape. Jane Doe messaged Plaintiff to say that her story inspired her to come forward. This connection, and Goldstein's reckless disclosure, revealed a serious breakdown in legal boundaries and confidentiality protections.

Following Plaintiff's realization of the ethical violations and potential collusion between Mosley and Goldstein, Plaintiff received a call from Carlos Eduardo Montoya Solis, one of her prior attorneys, inquiring into Jane Doe's identity, raising even more red flags. Shortly thereafter, Plaintiff received a message from Jane Doe stating that she could no longer communicate with Plaintiff because "*her lawyers advised against it*," suggesting the Bloom Firm and Goldstein knew their conduct had violated professional obligations and sought to contain the fallout by silencing further contact.

Plaintiff alleges that Alan Goldstein's actions were not only negligent and unethical, but also contributed to a conspiracy to obstruct justice, sabotage litigation, and violate her rights to attorney-client confidentiality and fair representation. His misconduct forms part of a broader pattern of collusion between

various law firms, including the Bloom Firm, Thompson Coburn, and Mosley's firm, designed to protect powerful defendants while manipulating vulnerable plaintiffs for strategic or reputational gain.

**39. Lisa Bloom**

Defendant Lisa Bloom ("Bloom"), **State Bar No. 158458**, is an individual and licensed attorney in the State of California. Bloom is the founder and owner of two law firms: The Bloom Firm, Inc., a Delaware corporation, and The Bloom Firm, A Professional Corporation, a California professional corporation. At all relevant times, Lisa Bloom acted as the managing attorney and was directly responsible for the supervision, strategy, and legal representation provided by her firms and associates, including Defendant Alan Goldstein.

Plaintiff alleges that Lisa Bloom, in her capacity as managing attorney, engaged in and/or sanctioned conduct that constituted unethical legal practices, breaches of confidentiality, and collusion with Plaintiff's former counsel Walter Mosley, to manipulate and undermine Plaintiff's legal claims involving sexual misconduct by Defendant Paul Marciano and corporate misconduct by Guess? Retail, Inc.

As alleged, Bloom and her firm were actively representing a Jane Doe client against the same defendants in a parallel legal

proceeding. Without Plaintiff's informed consent and in violation of her rights, Walter Mosley coordinated a phone call between Plaintiff and Defendant Goldstein, one of Bloom's associates, under the guise that both legal teams were collaborating to publicly expose Paul Marciano and Guess? Inc. via media strategy. However, Plaintiff later discovered that there was no such lawful strategy or joint representation, and the communication had been arranged without any formal coordination or protection of confidentiality.

Lisa Bloom's firm, through its agents and under her direction, knowingly permitted Alan Goldstein to breach his own client's confidentiality by revealing her identity to Plaintiff, and further permitted her firm to participate in communications and legal maneuvers that severely jeopardized Plaintiff's own legal standing. These acts constitute serious violations of California Rules of Professional Conduct, and according to Plaintiff, appear to have been designed to strategically undermine her litigation while exploiting her for potential media attention.

Moreover, when Plaintiff later discovered that the "Jane Doe" in question had previously messaged her after viewing Plaintiff's YouTube video describing her own rape and had cited Plaintiff's story as the inspiration for coming forward, Plaintiff realized that Lisa Bloom's firm had taken advantage of this connection in

a covert, exploitative manner. Shortly after Plaintiff raised concerns about the breach of confidentiality and the irregularities of the phone call, Jane Doe contacted Plaintiff to say she could no longer communicate, stating that "*her lawyers advised against it*", confirming Bloom's firm's direct involvement in suppressing further inquiry into their misconduct.

Plaintiff asserts that Lisa Bloom bears direct liability as an individual, attorney, and corporate officer for the acts and omissions of her firm and its agents. Bloom's failure to maintain legal ethics and professional integrity has caused substantial harm to Plaintiff's legal claims, her personal safety, and her trust in the legal system. Plaintiff further asserts that Bloom and her firm participated in a coordinated effort with Mosley, Marciano, and others to suppress litigation, obscure wrongdoing, and obstruct justice under the guise of victim advocacy.

**40. The Bloom Firm, Inc.**

Defendant The Bloom Firm, Inc. ("Bloom Firm Inc.") is a Delaware corporation lawfully registered to do business in the State of California and maintaining its principal office in Los Angeles County. At all relevant times, Bloom Firm Inc. operated under the direction and control of its owner and managing attorney,

Defendant Lisa Bloom (State Bar No. 158458), and employed attorneys and staff including Defendant Alan Goldstein (State Bar No. 296430).

Plaintiff alleges that The Bloom Firm, Inc., while holding itself out as an advocate for victims of sexual misconduct, actively engaged in unethical, deceptive, and obstructive legal practices that directly harmed Plaintiff and her civil litigation against Paul Marciano and other related defendants. These actions were conducted under the guise of public interest representation, but in reality, served to advance undisclosed alliances and suppress claims that could harm powerful clients or affiliated interests.

The Bloom Firm, Inc. knowingly and intentionally breached attorney-client confidences, coordinated with Plaintiff's prior legal counsel Walter Mosley, and misused privileged communications to discredit and sabotage Plaintiff's legal claims. These actions included arranging a phone call between Plaintiff and Defendant Alan Goldstein, wherein confidential information regarding a separate "*Jane Doe*" plaintiff, represented by the Bloom Firm, was revealed to Plaintiff without lawful justification or protection of either party's rights.

As a corporate entity, Bloom Firm Inc. is liable for the acts of its agents and employees, including but not limited to its collusion with Mosley, failure to disclose or seek informed consent from Plaintiff for shared strategy, and its knowing involvement in the violation of multiple legal ethics standards. Plaintiff alleges that The Bloom Firm, Inc. acted in concert with other parties to suppress, mislead, and obstruct civil litigation, and its conduct constituted unfair business practices, breach of fiduciary duty, and intentional infliction of emotional distress.

**41. The Bloom Firm, A Professional Corporation**

Defendant The Bloom Firm, A Professional Corporation ("Bloom Firm PC") is a California professional corporation, with its principal office located in Los Angeles County. At all relevant times, Bloom Firm PC operated under the ownership and direction of Defendant Lisa Bloom (State Bar No. 158458), and employed attorneys including Defendant Alan Goldstein (State Bar No. 296430). Bloom Firm PC is affiliated with and jointly operated alongside The Bloom Firm, Inc., a Delaware corporation, in a manner that made the distinction between the two entities legally and operationally indistinct to clients and third parties.

Plaintiff alleges that Bloom Firm PC knowingly and willfully engaged in a pattern of unethical conduct, misrepresentation, and intentional interference with prospective economic and legal advantage, in coordination with Plaintiff's prior counsel Walter Mosley and other co-defendants. Through its attorneys and staff, Bloom Firm PC orchestrated deceptive communications and breached confidences related to Plaintiff's case against Paul Marciano, including the unauthorized disclosure of the identity of a "*Jane Doe*" client, represented by Bloom Firm PC, during a coordinated phone call with Plaintiff, arranged by Mosley.

Bloom Firm PC's actions violated legal duties of care, professional responsibility, and confidentiality, and directly harmed Plaintiff's legal strategy, privacy, and trust in the legal process. Despite claiming to represent victims of sexual misconduct, Bloom Firm PC participated in the strategic silencing, misdirection, and discrediting of Plaintiff's claims. Bloom Firm PC is therefore liable under California law for professional negligence, intentional torts, unfair business practices under Cal. Bus. & Prof. Code § 17200, and aiding and abetting the wrongful acts of its agents and co-defendants.

**42. Sally D. Greig**

Defendant Sally D. Greig ("Greig") is an individual residing in the State of California and is identified in federal health care

systems by **PECOS ID #2365453164.** At all relevant times, Greig held herself out as a licensed mental health professional and/or therapist and acted under color of authority, directly or indirectly participating in the treatment, evaluation, or handling of Plaintiff's confidential health-related matters. Greig's professional capacity placed her in a position of trust, governed by strict ethical and legal duties under both California law and federal regulations, including the Health Insurance Portability and Accountability Act (HIPAA).

Plaintiff alleges that Greig knowingly and willfully breached patient confidentiality, colluded with co-defendants, and violated professional ethical standards by engaging in the unauthorized disclosure, manipulation, or misuse of Plaintiff's protected health information. Plaintiff further alleges that Greig acted in concert with other defendants to weaponize confidential medical details against Plaintiff, including fabricating or endorsing false narratives regarding Plaintiff's mental health for the purpose of obstruction of justice, defamation, and discrediting Plaintiff's legal claims in related civil and employment litigation.

Greig's actions constitute a gross deviation from the standards expected of mental health professionals and render her liable for professional negligence, breach of confidentiality, abuse of

process, defamation, and violations of HIPAA. Her conduct has directly harmed Plaintiff's emotional well-being, legal claims, and right to privacy under the California Constitution and applicable federal laws.

**43. Sally D. Greig, LLC**

Defendant Sally D. Greig, LLC ("Greig, LLC") is a limited liability company organized and existing under the laws of the State of Florida. At all relevant times, Greig, LLC was owned, operated, and controlled by Sally D. Greig (see Defendant 42), and served as the legal and professional entity through which she conducted her therapy practice.

Plaintiff alleges that Greig, LLC was used as a vehicle to facilitate and conceal violations of HIPAA, unethical therapeutic practices, and breaches of fiduciary and legal duties owed to Plaintiff. Plaintiff further alleges that Greig, LLC, through the actions of its owner, knowingly engaged in a scheme to access Plaintiff's confidential information and misuse it in coordination with other named defendants, including Plaintiff's prior legal counsel and affiliated defense parties, for the purpose of undermining Plaintiff's credibility, sabotaging her legal claims, and assisting in retaliatory legal and workplace actions.

As such, Greig, LLC is liable for negligent supervision, professional malpractice, vicarious liability, civil conspiracy, and violations of state and federal privacy laws, including but not limited to HIPAA and related California statutes concerning mental health confidentiality. The corporate structure of Greig, LLC does not shield it from liability arising from its direct involvement in the tortious and unlawful conduct alleged herein.

**44. One Legal, LLC**

Defendant One Legal, LLC ("One Legal") is a limited liability company engaged in the business of legal support services, including electronic court filings and service of process, and is authorized to do business in the State of California. At all relevant times, One Legal acted as a third-party legal service provider for attorneys and law firms, including but not limited to Walter Mosley, a professional corporation, and its affiliates.

Plaintiff alleges that in or around 2020, One Legal facilitated fraudulent service of process and knowingly filed falsified proofs of service in the Los Angeles County Superior Court on behalf of Mosley and his associates in connection with Plaintiff's litigation. These filings allegedly contained numerous inaccuracies and fabrications, including misspelled defendant names, identification of incorrect parties, false

claims of service via fax without court authorization, and invalid or untraceable process server identities. Furthermore, signatures on the proof of service documents were made under penalty of perjury, affirming the veracity of information that Plaintiff alleges to be demonstrably false.

Plaintiff further contends that when she contacted One Legal to inquire about these irregularities, the company refused to provide any explanation or verification, thereby implicating itself in a broader conspiracy to obstruct justice and deprive Plaintiff of her constitutional right to a fair trial. As such, One Legal is alleged to have aided and abetted fraudulent filings, violated California Rules of Court, and participated in acts amounting to fraud upon the court.

Accordingly, One Legal, LLC is liable for civil conspiracy, abuse of process, fraud, aiding and abetting misconduct by legal professionals, and violations of California law governing court procedures and service of process.

**45. State of California, Department of Industrial Relations, Division of Labor Standards Enforcement, also known as the Labor Commissioner's Office**

Defendant State of California, Department of Industrial Relations ("DIR"), acting through its subdivision, the Division of Labor Standards Enforcement ("DLSE"), also commonly known as

the Labor Commissioner’s Office, is a governmental entity established and existing under the laws of the State of California, with its principal offices located in San Francisco and Los Angeles County, and at all relevant times operated under color of state law.

Plaintiff alleges that the Labor Commissioner’s Office, in its full capacity, violated her constitutional and statutory rights during its handling of her employment-related claims against Wally’s Beverly Hills, Keith Bjelajac, and related corporate and individual defendants. Specifically, Plaintiff contends that the Labor Commissioner’s Office engaged in procedural misconduct, failure to enforce applicable labor laws, and acted in concert with defense counsel and Plaintiff’s former attorneys to close Plaintiff’s labor complaint without her informed consent.

Plaintiff further alleges that representatives of the Labor Commissioner’s Office accepted documentation and executed agreements bearing Plaintiff’s forged signature, and acted as though the matter had been resolved or settled, when in fact, Plaintiff had neither reviewed nor approved the terms. This action, Plaintiff claims, facilitated obstruction of justice in her superior court proceedings and supported ongoing retaliatory efforts by the defendants. Additionally, Plaintiff asserts that certain DIR officials had direct communication with Keith

Bjelajac, then-head of finance at Wally's, during active litigation, but failed to compel arbitration, properly investigate retaliation, or prevent collusion between parties. As such, the Department of Industrial Relations and its Labor Commissioner's Office are named as defendants for their alleged participation in due process violations, negligence, abuse of power, civil rights violations under 42 U.S.C. §1983, and breach of duty to protect workers from retaliation and unlawful employment practices.

**46. Cathy Ray, an individual, in her full capacity as a Labor Commissioner of the State of California**

Defendant Cathy Ray is an individual and public official, believed to reside in the State of California, and at all relevant times was acting within the scope of her employment as a Labor Commissioner or agent of the Division of Labor Standards Enforcement (DLSE) under the Department of Industrial Relations of the State of California. Cathy Ray was originally assigned to investigate and adjudicate Plaintiff's labor complaint filed under **Case No. WC-CM-754589** concerning her employment with Wally's Beverly Hills and associated defendants.

Plaintiff alleges that on or about May 19, 2020, Cathy Ray presided over a telephonic conference call intended to address Plaintiff's labor complaint. Plaintiff agreed to allow Nathalie

and Gracie Esparza, alleged associates of her then-counsel Walter Mosley, to join the call solely so they could provide professional opinions after the call concluded. However, instead of participating in a joint three-way call as planned, Nathalie and Gracie excluded Plaintiff from the conversation and spoke privately with Cathy Ray without Plaintiff's knowledge or consent.

Plaintiff later requested a copy or transcript of the recorded conversation, which Cathy Ray and all other parties refused to provide. On May 21, 2020, Plaintiff received an email from Nathalie attaching a form allegedly confirming that the Labor Commissioner's Office had closed the case due to Plaintiff's voluntary withdrawal, a claim Plaintiff categorically denies. Plaintiff asserts she never received, signed, or submitted any withdrawal form, nor did Cathy Ray ever email or mail such documentation to her. According to Plaintiff, Nathalie admitted in writing that Cathy Ray was to send Plaintiff a withdrawal form and would require Plaintiff's signature before closing the case. However, the case was closed anyway, based on what Plaintiff contends was a false representation and unauthorized communication made by Nathalie on Plaintiff's behalf.

As such, Cathy Ray is named as a defendant in this action for her alleged participation in due process violations, negligence, abuse of authority, and civil rights violations under 42 U.S.C. §1983, in furtherance of a broader scheme to obstruct justice, suppress Plaintiff's labor claims, and deprive her of a fair hearing and remedy.

**47. Francisco De La Cruz, an individual, in his full capacity as a Deputy Labor Commissioner for the State of California**

Defendant Francisco De La Cruz is an individual believed to reside in the State of California and, at all relevant times, was acting under color of state law in his official role as a Deputy Labor Commissioner for the California Labor Commissioner's Office, within the Department of Industrial Relations (DIR). His official contact information at the time of the alleged events was: 320 W. 4th Street, Suite 450, Los Angeles, California 90013 | Direct: (213) 897-3737 | Fdelacruz@dir.ca.gov.

Following the unlawful closure of Plaintiff's labor complaint by Cathy Ray, Plaintiff received a June 1, 2020 email from Francisco De La Cruz informing her that her claim had been reopened and that she would be required to schedule a hearing on an expedited basis. This communication created the expectation

of a proper and fair administrative process under California labor laws.

However, when Plaintiff attempted to pursue her rights and demanded compliance with proper legal procedures, De La Cruz allegedly refused to provide necessary documentation or due process protections. Despite the previous commitment to reopen and expedite her case, on or about June 20, 2022, De La Cruz closed Plaintiff's case again, without conducting any meaningful investigation or adjudication of her claims. He denied all allegations, failed to provide Plaintiff any formal explanation or findings, and ceased all further communication with Plaintiff thereafter.

Plaintiff asserts that Francisco De La Cruz's conduct demonstrates a deliberate pattern of institutional corruption and retaliation, in coordination with other state agents and private actors, to suppress her labor complaint, obstruct justice, and shield politically connected or financially powerful defendants. He is therefore named as a defendant for his role in violating Plaintiff's constitutional and statutory rights under 42 U.S.C. §1983, as well as for negligence, abuse of process, and due process violations.

**48. The United States of America**

Defendant The United States of America, a sovereign federal entity, is named herein as a Defendant for its role in enabling, ignoring, and failing to prevent the egregious civil rights violations, obstruction of justice, and systemic abuse inflicted upon Plaintiff. Despite numerous complaints, filings, and credible allegations of gender and race based discrimination, sexual harassment, wrongful termination, legal malpractice, obstruction of justice, fraud upon the court, and due process violations, various departments and agencies of the United States, including, but not limited to, the U.S. Department of Justice (DOJ), the Equal Employment Opportunity Commission (EEOC), the Federal Bureau of Investigation (FBI), the U.S. Department of Labor, and the U.S. Postal Inspection Service, either refused to investigate, actively obstructed inquiry, or failed to meaningfully act in accordance with their statutory mandates.

The federal government was placed on notice of misconduct involving civil rights deprivations under color of law, judicial corruption, fabricated court records, and collusion between Plaintiff’s prior legal counsel and high-profile private entities. Despite this, Plaintiff was not afforded equal protection under federal law, nor the right to a fair and impartial process. The EEOC failed to properly process

Plaintiff's filings or issue timely determinations, while the DOJ refused to intervene in what was clearly a pattern of systemic injustice against a Black female whistleblower. The United States is further liable for permitting and legitimizing forced arbitration of Plaintiff's sexual assault-related claims via JAMS, Inc., a federally regulated arbitration entity, despite recent federal legislation prohibiting such compelled arbitration *(e.g., the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2022).*

Moreover, agents of the federal government received evidence of fraud upon the court, falsified legal documents submitted under penalty of perjury, and intentional suppression of material evidence, yet chose not to initiate criminal or civil enforcement actions. The United States' failure to uphold its constitutional obligations, particularly under the First, Fourth, Fifth, and Fourteenth Amendments, as well as Title VII of the Civil Rights Act of 1964, makes it jointly and severally liable for the harms sustained by Plaintiff.

**49. The City of Los Angeles**

Defendant The City of Los Angeles, a municipal entity and subdivision of the State of California, is named as a Defendant for its complicity, negligence, and direct role in facilitating and perpetuating the civil, constitutional, and statutory

violations inflicted upon Plaintiff. Through its agencies, offices, and employees, including but not limited to the Los Angeles Police Department (LAPD), the Los Angeles City Attorney's Office, and employees within the Stanley Mosk Courthouse, The City of Los Angeles failed in its duty to protect Plaintiff's rights as a Black woman, an employee, a whistleblower, and a victim of workplace abuse and sexual assault and harassment.

The City of Los Angeles was repeatedly placed on notice of misconduct involving Wally's Beverly Hills, Guess? Retail, Inc., and affiliated individuals operating within its jurisdiction, including incidents of workplace retaliation, civil conspiracy, and obstruction of justice. Despite receiving such information, including formal complaints, filings, and public records, the City of Los Angeles took no remedial action and instead enabled systemic cover-ups of high-profile wrongdoers and corporate entities, particularly those with influence, wealth, and political power within Los Angeles.

The City of Los Angeles, through public institutions such as the Department of Industrial Relations and its local labor enforcement divisions, further permitted false filings, fabricated court documents, improper judicial conduct, and unlawful cooperation between Plaintiff's former legal counsel

and defense attorneys with known conflicts of interest. Plaintiff's rights to due process, equal protection under the law, and access to a fair tribunal were categorically denied in multiple proceedings within Los Angeles jurisdiction. This includes allowing judicial officers to proceed with hearings and rulings despite knowledge of perjured testimony, forged documents, and unaddressed constitutional challenges. Additionally, City employees failed to follow mandatory procedures in employment and labor claims, refused to enforce protective statutes, and in several instances actively concealed or refused to investigate credible allegations, amounting to obstruction of justice and administrative fraud. As such, The City of Los Angeles bears responsibility for the harm suffered by Plaintiff under 42 U.S.C. §1983, 1985(3), and 1986, as well as corresponding California law.

**50. JAMS, Inc.**

Defendant JAMS, INC. (JAMS), a Pennsylvania corporation authorized to conduct business in the State of California, is named as a Defendant for its direct role in violating Plaintiff's constitutional rights, statutory protections, and civil liberties through its administration of a private arbitration proceeding rooted in fraud, abuse of process, and unlawful collusion with defense counsel and conflicted legal

representatives. JAMS (Judicial Arbitration and Mediation Services, Inc.), by and through its agents, including but not limited to arbitrator Linda L. Miller, Ret., knowingly and willfully participated in a process that inflicted extreme psychological, emotional, and legal harm upon Plaintiff, all while maintaining the false appearance of judicial neutrality. Despite receiving multiple written motions, emails, and formal notices from Plaintiff detailing serious allegations of forgery, perjury, fabrication of legal documents, sexual misconduct, fraud on the court, obstruction of justice, and conflicts of interest involving Defendants, including prior counsel Walter Mosley, Kacey Riccomini, Thompson Coburn LLP, and others, JAMS failed to act in accordance with its own internal procedures, federal and state law, or basic standards of impartial arbitration. Plaintiff's repeated complaints regarding the improper initiation of arbitration in a forum that explicitly lacked jurisdiction over sexual assault claims were ignored. In doing so, JAMS violated 18 U.S.C. §1595(a) and 9 U.S.C. §402(b) *(Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021)*, which strictly prohibit mandatory arbitration of sexual misconduct allegations.

In one particularly egregious instance, during a live arbitration hearing conducted via phone conference, arbitrator Linda Miller was observed laughing with defense counsel Kacey Riccomini of Thompson Coburn LLP at Plaintiff’s expense. When Plaintiff asked what was amusing, they responded dismissively, further demeaning Plaintiff’s dignity during a supposed judicial proceeding. This behavior was emblematic of the larger pattern of misconduct: Plaintiff was repeatedly humiliated, silenced, and treated with hostility while her rights and evidence were disregarded.

JAMS ultimately issued an arbitration award not only denying Plaintiff’s claims but also ordering her to pay legal fees to Defendants and permanently barring her from ever bringing future related claims in any court of law, despite the overwhelming documentation she had provided proving fraud, collusion, and procedural misconduct. The award constituted an unconstitutional prior restraint on speech, a denial of access to the courts, and a miscarriage of justice.

Furthermore, JAMS accepted and relied on fraudulent legal documents filed by Walter Mosley and his associates, including fake proofs of service submitted through One Legal, LLC, further compounding its liability in the conspiracy to obstruct justice

and retaliate against a whistleblower and victim of workplace abuse.

JAMS, Inc. is sued not merely for negligence, but for its active and willful participation in a civil conspiracy to deprive Plaintiff of her constitutional rights under color of private authority in violation of 42 U.S.C. §1983, 1985, and 1986, as well as applicable California statutes and contract law.

**51. JAMS ADR SERVICES, Inc.**

Defendant JAMS ADR SERVICES, Inc., a Delaware domestic business corporation registered to do business in California, is named as a Defendant for its role in the fraudulent, abusive, and unconstitutional administration of arbitration services in connection with Plaintiff's claims involving sexual assault, civil rights violations, legal malpractice, and employment discrimination.

Defendant JAMS ADR Services, Inc. acted in concert with its affiliate JAMS, Inc., defense counsel, and conflicted representatives of Plaintiff to impose mandatory arbitration in direct contravention of federal law, including the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, codified in 9 U.S.C. §402, which prohibits the enforcement of pre-dispute arbitration agreements involving sexual misconduct. Despite being made aware that Plaintiff's claims included sexual

assault, sexual harassment, and retaliation, Defendant proceeded to force arbitration through the actions of its agents, including arbitrator Linda L. Miller, in a forum without legal authority to adjudicate such matters.

Defendant, through its agents, knowingly disregarded Plaintiff's repeated objections to jurisdiction, procedural irregularities, and credible evidence of misconduct, including the submission of forged and fraudulent documents by Plaintiff's prior counsel and defense attorneys. Defendant failed to investigate or intervene when presented with formal complaints regarding collusion, breach of fiduciary duties, and the fabrication of legal filings, including those submitted under penalty of perjury. Instead, it insulated the arbitration from public scrutiny, thereby enabling the obstruction of justice.

Defendant further permitted and ratified conduct within the arbitration that was hostile, discriminatory, and retaliatory in nature. This includes arbitrator Linda L. Miller laughing on the record with Thompson Coburn attorney Kacey Riccomini during a live hearing, mocking Plaintiff's pain and legitimate legal claims. When confronted by Plaintiff, both refused to acknowledge or explain their conduct, adding to the emotional and psychological trauma inflicted upon Plaintiff during what was falsely represented as a fair and impartial proceeding.

Defendant issued or allowed the issuance of a final arbitration award that not only denied Plaintiff's claims but also ordered her to pay Defendants' legal fees and permanently barred her from initiating any future civil action related to the same claims, despite clear violations of due process, procedural rules, and public policy. This constituted a de facto permanent gag order and an unlawful restriction on Plaintiff's access to courts and legal redress.

Defendant JAMS ADR Services, Inc. is therefore liable for its active participation in a civil conspiracy to violate Plaintiff's rights under 42 U.S.C. §1983, 1985, and 1986, and its conduct constitutes abuse of process, obstruction of justice, and participation in a fraudulent enterprise designed to shield powerful defendants from accountability.

**52. Robert Bonta, in his full capacity as Attorney General of the State of California**

Defendant Robert Bonta, in his full capacity as Attorney General of the State of California ("Bonta"), is named as a Defendant for his failure to act, intervene, or investigate after being made aware of extensive, well-documented constitutional violations, including obstruction of justice, due process violations, racial and gender discrimination, forgery, and civil

rights deprivations committed by state actors and private individuals under color of law within the jurisdiction of California.

Defendant Bonta, in his official capacity, is charged with the statutory and constitutional duty to ensure the enforcement of California laws and to protect the public from governmental and private misconduct. Plaintiff submitted detailed complaints and formal notices to Defendant and the California Department of Justice, attaching voluminous evidence including forged court filings, perjured declarations, and clear violations of state and federal labor, civil, and constitutional law. These materials included documentation that Plaintiff's claims of sexual assault, sexual harassment, workplace discrimination, and civil rights violations were being fraudulently funneled into unlawful arbitration by conflicted counsel, that state agencies such as the California Labor Commissioner's Office had improperly closed her claims without notice or signature, and that court filings bearing forged service proofs and fabricated email chains were being accepted and enforced.

Despite receiving such reports, Defendant failed to take any action. No investigation was launched. No notice of receipt or substantive reply was issued. This willful inaction allowed the unlawful schemes described in Plaintiff's complaint to persist,

shielded culpable parties from accountability, and permitted Plaintiff's continued persecution and denial of her right to equal protection under the law.

Defendant's dereliction of duty constitutes a violation of Plaintiff's rights under 42 U.S.C. §1986, which imposes liability on any person having knowledge of a conspiracy to violate civil rights and possessing the power to prevent or aid in the prevention of such wrongs, but who neglects or refuses to do so. As Attorney General, Defendant possessed not only the authority but the legal obligation to act.

Defendant Bonta's failure to investigate or intervene, despite his office's mandate to safeguard civil rights and uphold the law, was a proximate cause of Plaintiff's prolonged harm, and he is therefore liable for his official misconduct, omission, and participation in the denial of Plaintiff's constitutional and statutory rights.

**53. American Arbitration Association, Inc.**

Defendant American Arbitration Association, Inc., a New York corporation ("AAA"), is named as a Defendant for its direct role in the unauthorized and improper initiation and administration of a private arbitration proceeding that violated federal and state procedural and due process safeguards, as well as the express rights of the Plaintiff. Defendant AAA failed to follow

its own rules, acted without jurisdiction, and furthered a fraudulent legal scheme initiated by Plaintiff's former counsel and defense attorneys to unlawfully divert Plaintiff's sexual assault and civil rights claims from public court into secretive arbitration in violation of governing law.

Defendant American Arbitration Association knowingly accepted and processed documents purporting to initiate arbitration filed by former counsel Walter Mosley, despite clear legal notice that Mosley and his associates had been disqualified from representing Plaintiff following the recusal order issued by Judge Yolanda Orozco of the Los Angeles Superior Court. Nevertheless, Defendant accepted arbitration filings and opened a case without evidence of a valid arbitration agreement executed by Plaintiff, and without proper notice, consent, or jurisdiction.

Plaintiff immediately objected to the improper arbitration proceedings. In emails sent to AAA, with copies sent to all involved counsel, Plaintiff explicitly argued that the arbitration had not been legally initiated and cited AAA's own procedural rules and due process obligations. Despite the notice, Defendant AAA failed to investigate or act on Plaintiff's objections. Plaintiff then spoke directly with Andrew Barton, a senior AAA executive, who confirmed by phone

that arbitration before AAA would not have concurrent proceedings in the Los Angeles Superior Court and revealed that Judge Yolanda Orozco, the same judge who had presided over Plaintiff's state court case, was associated with AAA. Following Plaintiff's repeated objections, Defendant AAA ultimately refused to advance the arbitration. However, its initial involvement provided the foundation for Defendant Kacey Riccomini and Thompson Coburn LLP to move Plaintiff's case into JAMS under fraudulent pretenses. Notably, Riccomini subsequently issued a California Code of Civil Procedure §998 settlement offer citing the AAA case and referencing an AAA matter reference number, despite the arbitration allegedly having moved to JAMS. This confusing and possibly deceptive reference pattern suggests collusion between AAA and JAMS, or a deliberate strategy to conceal the arbitration's procedural illegitimacy. Defendant AAA's conduct deprived Plaintiff of access to a fair and public legal forum and enabled the concealment of serious civil rights violations, workplace abuse, and sexual misconduct. Its failure to investigate or halt the unauthorized arbitration constitutes a direct violation of AAA's responsibilities as a quasi-judicial dispute resolution body and renders it liable for the ongoing legal and emotional harm inflicted upon Plaintiff.

**54. Andrew Barton**

Defendant Andrew Barton ("Barton"), an individual believed to be the President or executive officer of the American Arbitration Association, Inc. ("AAA"), is named as a Defendant for his individual and official role in facilitating, permitting, and ultimately concealing the unlawful and unauthorized arbitration of Plaintiff's civil and constitutional claims. Defendant Barton, acting under color of his authority at AAA, knowingly allowed his organization to proceed with arbitration proceedings that had not been lawfully initiated, despite Plaintiff's clear and repeated objections, and in violation of AAA's own procedural requirements and legal obligations.

Defendant Barton directly communicated with Plaintiff via telephone during the pendency of the unauthorized arbitration matter, in or around 2020-2021, following the illegal filings submitted by Plaintiff's disqualified former attorney Walter Mosley and in coordination with defense counsel Kacey Riccomini of Thompson Coburn LLP. During this phone conversation, Barton acknowledged several critical facts: (1) that arbitration matters handled by AAA should not be concurrently active in the Los Angeles Superior Court; and (2) that Judge Yolanda Orozco, who had recused Mosley and was presiding over Plaintiff's public case, was also affiliated with AAA, raising serious questions of impartiality, conflict of interest, and judicial misconduct.

Despite these disclosures, Defendant Barton failed to take any corrective action to protect Plaintiff's due process rights. He did not investigate the basis upon which the arbitration was filed, nor did he require the requisite documentation proving that Plaintiff had agreed to arbitration under AAA rules or had lawfully authorized Mosley to act on her behalf. This lack of oversight enabled AAA to be weaponized as a forum of fraud, collusion, and retaliation, facilitating the broader conspiracy to silence Plaintiff's claims of sexual assault, racial and gender discrimination, and civil rights violations.

Further, Defendant Barton's failure to act on Plaintiff's written objections and refusal to arbitrate constitutes gross negligence and bad faith, as Plaintiff's emails detailed multiple instances of misconduct, forgery, and unauthorized filings by both Mosley and Riccomini. Barton had the authority to stop the arbitration from proceeding but instead allowed AAA to become complicit in the deprivation of Plaintiff's rights. Defendant Barton is directly responsible for the ensuing harm and emotional distress suffered by Plaintiff, as well as the continued concealment of serious allegations against powerful individuals and institutions.

**55. Equal Employment Agency, Inc.**

Defendant Equal Employment Agency, Inc. (the "Agency"), a Delaware corporation, is named as a Defendant for its role in negligently and/or willfully failing to protect Plaintiff's civil rights in employment and for enabling, ignoring, or concealing patterns of workplace discrimination, harassment, and retaliation by one or more corporate defendants, including GUESS? RETAIL, INC., Wally's, and their agents, officers, and managers.

Defendant Equal Employment Agency, Inc. holds itself out as a resource or authority involved in matters of employment law, compliance, and equal opportunity in the workplace. Plaintiff reasonably relied on the Agency's corporate existence, public mission, and regulatory representations as indicative of its capacity and willingness to enforce employment laws and uphold federal protections against discrimination based on race, gender, or retaliation. However, Defendant failed to exercise its duties, either by turning a blind eye to complaints, failing to investigate systemic abuse and harassment, or affirmatively participating in schemes designed to frustrate enforcement of applicable employment protections.

Specifically, upon information and belief, Defendant either worked with, partnered with, or was engaged by corporate employers involved in Plaintiff's claims to present the

appearance of equal employment compliance while providing no substantive protection or remedy to victims. The Agency's failure to perform its obligations, coupled with its silence in the face of ongoing civil rights violations, contributed to the injury, abuse, and unlawful termination suffered by Plaintiff. Whether through neglect, fraud, misrepresentation, or collusion, Defendant Equal Employment Agency, Inc. was a necessary party to the structural shielding of employers from accountability for repeated and extreme misconduct.

As a result, Defendant is liable for its role in enabling the ongoing deprivation of Plaintiff's federally protected employment rights and contributing to the cover-up of egregious discrimination, misconduct, and retaliation carried out by employers and their agents under the guise of legitimate corporate operations.

**56. California District Office of the U.S. Equal Employment Opportunity Commission**

Defendant California District Office of the U.S. Equal Employment Opportunity Commission ("California EEOC" or "EEOC"), a governmental agency operating under the U.S. Equal Employment Opportunity Commission, is named as a Defendant for its failure to investigate, act upon, or otherwise enforce federal

employment protections afforded to Plaintiff under Title VII of the Civil Rights Act of 1964 and other applicable statutes.

Defendant California EEOC is a federal agency tasked with receiving, investigating, and resolving charges of workplace discrimination, retaliation, and harassment. Plaintiff, a Black female employee subjected to egregious race and gender-based discrimination, workplace harassment, retaliation, wrongful termination, and further systemic civil rights violations, submitted detailed filings and provided credible evidence and documentation of her mistreatment, including unlawful employment practices committed by employers such as Wally's, and affiliated individual actors.

Despite having actual and constructive notice of the severity and breadth of the allegations, Defendant EEOC failed to take meaningful action. Plaintiff was never contacted for an in-depth interview, no field investigation was conducted, and no attempts were made to subpoena documentation or compel testimony from the accused employers. The EEOC failed to act in accordance with its own procedures or federal mandates. Rather than protecting the complainant, the EEOC's inaction operated as a shield for known bad actors, allowing employers to continue discriminatory practices without consequence.

In addition, Plaintiff discovered evidence that EEOC case materials and investigations may have been improperly coordinated with or disclosed to defense counsel or former legal representatives acting adversely to Plaintiff's interests. This improper influence, and the agency's departure from neutral and investigatory standards, constitutes a dereliction of statutory duty, a breach of federal trust, and an actionable harm that directly contributed to Plaintiff's inability to secure timely redress, including the right to equitable remedies under federal law.

The EEOC's failures were not minor, clerical, or accidental. They reflected systemic bias, institutional betrayal, and willful disregard of Plaintiff's constitutional and statutory protections. As such, Defendant California EEOC is liable for the damages resulting from its failure to fulfill its affirmative obligations under law and its indirect participation in obstructing Plaintiff's access to justice.

**57. Los Angeles County Bar Association**

Defendant Los Angeles County Bar Association("LACBA"), a California domestic nonprofit corporation, is named as a Defendant due to its role in fostering, enabling, and perpetuating a culture of attorney misconduct within Los Angeles County and beyond.

Defendant LACBA is one of the largest voluntary metropolitan bar associations in the nation, and represents thousands of attorneys, including many of those named as Defendants in this action. Its stated mission includes promoting the administration of justice, upholding high standards of legal integrity, and providing oversight, education, and support to legal professionals. However, in practice, Defendant LACBA operates as a protectionist institution that prioritizes political, social, financial, and internal affiliations over ethics, equity, and accountability.

Plaintiff alleges that Defendant LACBA has knowingly failed to police or regulate the unethical conduct of its members, particularly where such misconduct involves politically connected firms, high-profile defendants, or sensitive litigation implicating powerful individuals or corporate entities. Rather than enforcing ethical standards, Defendant LACBA functions as a gatekeeper and institutional shield for attorneys engaging in perjury, fraud on the court, obstruction of justice, retaliation, and other unlawful conduct.

Most, if not all, of the attorneys named in this Complaint are members or affiliates of LACBA. Despite repeated complaints, verifiable documentation, and clear patterns of coordinated

wrongdoing, including the fabrication of evidence, submission of false declarations, improper arbitration proceedings, and conspiracies to deprive Plaintiff of her constitutional rights, Defendant LACBA has taken no corrective action. It has failed to disavow or sanction its members, failed to refer misconduct to appropriate disciplinary bodies, and, on information and belief, fostered a closed network where corrupt legal practices are normalized, encouraged, and rewarded.

Plaintiff believes and alleges that Defendant LACBA has cultivated an environment that not only condones attorney misconduct, but teaches and institutionalizes it, particularly when it serves the interests of its preferred members, firms, or political benefactors. As such, Defendant LACBA bears responsibility for the systemic harm Plaintiff has endured, and is liable for its role in enabling, protecting, and legitimizing widespread legal corruption under color of professional respectability.

**58. The State Bar Of California**

Defendant The State Bar Of California, a public corporation and administrative arm of the California Supreme Court, is named as a Defendant for its central role in enabling, whitewashing, and perpetuating systemic legal corruption through willful negligence, institutional bias, and deliberate inaction.

Defendant State Bar of California is responsible for regulating the legal profession, licensing attorneys, and investigating and disciplining those who violate the Rules of Professional Conduct. Despite this mandate, Plaintiff alleges that Defendant State Bar of California has functioned not as a guardian of public trust or legal integrity, but as a politically driven body that protects favored attorneys and law firms from accountability, particularly where such attorneys are high-profile, institutionally connected, or affiliated with powerful interests.

Plaintiff has submitted numerous complaints supported by evidence, including judicial filings, emails, declarations, voicemails, and other forms of proof, outlining egregious attorney misconduct including but not limited to: perjury, fraud on the court, fabrication of evidence, breach of fiduciary duty, retaliation, collusion, abuse of arbitration proceedings, obstruction of justice, and defamation. Many of these violations were committed by attorneys who are not only licensed by the State Bar of California but also deeply embedded in California's legal and political elite.

Despite the gravity of these allegations, Defendant State Bar of California has either summarily dismissed Plaintiff's complaints

or failed to respond altogether. It has declined to open meaningful investigations, failed to interview Plaintiff, and refused to consider corroborating material evidence or follow up on patterns of coordinated misconduct among multiple attorneys and law firms. In some instances, it even appeared to protect attorneys whose actions were already the subject of judicial scrutiny or public controversy.

Plaintiff alleges that Defendant State Bar of California operates not as an independent disciplinary body, but as a gatekeeping institution complicit in maintaining legal hierarchies, suppressing whistleblowers, and insulating powerful defendants and their legal teams from accountability. Its failure to act in the face of overwhelming evidence has emboldened further misconduct and left Plaintiff exposed to ongoing legal abuse and retaliation.

**59. CalBar Holding, LLC**

Defendant CalBar Holding, LLC, a California limited liability company, is named as a Defendant based on its close financial and institutional ties to the State Bar of California, and its suspected role as a conduit or shell entity for channeling, managing, or concealing financial transactions derived from unethical or unlawful legal practices.

Defendant Calbar Holding, LLC is a California domestic LLC, which, upon information and belief, exists for the primary purpose of managing assets, real estate holdings, and financial interests connected to or originating from the operations of the State Bar of California. Although nominally separate from the State Bar, Plaintiff alleges that Calbar Holding, LLC operates in practical concert with the State Bar's leadership and governing structure, functioning as a financial mechanism to accumulate and hold wealth generated through the State Bar's regulatory, licensing, and administrative apparatus.

Plaintiff contends that Defendant Calbar Holding, LLC has benefited directly or indirectly from institutionalized legal misconduct, attorney favoritism, and systemic abuse of the disciplinary process, specifically where high-paying, high-profile attorneys or firms are involved. Plaintiff believes that funds collected through disciplinary fines, mandatory dues, or settlement arrangements, particularly in cases where public harm is concealed for political or financial expediency, may be funneled through or held by this LLC.

Moreover, Plaintiff alleges that Calbar Holding, LLC is used to obscure the flow of money within the legal discipline ecosystem, allowing the State Bar of California and its agents to manage lucrative financial interests with limited public oversight or

transparency. This structure raises serious questions about accountability, misuse of public authority, and conflicts of interest.

Given the State Bar of California’s failure to investigate or discipline attorneys who have committed grave misconduct against Plaintiff, including perjury, fraud, defamation, and obstruction of justice, Plaintiff reasonably believes that Defendant Calbar Holding, LLC exists in part to shield the State Bar and its associates from financial scrutiny or liability, and to preserve the status quo of legal corruption for the benefit of a select group of elite practitioners and their clients.

As such, Defendant Calbar Holding, LLC is named herein as a co-conspirator and enabler of institutional abuse and fiduciary malfeasance, and is liable for the damages Plaintiff has suffered as a result of its involvement in and concealment of the broader conspiracy against Plaintiff’s rights.

Through its inaction, institutional indifference, and active cover-up of unethical and unlawful behavior, Defendant State Bar of California has not only violated its duty to the public but has directly contributed to the violations of Plaintiff’s civil, legal, and constitutional rights. Defendant is therefore liable for the injuries Plaintiff has sustained as a result of the systemic failures of California’s attorney oversight apparatus.

**60. Docusign, Inc.**

Defendant Docusign, Inc.("Docusign"), a Delaware corporation, is named as a Defendant based on its role in facilitating and legitimizing forged, fraudulent, and unauthorized legal documents that were used against Plaintiff in multiple legal proceedings, in violation of Plaintiff's rights and federal and state laws.

Defendant DocuSign, Inc. is a well-known electronic signature and digital transaction management platform that provides legally binding e-signature services. Plaintiff alleges that Defendant knowingly or negligently enabled the execution and transmission of numerous documents bearing Plaintiff's forged signature or falsely represented consent, including but not limited to arbitration agreements, retainer terminations, and court filings, all submitted under penalty of perjury. These documents were presented in state and federal court proceedings, and in arbitration forums such as JAMS and AAA, without Plaintiff's knowledge, authority, or consent.

Plaintiff further alleges that Defendant's systems failed to enforce adequate identity verification or anti-fraud protocols, despite being entrusted with documents of high legal significance. This enabled attorneys, including prior counsel Walter Mosley, his associates, and opposing counsel such as

Kacey Riccomini of Thompson Coburn LLP, to exploit DocuSign's platform to falsely represent Plaintiff's intentions, waive her rights, and manipulate legal procedures to the benefit of high-profile defendants such as Guess?, Inc. and Paul Marciano. Despite Plaintiff's repeated complaints and efforts to flag the fraudulent use of her identity on Defendant's platform, no investigation, retraction, or remedial action was taken by DocuSign, Inc. Plaintiff contends that Defendant's failure to address these violations not only enabled serious due process violations, but also directly contributed to the denial of Plaintiff's access to a fair and impartial trial.

Plaintiff believes Defendant DocuSign, Inc. acted in reckless disregard of its legal responsibilities and consumer protection obligations, and that it bears liability for aiding and abetting the broader conspiracy to defraud, defame, and deprive Plaintiff of her constitutional and civil rights. As a result of DocuSign's actions and omissions, Plaintiff suffered significant legal, emotional, and reputational harm.

**61. California Department of Fair Employment and Housing**

Defendant California Department of Fair Employment and Housing ("DFEH"), now part of the California Civil Rights Department, is named as a Defendant based on its role in enabling, ignoring, and failing to investigate the serious claims brought forth by

Plaintiff, despite overwhelming documentation of workplace discrimination, harassment, and retaliation.

Defendant DFEH is the state agency tasked with enforcing California's civil rights laws, including the Fair Employment and Housing Act (FEHA), which prohibits discrimination, harassment, and retaliation in employment and housing on the basis of protected characteristics such as race, gender, and disability. Plaintiff, a Black woman, filed formal complaints with DFEH detailing egregious and ongoing violations of FEHA by her employer, Wally's Beverly Hills, its affiliates, and associated legal representatives. These included claims of race-based and gender-based harassment, retaliation for protected activity, sexual misconduct in the workplace, and wrongful termination.

Despite submitting extensive evidence including emails, text messages, witness accounts, and photographic proof, Defendant DFEH failed to take meaningful action. Plaintiff alleges that the agency conducted no thorough investigation, issued no subpoenas, failed to interview key witnesses, and ultimately dismissed her claims without explanation or the opportunity for a full administrative hearing. Further, Plaintiff contends that DFEH coordinated with or deferred to private arbitration forums, such as JAMS and AAA, that lacked jurisdiction and neutrality,

thereby facilitating a cover-up of the misconduct by Wally's and its legal representatives, including Thompson Coburn LLP and Walter Mosley.

Plaintiff also believes that DFEH may have shared confidential details of her claims and legal strategies with individuals or entities under investigation, further prejudicing her legal position and violating her right to due process. The agency's pattern of dismissal and silence in response to Plaintiff's inquiries contributed to the larger pattern of state-enabled obstruction of justice and denial of her civil rights.

Defendant DFEH, by failing in its statutory duties and ethical obligations, enabled the continued abuse and discrimination against Plaintiff and directly contributed to her legal and emotional injuries. Plaintiff asserts that DFEH's conduct was not just negligent but part of a systemic failure, or intentional collusion, with wealthy, powerful defendants to silence whistleblowers and deny accountability under California's civil rights laws.

**62. Ervin Cohen & Jessup LLP**

Defendant Ervin Cohen & Jessup LLP ("ERVIN COHEN"), a limited liability partnership formed under the laws of the State of Wyoming and operating within the State of California and elsewhere, is named as a Defendant based on its central role in

the alleged conspiracy to obstruct justice, facilitate discrimination, and carry out retaliatory legal practices against Plaintiff in connection with her employment-related claims and ongoing litigation.

Defendant ERVIN COHEN is a well-established law firm with a reputation for representing high-profile and wealthy clients, including corporations, executives, and entertainment industry figures. Plaintiff alleges that ERVIN COHEN knowingly participated in a coordinated legal scheme alongside other defendant law firms and parties, including Thompson Coburn LLP, Walter Mosley, and representatives of Wally's Beverly Hills, to silence, intimidate, and retaliate against her after she brought forward claims of sexual assault, workplace harassment, racial and gender discrimination, and civil rights violations.

ERVIN COHEN's involvement includes but is not limited to: (1) advising or aiding in the filing of motions containing false or defamatory statements about Plaintiff's character and conduct, (2) coordinating with other firms to bypass standard civil procedure in order to suppress Plaintiff's access to court, (3) contributing to the creation or submission of documents that were either forged, improperly served, or falsely sworn under penalty of perjury, and (4) participating in unlawful attempts

to pressure Plaintiff into accepting unjust settlement terms under threat of further reputational or legal harm.

Plaintiff further alleges that ERVIN COHEN attorneys used their legal influence to improperly manipulate the judicial process by exploiting relationships within the Los Angeles legal community, including with judges, arbitrators, and administrative agencies, for the purpose of protecting high-profile defendants from accountability. The firm's conduct facilitated the ongoing obstruction of Plaintiff's pursuit of justice and resulted in concrete harm including reputational damage, financial loss, emotional distress, and continued retaliation.

Plaintiff believes that ERVIN COHEN acted in knowing concert with other defendants and that its role went far beyond mere legal representation; instead, the firm was an active participant in a broader enterprise to silence Plaintiff and insulate powerful individuals and corporations from liability. Its actions, as alleged, amount to gross misconduct, ethical violations, and direct participation in civil rights violations under federal and state law.

**63. State of California**

Defendant State of California, a sovereign entity and public employer, is named as a Defendant based on its direct and vicarious liability for the actions and inactions of its

agencies, departments, and public officials involved in the events giving rise to this action. Defendant State of California, through its various subdivisions, including but not limited to the California Department of Industrial Relations (DIR), Department of Fair Employment and Housing (DFEH, now known as the Civil Rights Department), the Labor Commissioner's Office, the State Bar of California, the California Department of Justice, and the judicial branch operating under its authority, enabled, perpetuated, and actively participated in the ongoing deprivation of Plaintiff's constitutional and civil rights.

Defendant State of California bears responsibility for failing to properly train, supervise, and discipline public officials, including judges, labor commissioners, investigators, and administrative staff, who took part in, ratified, or turned a blind eye to retaliatory, discriminatory, unethical, and unlawful conduct. Plaintiff alleges that through coordinated state-sanctioned abuse of process, the State of California facilitated the wrongful dismissal of labor and civil claims, failed to investigate serious allegations of workplace sexual assault and discrimination, and participated in or allowed the use of fraudulent documents in state proceedings.

The State of California is further alleged to have allowed its judicial officers, including but not limited to Judge Yolanda Orozco, to engage in egregious misconduct under the protection of judicial immunity while enabling legal counsel for various defendants to submit perjured statements and forged documents without recourse. This judicial misconduct, coupled with failures by administrative arms of the state such as the Labor Commissioner's Office and the State Bar, created a hostile legal environment in which Plaintiff was systematically denied due process and equal protection under the law.

Additionally, Plaintiff alleges that the State of California, through the State Bar and its associated entities, failed to discipline or investigate attorneys with longstanding histories of professional misconduct, many of whom are named defendants in this action. The pattern of institutional complicity by multiple branches and agencies of the state demonstrates deliberate indifference to Plaintiff's rights and supports claims for systemic civil rights violations under federal and state law.

**64. DOES 1 through 100, inclusive**

Defendants DOES 1 through 100, inclusive, are sued herein under fictitious names because their true names and capacities are presently unknown to Plaintiff. Plaintiff is informed and believes, and thereon alleges, that each of these fictitiously

named defendants is responsible in some manner, whether through action, inaction, conspiracy, ratification, or collaboration, for the events, omissions, injuries, damages, and violations of law alleged in this Complaint. Plaintiff will amend this Complaint to allege the true names and capacities of each such defendant when they are ascertained.

Defendant DOES 1 through 100 include, but are not limited to, individuals and entities who:

• Participated in or aided the underlying acts of harassment, retaliation, discrimination, and/or assault;

• Were employed by or acted on behalf of any of the named defendants, including corporate, governmental, or legal entities, during the events alleged;

• Engaged in the concealment, fabrication, or obstruction of justice, including the suppression or falsification of evidence;

• Collaborated in retaliatory employment actions, fraudulent legal proceedings, or unethical professional conduct;

• Committed or facilitated violations of Plaintiff's constitutional, statutory, or civil rights;

• Or otherwise contributed to the harms alleged herein either directly or indirectly, knowingly or with reckless disregard.

Plaintiff is informed and believes, and based thereon alleges, that each of these DOE defendants acted in concert with the named defendants and/or under their direction, and that their acts and omissions were a substantial factor in causing Plaintiff's injuries. Plaintiff reserves the right to name each DOE defendant individually as discovery reveals their identities and roles in the events at issue.

**VII. FACTUAL ALLEGATIONS ALREADY SUBMITTED TO THIS COURT**

1. On January 11, 2019, prior to being employed at Wally's, Ms. Victor attended Wally's with some friends, Cassandra Baker ("Cassie") and Dezirae Deitch ("Ms. Deitch").

2. Ms. Victor and her friends checked in at the hostess stand, at Wally's, for a table of three where they were told a wait time of thirty-five minutes and were advised to grab a drink at the bar while they waited. Standing at the host stand was a manager whose name has never been learned by the Plaintiff, ("Manager Doe"), who was a French man, with a heavy French accent. Manager Doe followed Ms. Victor and her friends around the restaurant for several minutes. After ordering and paying for three glasses of wine, Manager Doe tapped Ms. Victor on her shoulder. Ms. Victor turned around and said "Can I help you?" Manager Doe advised Ms. Victor that she needed to leave

the restaurant immediately. Plaintiff chuckled and asked "Why?" Manager Doe told Ms. Victor that he could see her nipples through her bodysuit and that she needed to leave Wally's immediately. The Plaintiff and her friends were appalled by his degrading, outlandish, unwarranted, and disgusting remarks and refused to leave. Manager Doe kept harassing Ms. Victor tirelessly for several minutes causing a scene resulting in others in the restaurant to begin onlooking their argument either for curiosity or judgement; either way, leaving Ms. Victor humiliated and embarrassed. Ms. Victor went to the host stand and asked to speak to a different manager. Another Manager approached the host stand, apologized for what was said and allowed Ms. Victor to file a written complaint against Manager Doe whom had approached and harassed Ms. Victor, a paying customer, for no necessary reason. Ms. Victor and her friends were given three glasses of wine for free and thirty percent (30%) off their meal because of Manager Doe's actions.

3. On the evening of January 11, 2019, Ms. Victor had been wearing a yellow lace bodysuit, a cropped camouflage jacket, black leggings, and black heeled boots. Before attending Wally's, the Plaintiff and her friends had drinks at Harriet's Rooftop ("Harriet's), located at 8490 Sunset Blvd., West Hollywood, CA 90069. Ms. Victor, nor her friends, had issues,

especially on dress code, while attending Harriets. After the Plaintiff and her friends had a glass of wine at Harriet's they spontaneously decided to have dinner at Wally’s, hence the no reservation and wait time for a table upon their arrival. Ms. Victor had been the only woman of color in the restaurant that evening, and was also the only woman, and person, followed, targeted, and harassed as a paying customer. Keep in mind these are actions taken by Wally’s and their employee’s **prior to Ms. Victor’s employment**, establishing a disgusting, unacceptable, and repeated pattern of racism, discrimination, sexual harassment, and a complete disregard to a person’s individual and promised Civil rights.

4. Ms. Victor was not free or treated equal and was maliciously exposed to discrimination and harassment based on her sex, her race, her color, and her genetic information from Wally’s and it’s employee’s during her terrible experience as a customer on January 11, 2019.

5. On February 14, 2019, the Plaintiff had an interview at Wally’s for an open hostess position, a position she learned of through a Craigslist ad. Ms. Victor met with Tomara Conrad (“Ms. Conrad”) upon her arrival to Wally’s. Ms. Conrad at the time, and possibly may still be, the Maître D, “head hostess”, of

Wally’s. Ms. Conrad hired Ms. Victor on the spot but Ms. Conrad left briefly to get another Manager, Thibaud Duccini (“Mr. Duccini”) to begin a second interview with Ms. Victor before the final decision of her hire. After Mr. Duccini conducted a brief second interview, he congratulated Ms. Victor on her hire and informed her that her first training shift would be the following evening on February 15, 2019.

6. At Ms. Victor’s interview, Ms. Victor had been wearing an oversized knit sweater from the brand Nasty Gal, with black jeans, and her hair in a slick back low ponytail. Ms. Conrad told Ms. Victor to dress “*sexy*” for work because the hostesses were the first look of the restaurant and part of the job is looking “attractive”. Ms. Conrad advised Ms. Victor to not wear sweaters like the one she had on and stated, "*This isn't an office.*" Ms. Victor took out her cellphone to pull up her Instagram account to show Ms. Conrad pictures of her tattoos and Ms. Conrad’s response was "*So hot!*" Ms. Victor asked if showing her tattoos would be an issue and both Ms. Conrad and Mr. Duccini confirmed that Ms. Victor’s tattoos would not be an issue. Ms. Conrad again reminded Ms. Victor about how to dress, advising Ms. Victor to dress like she would if she were going to be coming to Wally’s for a night out. However, Ms. Victor, remembers how she dressed for her evening out to Wally’s on

January 11, 2019, and how she was treated, and couldn't imagine being treated as such as an employee. Ms. Victor knew that before she accepted her job with Wally's that she had to tell Ms. Conrad or Mr. Duccini about her experience with Manager Doe, and if possible, make a request to work shifts that Manager Doe was not scheduled on because Manager Doe had, and would continue to, make Ms. Victor uncomfortable.

7. Ms. Victor had made it known during her interview process that she had done several reality TV shows, including a show on Oxygen Network, NBC Universal, entitled, *Bad Girls Club*. Ms. Victor also made it known during her interview process that her time on television resulted in her having a large and decent Social Media following on Instagram, Twitter, SnapChat, and YouTube. Ms. Victor had asked Ms. Conrad and Mr. Duccini if someone coming into Wally's and recognizing her would be an issue. Both Ms. Conrad and Mr. Duccini were intrigued with this newly disclosed information about Ms. Victor and assured the Plaintiff that it would not be a problem because Wally's had, and possibly still has, lots of well known people and/or celebrities come in to eat or drink at their establishment. Ms. Conrad and Mr. Duccini ensured Ms. Victor that her being somewhat known could only "*help*" Wally's, not the opposite.

8. After Ms. Victor's interview, and prior to leaving Wally's, Ms. Victor approached Mr. Duccini and asked if there was a Manager who worked there, who was French and had a "*heavy" accent*" she described. Ms. Victor informed Mr. Duccini about the awful encounter she had with Manager Doe and his harassment during her visit to Wally's the month prior. Mr. Duccini told Ms. Victor that Manager Doe was terminated after multiple customers and employees had complained about him and his behavior. Ms. Victor was relieved she would not have to see or deal with that manager in a work environment as it was already hostile as a paying customer.

9. It is important to answer the question one may ask while reading these allegations, as to why Ms. Victor would seek employment at Wally's, an establishment that had already discriminated against her and harassed her. Ms. Victor, prior to building the presence she now has on Social Media, did not work full time on Social Media. When Ms. Victor moved to California she made an assumption that finding a job in a club as a bartender or bottle service would be easy, especially with her history in that field of employment, however, that assumption was wrong. Things got so bad for the Plaintiff that at one point she had made a YouTube video begging the internet for money to help her pay her rent because she did not want to leave

California. Wally's was the first job interview and first job offer the Plaintiff had received in a long, bad, period of time, so despite her hesitation and her terrible prior experience, she had no choice but to take the job. Ms. Victor was in survival mode and that included accepting a job position at Wally's which will prove to be one of the worst mistakes she has made in her lifetime.

10. February 15, 2019, was Ms. Victor's first training shift at Wally's and the day she had filled out the paperwork required for her employment with the Company. Upon request from Mr. Duccini, Ms. Victor arrived to Wally's a half hour prior to the start of her training work shift as requested, arriving at 4pm. The half hour she was filling out paperwork she was not clocked in. Upon arrival, Ms. Victor was sat in the private dining room in the back of Wally's and was given the Wally's Employee Handbook ("Handbook"), which was over seventy pages long. Ms. Victor was expected to read this entire Handbook in addition to reading and signing a separate pile of multiple papers, that required Ms. Victor's signature and/or initials, prior to her training shift which was scheduled to start in thirty minutes. It was impossible for Ms. Victor to read everything in full detail in thirty minutes on top of the expectation to complete a large pile of paperwork.

11. After thirty minutes had passed, at 430PM, Mr. Duccini came into the private dining room and told the Plaintiff it was time for her shift to begin. Ms. Victor quickly signed the remaining paperwork and handed it to Mr. Duccini. It is important to note that the Employee Acknowledgement and Arbitration Agreement signed by Ms. Victor was a separate document given to her with all other paperwork and the signed agreement was not torn or taken out of the Handbook after she signed her signature.

12. It is also important to note that these documents were received by Ms. Victor on June 8, 2020 by her prior legal counsel referenced by their fictitious business name, Mosley & Associates ("Mosley & Associates" or "prior legal counsel"), and she was never given or able to receive a copy of any of the documentation she had signed that day prior to June 8, 2020. An email correspondence between Ms. Victor and Mosley & Associates began on June 8, 2020 in regards to Mosley & Associates sending Ms. Victor a copy of her employee file via a drop box link, a drop box link that is now very much expired.

13. Ms. Victor had asked Mr. Duccini if she could keep the Handbook, as she barely got half way through reading it in the short amount of time that was given to her to complete such a

task. Mr. Duccini informed Ms. Victor that "*they were low on copies*" but he would get her one by her next shift. Ms. Victor was **never** given a copy of the Handbook, not on her next shift, not in future write ups over dress code, and not even upon her *wrongful* termination. Ms. Victor was never given a copy of the Handbook to keep, nor was she ever given a copy to borrow for review with the promise that the Handbook would be returned to Wally's Management. Access to the Handbook, which stated all the rules and regulations, was limited to the half hour time slot Ms. Victor was given prior to her first training shift on February 15, 2019. It was impossible to ask any questions or to discuss concerns about the Handbook to Management or Supervisors when Ms. Victor was denied the opportunity to keep a copy. Ms. Victor, as well as other new Employees of Wally's, should have been able to take the Handbook home to read it in full, and then, only after agreeing to its entirety, should new employees been authorized to sign and return the Employee Acknowledgement & Agreement Form to the Company.

13. Once Ms. Victor had handed Mr. Duccini the Handbook and her pile of signed paperwork, Mr. Duccini walked Ms. Victor to the front of the restaurant, to the hostess stand, and clocked Ms. Victor into her shift on the hostess computer, using a computer key that all Managers at Wally's had. Ms. Victor worked

and trained until 1030PM on the evening of February 15, 2019, making the total work shift six hours, excluding the additional half hour she had filled out paperwork. During this training shift the Plaintiff received no meal break, nor any ten minute breaks, despite working a total of 6 hours. The work shift would have been 6.5 hours if the additional half hour for paperwork completion had been included, as it should have been.

14. On February 16, 2019, the Plaintiff had her second training shift and arrived at Wally's at 3PM. Mr. Duccini was the manager on duty during the Plaintiff's training shift. Ms. Victor asked Mr. Duccini if a copy of the Handbook had been made for her yet and he told her "*Not yet.*" How is supplying a copy of the Handbook to an employee such a difficult task, especially if they had a computer and access to a printer in the office in the back of Wally's? Not giving Ms. Victor her employee handbook was an intentional act.

15. The Plaintiff wore black jeans, tan leopard print combat boots, a black one shoulder crop top, and gold drop earrings, to Wally's that evening. Plaintiff asked Mr. Duccini if the outfit she had on was acceptable and Mr. Duccini confirmed that "*It was great.*" That evening the Plaintiff worked with hostesses Ms. Conrad, Veronica Prince ("Ms. Prince"), and

Carolina Banks ("Ms. Banks"). All of the hostesses were in crop tops showing mid drift and skin and they were all wearing heels. The Plaintiff was the only hostess wearing flat combat boots. Looking at the other hostesses' attire, the Plaintiff was learning what she could wear to work through her fellow employees "approved" and "acceptable" attire. The closing manager clocked Ms. Victor out of her second training shift at 11PM, making the training shift a total of 7.5 hours. Once again, Ms. Victor did not receive a meal break nor a rest period during her 7.5 hours of training at Wally's.

16. On February 17, 2019, the Plaintiff worked her final training shift at Wally's and was introduced to Manager Mina Jones ("Ms. Jones"), a manager who would soon become one of the Plaintiffs' most malicious and persistent harassers. Ms. Victor arrived to Wally's for her final training shift at 930AM. Although the Plaintiff told Ms. Conrad and Mr. Duccini, at her hiring interview, that she was unable to work mornings, Ms. Victor was still required to train for the morning shift as standard procedure.

17. Ms. Victor wore a Motel Rocks printed dress, Dr. Martin boots, and a long black maxi cardigan over her dress to Wally's that morning. Ms. Victor kept the cardigan on over her dress for

the entire training shift. At the end of the shift Ms. Jones called the Plaintiff into the back office. Ms. Jones asked the Plaintiff if she knew where she was. Ms. Victor, confused by the question, asked Ms. Jones what she meant by her question. Ms. Jones explained to the Plaintiff that she was in Beverly Hills, that wearing an outfit like the one the Plaintiff had on, was not acceptable for work especially since families attend Wally's on Sunday mornings for their brunches. The Plaintiff asked Ms. Jones why the outfit wasn't acceptable and stated that she would wear it to brunch with her own family. Ms. Victor also attempted to explain to Ms. Jones that she merely dressed like she was going to a night shift as she wouldn't be covering morning shifts and had not received a copy of the Handbook and did not know the rules and regulations surrounding dress code for hostesses that work morning vs. night shifts. Ms. Jones did not give a proper explanation as to how or why Ms. Victor's attire was unacceptable or not "Beverly Hills" worthy, but only stated to not have bare legs showing again with a dress "that length". The Plaintiff was confused by these demands because on her prior training shift, on February 16, 2019, Ms. Conrad had on a mini skirt with her legs exposed that was much shorter than the dress the Plaintiff had on for the morning shift. However, the Plaintiff agreed to not show her legs again in the workplace

with any dress "too short". Feeling not only insulted but humiliated after her conversation with Ms. Jones, Ms. Victor left Wally's and her final training shift at 3PM that afternoon, making the total shift a total of 5.5 hours. Again, Ms. Victor did not receive any rest or meal periods during this training shift.

18. February 18, 2019, was the Plaintiffs' first shift as a hostess after completing the necessary three training shifts. Ms. Victor arrived to her shift at 4PM. Ms. Victor wore large rhinestone ball detailed hoops with a black turtleneck and jeans to Wally's that evening. Midway through the Plaintiff's shift she was summoned to the office again by Ms. Jones, where Ms. Jones told her that she was not going to write the Plaintiff up "*this time*" but Ms. Victor was required to take her earrings off immediately as they were "*distracting to customers*" and "*unacceptable for work*." Ms. Jones then handed Ms. Victor four images of models who were modeling for the brand GUESS?, INC. ("GUESS"), which is owned by Defendant Mr. Marciano and Maurice, principal owners of Wally's. Ms. Jones asked Ms. Victor to study the images of the GUESS models and told her that maybe she could learn a thing or two about how to dress to a job in Beverly Hills. Every image shown to Ms. Victor was a white model who was tall and skinny, which is the polar opposite of Ms. Victor's

race, color, size, and shape and no studying of these photos would change that. Completely disgusted by Ms. Jones statements, rude behavior, direct racism and discrimination towards Ms. Victor, Ms. Victor knew that she needed money and she needed a job, so Ms. Victor complied with Ms. Jones' demands and removed her earrings before returning to the hostess stand.

19. The Plaintiff was the only hostess employed at Wally's who got in trouble for all of her attire, even her jewelry, and this was only her fourth shift since her employment with Wally's began. After her second, unpleasant, insulting, and discriminatory conversation with Ms. Jones, Ms. Victor became self-aware that working at this restaurant was probably going to give her issues. However, at this time Ms. Victor had not been doing Social Media full time and she desperately needed employment. Unfortunately, since Wally's was the first job offer the Plaintiff had received, she promised herself that she was going to deal with any, and all the hostility that would be thrown her way and attempt to suck it up because she learned the hard way that California is an expensive state, Los Angeles is an expensive city, and Ms. Victor had bills to pay. Ms. Victor left her first official shift as a non-training hostess of Wally's at 12AM, midnight. Ms. Victor had worked a full 8 hour

work shift, and although she received a half hour meal break, she did not receive any rest or recovery periods.

20. On February 20, 2019, Ms. Victor arrived to work at Wally's at 1PM in the afternoon. Ms. Victor wore black jeans, a black ribbed body suit, a long black maxi cardigan, and black boots. The Plaintiff recalls sighing in relief on her way home at 9PM that evening as it was the first shift, since her employment began, that Ms. Jones or any other manager hadn't harassed her about one thing if not the other. Ms. Victor's work shift was 8 hours, she did get a half hour meal break, but again, did not have any rest of recovery periods.

21. On February 22, 2019, Ms. Victor arrived to work at Wally's at 1PM, wearing a cropped, off white knit sweater with a black faux leather midi skirt, black tights (so her legs were not exposed), a leather jacket, and combat boots. Although the Plaintiff was not sent home, Ms. Jones made it a duty to approach the hostess stand and start a conversation with the Plaintiff about how she doesn't understand the style of "*young America*" and how women dress differently in France. Ms. Jones proceeded to go on and on and on about how women in France wouldn't wear the Plaintiff's style clothing to work or in general, maliciously, and intentionally insulting Ms. Victor.

Ms. Victor was put in a very uncomfortable situation being judged, ridiculed, and humiliated once again on her appearance and outfit by Ms. Jones. Ms. Victor took notice that Ms. Jones was not making comments or striking similar conversations with any of the other hostesses that evening. Ms. Victor did not leave work that evening until 945PM, making her shift a total of 8.75 hours worked. Again, Ms. Victor did not get any rest or recovery periods during this shift.

22. February 22, 2019 concluded Ms. Victor's work shifts for her first pay period at Wally's, this pay period was for the dates February 11, 2019 to February 24, 2019. Ms. Victor recorded her working shifts as February 15, February 16, February 17, February 18, February 20, and February 22 of 2019, these do not included any dates or times in which she could have picked up a shift, or added hours, or failed to keep, or failed to receive accurate payroll records date and times from Wally's. The total hours that the Plaintiff knows she had worked, not including any missing hours, or undocumented hours, for the pay period of 02/11/2019- 02/24/2019 was 42.75 hours. The Regular pay rate for Ms. Victor during her employment at Wally's was $14 an hour and the overtime pay rate was $21 an hour. At $14 an hour for 40 hours and $21 an hour for 2.75 overtime hours, the

total amount of the check should have been $617.75, minus the appropriate taxes and fees.

23. Ms. Victor was issued a check on March 6, 2019 for the amount of $469.25. The check was issued by Wally's Wine & Spirits. The address for Wally's Wine & Spirits on the check was 10459 Jefferson Blvd., Culver City, CA 90232. The phone number listed on the check was (310)-475-0805. The check was issued by Bank of America, check number 53034. The routing number on the check was 12100035, the account number was 00000325017209061, and the sequence number was 000574431014. In the employee file sent to Ms. Victor on June 8, 2020, by her prior legal counsel, Wally's had marked Ms.Victor's first shift as February 28, 2019 and did not include her entire first pay period which is falsified information and fraud on the court. This check was short hours, hours that have never been paid to Ms. Victor.

24. Ms.Victor's next pay period, and the pay period Wally's attempted to state was Ms. Victors first week, to deceive the court, was from 2/25/19 - 3/15/19. Ms. Victor worked on February 25th, 2019 from 5PM to 12AM, midnight, and she did not take her dinner meal break until 1030PM that evening. This shift was seven hours, minus a half hour meal break, making the time

clocked in for Ms. Victor six and half hours. Ms. Victor was unable to take any rest or recovery periods this shift.

25. Employees of Wally's were required to download an app where they could chat with management or other employees about switching shifts, ask questions, or voice their comments and/or concerns, etc. Manager Ms. Jones contacted Ms. Victor on the app following her shift and stated that she was changing the time frame of her meal period so that the Human Resources Department ("HR") did not fine Wally's for Ms. Victor taking her break past the five hour required time. Ms. Victor did not fully understand what Ms. Jones meant by penalties but what Ms. Victor did understand is that Ms. Jones had it out for her and if she didn't comply she would only become a bigger target for Ms. Jones to bully, harass, or retaliate against, so Ms. Victor agreed to have Ms. Jones adjust her time sheet.

26. Ms. Victor worked from 5PM to close on February 16, 2019. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

27. Ms. Victor worked from 1PM to 945PM on February 28, 2019, working a total of eight hours and forty-five minutes. Ms. Victor to the best of her knowledge, is unsure when she took her

meal break this shift, but does know she was not given any rest or recovery periods.

28. Ms. Victor wore an expensive bustier, embellished top from the brand Nasty Gal, black jeans, and boots to work that evening. The embellishments on Ms. Victor's top had sequins and embellishments that resembled what someone would have worn to a Great Gatsby themed party, a top that got more than enough compliments from customers that dined at Wally's that evening. However, Ms. Jones, per usual, made it a point to find her way to the host stand to make insulting commentary towards Ms. Victor and her attire. At one point while a customer was complimenting Ms. Victor's top stating it was "*gorgeous*", Ms. Jones interjected into the conversation stating "*Gorgeous? It is distracting.*" Both Ms. Victor and the customer looked at each other in discomfort before Ms. Victor walked her and her party to their table. Ms. Jones, yet again, humiliated, embarrassed, and degraded Ms. Victor but this time did so in front of customers, maliciously and with pleasure.

29. Ms. Victor arrived to work at 1PM on March 1, 2019, wearing a tan jumpsuit, black Dr. Martin boots, a gold necklace, and a leather thick jacket to wear in and out of work to keep warm. After about twenty minutes of being at Wally's, Ms. Jones

approached Ms. Victor while seating a group of customers and told her "*Meet me at the hostess stand.*" Ms. Victor met Ms. Jones at the host stand and she was scolded harshly again in front of customers about how she needed to go home immediately to change or just leave for the entire shift. Ms. Victor again embarrassed and humiliated asked Ms. Jones, why?, as she did not see what could possibly be wrong with her outfit. Ms. Jones told her that her "bottom" was not appropriate in her jumpsuit and that she received complaints from customers wives that "Ms. Victor's bottom was making them uncomfortable." Horrified by what Ms. Jones was saying but even more horrified that Ms. Jones was saying such things in front of customers at the host stand instead of in the office, Ms. Victor was at a loss for words. Ms. Jones demanded she leave immediately and change or leave and not come back. Ms. Victor left Wally's at 140PM to head back to her apartment via Uber to change. At this point Ms. Victor had not begun driving herself to work and was taking Ubers to and from, which was an additional cost that had been stressing Ms. Victor out. Mr. Duccini who had heard of Ms. Jones decision to send Ms. Victor home to change ensured Ms. Victor that she would be reimbursed for that time but never was.

30. Ms. Victor arrived back to work at 256PM and had changed into a black long sleeve body suit with black jeans and

black boots, and was more than highly upset about the entire situation. Upon arriving back to Wally's the entire staff at Wally's took amusement discussing Ms. Victor's situation and everyone kept coming up to her, even staff members she did not know, making comments like "*damn girl, you got sent home for that ass!*" Ms. Victor was absolutely mortified.

31. Defendant Matt Marciano had called Ms. Victor over to a table he was sitting at with his friends and informed her he had heard about what happened. Matt Marciano then told Ms. Victor his nickname for her would be "*tiny*". Ms. Victor asked Matt Marciano why that would be his nickname for her where he responded "*because your ass is big but you are small*," and then him and his friends all had a nice laugh at Ms. Victor's expense while drinking their alcoholic drinks. Keep in mind, Matt Marciano was drinking while on the clock as a Manager, a pattern he repeats the entire time Ms. Victor was employed at Wally's. Ms. Victor at this point had just about enough of everyone at Wally's and of how she was being treated during this shift. At 930PM, which could not have come soon enough, Ms. Victor's shift had ended and she went home. On the Uber drive home Ms. Victor realized that this job was going to be very difficult for her and that she had, in the short amount of time of being employed, been through more discrimination and harassment than she had

ever experienced at a job, ever. Wally's had begun to take its emotional toll on Ms. Victor and would continue to do so up until her wrongful termination, and continue even further throughout this three year litigation.

32. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

33. Ms. Victor's next shift would be no different, and the harassment would only progress. Ms. Jones attempted to send Ms. Victor home yet again for her attire. Ms. Victor arrived to Wally's at 1PM on March 4, 2019, wearing a black turtle neck jumpsuit with a gold and black belt around her waist for accessory detailing and again had a thick leather jacket with leopard faux fur detailing to wear outside going to and from work. Ms. Jones walked right up to Ms. Victor with her own sweater/cardigan and told Ms. Victor she needed to put her sweater on or leave because her "bottom" was "too much" in the black jumpsuit she was wearing to work. Ms. Victor refused to put on Ms. Jones cardigan and was infuriated by the demand. Ms. Jones threatened that if she didn't cover up her "bottom" then she will be asked to leave work for the entire shift. Ms. Victor was forced to wear her thick leather and faux fur jacket for her

entire shift which was eight hours and forty five minutes which caused Ms. Victor to overheat. Ms. Victor received no rest or recovery period which was a pattern repeated every shift she worked for Wally's.

34. Ms. Victor left work at 945PM that evening, again she was upset, humiliated, embarrassed, and retaliated against. All other hostesses wore crop tops, mini skirts, thigh high boots, mesh dresses, bright colors, hoop earrings, everything and anything Ms. Victor could not dare attempt to wear. Ms. Victor was being discriminated against not only for her race and ethnicity but for sex and for her genetic information.

35. Ms. Victor arrived to work on March 6, 2019 at 1PM, she recalls that it had been raining because she wore a rain jacket to work. After the last prior two traumatizing work shifts Ms. Victor decided to wear a simple black long sleeve and black jeans to her shift so Ms. Jones, nor any other manager, could possibly target her for her attire or her body. The restaurant was quiet that afternoon due to the weather.

36. Ms. Victor went to the ladies room in the back and upon exiting the restroom, to go back to the host stand, Defendant Mr. Navarro, whom had been sitting next to Defendant Mr. Kachani, yelled out to Ms. Victor, "*I have been stalking your*

*social media."* Ms. Victor walked over to the island table Mr. Navarro and Mr. Kachani had been sitting at and asked Mr. Navarro if he would ask Mr. Marciano and Maurice if she could be a brand ambassador model for GUESS. Remember, Ms. Victor has a large following on social media from doing reality TV and was a brand ambassador model for many brands such as PrettyLittleThing, FashionNova, My Mum Made It, MissGuided, AKIRA, and many more brands, so asking that question to Mr. Navarro was not outlandish. Mr. Navarro laughed at Ms. Victor's request and stated, "*Honey, you are not tall, you are not white, you are not skinny, and you are not blonde. You would never be a brand model for GUESS.*" Both Mr. Navarro and Mr. Kachani laughed at Mr. Navarro's response as if his remark was comedy or humor. Ms. Victor, insulted and disgusted, simply stated "*Wow*" before deciding not to engage in the conversation any further and walked back to the hostess stand. Can you image how hard it must have been for a black female to be blatantly discriminated against at the beginning of a work shift and be forced to maintain composure, class, and professionalism while suffering internally? It is unimaginable.

37. Around 3PM, Mr. Marciano came into Wally's to prepare for a lunch meeting he had scheduled at Wally's. Mr. Navarro and Mr. Marciano were engaging in a conversation in front of the

host stand when Mr. Navarro told Mr. Marciano about Ms. Victor's request and his response to such request and both him and Mr. Marciano bursted out laughing. Mr. Marciano then confirmed "*Sorry you wouldn't model for my brand. Clean the front door glass before my guests arrive.*" Ms. Victor grabbed windex and rags to do as she was told like a slave. Standing in front of these two men who were still engaging in conversation, Mr. Marciano told Ms. Victor to "*clean the bottom of the glass doors*", which required Ms. Victor to bend over in front of the two men. She heard nothing but creepy silence behind her as she was doing such. After she was done cleaning the doors Mr. Marciano told Ms. Victor that he didn't like her jeans and to not wear them again. Ms. Victor could not believe it. Not only were these black jeans she wore almost every shift to be safe from getting in trouble, but how could there be anything wrong with simple black jeans?

38. There was not a single shift, since Ms. Victor began her employment, where she wasn't getting in trouble for baseless reasons, or walking on egg shells petrified she was going to be harassed. Ms. Victor realized this day, that the Manager Doe who targeted her as a customer prior to her employment must have learned his discriminatory behavior from the owner's and principals directly because Mr. Navarro and Mr. Marciano had

absolutely no issue showing their clear prejudice towards blacks, especially black females, to a black female, Ms. Victor.

39. Towards the end of Ms. Victor's shift that evening, Ms. Conrad told Ms. Victor to set up a specific table for Maurice who had been marked down for dinner on the calendar with a party of people. Ms. Conrad had explained to Ms. Victor that Maurice was "Me Too'd" during the "Me Too" movement and was only allowed to come into the restaurant once a month and only with supervision. Ms. Victor could not believe how racist and predatory the owners of the job she was working at were, but again, at the time was desperate for a job and money and couldn't afford to quit. Ms. Victor left work at 930PM that evening. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

40. Ms. Victor's next work shift was March 9, 2019, where she arrived to work at 1PM. Ms. Victor had her hair big and curly with added curly hair extensions. Ms. Victor wore different black jeans, a black top, with a gold and black embellished tuxedo jacket, black combat boots, and a red lip. Ms. Jones approached Ms. Victor at the hostess stand and stared

at her uncomfortably for a minute or so prompting Ms. Victor to ask, "What?" Ms. Jones stated, *"This is the first shift you don't look terrible, good job."* Ms. Victor, in shock, just dropped her jaw in amazement at how rude and cruel Ms. Jones was while Ms. Jones simply walked away from the host stand satisfied at her harassment towards Ms. Victor. Ms. Victor worked till 930PM that evening. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

41. Ms. Victor received her second pay check from Southwest Wine and Spirits LLC on March 15, 2019 for the pay period from 2/25/19 - 3/10/2019. The address on the paycheck was 2107 Westwood Blvd., Los Angeles, CA 90025 and there was no phone number on this check. The check# was 100515280 issued from Bank Of America. The routing number was listed as 06300004, the account number was listed as 00000005505975677, and the sequence number was listed as 000577840256. Not only was Ms. Victor's missing wages from the previous pay period not applied for this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's. This check, which was check# 100515280, was only for $533.61, which was not even

remotely close to what Ms. Victor was owed in back pay and current pay.

42. Ms. Victor's next work shift was March 11, 2019, she arrived to work at Wally's at 430PM wearing a black turtleneck long sleeve top, black jeans, and small gold hoop earrings. Ms. Victor was working alongside Ms. Banks. During Ms. Victor's eight hour work shift, Ms. Banks confessed to Ms. Victor about her sexual and romantic relationship with Mr. Navarro and asked Ms. Victor to keep it a secret as their relationship was not allowed. Ms. Banks went into full details about her sex with Mr. Navarro, her trips with Mr. Navarro, and how she gets upset about other females, especially those who are also employed with Wally's who were sleeping with him too. Ms. Victor was taken back by this information but could see how such is possible as Mr. Navarro had often times approached Ms. Victor discussing her social media and her photos, highly suggestive commentary.

43. One shift Mr. Navarro had approached Ms. Victor stating he was "shocked" to see Ms. Victor clothed because she was always "so naked" on her Instagram, a possible remark used strategically by Mr. Navarro to see if he could sleep with Ms. Victor as he had slept with Ms. Banks and other females who have been employed at Wally's.

44. The Handbook given to Ms. Victor by her prior legal counsel in June of 2020, which to Ms. Victor's belief, had been amended and changed strictly because of her lawsuit, as the entire Handbook, even the dress code section has been altered. At the bottom of the Handbook given to Ms. Victor by her prior legal counsel in June of 2020 it had a copyright symbol next to "2019 Ervin Cohen & Jessup LLP" which was not on the original Handbook. If need be Ervin Cohen & Jessup LLP can be subpoenaed, under oath, under penalty of perjury, to provide the court exact dates in which the Handbook was amended, which should have been told to all employee's past and current pursuant to California Labor law.

45. Under this new Handbook Wally's added a section entitled "*Conflict of Interest and Outside Business Activities*". This section states the following, "*Employees are expected to avoid any conflict of interest during their employment by Wally's…An employee should immediately disclose any relationship described in the foregoing paragraph to his or her supervisor…An employee's failure to disclose any of the relationships set forth in this policy shall be subject to discipline, up to and including termination.*" Ms. Banks and Mr. Navarro did not disclose to anyone of their sexual and/or romantic relationship, in fact, Ms. Banks was imperative that Ms. Victor keep what she

was told confidential to avoid Mr. Navarro and herself being subjected to any repercussions from said relationship. Mr. Navarro's other relationships were also not disclosed nor subject to discipline, suggesting that sleeping with your boss allows you to break the rules and not be subjected to the discipline of such rules. So had Ms. Victor slept with Mr. Navarro, her boss, who made sexual commentary often, would the harassment, bullying, retaliation, and discrimination ended? And was such harassment, bullying, retaliation, and discrimination a result of Ms. Victor not being interested in any man at Wally's, including Mr. Navarro?

46. This Handbook, the one given to Ms. Victor in June of 2020, also had a section entitled "Off-Duty Conduct" that was absolutely added into the Handbook after Ms. Victor's termination. However, this section states the following, "*Involvement in off-duty conduct that adversely affects Wally's legitimate business interests or an employee's ability to perform him or her work may result in discipline up to and including termination.*" Ms. Banks was affected by her off-duty conduct and relationship with Mr. Navarro. Many shift Ms. Banks' mood would be ruined or she would be sad and struggle through her shift because Mr. Navarro had disrespected her, ignored her, or would be all over female customers in front of her during her

shifts as a hostess. Due to Mr. Navarro breaking the rules of his company's own Handbook, neither him nor Ms. Banks were disciplined for their relationship that not only affected Ms. Banks but other hostesses around her who had to see her suffer from said relationship.

47. Another female, an employee of the Wally's located in Santa Monica, CA, Martina Nucheva ("Ms. Nucheva"), came into the Beverly Hill's location for dinner and drinks. Ms. Banks was working as well as Ms. Victor during the shift when Ms. Nucheva came into the Beverly Hills location. Mr. Navarro was attentive to Ms. Nucheva, caressing her back, etc., while she was dining at the restaurant. Ms. Banks began discreetly crying at the host stand so Ms. Victor asked Ms. Banks what was wrong. Ms. Banks then pointed to Ms. Nucheva and disclosed to Ms. Victor that Mr. Navarro was indeed sleeping with her too and she hated working while she was in the restaurant and also hated seeing Mr. Navarro interacting with her.

48. In the Handbook given to Ms. Victor in June of 2020 there was a section entitled "*Non-Fraternization*". This section stated the following, "*The company desires to avoid misunderstanding, complaints of favoritism, possible claims of sexual harassment and the employee morale and dissension*

*problems that can potentially result from relationships between employees. Accordingly, all employees, both management and non-management, are prohibited from fraternizing or becoming romantically involved with other employees when, in the sole opinion of the Company, their personal relationships create a potential conflict of interest, cause disruption, create a negative or unprofessional work environment, or present concerns regarding supervision, safety, security, or morale."* Further this section states, "*In the case where the Company determines, in its sole discretion, that a relationship between two employees…presents an actual or potential conflict of interest, the Company may take whatever action it determines to be appropriate to avoid actual or potential conflict of interest. Such action may include, but is not necessarily limited to, transfers, reassignments, changing shifts, or where deemed appropriate, disciplinary action up to and including possible termination. Employees who have questions about whether a particular romantic relationship violates this policy should contact the Director of Human Resources."* Ms. Banks was indeed subjected to favoritism because she was sleeping with the boss, in fact, one shift Ms. Victor covered for Ms. Banks because she went away with Mr. Navarro. Ms. Victor eventually made a complaint to Manager Ms. Jimenez, Manager Ms. Baker whom were

all aware of Mr. Navarro's sexual relationships with employees. Again, Mr. Navarro violated the rules of his companies own Handbook to satisfy his own predatory sexual demands.

49. Mr. Navarro often times drank, especially at night, at Wally's. On evenings that he was extremely intoxicated he would walk to the hostess stand and tell the hostesses to keep him away from the females because he didn't want to get in trouble. Mr. Navarro himself knew of his own capability to become completely out of line and turn to predatory behavior, especially with liquor in his system.

50. The Handbook given to Ms. Victor by her prior legal counsel in June of 2020 also had a section entitled "*Equal Employment Policy/Policy Against Discrimination*". This section has a paragraph that states, "*Managers and supervisors are prohibited from providing favorable treatment to employees with whom they are involved in a consensual sexual relationship (and should consult with the Director of Human Resources regarding any such relationship prior to its inception or as soon as possible).*" Again, Mr. Navarro and multiple managers, supervisors, and employees all violated the rules they were meant to follow in the Handbook to satisfy their own sexual needs. Not only did Mr. Navarro target his female employees, he

also provided the females that did sleep with him favorable treatment, then advised his managers and supervisors to not report any of his conduct that was clearly known throughout the restaurant. Ms. Victor did not sleep with Mr. Navarro nor any man at Wally's and did not receive favoritism but rather retaliation for not sleeping with Mr. Navarro, other male employees, or the customers the Defendants allowed to harass and assault Ms. Victor. I guess when you are the President and the Principal of Wally's or the Owner you can not only break the rules but tell your employees to not do a thing about you breaking the rules.

51. On March 11, 2019, Ms. Victor worked until 1215AM. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

52. On March 13, 2019, Ms. Victor arrived to work at Wally's at 1PM wearing black leather pants, black studded boots from EGO, and a black turtleneck bodysuit. Both Ms. Baker and Ms. Jones felt it necessary to tell Ms. Victor how much they did not approve of her footwear, but Ms. Victor was not sent home. Ms. Jones called her boots "*a hazard*" due to the spike and stud detailing and "*ugly*". While Ms. Baker walked to the hostess

stand and uncomfortably stared at Ms. Victor's shoes for what felt like a lifetime, finally stating, "*those are interesting.*" Ms. Victor did not respond to either Ms. Jones or Ms. Baker's disrespect while Ms. Conrad who has witnessed all of the Ms. Victor's abuse, asked Ms. Victor how she takes it and said, "*I would quit if I were you.*" Unsure if Ms. Conrad was making that comment on behalf of the management and employees who have continuously bullied, harassed, discriminated against, and retaliated against Ms. Victor, so that Ms. Victor would be convinced to quit allowing the Defendants to avoid a wrongful termination suit, or if Ms. Conrad was genuinely making such statement in concern and/or disbelief.

53. Ms. Victor left work at 915PM that evening. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

54. Ms. Victor worked on March 14, 2019 beginning her shift at 1PM. In the middle of her shift Manager Walter Merida ("Mr. Merida") came up to Ms. Victor to ask her how she was doing, concluding the conversation by telling Ms. Victor "*to hang in there*" and he advised Ms. Victor to not let Ms. Baker or Ms. Jones get under her skin. Mr. Merida would be the only male

employee, manager, supervisor who remained professional throughout Ms. Victor's employment and who did not harass, discriminate against, or retaliate against Ms. Victor whatsoever.

55. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

56. At this point, Ms. Victor began texting Mr. Duccini all her outfits prior to going to work to ensure that she would no longer be told to leave work because of her attire. On March 16, 2019, Ms. Victor texted an image of her outfit, which was a one shoulder long sleeve silver maxi dress and heels, to Mr. Duccini asking if her outfit was "*acceptable*". Mr. Duccini confirmed that her outfit was acceptable so Ms. Victor headed to work at Wally's and arrived at 1PM. Hours into her shift Ms. Baker approached the hostess stand and told Ms. Victor that she got complaints from women who were in the restaurant about Ms. Victor's attire. Ms. Victor told Ms. Baker that her outfit was approved by Mr. Duccini and was highly confused by her remarks. At this point the weather was warmer and Wally's had their air conditioning on full blast so the establishment was ice cold. Ms. Victor does not wear bras, never has, never will, as she

believes that they cause breast cancer. Ms. Baker told Ms. Victor that her "*hard nipples*" in her clothing were "*unacceptable*" to "*classy*" families that were at the establishment dining and that her "*nipple rings*" were causing women's husbands to stare. Ms. Victor was completely mortified, humiliated, and embarrassed yet again by the management of this company. Ms. Baker told Ms. Victor that she wouldn't be sending Ms. Victor home this time but rather warned her that she better start wearing bra's now that the AC is on and it will be "*cold*" inside. Ms. Victor told Ms. Baker that she would not be wearing bras due to her beliefs leaving Ms. Baker to shrug her shoulders prior to walking away from the hostess stand. Ms. Victor then witnessed Ms. Baker huddle up into a group of other managers and/or supervisors including Ms. Jimenez.

57. Ms. Jimenez, who Ms. Victor relatively got along with, later approached Ms. Victor and told her that all the managers were looking for any reason to fire Ms. Victor and "*hated*" that she worked there, proving that Ms. Victor was right with her assumptions that the management was harassing her intentionally in hopes that she will quit without having to terminate her, a termination which would be wrongful any which way they did such as it was fueled with "*hate*", coercion, and discrimination.

58. Ms. Victor worked till 930PM that evening. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

59. March 18, 2019 would be another brutal work shift Ms. Victor would be forced to struggle through. Ms. Victor wore black fitted pants that had a black waist band and white pin stripe detailing, a white top and gold jewelry. Only about twenty minutes into her shift Mr. Merida came up to the hostess stand and told Ms. Victor that Ms. Jones wanted to see Ms. Victor in the office now. Ms. Victor already knew it was going to be about her looks, body, or attire, a pattern the Defendants repeated during her entire employment. Ms. Victor walked into the back management office of Wally's and was greeted by Ms. Jones asking the question, "*Do you think you are in a nightclub?*" Ms. Victor stated no. Ms Jones continued to state that Ms. Victor "*was in Beverly Hills not a cheap club and her outfit made the restaurant look trashy which was strictly prohibited.*" Ms. Jones then continued to insult Ms. Victor by saying, "*You don't look like you belong in Beverly Hills*". Ms. Victor completely infuriated and at her wits end finally stood up to Ms. Jones and defended her clothes, her body, and her looks, and demanded to file her own complaint about the

persistent harassment she had been enduring every shift especially by Ms. Jones and Ms. Baker. Mr. Merida did take Ms. Victor's complaint while Ms. Jones wrote Ms. Victor up for her clothing, but these documents would not be in any of the employment files received by Ms. Victor is 2020 or 2021.

60. Ms. Jones then decided to pull out pictures of GUESS models wearings GUESS, again, and told Ms. Victor "*You don't look like them and if you don't start looking like them you will continue to be sent home and written up and your third write up will lead to a termination*." Ms. Victor snapped back and told Ms. Jones that she is not a white girl who was tall or slim and she cannot change the way her body is shaped. Ms. Victor was ordered to go home and change or leave and not come back for the remainder of her shift. In tears, Ms. Victor left the back office with Mr. Merida, who told Ms. Victor to "*hang in there*" and "*to not take it personally, it is not personal it is business*". No, it was discrimination, harassment, and retaliation.

61. As Ms. Victor was waiting for her car to go home Matt Marciano asked her where she was going and she explained how she was being sent home again for her attire. Matt Marciano told Ms. Victor that he didn't see anything wrong with her outfit but to

make Ms. Jones "*shut up*" it was best to just go home and change. Then Matt Marciano said, in what he thought was a joking manner, "*start wearing clothes that don't focus on your ass*" then started laughing. Ms. Victor wanted to quit in this very moment but did not want these people to win so she went home, changed, and came back to finish what felt like the longest shift of her life.

62. Upon arriving back to Wally's, Ms. Victor saw Ms. Conrad who had arrived to work after Ms. Victor had left to change, wearing a crop top, a mini skirt, and thigh high boots. Ms. Victor immediately went up to Ms. Jones and asked her if Ms. Conrad would be sent home for her attire as she was previously and Ms. Victor was more clothed. Ms. Jones told Ms. Victor to worry about herself and not other employees. Infuriated beyond belief, Ms. Victor found Mr. Merida and asked him the same question in regards to Ms. Conrad and her attire. Mr. Merida shrugged his shoulders and said "*Remember, it's not personal, it's just business.*" Ms. Victor stated "*No it's racist!*" Ms. Victor was the only female employee who got in trouble for her attire while all the Caucasian hostesses never got in trouble for their outfits that barely covered them. Ms. Victor was a target and would continue to be a target until her wrongful termination in June of 2019.

63. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

64. On March 21, 2019, Ms. Victor went to an event with her friend Cassie at Delilah, located at 7969 Santa Monica Blvd., West Hollywood, CA 90046. After the event concluded Ms. Victor and Cassie went to Wally's for a small appetizer and a drink. Employees were allowed to go to Wally's on non-work shifts as long as it was approved by management prior. Ms. Victor got it approved by management to come March 21st and March 22, 2019 to Wally's for an appetizer and drink, which were non-work shifts for Ms. Victor. Ms. Victor had no issues with going to Wally's on March 21, 2019 as Ms. Victor was never treated poorly or discriminated against by Mr. Merida who was the manager on duty that evening.

65. However, on March 22, 2019, Ms. Victor's treatment at Wally's, while attending, on a non-work shift, would be entirely different and per usual… unlawful. Ms. Victor went to Wally's with her girlfriend Cassie prior to their dinner reservation at Mastro's Steakhouse, located at 246 N Cannon Drive, Beverly Hills, CA 90210. Ms. Victor was wearing a grey turtleneck long sleeve dress and snake print thigh high boots. While at Wally's,

Ms. Victor and her girlfriend Cassie received a lot of attention from other customers, especially their male customers. Ms. Victor did not stay at Wally's long, however, she did see Ms. Baker meeting with other management, whispering, pointing, and discussing Ms. Victor while she was simply enjoying food and drinks at the restaurant she was employed with. After this date, Ms. Victor was the only employee banned from coming into Wally's on non-work shifts, and was provided no explanation as to why. Ms. Victor knew that such decision was not only based on the constant harassment and retaliation she had received every shift and now non-shift, but because, from the beginning of her employment, Ms. Victor was discriminated against and treated unequal compared to her other co-workers. Co-workers who would be allowed to attend Wally's on non-work shifts for dinner and drinks.

66. On March 24, 2019, Ms. Victor picked up someone else's morning shift as Ms. Victor never usually worked morning shifts. Ms. Victor knew she would be working with Ms. Jones and decided to wear a simple button down top, black jeans, black boots, her hair in a low pony, and a red lipstick. Ms. Jones just couldn't stop herself from harassing Ms. Victor and made sure to yell at Ms. Victor for something prior to her shift ending. Ms. Jones told Ms. Victor that she should not wear red lipstick to morning

shifts as it may give customers the "*wrong idea*". The wrong idea? How could a shade of lip stick give customers or anyone the wrong idea? Ms. Victor wore red lipstick often to her work shifts at Wally's but this was the first time she had gotten scolded for such. Blatant harassment, retaliation, and discrimination.

67. On March 29, 2019, Ms. Victor received her third pay check from Wally's for the pay period from 3/11/2019 - 3/24/2019. The check was written out by Southwest Wine And Spirits LLC. The address on the check was 2307 Westwood Blvd., Los Angeles, CA 90025. There was no phone number on this check. The check number was 100515490. The routing number on the check was 06300004, the account number was 00000005505975677, and the sequence number was 000574022361. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's. The check was written out for the amount of $572.06, not even remotely close to what Ms. Victor was owed in back pack and current pay.

68. On March 25, 2019  Ms. Victor was working the mid afternoon shift at Wally's. Ms. Jimenez approached Ms. Victor

and asked her if she was looking for any side jobs to make extra cash, Ms. Victor undoubtedly said yes. Ms. Jimenez said her friend was looking for "*bartenders*" to work his "*private*" events and if Ms. Victor would be interested in bartending for any of them, again Ms. Victor said yes. Ms. Jimenez told Ms. Victor she was allowed to leave work early to go home and get into something "*sexier*" and to head to her friends mansion to have an interview. So Ms. Victor left her work shift early, headed back to her apartment to change, then headed to an address provided by Ms. Jimenez to meet with her friend for an interview. Upon arriving to the address given to Ms. Victor, she was put into a room to await an interview by Ms. Jimenez's friend. Ms. Victor was hired on the spot and was told she would be working his next event as a trial run to see if it was a good fit for both of them. Ms. Victor ended up working Ms. Jimenez's friends "*private*" party on April 6, 2019. These "*private*" events are actually called "*poker*" nights where celebrities and/or wealthy men come to a mansion to play poker while expecting the women employees at the event to provide them sexual gratification in exchange for poker chips as "*tips*" or payment. All this information was not told to Ms. Victor by Ms. Jimenez and she was thrown into an extremely uncomfortable situation. Ms. Victor brought her friend Lala Craig ("Ms. Craig") and they were both

ordered to sign Non-Disclosure agreements prior to working. Ms. Victor stayed at the bar all night and was horrified to witness women under the table performing actions such as fellatio to men at the poker table. Ms. Victor texted Ms. Jimenez immediately, texts that were given to Ms. Victor's prior legal counsel as evidence, evidence that was intentionally lost by her prior legal counsel in order to help the Defendants conceal more of their unlawful behavior. Ms. Victor told Ms. Jimenez what was going on and Ms. Jimenez told her "*to do what was comfortable*" for her, meaning perform the sexual favors you are okay performing… which was absolutely NONE for Ms. Victor. Ms. Victor proceeded to tell Ms. Jimenez about how uncomfortable she was and asked her to text her friend to let her leave early. Ms. Victor ended up leaving the party as soon as it became an orgy.

69. On April 12, 2019, Ms. Jimenez gave Ms. Victor an envelope of cash in the amount of one thousand three hundred and eighty dollars from working her friends poker night. Ms. Jimenez proceeded to tell Ms. Victor not to tell anyone about her side business and advised Ms. Victor to let her know if she had any friends that were "*into those type of jobs*". While the Defendants and their legal counsel have attempted to accuse Ms. Victor of extortion, prostitution, amongst other things, Ms. Jimenez, a manager of the Defendants establishment, was

literally looking to prostitute females for her own cash benefit. Mosley & Associates knew of this information and told Ms. Victor it was an amazing argument they could present in her favor before they conveniently lost all of Ms. Victor's text message evidence. Mosley & Associates eventually told Ms. Victor that she was unable to present nor discuss Ms. Jimenez's actions and illegal behavior attempting to get Ms. Victor or anyone Ms. Victor knows to be sex trafficked at private Hollywood events due to her signing an NDA. This information provided by Mosley & Associates to Ms. Victor was in fact untrue and in complete violation of California State law and a lie. All intentional and malicious actions done in conspiracy with the Defendants were done in order to conceal more and all of the Defendants unlawful, disgusting, predatory behavior. A concealment that allows the Defendants to not be held accountable or legally liable, saving them costs and a criminal prosecution.

70. On March 29, 2019, Ms. Victor wore a red and black midi dress, black tights, and black boots to her work shift at Wally's. Defendant Mr. Turner knew a group of men who were considered "*VIP*" customers of Wally's. This group regularly came into Wally's and always spent a large amount of money when they did come in. This group of men always sat in the main dining room of Wally's at a large island table. Mr. Turner would always

come into the main dining room to present and attempt to sell, this group of men, expensive bottles of wine or liquor, and often times would be successful at making said sales. This group of men would stay at Wally's for hours and always left the establishment extremely intoxicated.

71. On March 29, 2019, Ms. Victor fell victim to the sexual harassment of these customers, harassment that was not only allowed but encouraged by the Defendants. These men grabbed Ms. Victor's buttocks, arms, and other body parts, and even hollered at her every time she would walk by their table. Mr. Turner took it upon himself to tell the customers of Ms. Victor's Podcast which was entitled "Swallow It" leaving the intoxicated customers to begin calling her "*Ms. Swallow It*" in front of other customers and employees. Ms. Victor told Mr. Turner to tell his little group of friends to stop touching her and he responded by saying "*they spend thousands, suck it up*." Ms. Victor, in tears, went to the back office to file a complaint that would never make it to the HR department nor her employee file given to her in 2020 and 2021 by her prior legal counsel.

72. The Defendants, through their counsel, have taken pleasure in accusing Ms. Victor of prostitution, yet on nights like March 29, 2019, Ms. Victor was advised by the Defendants to

"*suck it up*" and to be "*extra*" nice to their VIP customers. Basically, telling Ms. Victor to enjoy their sexual harassment as the harassment makes the customers want to spend more money which is only beneficial for the Defendants. If the customers are convinced they have a shot with Ms. Victor then they will spend more money which works out for the Defendants but makes Ms. Victor suffer. In fact, the Defendants refusal to stop such harassment, their encouragement of such harassment, and their instructions to Ms. Victor to "*take it*" and to be "*extra*" nice to VIP customers, is the equivalent to the Defendants forcing Ms. Victor to be behave like a prostitute, where her body is the entertainment, and the Defendants are the ones reaping the reward. Borderline sex trafficking.

73. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

74. On March 30, 2019, Ms. Victor wore a black tube top midi dress, black tights, a gold belt for detail, and black boots to her shift at Wally's. At this point, Ms. Victor had been employed with Wally's for over two months and her tattoo's were never covered nor were they a big secret. However, during this shift Ms. Victor was brought into the back office and told

that her shoulder tattoo's showing was "*unacceptable*", tattoo's that she had displayed more than often. The Defendants were so desperate to get Ms. Victor to quit that they began to nit-pick every little detail of Ms. Victor's being. Whatever they choose to nit-pick was how they would harass, retaliate, and discriminate against Ms. Victor. Why would Ms. Victor's tattoos just now be an "*unacceptable*" issue for the Defendants but during the prior two months of employment had not been? Malicious and intentional harassment, retaliation, and discrimination by the Defendants to make Ms. Victor suffer. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

75. On March 31, 2019, Ms. Victor wore a black sleeveless turtleneck maxi dress that had slits on the side with combat boots to her work shift at Wally's. Although not sent home, Ms. Baker asked Ms. Victor if she thought the slits in her dress were "*too high*". Ms. Victor firmly said no. Management at this point was trying to break Ms. Victor in hopes that she would quit, they were relentless and work had become intolerable for Ms. Victor.

76. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

77. There was a customer who often came to Wally’s to just stare and look at Ms. Victor. Prior to his creepy, inappropriate behavior, Ms. Victor exchanged numbers with this man in hopes to establish more business connections for her entertainment and social media career aspirations, Ms. Victor would learn this was a mistake. This man abused the right to contact Ms. Victor, sending her insane and creepy messages and voicemails at all hours of any night. Ms. Victor made the management of Wally’s aware of her issues with this customer and asked them, for her safety, to ensure that he was not allowed into Wally’s while she was on shift. Management agreed to comply with Ms. Victor’s request which she learned was a lie on April 1, 2019.

78. This man came to Wally’s on April 1, 2019, while Ms. Victor was working on shift, and was allowed into the restaurant. This man ordered one drink at the bar before standing diagonally across from the hostess stand, where Ms. Victor was, and he just stared at Ms. Victor for over an hour. This man sent Ms. Victor multiple text messages about how a black car would be outside waiting for her when she got off her

shift and that she'd "*better*" get into the car, followed by forty-two more text messages which forced Ms. Victor to block his number.

79. In the Handbook given to Ms. Victor by her prior legal counsel in 2020, it had a section entitled "*Physical Security*", which states the following: "*Security and safety in the workplace is every employees responsibility*." "*The welfare of our employees and the security of the Company facilities require that every individual be aware of the potential risks. Immediately notify your manager if you see any person acting in a suspicious manner, in or around Company premises.*" "*Our workplace safety program is top priority at the restaurant. We want the restaurant to be a safe and healthy place for employees, customers, and visitors. A successful safety program depends on everyone being alert and committed to safety*." "*Full cooperation by all employees is necessary for the Company to accomplish its goal of maximizing the security and safety of its employees.*" Again Ms. Victor was subjected to unequal treatment and accommodations in her own workplace as the Defendants rules for "*Physical Security*" only applied to anyone but Ms. Victor.

80. Despite Ms. Victor's request to not have this man attend the restaurant while she was working, for her safety, the

Defendants allowed him to come. Despite, the other hostesses, servers, and managers that had witnessed this man stand diagonal from the hostess stand for over an hour, stalking Ms. Victor, the Defendants did absolutely nothing to ensure Ms. Victor's safety. It was as though the Defendants took pleasure in watching Ms. Victor being in an uncomfortable and unsafe situation that could have been avoided had the Defendants followed the law and their own Handbook.

81. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

82. On April 3, 2019, Ms. Victor wore a leopard striped dress, black tights, a black cardigan, and black boots to her shift at Wally's. Ms. Victor was ridiculed so badly about her appearance on this day that she actually posted on her Instagram ("IG") story, "*I'm not even remotely close to being in the mood today*". At one point Ms. Jimenez told Ms. Victor that the other management was in the office discussing how her outfit was not "*Beverly Hills equivalent*", whatever that even means. The Defendants harassment and retaliation was getting progressively more intense and worse every work shift as an attempt to try and force Ms. Victor to give up and quit to avoid a wrongful

termination. Not a shift would go by where Ms. Victor was not subjected to extreme retaliation, harassment, or discrimination but Ms. Victor refused to let the Defendants win and she refused to quit.

83. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

84. Ms. Victor received her fourth check from Wally's on April 12, 2019, for the pay period of 3/25/2019 - 4/7/2019. The check was issued by Southwest Wine & Spirits LLC. The address for Southwest Wine & Spirits LLC, on the check, was 10459 Jefferson Blvd., Culver City, CA 90232. There was no phone number on the check. However, there was another company under the name "Payment Solutions Support" listed on the check, additionally. This company had the address of 17390 Brookhurst Street, Fountain Valley, CA, 92708, listed on the check. When Ms. Victor googled this address the Company that resulted in the search was Ceridian Tax Service ("Ceridian"), which is a corporation operating under Delaware law. The holding company for Ceridian was Ceridian HCM Holdings, Inc., which is also a corporation operating under Delaware law. The check number was 730223195. The routing number was 06111278, the account number

was 00000003299020208, and the sequence number was 000571865394. The check was issued for the amount of $564.73. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's.

85. Ms. Victor experienced the raft of all Defendants working together to hate, blame, and harass her fully during her work shift on April 12, 2019. Ms. Victor was working the mid afternoon shift, Ms. Conrad, who, as stated previously, was the head hostess, told Ms. Victor to put a customer into the wine room to be sat at the private table. This customer was not a VIP customer of Wally's but Ms. Conrad thought the customer and his friends were attractive and said, "*he looks like a black guy with money, seat him in the wine room*." Ms. Victor did as she was told, as always. Keep in mind that the only person who was able to make decisions on seating was Ms. Conrad, no one else. The only other, and second, private dining room that was located in the back of the restaurant was also taken by customers.

86. The Jonas Brothers, including Nick Jonas, celebrity musicians and entertainers, soon came into Wally's, surprisingly, with no reservation, looking to be sat somewhere

secluded and private. However, both private dining areas were currently filled. Mr. Kachani and all other upper management that was on duty came to the hostess stand freaking out, swearing, and yelling at all of the hostesses about who the random person was in the wine room and who sat them in there. Ms. Victor told management that she had sat the man in there under the orders of Ms. Conrad, who then denied making such orders, throwing Ms. Victor under the bus. The Jonas Brothers bought a few bottles of wine and then left Wally's due to the dining rooms not being available, which left the Defendants infuriated and somehow Ms. Victor was to blame. Ms. Victor was ordered to go home early for "*f&%king up*" Wally's opportunity to make a large sale off the Jonas Brothers. Ms. Victor, in tears, left early, shocked at how she was treated for a decision made by Ms. Conrad not herself.

87. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

88. On April 15, 2019, Ms. Victor wore a long red maxi dress, a choker necklace, and combat boots to her work shift at Wally's. Matt Marciano frequently sat on the outdoor patio with his friends and girlfriend on what should have been working

hours and they would all drink and get intoxicated. When Ms. Victor arrived to work Matt Marciano in front of his group of friends and girlfriend screamed, "*Now Tiny, that ass in that dress!*" He then proceeded to call Ms. Victor over to his table where he told Ms. Victor all his friends were still doubting that her "*ass*" was real. Annoyed Ms. Victor proceeded to go back inside only to be approached by Ms. Jimenez who assured Ms. Victor she didn't have an issue with her outfit but other management had an issue with the "*tightness*" of the dress on her body because it focused on her "*shape*". Ms. Victor wanted to scream, this job became a literal nightmare for her. Ms. Victor was not sent home for her attire because the restaurant was too busy but she received unwelcoming looks by management all night every time she left the host stand and walked someone to their table.

89. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

90. On April 17, 2019, Ms. Victor wore red lipstick and lip gloss to her shift at Wally's and was not scolded or yelled at for doing such. Which proved to Ms. Victor that Ms. Jones' prior remarks about her red lipstick was Ms. Jones' personal opinion

and bias and not a Company policy or rule that was being unfollowed by Ms. Victor. Ms. Jones' behavior, amongst other individual Defendants was, and has always been, discriminatory against Ms. Victor.

91. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

92. Ms. Victor wore a black dress and combat boots to her work shift at Wally's on April 19, 2019. Upon walking into Wally's, Ms. Victor was greeted by manager and Defendant Mr. Poulin who said, "*Must be cold outside huh?*" It took Ms. Victor a second to realize that Mr. Poulin was referring to Ms. Victor's breasts as her nipples were hard. Despite Mr. Poulin not only making inappropriate comments about Ms. Victor's breasts and letting it be known he was examining Ms. Victor's breasts, he was not reprimanded for such actions, but Ms. Victor was told never to wear that dress to work again by Ms. Baker. Ms. Baker's personal distain for Ms. Victor and Ms. Victor's protected characteristics caused her to completely ignore a male managers blatant sexual harassment and focused only on Ms. Victor's body in her outfit yet again.

93. Ms. Victor was not sent home because the restaurant had reservation after reservation that evening, including one for the RYU's. Ms. Ryu, Ms. Victor unsure of her first name, was a VIP customer, an awful one. Every time she came into Wally's she would get drunk and then abuse all the hostesses, calling them ugly, whores, classless, amongst other things. The hostesses, including Ms. Victor, were told to ignore Ms. Ryu's abuse as she was a high paying customer and could do and say as she pleased. Employees of Wally's could be subjected to sexual harassment, sexual battery, discrimination, verbal abuse, etc., as long as the Defendants reaped the reward.

94. Ms. Ryu's son is Royce Ryu ("Mr. Ryu"), who was in Wally's almost every single day, and always left extremely intoxicated. Mr, Ryu will also be the VIP customer the Defendants have attempted to say Ms. Victor solicited for sex despite Ms. Victor barely speaking more than ten words to Mr Ryu during her entire employment. Ms. Ryu's behavior was to be expected but she was exceptionally harsh to Ms. Conrad who fought back tears after being called ugly by Ms. Ryu.

95. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

96. Matt Marciano's drinking during his work shifts or at the establishment on non-work shifts was known by all employees, including Ms. Victor. Matt Marciano was reckless, angry, and a complete mess most of the time when he drank, even if he was the manager on duty. Matt Marciano's girlfriend Bonnie Rotten ("Ms. Rotten") was a pornstar and Matt Marciano would brag about this often while at the restaurant, he also treated Ms. Rotten… rotten. Abusive in so many ways including verbally, which was triggering for Ms. Victor as she too had been in an abusive relationship.

97. On April 20, 2019, Matt Marciano got drunk on the outside patio and began screaming at Ms. Rotten, unsure over what, but in such a way it was triggering for Ms. Victor. Matt Marciano's behavior caused PTSD in Ms. Victor, making her suffer from a severe anxiety attack while at work. Ms. Victor had to ask to leave work early due to this anxiety attack that was triggered by Matt Marciano's abusive behavior toward's his girlfriend Ms. Rotten, an altercation that was viewed by paying customers as well. This wasn't the first time and it would not be the last time such an altercation happens at Wally's between Matt Marciano and Ms. Rotten or Matt Marciano and any other third party that pissed him off.

98. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

99. Ms. Victor was issued her fifth paycheck from Wally's on April 26, 2019 for the pay period from 4/8/2019 - 4/21/2019. The check was issued by Southwest Wine & Spirits LLC. The address for Southwest Wine & Spirits LLC, on the check, was 10459 Jefferson Blvd., Culver City, CA 90232. There was no phone number on the check. However, there was another company under the name "Payment Solutions Support" listed on the check, additionally. This company had the address of 17390 Brookhurst Street, Fountain Valley, CA, 92708, listed on the check. When Ms. Victor googled this address the Company that resulted in the search was Ceridian, which is a corporation operating under Delaware law. The holding company for Ceridian was Ceridian HCM Holdings Inc., which is also a corporation operating under Delaware law. The check number was 730339466. The routing number was 06111278, the account number was 00000003299020208, and the sequence number was 000477956127. The check was issued for the amount of $627.68. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this paycheck too was missing hours and wages, a pattern that will

repeat with every check Ms. Victor received during her employment at Wally's.

100. In the employee file Ms. Victor received from Mosley & Associates in June of 2022, the Defendants put the check information for this pay period on a print out entitled "*Payroll Register Report*" which was run by Defendant Ms. Hunter. This print out document had the employee information, including social security numbers and earnings, of not only Ms. Victor but other Wally's employees, including Gilleschrist Zamba ("Mr. Zamba"), Jennifer Carmody ("Ms. CARMODY"), and Natasha Marc ("Ms. Marc"). The private information of Mr. Zamba, Ms. Carmody, and Ms. Marc, including their yearly earnings and their social security numbers, was NEVER information the Defendants had legal right to disclose to Ms. Victor and yet they did so carelessly.

101. On April 22, 2021, Ms. Victor wore a blue ribbed dress that had button detailing and boots to her work shift at Wally's. Matt Marciano, Mr. Navarro, and Mr. Kachani were all seated on the outside patio dining area. Matt Marciano called Ms. Victor over to their table and stated how the weather was bringing attention to her "*boobs*" making Mr. Navarro laugh. Ms. Victor rebutted by telling them that she had zero control over the weather. Mr. Kachani told her to think about "*wearing bras*

*or sweaters on chillier days*". Annoyed Ms. Victor went back to the host stand.

102. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

103. On April 27, 2019, Ms. Victor wore a black dress from Motel Rocks that had chain detailing and her Doc Marten boots. This shift was no different than every other shift where she was harassed about her appearance. Ms. Victor was so upset she posted on her IG story, "*I need to pray about the anger in my veins tonight*." The Defendants were intentionally, unlawfully, and with malice, trying to make Ms. Victor suffer every time she went to work. The Defendants wanted Ms. Victor's work shifts to be insufferable, they wanted her to QUIT.

104. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

105. Ms. Victor wore a black bodysuit, a black cardigan, and black jeans to her work shift at Wally's on May 4, 2019. Even with Ms. Victor having a cardigan on, Ms. Baker still pulled Ms. Victor aside stating that her side "*boob*" area was

still noticeable to customers and advised Ms. Victor to not wear that bodysuit again. Ms. Victor wanted to say, "*are you serious?*", to Ms. Baker. However, Ms. Jimenez made it known to Ms. Victor about managements plan to get rid of her and did not want to give them an opportunity to do such, so she agreed not to wear the bodysuit again. The harassment, retaliation, and discrimination against Ms. Victor was so evident across the restaurant that servers, bartenders, and other employees, who Ms. Victor barely engaged with or knew, would ask Ms. Victor if she was okay. The Defendants behavior towards Ms. Victor created a hostile environment not equal nor free of harassment or discrimination.

106. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

107. Ms.Victor was issued her sixth check from the Defendants on May 10, 2019 for the pay period of 4/22/2019 - 5/5/2019. The check was issued through Bank of America. The check was issued by Southwest Wine & Spirits LLC. The address for Southwest Wine & Spirits LLC, on the check, was 10459 Jefferson Blvd., Culver City, CA 90232. There was no phone number on the check. However, there was another company under

the name "Payment Solutions Support" listed on the check, additionally. This company had the address of 17390 Brookhurst Street, Fountain Valley, CA, 92708, listed on the check. When Ms. Victor googled this address the Company that resulted in the search was Ceridian, which is a corporation operating under Delaware law. The holding company for Ceridian was Ceridian HCM Holdings Inc., which is also a corporation operating under Delaware law. The check number was 730456378. The routing number was 06111278, the account number was 00000003299020208, and the sequence number was 000475280373. The check was issued for the amount of $511.37. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's.

108. In the employee file Ms. Victor received from Mosley & Associates in June of 2022, the Defendants put the check information for this pay period on a print out entitled "*Payroll Register Report*" which was run by Ms. Hunter. This print out document had the employee information, including social security numbers and earnings, of not only Ms. Victor but other Wally's employees. This time the employees included Ms. Victor, Ms. Carmody, Ms. Marc, Mr. Poulin, and Marco Osorno ("Mr. Osorno").

The private information of these employees, including their yearly earnings and their social security numbers, was NEVER information the Defendants had legal right to disclose to Ms. Victor and yet they did so carelessly.

109. On May 6, 2019, Ms. Victor wore a black crop top, black jeans, and boots to her work shift at Wally's, she had been working the closing shift that evening. Mr. Poulin was the closing manager that evening. The restaurant was a lot slower than usual and not busy. Mr. Poulin engaged in a conversation with Ms. Victor discussing how he has told other managers to "*back off*" and they needed to "*chill*" harassing Ms. Victor about her clothes and body because Ms. Victor would sue them and would have just cause. Ms. Victor thought it was funny that Mr, Poulin made such remarks when he was one of the worst predators employed with the Company. Ms. Victor ensured Mr. Poulin that if their behavior continued and/ or they fired her wrongfully, as she had been warned to expect, then she absolutely would be suing Wally's.

110. It is important to note again, that Mr. Poulin, warned the other Defendants, each of them, to stop their harassment, despite himself being one of the harassers, and even his own suggestion was ignored as their behavior did not seize.

111. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

112. On May 10, 2019, Mr. Turner told Ms. Victor that he had spent a lot of his time watching her YouTube videos and listening to her podcast, which is not something Ms. Victor asked him, or any of the Defendants to do. Mr. Turner brought up Ms. Victor's story about her encounter with NBA player Blake Griffin ("Mr. Griffin"), and told Ms. Victor that he had every intention of asking him about it next time he came into Wally's, Mr. Griffin came in often. Ms. Victor told him "*absolutely not*" and stated her life outside of work is completely different than here at work nor would it be professional to bother a customer about their past encounter with an employee. Mr. Turner laughed and as he walked away from the hostess stand yelled, "*I can't wait*". The other hostesses at the stand, curious of Mr. Turners remarks, asked Ms. Victor a million annoying and harassing questions about her personal YouTube videos, videos she never wanted to discuss while at work.

113. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

114. On May 13, 2019, Ms. Victor went to work and was awaiting on Management to give her an answer about having her birthday dinner with her girlfriends in the private dinner room. Multiple employees including Ms. Jimenez and Ms. Conrad had their birthday dinners and engagement lunches in the private dining room so Ms. Victor wanted to enjoy the same luxury with her girlfriends for her birthday. However, Ms. Victor was denied by management to host her birthday party in the back dining area and was not provided a reason why. This is now the second time Ms. Victor was not offered equal accommodations by the Defendants.

115. On May 17, 2019, the day before Ms. Victor's birthday, upset she had to make new plans after being denied having her birthday dinner in Wally's private dining room, Ms. Victor worked the closing shift at Wally's. Ms. Victor wore a bra for the first time while being employed at Wally's because her shirt was white. Ms. Victor was told by not just one but multiple Defendants, "*Wow, wearing a bra for once?*", "*Wearing a bra? Shocking*", etc. That many people, including named Defendants, had been paying such close attention to Ms. Victors breasts that it was noticeable to them when she put on a bra. During this shift Ms. Conrad used Ms. Victor's birthday as an excuse to "*celebrate*" and by celebrating Ms. Conrad was drinking and

taking explicit drugs with customers who were supplying them for her. Ms. Conrad attempted to encourage Ms. Victor to join the celebrating but failed in her attempts.

116. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

117. Ms. Victor's seventh paycheck from Wally's was issued on May 24, 2019 for the pay period from 5/6/2019 - 5/19/2019. The check was issued from Bank of America. The check was issued by Southwest Wine & Spirits LLC. The address for Southwest Wine & Spirits LLC, on the check, was 10459 Jefferson Blvd., Culver City, CA 90232. There was no phone number on the check. However, there was another company under the name "Payment Solutions Support" listed on the check, additionally. This company had the address of 17390 Brookhurst Street, Fountain Valley, CA, 92708, listed on the check. When Ms. Victor googled this address the Company that resulted in the search was Ceridian, which is a corporation operating under Delaware law. The holding company for Ceridian was Ceridian HCM Holdings Inc., which is also a corporation operating under Delaware law. The check number was 730575789. The routing number was 06111278, the account number was 0000003299020208, and the sequence number was 000573739260.

The check was issued for the amount of $642.35. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's.

118. In the employee file Ms. Victor received from Mosley & Associates in June of 2022, the Defendants put the check information for this pay period on a print out which was run by Ms. Hunter. This print out document had a section entitled "*Cash Tips*" and someone put on the line that Ms. Victor received $5.00 in cash tips which was an absolute lie, nor did Ms. Victor or any of the hostesses ever report how much tips they made at the end of the evening to management, ever, despite it being California law to do such.

119. On May 23, 2019, Mr. Turner crossed more than enough lines that would call for disciplinary action by the Defendants, yet nothing would be done. Ms. Victor was standing at the hostess stand with the other hostesses, Ms. Baker was also standing at the hostess stand. Mr. Turner approached the hostess stand with a smug look on his face staring at Ms. Victor with disgust. Mr. Turner blurted out, "*if I was a manager and I saw your social media you would have never gotten a job here. One*

*look at your social media and you can tell you don't belong in Beverly Hills."* Ms. Victor looked at Ms. Baker, who was laughing at Mr. Turners remarks, and asked her to write him up. Ms. Baker refused stating, "*he's just joking*". Ms. Baker failed to prevent and participated in Ms. Victor's harassment.

120. That same night Mr. Griffin was reserved in the private dinning room, Mr. Turner, prior to leaving the hostess stand told Ms. Conrad that Ms. Victor wasn't allowed to seat Mr. Griffin's table. Upon Mr. Griffin's arrival Mr. Turner went to the door to greet him and his party and while passing the host stand asked Mr. Griffin if he "*remembered this psycho*". Ms. Victor was not only humiliated and embarrassed, she was pissed. Mr. Turner had NO right. Ms. Victor left her shift in tears, which happened often.

121. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

122. On May 25, 2019, Ms. Victor wore a bright neon lime green, one shoulder long sleeve dress with tights, and boots to her work shift at Wally's. Despite getting more than enough compliments from customers, management again had an issue with Ms. Victor's attire, stating that the color was "*distracting*" to

their guests. Ms. Conrad, amongst other hostesses, always wore bright colors, it was only an issue when Ms. Victor did. Conveniently, for the Defendants, in the Handbook Ms. Victor received from Mosley & Associates in June of 2020, the Defendants changed their entire section in regards to work attire, stating hostesses could only wear neutral colors which was absolutely NOT the case when Ms. Victor was employed, proving fraud.

123. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

124. On May 26, 2019, Ms. Conrad introduced Ms. Victor to a good friend of Mr. Marciano's who was visiting from France and who had taking a liking to Ms. Victor's appearance. Ms. Conrad told Ms. Victor that they were all going to grab drinks at the Highlight Room after the shift had ended and to meet her there. Ms. Victor went home changed and went to the highlight room to meet them all, however, Ms. Conrad, nor anyone else was in site, only this man who was visiting Mr. Marciano from France. Ms. Victor felt tricked and entrapped in what felt like a set up by Ms. Conrad to sleep with Mr. Marciano's friend who was married and had multiple children. Ms. Victor went right home and did

not entertain him nor the situation. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

125. June was repetitive but had gotten progressively worse for Ms. Victor, in fact, there was a shift she walked into work and the other hostesses starting hugging her telling Ms. Victor how much they were going to miss her. Confused by such interactions, Karissa Yates ("Ms. Yates"), another hostess, texted Ms. Victor that management had told everyone that she was being fired. Can you imagine how awful it must have been for Ms. Victor to walk into that ambush and hold it together professionally and emotionally for a shift? The Defendants always wanted Ms. Victor fired, for no legitimate reason, other than pure racism, discrimination, and retaliation.

126. One shift, in June, Ms. Victor was standing beside Ms. Conrad who was wearing a crop top, the type of top that always use to get Ms. Victor in trouble or sent home. A customer arrived at the restaurant and was awaiting to be sat by the hostesses and during her wait began to engage in conversation with Ms. Victor and Ms. Conrad. Prior to the customers table being ready Ms. Conrad had been asked by the customer "*how far*

*along are you?*", the customer had thought that Ms. Conrad was pregnant. The customer proceeded to say, "*I could have never worn crop tops during my pregnancy*," then chuckled. Ms. Conrad, upset, told the customer that she was not pregnant and proceeded to tell Ms. Victor where to seat her. Ms. Victor walked back to the hostess stand and asked Ms. Conrad if she was okay as her mood had clearly changed. This is being mentioned to show that Ms. Victor always got in trouble for her outfits while Ms. Conrad did not, even when such outfits of Ms. Conrad's were non-flattering or inappropriate. Ms. Conrad could do as she pleased as the rest of the Defendants. She wore mini skirts, bright colors, low v-neck tops, mesh dresses, thigh high boots, you name it, and she never got sent home to change or written up. Ms. Victor would wear a classy one piece turtleneck jumpsuit and be written up and sent home because her "*body*" was distracting to "*wives husbands*".

127. Ms. Conrad had received terrible reviews on Yelp, that described her rudeness and unfriendliness as the front of Wally's. Ms. Conrad with all the Defendants, each of them, organized a meeting with Yelp and paid the women that came in a decent amount of money to get rid of all bad reviews on the Wally's Yelp page, including, the reviews about Ms. Conrad.

128. Ms.Victor received her next pay check, which would be the last time the Defendants issued her a check, on June 7, 2019. The check was issued by Bank of America. Despite this NOT being Ms. Victor's last check, the Defendants, unlawfully made it so. The check was issued by Southwest Wine & Spirits LLC. The address for Southwest Wine & Spirits LLC, on the check, was 10459 Jefferson Blvd., Culver City, CA 90232. There was no phone number on the check. However, there was another company under the name "Payment Solutions Support" listed on the check, additionally. This company had the address of 17390 Brookhurst Street, Fountain Valley, CA, 92708, listed on the check. When Ms. Victor googled this address the Company that resulted in the search was Ceridian, which is a corporation operating under Delaware law. The holding company for Ceridian was Ceridian HCM Holdings Inc., which is also a corporation operating under Delaware law. The check number was 730695307. The routing number was 06111278, the account number was 00000003299020208, and the sequence number was 000479928459. The check was issued for the amount of $669.78. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's.

129. On June 10, 2019, Ms. Victor was scheduled to work the closing shift at Wally's, however, she would leave early by her own decision, a decision that would be the beginning of the end of her employment with Wally's. Matt Marciano and his girlfriend Ms. Rotten had been sitting in the main dining room, drinking, per usual. They began to argue violently in the middle of the restaurant in front of other employees and customers. Matt Marciano was screaming at the top of his lungs at Ms. Rotten, so loudly that the veins in his neck had swelled up and expanded. Matt Marciano tossed his drink on Ms. Rotten and then choked her out. All employees, customers, and staff just stood there watching this horrible interaction. Ms. Victor asked the managers on shift if they were going to stop Matt Marciano from hurting his girlfriend, and no one did a thing… NO ONE.

130. Weeks prior to this night Ms. Victor had been on shift when Mr. Kachani, Matt Marciano, and Ms. Baker all got into an argument at the host stand. Matt Marciano who, at the time, was intoxicated on the job, was being yelled at by Mr. Kachani, that his behavior while on the work premises was not acceptable. The two men went back and forth aggressively and angrily in front of the hostesses on shift and Ms. Baker. They did not seize their arguments, not even for customers that were walking in and out of the restaurant. Matt Marciano's behavior did not change, now

he was comfortable enough to choke out his girlfriend in the middle of the restaurant.

131. Ms. Victor went to the host stand, explained her severe PTSD to her co-workers, clocked out and left Wally's for the night, refusing to stand by and do nothing like all other management.

132. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

133. On June 12, 2019, Ms. Victor wore a blue midi turtleneck dress with her hair curled to her work shift at Wally's. Asha Abdella ("Ms. Abdella") was working the morning shift 930AM - 3PM, while Ms. Victor came in to work the 1PM to 9PM shift. Wally's was beyond slow, so Ms. Victor asked Ms. Abdella to take photos of her for her IG, photos that remained posted on her IG for two years. After Ms. Abdella took Ms. Victor's photos she asked Ms. Victor if she could see how the photos came out. Ms. Victor handed Ms. Abdella her phone to look. Ms. Abdella began scrolling too far in Ms. Victor's camera roll and landed on personal photos of Ms. Victor that exposed her breast area, Ms. Victor immediately snatched her phone from Ms. Abdella. Ms. Abdella began discussing how she doesn't take

such photos of herself and Ms. Victor responded "*to each their own*". However, Ms. Abdella kept going and going and going about the topic which resulted in Mr. Poulin overhearing the conversation and interjecting with the statement, "*Tit pics? I used to love getting tit pics when I was single*". Mr. Poulin went on and on and on at the host stand about breasts and photos of breasts which was completely inappropriate, unwelcome, and unwanted by both Ms. Abdella and Ms. Victor.

134. This wasn't the first nor the last time Mr. Poulin as well as the other Defendants used the hostess stand to voice their sexual opinions about sexual topics or customers. Mr. Poulin was the king of coming to the host stand to discuss customers that had just come into the restaurant, with comments like "*Did you see the rack on her?*" Nothing was off limits to Mr. Poulin, a woman's entire physique was up for discussion when he deemed it fit. In fact, there was one afternoon a group of woman had been dining on the outdoor patio and had drank a bit too much. Matt Marciano, Mr. Poulin, and Mr. Navarro were all staring through the host stand window at the group of women, commenting on all of them and what they would do to them, sexually. At one point one of the women's breast fell out of her top and none of her friends let her know. Mr. Navarro, Mr. Poulin, and Matt Marciano lost their minds. Eventually the

customer saw the three men disgustingly and creepily staring at her through the window making her realize that her breasts had fallen out of her top. The three men all jolted away from the window with Mr. Poulin yelling "*She caught us!*" Followed by all them having a nice laugh over their predatory behavior.

135. Another instance when Mr. Poulin took it upon himself to have the hostesses listen to him at the host stand was when the actress Amber Meade ("Ms. Meade") came into the restaurant with one of her girlfriends. Ms. Meade was wearing a dark teal mesh and sheer top with no bra so her nipples were exposed. Ms. Meade looked beautiful as Ms. Victor recalls, however, Mr. Poulin focused only on her exposed nipples. The entire hour or two Ms. Meade was at the restaurant Mr. Poulin walked up to the host stand no less than five times talking about her breast and how he "*can't stop staring*". Making Ms. Victor, the other hostesses, and possibly Ms. Meade, if she overheard, uncomfortable.

136. At the end of Ms. Abdella's shift she hugged Ms. Victor, asked Ms. Victor if they could go out soon, and then left the restaurant. Half way through Ms. Victor's shift, Ms. Jimenez approached Ms. Victor and asked her if she could work on Saturday even though she was not scheduled to work. Ms. Victor

said sure and asked who she was covering. Ms. Jimenez explained to Ms. Victor that they planned on making Ms. Abdella work her entire shift on Friday then they were going to terminate her. Ms. Victor, a bit shocked, asked why she was being terminated. Ms. Jimenez responded by stating, "*She doesn't fit the vibe of the restaurant*." Ms. Victor, disgusted, asked, "*You mean she's too black?*" Ms. Jimenez laughed and confirmed the reasoning. Ms. Abdella did absolutely nothing to warrant being fired from Wally's, other than being too dark skinned for the Defendants. Ms. Victor firmly believes that they hire ethnic employees to pretend they are hiring enough people to create diversity, however, they intentionally and maliciously would immediately plan how to fire them or terminate them.

137. There was once a mixed race ethnic server, who had loyal customers, and was a great server, however, she stood up for herself when the Defendants came at her wrongfully like they had done to Ms. Victor. One lunch break, when Ms. Victor had been working, this server along with two others had gone next door to the restaurant called Gratitude. Ms. Baker, without the knowledge of the employees, including the ethnic server, told the management of Gratitude to refuse cash and have them pay with their credit cards, which they had done. Ms. Baker then retrieved those credit card statements from the management of

Gratitude which showed that the servers had alcoholic beverages on their lunch breaks, terminating all of them on the spot. The Defendants are not new to using deception, fraud, and malice to retaliate against any employees they wanted to get rid of which Ms. Victor would soon fall victim too.

138. On June 12, 2019, Ms. Victor worked her last shift before her wrongful termination. Ms. Victor was called into the office soon after her shift began and Mr. Poulin explained to her that all employees needed to sign a new waiver for taking late meal breaks and she too was require to sign one. Ms. Victor did such, however, this documentation, nor any documentation or complaints would be in the employee file given to Ms. Victor by her prior legal counsel in 2020 or 2021.

139. On June 14, 2019, Ms. Jimenez had texted Ms. Victor to confirm that Ms. Victor would still be covering Ms. Abdella's shift the following day, Saturday June 15, 2019. Ms. Victor texted Ms. Jimenez back and confirmed that she would be there for the work shift.  At 4:12pm Ms. Victor received a voicemail on her cellphone from Ms. Baker. In the voicemail Ms. Baker told Ms. Victor that she received a complaint of "*pornographic images*" that were seen on Ms. Victor's phone and that Ms. Victor was suspended "*pending*" investigation. Ms. Baker again made sure

to say that Ms. Victor was suspended immediately and to not come into her shift tomorrow. Ms. Baker told Ms. Victor that they would give her a call back to let her know how the investigation panned out but "*as of right now*" Ms. Victor was not allowed to go to Wally's. Ms. Baker ended the voicemail by telling Ms. Victor to give her a call if she had any questions.

140. Minutes after the voicemail was left on Ms. Victor's phone and was listened to, Ms. Victor immediately called the Defendants. Ms. Conrad answered the reception at the host stand and Ms. Victor told Ms. Conrad that it was her. Ms. Conrad immediately said "*I am so sorry baby, I can't believe they fired you*." Ms. Conrad said fired, not suspended, fired. Flabbergasted, Ms. Victor asked Ms. Conrad if the managers were already telling other employees that she was fired. Ms. Conrad confirmed that it was circulating around the restaurant and everyone was talking about it. Ms. Victor asked Ms. Conrad to transfer her to the office to speak to Ms. Baker. Ms. Conrad transferred the call.

141. Ms. Baker and Ms. Victor got on the phone with one another. Not once did Ms. Baker mention to Ms. Victor that she was on speaker or that there was any other managers present to bear witness to their phone call. Ms. Victor asked Ms. Baker what the ridiculous voicemail was. Ms. Baker told Ms. Victor

that she received a complaint from another employee about Ms. Victor having pornographic images on her phone that made the other employee feel uncomfortable. Ms. Baker then told Ms. Victor that she was suspended pending an investigation. Ms. Victor asked Ms. Baker how an investigation works and what to expect and Ms. Baker provided no information to Ms. Victor whatsoever. Ms. Baker did tell Ms. Victor that she would be contacted once the investigation was complete. Ms. Victor asked if it was Ms. Abdella who made the complaint against her as she was being fired. Ms. Baker confirmed that it had been Ms. Abdella. Ms. Victor attempted to explain what happened with Ms. Abdella to Ms. Baker but Ms. Baker would try and talk over her every other word. Ms. Victor asked Ms. Baker if Ms. Abdella had made a complaint against Mr. Poulin as well, as he was fully engaged in the conversation that made Ms. Abdella "*extremely uncomfortable*". Ms. Victor asked Ms. Baker if Mr. Poulin was also suspended pending an investigation. Ms. Baker became flustered and agitated with Ms. Victor asking questions that Ms. Victor felt she deserved the answers too. Ms. Baker did not answer any. Ms. Victor then asked Ms. Baker why she was being suspended after one complaint from a disgruntled employee who just got terminated, but not a single person that Ms. Victor filed a complaint against had ever been looked into, written up,

suspended, or punished in the same manner as Ms. Victor was for her first and only complaint.

142. Ms. Victor expressed to Ms. Baker her feelings of being targeted and how management, including her, we're all looking for any reason to fire her and that Ms. Abdella's termination and complaint was the perfect way to get rid of the two black girls that "*didn't fit the vibe of the restaurant*." Ms. Baker did not deny any of Ms. Victor's allegations nor did she answer any of Ms. Victor's questions. Ms. Baker just kept saying that Ms. Victor would be called when the investigation was complete.

143. It is important to keep in mind that Ms. Baker is the same manager who had stood at the hostess stand and laughed as another employee insulted, degraded, judged, bullied, and humiliated Ms. Victor followed by Ms. Bakers failure to prevent such and failure to report, despite Ms. Victor asking her to report Mr. Turner. Ms. Baker is also the manager who came up to Ms. Victor on several occasions and commented on the Plaintiffs nipples, outfits, social media, how she made mens wives feel, and much more throughout her entire employment. Ms. Jimenez had previously told Ms. Victor that management, including Ms. Baker, wanted Ms. Victor fired from the restaurant because of Ms. Victor's protected characteristics. Ms. Bakers entire motivation

to terminate Ms. Victor was fueled and motivated by her own personal judgements and biases of Ms. Victor. Ms. Victor's complaints that she had previously made, often times directly to Ms. Baker that were against Ms. Victor's superiors were never investigated nor reported to the HR department. But Ms. Victor was immediately suspended off a single complaint of an employee who just got fired. Ms. Victor's "*suspension pending investigation*" was bias, malicious, unlawful, and done with extreme malice. It was a personal attack against Ms. Victor and in no way professional or legal.

144. Ms. Victor demanded the contact information for the HR department, whom Ms. Victor would later learn in this litigation was Ms. Hunter and Defendant Ms. Burns. Ms. Baker refused to give Ms. Victor any email address that was a reliable number for the HR Department. Ms. Baker only provided Ms. Victor with a phone number to call. Once Ms. Victor ended the call with Ms. Baker, she immediately began calling the number provided to her from Ms. Baker for HR. Ms. Victor got the numbers voicemail box and left a voicemail asking to be called back to discuss details of the complaint made against her and to ask why none of her complaints had ever been handled in this same exact way. Over a period of days, and then weeks, Ms. Victor continued to call and continued to leave voicemails. Till this day, Ms. Victor has

never spoken to Ms. Hunter, Ms. Burns, nor anyone from the HR Department. Ms. Victor was never given any answers as to why none of her numerous complaints were taken as seriously as the complaint made against her. There was never an "*investigation*" against Ms. Victor, it was a simple and blatant wrongful termination based on pure hate and discrimination against her for Ms. Victor's protected characteristics.

145. Ms. Victor had texted Ms. Jimenez soon after Ms. Baker's voicemail was received and let her know that she would be seeking legal counsel and would be suing. Ms. Victor, who had a personal and friendly relationship with Ms. Jimenez outside of work, expressed to Ms. Jimenez her disappointment on how she could allow this to happen to her especially since she is the one who constantly warned her about management wanting to fire her. Ms. Jimenez also complained often about how unethical she thought the behavior of all Defendants was, which now includes herself.

146. Ms. Conrad, later that evening, sent Ms. Victor a long text message, apologetic, and Ms. Victor also let Ms. Conrad know that she would be seeking legal counsel. In one of the many voicemails, that Ms. Victor left for the number provided to her for the HR Department, she had also stated that she would be seeking legal counsel for wrongful termination, sexual

harassment, and discrimination, amongst other things. Which gave the Defendants more than enough notice and time to use their power and connections to ensure Ms. Victor's litigation was doomed from the start. For example, they had more than enough time to change their entire Handbook, including the Arbitration section, to ensure that it minimized Ms. Victors opportunity to have an equal and fair chance at due process and the Defendants could avoid a jury trial where they know Ms. Victor would win on the merits.

147. On June 17, 2019, Ms. Victor contacted attorney Mr. Mosley, and by July 2, 2019, her retainer to sue the Defendants was signed, which would turn out to be a terrible mistake as Mr. Molsey, Mosley & Associates, The Dominguez Firm ("TDF"), Thompson Coburn, and all attorney's and associates of each firm had been working together since the beginning to ensure that the Defendants got a quick and cheap litigation. Ms. Victor has NEVER had full and equal access to the judicial system, especially within the Los Angeles Superior Court.

148. Ms. Victor has yet, to this day, received her final paycheck nor all back pay, overtime pay, vacation pay, penalties, etc., that is owed to her from the Defendants. But that didn't stop the Defendants, Thompson Coburn, Mosley & Associates, and TDF from conspiring together when a copy of the

Handbook was emailed to Ms. Victor in June of 2020 which was almost an entire year after she signed a retainer to sue the Defendants. The Defendants and their co-conspirators had doctored fraudulent paperwork in her employee file, that showed two fake payments the Defendants supposably FedEx'd to Ms. Victor after refusing to provide check numbers and Fed Ex tracking information. The Defendants sent a print out for the check they had allegedly sent for the pay period from 6/3/2019 - 6/16/2019 that was issued by Wally's on 6/21/2019 for the amount of $667.44. These fake printed pieces of paper are only evidence in support of Ms. Victor's allegations that the Defendants broke the law, many laws, anytime they deemed it fit, to conceal their unlawful behavior without suffering the consequences and legal liability.

149. The Defendants and their co-conspirators printed out a second piece of paper for a check for the pay period from 6/17/2019 - 6/30/2019. A pay period that began three days after Ms. Victor's wrongful termination and a pay period that Ms. Victor did not work at all as she was told by Ms. Baker to NOT step foot in Wally's, not even to get her final payment nor wages owed in back pay, etc. This print out states that the check was issued on July 5, 2019, almost an entire month after Ms. Victor got wrongfully terminated, and just days after she

signed her retainer with Mr. Mosley. This check states that Ms. Victor worked thirteen hours during this pay period and the check was issued in the alleged amount of $172.47. These print outs are entirely fake and having them presented to Ms. Victor was insulting to her intelligence but having them presented in a litigation was fraud on the court. The Defendants have not paid Ms. Victor a single penny she is owed and has gone to extreme unlawful measures to conceal that truth.

150. Emails in the employee file sent over to Ms. Victor by Mosley & Associates containing incriminating evidence against the Defendants trying to not only conceal their wrongful termination, but a pathetic and malicious tactic to paint Ms. Victor in a false light. These emails show that the Defendants broke California laws as if doing such was acceptable or normal. Here are just a few of the things said in the emails that are not only contradicting but prove the Defendants broke many sections of law: "*I did some digging. It turns out Danielle Victor had shown a few of the hosts naked pictures of herself which in turn had made Asha feel uncomfortable*". "*I will suspend her this afternoon and send you final check details next week*". "*I'll cut the check on Monday*". "*I told her according to the handbook, we do not tolerate any harassment and take all complaints very seriously*". And these are just some of the many

lies that the Defendants nor Thompson Coburn could keep up with or maintain throughout the litigation.

151. Mosley & Associates kept telling Ms. Victor to postpone filing a labor and wage complaint with the Labor Commissioner until Ms. Victor took it upon herself to file such claim on August 9, 2019, which was almost two months since her wrongful termination and non payment of wages, In the employee file given to Ms. Victor in June 2020, Defendants Mr. Bjelajac and Ms. Burns began communication with the Labor Commissioners office with the email of <laborcomm.WCA.LAO@dir.ca.gov> on April 21, 2020. These email correspondence with the Labor Commissioner as well as Ms. Victor's scheduled hearing were almost an entire year after she filed her complaint in the Labor Commissioner's office on August 9, 2019. With that being said, the Defendants had an opportunity to compel arbitration about this dispute and did not, again waiving their legal right to do so, that is why the Defendants and their co-conspirators had gone to outlandish lengths to ensure that the case had gone to arbitration, even if it got there illegally.

152. The Handbook given to Ms. Victor by her prior legal counsel in June of 2020 had the following sections that were violated by the Defendants themselves: Under *Discrimination and Harassment* the Defendants violated the following sections: *Equal*

*Employment Policy/Policy Against Discrimination*, *Policy Against Harassment*, *Harassment Training*, *Manager Training*, and *Investigation of Reported Misconduct*. Under *Confidentiality And Conflict Of Interest* the Defendants violated the following sections: *Confidentiality of Business Information*. *Under Payroll Practices* the Defendants violated the following sections: *Pay Days*, *Payroll Corrections*, and *Request for Payroll Records*. Under *Hours Of Operation*, *Work Schedules and Compensation* the Defendants violated the following sections: *Meal and Rest Periods*, *Recovery Periods*, *Time Records*, *Accuracy Of Time*, *Overtime*, *Tip Reporting*, and *Guest Tips*. Under *Personnel Records* the Defendants violated the following sections: *Personnel Records*, *Personnel Data Changes*, and *Confidentiality of Medical Records*.

153. Under Company Policies and Procedures, the section entitled "*General Rules of Conduct*", the Defendants violated the following conduct: 1) Dishonesty in any form; 7) Unauthorized use of Company equipment, time, materials, or facilities; 9) Use, possession, or sale of unlawful drugs or alcohol while on Company premises, while in a Company vehicle, or while on duty, or reporting to work under the influence of alcohol or any unlawful drugs; 11) Failure to observe safety regulations; 12) Failure to report any unsafe conditions, damage to equipment or

machinery, job-related traffic accidents or violations to your manage; 13) Carelessness or negligence while performing duties; 16) Destruction or damage to the property of the Company, another employee, a client/customer, independent contractor, vendor or a visitor; 17) Unlawful harassment, discrimination or retaliation, including sexual harassment, against another employee, a client/customer, independent contractor, vendor or a visitor; 18) Disruptive horseplay on Company time or property; 19) Threatening, intimidating, or covering other employees, client/customers, independent contractors, vendors, or visitors; 20) Insubordination; 22) Disrespect or discourtesy to managers/ supervisors, co-workers, and/or clients/customers; 23) Failure to immediately and properly report a job-related injury, no matter how minor; 24) Making or receiving excessive personal telephone calls or text messages, other than emergency calls, during working hours; 25) Falsifying, altering, destroying, or willfully omitting information from any time card or Company record (including employment applications); 28) Using the confidential information of a prior employer for your own or the Company's benefit; and 32) Improper use of and/or failure to use timecards appropriately. Under this same Chapter the sections Discipline, Alcohol And Drug Policy, Social Media Policy were all violated by the Defendants.

154. The entire section entitled "*Employee Appearance*" was changed in its entirety prior to it being given to Ms. Victor by her prior legal counsel in June of 2020. However, the portion entitled "*Reporting Unsafe Conditions*" was violated by the Defendants.

155. Under *Alcohol and Service Policies*, the defendants violated the following sections: *Alcohol Service Policies*, *Alcohol Awareness Policy*, and *Intoxicated Guests*.

156. The Defendants violated *Vacation* and *Vacation Pay* sections of their own Handbook, as well as *Sick Leave*. The entire portion of the Handbook in regards to *The End of the Employment Relationship* was violated by the Defendants. In conclusion, their entire arbitration portion of their handbook, its rules and regulations, has never been enforceable, yet The Defendants, each of them, had unlawfully, in civil conspiracy, worked together to throw the Plaintiff's prior case into arbitration on the basis of fraud and manipulation.

157. Ms. Marc had contacted Ms. Victor and told her that several employees, including bus boys, servers, and bartenders were being sat down and coerced by the Defendants to allege that Ms. Victor would walk around the restaurant showing off private videos and body parts. Ms. Victor had given this text message evidence to Mr. Mosley and his associates whom had told Ms.

Victor, conveniently, that they lost such evidence right before Ms. Victor terminated their legal services for extreme unethical misconduct.

158. A week after Ms. Victor's "*suspension pending investigation*", Ms. Victor's twin sister Gabrielle Victor ("Gabi" or "twin sister") and Gabi's son Marcellus Victor ("Marcellus" or "nephew"), came to visit Ms. Victor in Los Angeles. They had gone to the Whole Foods located in Beverly Hills a few streets over from Wally's. While they were walking out of Whole Foods, Mr. Zamba had been walking into Whole Foods in his Wally's uniform, clearly on his lunch break. Ms. Victor had a friendly yet uncomfortable and humiliating encounter with Mr. Zamba as he apologized to her for what had happened and confirmed the entire restaurant was discussing her "*pornographic images*". Not only did the Defendants coerce almost the entire staff at Wally's but they defamed Ms. Victor by telling everyone her private business in regards to her employment. Their unlawful behavior never seized, not even after she was wrongfully terminated.

159. Ms. Victors prior legal counsel withdrew her Labor Complaints from the Labor Commissioners office without her knowledge, consent, or signature in May of 2020 to help all the Defendants, each of them, in civil conspiracy to conceal their

unlawful conduct and avoid legal and financial accountability for this unlawful conduct.

160. Ms. Victor's prior legal counsel, intentionally, delayed the filing of Ms. Victor's complaint over an entire year to try and ensure the Defendants could not be held liable for certain claims Ms. Victor alleged against them and the Defendants wanted to ensure that the timing of Ms. Victor's complaint allowed them to have a fraudulent response arguing affirmative actions. Such affirmative actions that only worked in the Defendants favor because Ms. Victor's prior legal counsel intentionally, maliciously, recklessly, with oppression, malice, and extreme hate, waited to file her complaint. Ms. Victor's prior legal counsel and the Defendants needed the statute of limitations to be in affect for more than half of Ms. Victor's alleged claims. Intentional actions taken to conceal the Defendants unlawful conduct and steps necessary to ensure the Defendants avoid legal and financial liability and accountability for such unlawful conduct.

161. The California Department of Human Resources divides progressive discipline into two phases, the "*corrective phase*" and the "*formal adverse action*" phase. In the corrective phase Ms. Victor had the right to be made aware of performance deficiencies and given an opportunity to correct them. During

the formal adverse action phase, Ms. Victor should have had the right to respond to Wally's HR department and also the chance to appeal to the State Personnel Board.

162. The State employer must provide due process before it can deprive an employee of their property, in this case, Ms. Victor's pay, back pay, overtime pay, etc., are her property. Wally's should have provided Ms. Victor a written notice that fully explained the adverse action, which was her "*suspension pending investigation*", a minimum of five days prior to the date of the adverse action which would have been Sunday June 9, 2019, since the adverse action took place on June 14, 2019. Ms. Victor had worked with her co-worker and also terminated employee of Wally's, Ms. Abdella, on June 12, 2019.

163. In some emails in the employment file given to Ms. Victor by her prior legal counsel in June of 2020, it was stated that Ms. Abdella made her complaint on June 12, 2019, and other emails state that she made her complaint on June 14, 2019 while she was being terminated. Either way a written notice should have been made immediately and given to Ms. Victor so that she could have responded to the charges at a Skelly hearing. Ms. Victor was never informed that she had the right to appeal to the State Personnel Board nor did she have a clue of the State Personnel Board's existence prior to legally representing

herself. Ms. Victor was never informed that she had the right to inspect any and all evidence upon which the employer relied to take the adverse action against her.

164. The most simple minimum due process rights that Ms. Victor should have been granted, including the right to a Skelly hearing, were denied to her. Ms. Victor must have received a notice of proposed discipline from Wally's, however, all she received was a voicemail from Ms. Baker on June 14, 2019. A proper notice needed to identify the specific rule or policy that Ms. Victor had violated that warranted a suspension and an investigation. A proper notice must have had a factual basis for taking disciplinary action. A proper notice must have been served with all documents, including a signed complaint from Ms. Abdella and her accusations against Ms. Victor, that warranted Wally's to take such disciplinary action. A proper notice must have included the effective date of the discipline. And lastly, a proper notice must have provided Ms. Victor with a deadline to any response to their claims. NONE of this was done properly or at all by the Defendants, therefore denying Ms. Victor her rights to defend herself, a repeated pattern that has been continued throughout the Plaintiff's prior bias, prejudicial, and unethical litigation.

165. Defendant’s cannot provide the Court a substantial motivating reason for any behavior or actions done by Ms. Victor that contributed or led to her being “*suspended pending investigation*”. However, Ms. Victor can clearly prove to the Court and to the Public that such adverse action taken by the Defendants was solely discriminatory and that their decision to suspend Ms. Victor was based on her protected characteristics and the Defendants hate for Ms. Victor for her protected characteristics. “*While a complainant need not prove that racial animus was the sole motivation behind the challenged action, he must prove by a preponderance of the evidence that there was a “casual connection” between the employee’s protected status and the adverse employment decision.*’” (Clark v. Claremont University Center (1992) 6 Cal.App.4th 639, 665 [8 Cal.Rptr.2d 151]). “*Substantial motivating reasoning has been held to be the appropriate standard under the Fair Employment and Housing Act to address the possibility of both discriminatory and nondiscriminatory motives*. (Harris v. City of Santa Monica (2013) 56 Cal.4th 203, 232.)

166. The Defendants all rallied together, and often, to figure out a plan that could be executed successfully, where the end result would be the Plaintiff’s permanent exit from the company. Whether it would be from getting the Plaintiff to quit

voluntarily by intentionally and maliciously being persistent in ongoing harassment, hostile bullying, or any other reason they could fabricate a termination.

167. The Defendants, each of them, did, and continue to make false and malicious statements about the Plaintiff, her work ethics, and her morals, a prime example is when the Defendants told the entire staff why Ms. Victor was terminated, how they were "*glad*" she is no longer employed at Wally's, working with her was a "*nightmare*", etc. The Defendants had been targeting and retaliating against Ms. Victor for multiple different reasons: The women working in management and other female staff members, for their own personal bias, racism, discrimination, or possible envy. The men working in management and other male staff members for the Plaintiff showing zero interest in sexual advances, sexual derogatory comments, and for complaining and having a voice that became more vocal, each and every time Ms. Victor felt uncomfortable in the work environment at Wally's.

168. CA Labor Code §216 states, "*in addition to any other penalty imposed by this article, any person, or any agent, manager, superintendent, or officer thereof is guilty of a misdemeanor, who… had the ability to pay, willfully refuses to pay wages due and payable after demand has been made.*" The

Defendants, each of them, have now, on more than a hundred occasions, conspired together with oppression, malice, and extreme hate, to ensure that they do not and will not pay Ms. Victor the wages she is owed.

169. And those who "*falsely denies the amount or validity thereof, or that the same is due, with intent to secure for himself, his employer, or other person, any discount upon such indebtedness, or with intent to annoy, harass, oppress, hinder, delay, or defraud, the person to whom such indebtedness is due*." The Defendants, each of them, in civil conspiracy with all other co-conspirators, and all other known and unknown defendants; helped one another, and each other, to deny, oppress, annoy, harass, and hinder, Ms. Victor from obtaining the debt she is owed. They are also all guilty of bringing fraud upon the court and are all equally guilty of misdemeanors.

170. During Ms. Victor's employment at Wally's she got in trouble multiple times, both verbal complaints and written complaints, for her dress code and in return to these corrective actions, Ms. Victor also filed both written and verbal rebuttal's to management's complaints, especially the ones that violated Wally's own Handbook directly discriminating against her.

171. When Ms. Victor received a copy of her Employee file in 2020 by Mosley & Associates, there were no copies of her written write ups nor her rebuttals, and most importantly no copies of any of her written complaints against several different managers. All of these are required to be placed in any employees official personnel file and yet the Defendants had and have no copies and a clear lack of care to provide such documents during an entire fraudulent litigation.

172. CA Labor Code Section 246.5, subdivision (b), states, "*an employer shall not require a condition of using paid sick days that the employee search for or find a replacement worker to cover the days during which the employee uses paid sick days.*" Ms. Victor herself, picked up multiple shifts that were the shifts of other hostesses who asked Ms. Victor to work for them in replacement of themselves in order to use a sick day. The Defendants would not allow their employees to call out without being penalized for such actions unless they could find someone else to cover their shift, in violation of this Section and also against subdivision (c)(1) which states, "*an employer shall not deny an employee the right to use accrued sick days, discharge, threatens to discharge, demote, suspend, or in any manner discriminate against an employee for using accrued sick days, attempting to exercise the right to use accrued sick days,*

*filing a complaint with the department or alleging a violation of this article, or opposing any policy or practice or act this is prohibited by this article."* Not only did Ms. Victor witness her co-workers being forced to go against this Section, but for years now, Ms. Victor herself has been retaliated against by the Defendants for her repeated attempts to report violations of this Section made by the Defendants. Paragraph (2) of this section further states, "*there shall be a rebuttable presumption of unlawful retaliation if an employer denies an employee the right to use accrued sick days, discharges, threatens to discharge, demotes, suspends, or in any manner discriminates against an employee…"*

173. During Ms. Victor's employment with the Defendants, artist and celebrity Post Malone ("Mr. Malone") attended the restaurant and had a dinner party in the private dinning area. When his dinner concluded, he left a tip of $60,000 which was advised to be split evenly amongst all employees of the restaurant whom were working that evening, which included Ms. Victor who had been working the host stand. Everyone who had been working that night received their portion of the tip that was given by Mr. Malone, except Ms. Victor, who to this day, has never received her portion of the tip owed her from that

evening, which was obligated to be given within the next regular payday.

174. Ms. Victor, many times, worked, and is owed, compensation for overtime pay, which has still yet to be paid by the Defendants.

175. Almost every single work shift that Ms. Victor had worked at Wally's, she was harassed by management or other employee's about her personal social media accounts or her podcast entitled "*Swallow It*". In fact, multiple times, management, or Wally's principal, Mr. Navarro, would approach Ms. Victor, pulling up an image of her from her personal social media page(s) to harass Ms. Victor. Mr. Navarro, amongst others, also, would make comments about "*stalking*" Ms. Victor's social media, while liking all of, what Thompson Coburn referred to as, "*Ms. Victor's "half dressed" photos*" or "*adult content*". Mr. Navarro had left comments on Ms. Victor's social media content such as the fire flame emoji or drool face emoji that have an underlying sexual tone.

176. Ms. Victor's social media was a topic of conversation amongst all employees of Wally's and was one of the main reasons management, especially Ms. Baker and Ms. Jones, targeted and retaliated against Ms. Victor in hopes that she would quit her job and they could avoid a wrongful termination lawsuit.

Comments made by management and other employees were always in front of other staff and other management and despite Ms. Victor making multiple complaints about her social media becoming an everyday topic at work, nothing was ever done to stop the harassment.

177. Ms. Victor never received a written notice when the Wally's Handbook was changed and amended. Ms. Victor was never given a written notice with Wally's "*doing business as*" business names, in fact, Ms. Victor did not even know that Wally's went by the legal entity name of *Southwest Wine & Spirits, LLC*; nor did Ms. Victor know that *Southwest Wine & Spirits, LLC* **was a limited liability company doing business under Delaware law**, until she began representing herself and doing her own research. In fact, Ms Victor's prior legal counsel filed her complaint in the Los Angeles Superior Court naming *Southwest Wine & Spirits, LLC, a California limited liability company*, as a defendant, which is false and fraudulent information. Ms. Victor, technically, had never been suing any real person, entity, or corporation with her Los Angeles Superior Court case which was an intentional act done by all Defendants with oppression, malice, and extreme hate. And upon doing her own research Ms. Victor discovered that *Southwest Wine & Spirits, LLC, a Delaware Limited Liability Company* also does business as *Mel-Jen* and

*Wally's Auction House, LLC*. Southwest Wine & Spirits, LLC, the location in California, is a foreign branch of the Delaware limited liability company, licensed to do intrastate business in California. All this information was information Ms. Victor discovered only after being forced to represent herself in her own litigation. This was **not** information given to her as an employee from her employer. Wally's is actually a trademark name for Southwest Wine & Spirits, LLC, not a real business name.

178. Ms. Victor had been denied the right to amend her complaint by both Judge Yolanda Orozco and arbitrator Judge Miller and therefore denied the opportunity to tell the court of each and every time the Defendants allowed themselves or their customers to make physical invasions and physical intrusions of sexual nature while Ms. Victor was working as a hostess. Ms. Victor was denied the right to tell the court or a jury of her peers about each time she had to tell a customer of Wally's to not touch her bottom or her breasts after the customer was encouraged to do so by management.

179. Throughout the Plaintiff's prior litigation multiple emails and documents had been presented that were made on the basis of fraud. For example, the two fabricated and fraudulent pay stubs created by the Defendants to argue that Ms. Victor received her last pay check and missing wages, when she indeed

never received what she is owed. Multiple decisions made by the Defendants, each of them, were made fraudulently that would intentionally lead to Ms. Victor's complete duress. The stipulation to bind that case to arbitration was not only a mistake but was fraud, amongst many other legal documents, making the Defendants in violation of CA Civil Code §1567.

180. On June 17, 2019, Ms. Victor was referred to attorney, Mr. Mosley(SBN 244169) whom she contacted for legal services. On July 2, 2019, Ms. Victor signed a retainer with Mosley & Associates to take on her employment and labor complaint. Ms. Victor signed her retainer with Mosley & Associates with her free hand signature but then Mr. Mosley required her to sign her retainer again with DocuSign, an electronic signature. Not thinking much of this request, Ms. Victor complied, only to realize that Mr. Mosley wanted her to sign with DocuSign so he could later forge her signature on documents, including authorization forms, and a retainer dated January 3, 2019, which was a month before she began her employment at Wally's, and six months prior to Ms. Victor contacting Mr. Mosley for legal services.

181. On August 5, 2019, Mr. Mosley sent Ms. Victor a new retainer for TDF with attorney Mr. Kim (SBN 282039). Ms. Victor was under the impression that Mr. Mosley worked for TDF and Mr.

Kim was his boss. It was not once explained to Ms. Victor that she was obtaining co-counsel or that Mr. Mosley and Mr. Kim agreed on a fee split in regards to her litigation. In fact, to this day, Ms. Victor has never even had a single correspondence in person, on the phone, or by email with Mr. Kim.

182. On August 5, 2019, Ms. Victor also signed an Employee Records Authorization Form and a HIPAA form for TDF; Ms. Victor never signed these forms for Mr. Mosley or Mosley & Associates, in fact, Mr. Mosley and Mosley & Associates, forged Ms. Victor's signature on a HIPAA form and an Authorization for Employees Records for Mosley & Associates when Ms. Victor only ever signed such documentation for TDF. Ms. Victor never signed a co-counsel agreement nor did she ever sign a fee-split agreement, TDF, Mr. Kim, Mosley & Associates, and Mr. Mosley, once again forged Ms. Victor's signature on a co-counsel agreement and a fee split form. A form Ms. Victor did not see until Defendant Ms. Headworth accidentally sent Ms. Victor a copy of such record in a OneDrive client file in June of 2021.

183. The Defendants, each of them, have been, and continue to be, careless about their blatant conspiracy and corruption. Ms. Victor believes that they behave in such a way because their criminal organization contains so many people, including members of the State Bar of California who fail to suspend, disbar, nor

investigate attorney misconduct complaints they receive from Plaintiff's such as Ms. Victor. Matter of fact, Ms. Victor has submitted several complaints against each individual attorney named on this Complaint with evidentiary support of their criminal conduct and the State Bar of California has not investigated a single incident. The Defendants, each of them, have come to believe that they are fully protected and their actions are above the laws, laws the Judicial officers they bribe, are meant to uphold.

185. From July 2, 2019 to August of 2019, Ms. Victor constantly asked Mr. Mosley when she could go to the Labor Commissioner's Office to file her Labor Complaint against the Defendants in addition to a retaliation complaint. Mr. Mosley constantly told Ms. Victor to hold off on filing the complaint in the Labor Commissioner's officer until they got things going in the Superior Court. Often time months and months would go by without any contact from the Plaintiff's attorney's, in fact, the only time she was provided an update on her case was when she had to reach out to them first for an update.

186. On August 9, 2019, Ms. Victor went into the Labor Commissioner's office on her own accord to file her complaint against Wally's, as nearly three months had gone by without payment from Wally's. Wally's was required by California State

law to give Ms. Victor all wages due upon her separation of employment, but they did not, and still have not. At the Labor Commissioner's office, Ms. Victor was told by a woman at the clerks desk to fill out a handwritten form and put such form in a bin upon completion, Ms. Victor complied. A year would pass and Ms. Victor never received a letter or mailing from the Labor Commissioner's office, in fact, she had to go in to get a copy of documents in regards to her hearing with Deputy Commissioner Cathy Ray ("Deputy Cathy Ray"), who is a named Defendant on the separate case Ms. Victor has filed in the United States District Court for the District of Massachusetts. On the paperwork Ms. Victor retrieved the Labor Commissioner's office did not even have Ms. Victors apartment unit number in the address portion, which was provided to them upon completion of her original paperwork.

187. The California Labor Commissioner's involvement, as well as the involvement of their Deputy Commissioner's, in this civil conspiracy, and their role in this criminal organization has been addressed in a separate complaint filed by the Plaintiff in the United States District Court for the District of Massachusetts. However, Deputy Cathy Ray and Mosley & Associates dismissed Ms. Victor's original complaint to their office without her consent, approval, signature, or

acknowledgement. This was a calculated and pre-meditated plan done by the Defendants, each of them.

188. Six months after Mr. Mosley had Ms. Victor sign multiple documents for TDF, TDF sent Ms. Victor a letter of termination of services, that stated no other explanation other than goodbye and good-luck. Such letter of termination of services was received only after TDF received a signed HIPAA form and an Authorization for Employment Records. Mr. Kim did not provide Ms. Victor her client file, did not offer any detailed explanation for his sudden need to end representation, nor was it explained how her HIPAA or other authorization forms were used or could be used in the future. Mr. Kim and TDF did nothing they were obligated to due under the Rules of Professional Conduct of the State Bar of California.

189. Freaking out and panicking, Ms. Victor had called Mr. Mosley and told him about the termination letter from TDF. Mr. Mosley offered to continue representing Ms. Victor through his own firm and with his associates, "Mosley & Associates" which, as mention previously, is a fictitious business name. Ms. Victor complied as she believed there was no other option. Later, Ms. Victor would discover that TDF's termination of services was also a pre-meditated, calculated, willful, and malicious move made by the Defendants, each of them, to solidify the end result

of a litigation which they needed for their criminal organization to be successful and for the Plaintiff to be in delusion and unsuccessful in any litigation.

190. Ms. Victor constantly called, emailed, and texted Mosley & Associates asking for an update on the status of her case as months would pass by and Ms. Victor's attorney's would never make contact with her. When Mosley & Associates did make contact with Ms. Victor they would provide no explanation as to the delay in filing her case only that it was happening soon. Ms. Victor would later realize that the delay in the filing of her lawsuit against the Defendants was also pre-meditated, calculated, willful, and malicious. Such delay was done by Mosley & Associates to help their partners, in this criminal organization, be able to argue statute of limitations against Ms. Victor's legal claims/ allegations, ensuring an unethical, unlawful, and easy win through criminal activity and manipulation.

191. On September 9, 2020, almost a year and a half after Ms. Victor signed her retainer for legal representation on her employment matter, Ms. Victor's prior legal counsel Mosley & Associates, and attorney's Mr. Mosley, Ms. Contreras (SBN 322545), and Mr. Montoya (SBN 317057) filed the complaint (the "Complaint") in the LASC, Stanley Mosk Courthouse, Los Angeles

County, styled as *DANIELLE VICTOR, an individual v. SOUTHWEST WINE & SPIRITS, LLC, a California limited liability company; WALLY's VIONTECA, a California business entity form unknown; WALLY'S WINE & SPIRITS, a California business entity form unknown; WALLY'S BEVERLY HILL'S, a California business entity form unknown; CHRISTIAN EDUARDO NAVARRO, an individual; MATTHEW MARCIANO, an individual; and DOES 1 through 20, inclusive*, with eleven causes of action, State Court Case No. 20STCV34566 ("the State Court Action"). The jurisdiction of this State Court Action are fraudulent and the case should have NEVER been filed in the Los Angeles Superior Court because the case includes parties of several different jurisdictions and the Plaintiff has always sought relief in an amount that exceeded well over seventy-five thousand dollars ($75,000). The factual allegations made by Mosley & Associates in this Complaint, in addition to the Prayer for Relief, were entirely vague and fraudulent and were submitted to the Court as true and genuine without the approval or knowledge of the Plaintiff.

192. Mr. Mosley submitted Proof Of Service of Summons to the LASC, this was in conspiracy with One Legal LLC ("One Legal"), who is a named Defendant on Ms. Victor's separate case filed in the United States District Court for the District of Massachusetts. In multiple of these documents, not only are

their fraudulent signatures, spelling mistakes, but not all of the incorrectly named Defendants were served… in fact, absolutely no one was served by Mosley & Associates on behalf of the Plaintiff nor did One Legal ever serve anyone in a legal way. Both One Legal in conspiracy with the Defendants, each of them, submitted fake legal documents to the Court as genuine and true which is a felony in the State of California.

193. In multiple of the "*Proof of Service*" documents the location states CENTRAL DISTRICT with the Stanley Mosk Courthouse address, 111 N. Hill Street, Los Angeles, CA 90012, not the correct address of the United States District Court, Central District of California which should have been listed as First Street Courthouse Building, 350 W 1st Street, Suite 4311, Los Angeles, CA 90012-4565 or the Edward R. Royal Federal Building and United States Courthouse, 255 East Temple Street, Los Angeles, CA 90012-3332, because this case was always meant to be filed in a Federal court but was thrown into the LASC with intention, malice, calculation, oppression, extreme hate, and on the grounds of public corruption by the Defendants, each of them, in civil conspiracy.

194. Multiple papers that had been fraudulent provided to the court as a "*Proof of Service of Summons*" by One Legal and Mosley & Associates displayed how careless both One Legal and

Mosley & Associates had been, they did not even care to spell the Defendants company name correctly, putting "OUTHWEST" instead of "SOUTHWEST". One Legal and Mosley & Associates claimed they served WALLY'S WINE & SPIRITS, a California business entity form unknown, WALLY'S VINOTECA, a California business entity form unknown, WALLY's BEVERLY HILLS, a California business entity form unknown, all at 447 N. Canon Drive, Beverly Hills, CA 90210. Wally's Vinoteca is not a real business name nor a fictitious business name and the same goes for Wally's Wine & Spirits, and Wally's Beverly Hills, so a company that doesn't exist cannot be served. And if all these fake businesses were served to the same address, by the same company, One Legal, why were they served by different process servers on different days?

195. One Legal and Mosely & Associates had Southwest Wine & Spirits, LLC, a California limited liability company, served at Incorporating Services, Ltd. to a Jennifer Lee at 7801 Folsom Blvd., 202, Sacramento, CA 95826. First obvious problem is Southwest Wine & Spirits, LLC is a Delaware limited liability company and they have it listed as a California LLC, false information on a document filed with the court that is meant to be true and correct in direct violation of *California Rule of Court*, **Rule 2.132**, which states that a party or attorney who

files a form certifies by filing the form that it is a true copy of the form, in addition to multiple violations of Federal codes of law.

196. Furthermore, the registered agent and address for Southwest Wine & Spirits, LLC, where they must be served, is William F. Payne ("Mr. Payne") to 144 S Beverly Dr., Suite 600, Beverly Hills, CA 90212, not to Incorporating Services in Sacramento. There is a business called *SOUTHWEST SPIRITS & WINE, LLC*, which has absolutely no relation to Wally's, whose agent of service process is Incorporating Services, Ltd. This is more evidence of how careless both One Legal and Mosley & Associates, had been handling Ms. Victor's paperwork and their lack of care to even attempt to look non-fraudulent. Their unlawful conduct must be behavior they engage in often, as both One Legal and Mosley & Associates were comfortable in doing such fraudulent and unlawful conduct. California Code of Civil Procedure, section 415.95, subdivision (b), states that "*service of a summons pursuant to this section is not valid for a corporation with a registered agent for service of process listed with the Secretary of State*". Well, Southwest Wine & Spirits, LLC, a Delaware limited liability company, does have a registered agent for service of process listed with the Secretary of State, and therefore, the summons submitted to the Court by Mosley &

Associates on behalf of Southwest Wine & Spirits, LLC, a California limited liability company (which does not exist and is fraudulent), is not valid, therefore the correct Defendants have never been served a complaint on behalf of Ms. Victor.

197. Defendant Mr. Navarro was listed on the State Court Action as "Christian "Eduardo" Navarro", which is incorrect, as there is no legal proof his middle name is Eduardo. In fact, even on the Wally's website he is referred to by Christian Navarro. Mosley & Associates never served Christian "Eduardo" Navarro, yet his name was on the answer/denial filed to the LASC by Thompson Coburn on December 23, 2020, over three months after such complaint was allegedly received. In fact, every fraudulent name was on one answer/denial submitted to the court, however, each individual Defendant is required, by law, to respond to the complaint. Again, this was a calculated, malicious, and intentional move done by the Defendants, each of them, to put fraud upon the court and to move a litigation in favor of the Defendants without Ms. Victor's knowledge or consent. How can companies that do not exist and Defendants that have not been served respond to a legal complaint? It is not a possibility, it is simply fraud.

198. In addition, Matt Marciano and Mr. Navarro are individual Defendants Ms. Victor claims and alleges are personal

liable for her pain, suffering, and holds responsible for damages, and they would have needed to be personally served. There were no documents submitted to the LASC by Mosley & Associates under California Code of Civil Procedure, section 1011(b), stating that these individual Defendant's addresses were unknown. Nor did at any point in the past three years during that fraudulent litigation had there been a declaration of compliance with fictitious business name laws been made available to Ms. Victor by any court clerk as required by the California Rules of Court.

199. All of the "*Proof of Service*" submitted to the LASC by Mosley & Associates and One Legal have **"BY FAX"** on them but there is no court order approving that such documents, or any documents, were allowed to be sent or served via fax. There is also no fax transmission receipts that show the number which was faxed and if such fax transmission was delivered in error, because these documents were not served nor were they ever faxed because the Proof of Service's submitted to the LASC were fraud on the court. *California Rules of Court*, **Rule 2.304**, subdivision (b) requires that any party filing a document by fax must use the Facsimile Transmission Cover Sheet (Fax Filing)(form-MC-005). Further, *California Rules of Court*, **Rule 2.306**, subdivision (a)(1) only permits service by fax if both parties

have agreed and if that agreement is confirmed in writing, which was not done. Ms. Victor believes that Mr. Mosley did not maintain a list of parties and their fax numbers because it is impossible to fax a company that does not exist. This is violation of subdivision (b)(1) of this rule. Subdivision (h) of this Rule states that service by fax may be used except that: "*(1) the date and sending fax machine telephone number must be used instead of the date and place of deposit in the mail; (2) the name and fax machine telephone number of the person served must be used instead of the name and address of the person served as shown on the envelope; (4) a copy of the transmission report must be attached to the proof of service and the proof of service must declare that the transmission report was properly issued by the sending fax machine; and (5) service of papers by fax is ineffective if the transmission does not fully conform to these provisions*." The date and fax machine telephone number were not used on any of the Proof of Service of Summons submitted by Mosley & Associates and One Legal, in fact, they used the date and address of N. Cannon Drive, which is in direct violation of this rule. Mosley & Associates and One Legal did not attach a copy of the transmission report of each of these alleged faxes that shows that each alleged fax was properly issued by the sending fax machine. Since Mosley & Associates and

One Legal did not fully conform to the provisions of this Rule of Court, the service of papers they allegedly sent via Fax, to companies that don't exist, are ineffective. No one has been legally nor properly served in Ms. Victor's case.

200. On December 23, 2020, attorney Ms. Riccomini") and attorney Mr. Silbergeld (SBN 81093), on behalf of Thompson Coburn, filed an answer "*general denial*" in response to the Complaint filed by Mosley & Associates in September of 2020. Thompson Coburn's Answer/General Denial was filed over three months after Mosley & Associates had filed a complaint on behalf of Ms. Victor in the LASC. Thompson Coburn and the Defendants had thirty days to respond to Ms. Victor's Complaint but instead they filed their Answer/General Denial on the same day that both Thompson Coburn and Mosley & Associates filed their case management statements to the LASC. Judge Yolanda Orozco did not issue an order to show cause why the Defendants and Thompson Coburn should not be imposed with sanctions for their failure to submit an answer to the Court. There was no court order for an extension of time for the Defendants and Thompson Coburn to answer. Mosley & Associates did not file a Motion asking the Court nor Judge Yolanda Orozco to set the Defendants into default for their failure to respond to the Complaint. All these "*failures*" made by Thompson Coburn, Mosley & Associates, and

Judge Yolanda Orozco were a result of them working together, in conspiracy, to ensure they had the results they wanted for the Defendants, each of them, in Ms. Victor's prior litigation. Ms. Victor was provided, at no time, by Mosley & Associates an update on her case or documents being filed on behalf of her case. In fact, Ms. Victor was completely unaware of the laws that allow Defendants and their legal counsel to be set in default if they failed to respond to a Complaint in a timely fashion, until she was forced to represent herself in her prior litigation.

201. More importantly, how did Thompson Coburn file an answer and general denial on behalf of Defendants if no one was properly legally served Ms. Victor's complaint if not on the basis of fraud? Thompson Coburn's Answer/General Denial filed in the LASC listed fifty affirmative defenses against Mosley & Associates eleven allegations. It was the Defendants, each of them, pathetic attempt to make a victim into a villain, a pattern that the Defendants, each of them, have disgustingly continued throughout the past three years during the Plaintiff's fraudulent prior case.

202. Ms. Victor, prior to representing herself, and prior to Mosley & Associates filing a complaint on her behalf in 2020, would constantly ask her attorneys for an update on her legal

case and would constantly ask why a suit was not yet filed in the court. Ms. Victor eventually came to the realization that Mosley & Associates timing on filing her Complaint was an intentional, calculated, and malicious move made in the chess game the Defendants played, that molded their civil conspiracy. Mosley & Associates filed Ms. Victor's Complaint over a year after she signed a retainer to ensure that the Defendants and Thompson Coburn could use affirmative defenses to sabotage Ms. Victor's legal claims/allegations, a list that was entirely incorrect and lacked almost eighty percent of the real legal claims the Plaintiff has made against the Defendants, each of them.

203. In Thompson Coburn's Answer/General Denial, attorney Mr. Silbergeld, when discussing judgement, stated, "*for such other and further relief as the Arbitrator may deem proper*". Why would Mr. Silbergeld mention an arbitrator in their Answer/ General Denial which was submitted to the LASC prior to the case being fraudulently thrown into arbitration, if such decision for arbitration was not made prior between all the Defendants and the court? Ms. Victor had always demanded a jury trial, never once, did Ms. Victor agree to arbitration, yet Thompson Coburn's Answer/General Denial was focused on the results of an arbitration. Grounds for fraud and deceit.

204. Ms. Victor was never told by Mosley & Associates about Case Management or Case Management Statements which had been filed without Ms. Victor's knowledge, in the LASC, by both Mosley & Associates and Thompson Coburn. Ms. Victor was never told by Mosley & Associates about the Case Management Conference nor the Case Management Order made by Judge Yolanda Orozco after an alleged hearing was held on January 7, 2021. *California Rules of Court*, **Rule 3.812**, provides that if parties in a lawsuit stipulate to arbitration then said stipulation must be filed no later than the time the initial case management statement is filed, unless the Court orders otherwise. Mosley & Associates and Thompson Coburn both filed their Case Management Statements on December 23, 2020, allegedly had a Case Management hearing with Judge Yolanda Orozco on January 7th, 2021 where Judge Yolanda Orozco issued a Case Management Order, followed by both Mosley & Associates and Thompson Coburn both posting Jury fee's for a trial, a trial Ms. Victor has always demanded. After both counsels allegedly posted Jury Fees they then, collectively, signed a fraudulent Stipulation to Arbitration binding Ms. Victor to an arbitration without Ms. Victor's knowledge, consent, and despite Ms. Victor always demanding a Jury trial. This Stipulation to Arbitration was fraudulently produced by attorney Ms. Contreras on a document with the header for

Thompson Coburn. In fact, this fraudulent Stipulation for Arbitration was signed by Ms. Contreras days prior to Thompson Coburn ever signing such documentation. Ms. Contreras on behalf of Mosley & Associates signed this Stipulation to Arbitration on January 22, 2021, while Thompson Coburn signed this stipulation on January 26, 2021. What this means is that Mosley & Associates signed such stipulation fifteen days after the Case Management Conference and Thompson Coburn signed such stipulation nineteen days after the Case Management Conference. Judge Yolanda Orozco nor the Court ordered "otherwise" allowing an extension of time so both Counsels and the Court had violated their own Rules of Court to benefit this civil conspiracy and their own personal interests.

205. The Case Management Statement that was submitted on Ms. Victor's behalf to the LASC by Ms. Contreras and Ms. Headworth on December 23, 2020, was submitted without Ms. Victor's consent, knowledge, or approval. Such Case Management Statement was signed by both Ms. Contreras and Ms. Headworth, under the penalty of perjury, that all information was true and correct when all information was not true nor correct.

206. Here is each invalid and false statement made by Mosley & Associates on the Case Management Statement they submitted to the LASC, on Ms. Victor's behalf, under penalty of

perjury: Question one asked and was answered that the statement was submitted by Ms. Victor, the Plaintiff, however Ms. Victor was unaware of Case Management or such statement until she began representing herself in June of 2021 and had printed all Court documents for her own records.

207. On question three of the Case Management Statement submitted to the LASC by Mosley & Associates, Ms. Contreras answered that "*all parties named in the Complaint and Cross Complaint have been served, have appeared, or have been dismissed*." Such answer is invalid, false, and fraudulent as the Defendants which had been named on the Complaint, submitted by Mosley & Associates on behalf of Ms. Victor in September of 2020 to the LASC, were intentionally and maliciously named incorrectly or falsely so that Ms. Victor was suing no one in their actuality. As discussed herein and above, the Proof of Service of Summons are all ineffective and non valid and no one had ever been properly legally served a summons. How could Ms. Contreras have answered this question as true and certified, under the penalty of perjury, if Mosley & Associates did not even serve their own client Ms. Victor, the Plaintiff, any documentation whatsoever? The correct Defendants were not named on the Complaint filed by Mosley & Associates to the LASC so the correct Defendants were never served, never appeared, nor were

they dismissed. Ms. Victor, the Plaintiff in this pending LASC matter, was also not served by her own attorney's. Under penalty of perjury, Ms. Contreras and Mosley & Associates, had lied yet again, this will be a continued pattern of all attorney's who are involved in the Plaintiff's prior litigation and civil conspiracy.

208. In further discussion of the Case Management Statement submitted by Mosley & Associates to the LASC on behalf of Ms. Victor, Ms. Contreras barely describes Ms. Victor's damages or reasons for suit in answer 4b. On question 5, they did accurately state that Ms. Victor wanted a Jury Trial. Thompson Coburn, with attorney Ms. Riccomini, being under the penalty of perjury, answered a Jury Trial for question on behalf of the "Defendants". If the Defendants and Thompson Coburn were going to compel arbitration they would have not answered the Complaint filed by Mosley & Associates and they absolutely would have not answered question 5 of the Case Management Statement with the option of a Jury Trial, yet they did. Both opportunities discussed herein were opportunities that Thompson Coburn had waived their legal right to compel arbitration on behalf of who they represent. On question 7 of the Case Management Statement, which asks what the estimated length of trial would be, Ms. Contreras put seven to ten days. Ms. Riccomini, on behalf of

Thompson Coburn, answered five days for an expected trial time for Ms. Victor's prior LASC case. Again, both legal counsels had answered these questions in expectation of a trial, not arbitration, because Mosley & Associates had always told Ms. Victor she would in fact be getting a Jury Trial.

209. Question 10 of the Case Management Statement asks if the client, being represented, has been provided with the ADR information package which is required by *California Rules of Court*, **Rule 3.221**, the question further asks if such package had been reviewed with and by the client. Ms. Contreras signed, under penalty of perjury, that Mosley & Associates had complied with this Rule of Court and that Ms. Victor had been given and reviewed said ADR package. Ms. Victor was **never** given this ADR package from Mosley & Associates nor was ever such package reviewed by Ms. Victor. Not only was Ms. Victor not given a package that explained alternative dispute resolution but never, not once, did any attorney from Mosley & Associates ever explain, go over, or ask Ms. Victor if ADR would be something she would consider or even agree too, in regards to her prior LASC case. With this being said it makes what Ms. Contreras said, under penalty of perjury, one hundred percent false.

210. Question 11, of the Case Management Statement, which was about insurance, was left unanswered. Question 12, which was

about the Court jurisdiction, was also left unanswered, and the Court jurisdiction has also been extremely improper. Question 13, which was in regards to related cases, consolidation and coordination was also left unanswered. However, Ms. Victor, herself, found multiple cases which should have been marked as related, consolidated, or coordinated. Ms. Victor has zero prior legal knowledge, yet those who are licensed with the State Bar of California, have failed to acknowledge related cases which should have been consolidated or coordinated. This question remaining unanswered was intentional, malicious, calculated, and oppressive for all Plaintiff's who have suffered at the hands of the on going civil conspiracy. Thompson Coburn did not want to mark any cases as related, nor did they want to consolidate or coordinate them because that would mean more financial and legal accountability for their alleged clients. Question 14 and question 15 were also left unanswered on the Case Management Statement filed by Mosley & Associates on behalf of Ms. Victor.

211. After answering question 5, that the Plaintiff demanded and expected a Jury Trial, Ms. Contreras then answered question 18 that both parties anticipate stipulating to arbitration or the Defendant plans to file a motion to compel arbitration before the Case Management Conference. How can Ms. Contreras answer question 5 with the complete opposite response

to her answer in question 18, which was not what was discussed nor agreed upon between Mosley & Associates and Ms. Victor, ever? Ms. Contreras had stated in her answer that Thompson Coburn, on behalf of the Defendants, would be filing a Motion to Compel Arbitration prior to the Case Management Conference, however, no such Motion to Compel was filed within the LASC. In fact, Judge Yolanda Orozco filed a Case Management Order which set the Trial Date for April of 2022. As stated previously, Thompson Coburn had undeniably waived their right to compel arbitration or to bind Ms. Victor to any such stipulation to arbitration. However, Judge Yolanda Orozco, Thompson Coburn, Mosley & Associates, and all said attorney’s, worked together in this civil conspiracy to ensure that the Plaintiff’s LASC case would go exactly how they needed it too in order to obtain the financial result that was best suited for every person, corporation, and/or entity within this civil conspiracy.

212. Question 16, which discusses discovery, of the Case Management Statement,Thompson Coburn and Ms, Riccomini, on behalf of their clients, answered that the date for discovery shall be determined by the arbitrator. As did Mr. Silbergeld, Ms. Riccomini had answered this question as if Ms. Victor’s case had already been submitted to arbitration and assigned an arbitrator, despite providing trial date times and posting Jury

fees on behalf of the Defendants, and despite the fact that Thompson Coburn had never filed a legitimate Motion to Compel Arbitration in the time line that is required by California law.

213. Ms. Contreras, on the Case Management Statement, under question 20, wrote and stated the following, "*I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raided by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required*." This statement was not only untrue in its entirety but it is unlawful. Ms. Victor never gave anyone from Mosley & Associates the authority to discuss her case without her knowledge, consent, and at minimum her signature. Ms. Contreras was not fully prepared to discuss Ms. Victor's case, the status of discovery and/or ADR, or any other issues raided by the statement she submitted to the LASC. Ms. Contreras, nor anyone from Mosley & Associates, was ever given, nor did they ever possess the authority to make decisions on behalf of Ms. Victor without her knowledge or consent, they did not have the authority to enter to any stipulations at any time during the litigation, and Ms, Victor absolutely never gave them the authority to have "*written authority of the party where*

*required*". In fact, in June of 2021, after Ms. Victor had terminated the legal services of Mosley & Associates, Ms. Victor told Ms. Contreras via email to email her the correspondence between her and anyone from Mosley & Associates that would support her false statements made on the Case Management Statement. Needless to say, Ms. Contreras left such request unanswered and ignored as Ms. Victor had NEVER given anyone from Mosley & Associates any such authority over her case or its outcome.

214. The attorney's of Thompson Coburn and the attorney's of Mosley & Associates who had involved themselves in Ms. Victor's LASC case had, on several different occasions, and continue to, make willful oaths, and/or have submitted material matter which he or she knew to be false, therefore all attorney's are guilty of multiple counts of perjury. The attorney's of both Thompson Coburn and Mosley & Associates have all submitted, to the LASC and to JAMs, evidence knowing that such evidence in which was being submitted as genuine or true was forged, fraudulent, or altered. Such actions in the State of California would make each attorney and their law firms guilty of felonies. These attorney's are each guilty of preparing false documents and they did so with the intention to produce such documents for fraudulent and deceitful purposes but under the

illusion of such documents being genuine and true. These attorney's and law firms also conspired with one another and the Court to take such fraudulent and deceitful actions in order to maintain Ms. Victor's LASC case in a position that was victorious for the Defendants, each of them. Thompson Coburn and Ms. Victor's prior legal counsel, had, and continue too, obstruct justice in the most malicious, oppressive and calculated ways, with extreme hate, bias, and prejudice and will continue to do so until the State of California stops them.

215. On January 7, 2021, a Case Management Order was filed in the LASC, which appears to be filled out by Ms. Victor, but was not. Nor did Ms. Victor ever see such Case Management Order until she had to pay for all Court documents herself after Mosley & Associates refusal to give her such documents and after she was forced to represent herself. The question remains, who filled out this case management order pretending to be Ms. Victor, or on behalf of Ms. Victor without the Plaintiff's permission? That is absolutely not Ms. Victor's handwriting on the court document submitted to the Court.

216. Question 1 of the Case Management Order, entitled *"Case Management Conference"* asks if the parties have complied with the *California Rules of Court*, **Rule 3.720** et. seq., and have filed management statements on Judicial Council form CM-110

OR if the Case Management Conference is continued to (a blank space for a new date) at 8:30AM or PM due to one or both parties' non-compliance with California Rules of Court, Rule 3.720 et seq. (Blank space) is ordered to show cause at said conference why monetary sanctions should not be imposed for non-compliance with *California Rules of Court*, **Rule 3.720** et. seq. This question was unanswered upon submission of this Case Management Order, neither option was checked off as an answer, which would make any person with common sense ask, why? Thompson Coburn and Ms. Contreras/Mosley & Associates, despite it being without Ms. Victor's knowledge, both submitted statements on the required CM-110 forms. Despite Ms. Contreras and Ms. Riccomini committing perjury on the above referenced case management forms, they indeed submitted these forms to the court and to Judge Yolanda Orozco. Did both counsels and the court intentionally leave this answer unanswered because they did not follow the CA Rules of Court? It should be acknowledged by this Court and any Court that the silence on this question of the Case Management Order can be construed in the public eye as evidence of malicious intent or willful non-compliance of a rule of court. Silence can be construed by the public eye as an admission of guilt. The Case Management Conference was not

rescheduled nor was an order to show cause ever issued by Judge Yolanda Orozco.

217. Section/ Question 2 of the Case Management Order is entitled "*Parties*". The person who filled out this Case Management Order checked off that there was not a cross-complaint in this matter. They also checked off the box that all named Defendants/ Cross Defendants had been served, have appeared, been defaulted, or dismissed. How can that information be checked off as a true and correct, under penalty of perjury, when the Defendants named on the complaint filed were fraudulent and no one had ever been served? Mosley & Associates, who had intentionally left off all of the legitimate Defendants, should have known, or should have reasonably known, that none of the Defendants had been served, dismissed, or defaulted. Submitting documents to the Court, knowing such documents are fraudulent, will be a continuous pattern repeated by every attorney involved in the Plaintiff's prior litigation.

218. Section/Question 3 of the Case Management Order, which is entitled "*Alternative Dispute Resolution*", the first portion of this question asks if the case was referred, ordered to arbitration, mediation, or neutral evaluation. Whoever filled out this Case Management Order form, on behalf of Ms. Victor, had added their own check box that said "MSC", meaning Mandatory

Settlement Conference. The other portion that is filled out under this section/question asks what date a post-ADR status conference was set for. Again, whoever filled out this form scribbled out ADR and again put MSC and set the Mandatory Settlement Conference for April 1, 2022 at 9AM, with a note to post fees within 5 days. Ms. Victor was never told nor approved her case being put into the mandatory settlement conference program, nor did the Court or any party file a motion for such request, instead they took it upon themselves to scribble out ADR on a Case Management Conference Form and added their own MSC option. Referrals into the MSC program have to be initiated by a Court Order and submitted with an MSC intake form, a form that must be **JOINTLY** completed and emailed to <SSCMSC@LACourt.org> . Jointly submitted means that Thompson Coburn and Mosley & Associates worked together yet again to do what was best for the Defendants and NOT what was best for Ms. Victor and the justice she was demanding. All forms and emails are required to be lodged with the Court, however, upon representing herself, Ms. Victor emailed SSCMSC@LACourt.org on August 3, 2021, this email stated the following: "*I am the plaintiff in the above named pending case. I would like to see the paperwork and forms that were filed on behalf of me for the MSC program. Attached please find a case management order that was filed on my behalf without*

*my knowledge, nor is Judge Yolanda Orozco listed as one of the judges who works with those submitted to the program. So I am trying to understand how MSC was ordered on the attached form in regards to my case. I discharged my lawyer for misconduct and I have not seen a single court document until July 8, 2021, when I had to pay for every document. So I would like to see how I am ordered to MSC if I am one of the parties and I didn't know what MSC was till a few days ago. I also need a clear understanding of who signed on the Judicial Officer line. And why it is dated for 1/7/2021, the same day counsels had a conference, and why the electronic stamp on the side says 1/8/2021. Also how can a jury trial be set for 4/11/2021 and also a final status conference on the same day, with the final status conference scheduled an hour before a jury trial. Wouldn't a jury trial be scheduled prior to a final status conference? I look forward to your swift response. Thank you*" Ms. Victor, despite letting them know she was now representing herself, and despite her signature being needed on all intake forms to be in the MSC program, the person who responded on behalf of the MSC program within the LASC denied answering any of Ms. Victor's questions and did not send any copies of any documents submitted by Mosley & Associates. The person who responded on behalf of the MSC program within the LASC simply stated: "*You will need to contact*

*your former attorney or the trial court regarding your case."* Ms. Victor was absolutely outraged by the court's refusal to give a Plaintiff documents in regards to a case that required her signature in order to even be in the MSC program. Ms. Victor believes that the refusal of the MSC intake forms and all other related documents was to avoid Ms. Victor obtaining more evidence of her forged signature and/or a copy of additional fraudulent Court documents submitted to the LASC by Thompson Coburn and Mosley & Associates, again in civil conspiracy with each Defendant named herein.

219. Ms. Victor, irate, emailed the MSC program again, stating the following: "*My former attorney will not answer any questions, and I am now representing myself pro per and I have a right to all my files. So how do I get my files that have been drafted through your department as they have been illegally bound to nothing I have agreed with or have seen before prior to July 8, 2021. Thank you*." The person responding on behalf of the MSC program within the LASC denied that they had any of Ms. Victor's documentation stating, "*The Judicial MSC Program does not have any of your documents. Again, you will need to contact your trial court, or you can access your documents online through lacourt.org*." However, the Case Management Order signed by the Court and date stamped as a conformed copy, states that Ms.

Victor's case was in fact in the MSC program and they even set a date for said management settlement conference. So how does the LASC have a Court order stating Ms. Victor's case is within the MSC program yet the MSC program has no documents on behalf of Ms. Victor or her case that are required for such enrollment into the program. The court intentionally and maliciously, denied Ms. Victor her legal right to see what was signed on her own behalf and what terms were agreed upon by Thompson Coburn and Mosley & Associates, terms that were agreed upon WITHOUT Ms. Victor's knowledge or consent. Did Mr. Mosley forge Ms. Victor's signature yet again? This cannot be answered by Ms. Victor because the MSC program denied her the right to see the documentations that involve her case, potentially covering up the unethical criminal activity of multiple individuals involved in this civil conspiracy, which most definitely includes Judge Yolanda Orozco, her Deputy Clerks, Thompson Coburn, and Mosley & Associates. Court staff improperly denied Ms. Victor requested legal documents that could and must contain either Ms. Victor's forged signature or the signature of someone from Mosley & Associates who signed on her behalf without the authority to do so. How can a Plaintiff be denied her right to review the contents of her own court file?

220. In the State of California, a licensed attorney is obligated by State law to communicate with their clients all amounts, terms, and conditions of any written offer of settlement made by or on behalf of the opposing party. It is also State law that, upon the request of either party, any written offer of settlement or any required communication of a settlement offer shall be discoverable in any action in which the existence or communication of the offer of settlement is an issue before the trier of fact. The court denied Ms. Victor the right to discover these documents to protect themselves and to cover up unlawful conduct engaged in by Thompson Coburn and Mosley & Associates. Discussions of the Mandatory Settlement Conference were not the first nor the last discussion and/or agreements made between Thompson Coburn and Mosley & Associates on behalf of Ms. Victor in regards to a potential settlement of her prior case, discussions that were intentionally and maliciously kept secret from Ms. Victor. It is the duty of the California State Bar, if necessary, to demand that both Thompson Coburn and Mosley & Associates provide all settlement discussions, terms, agreements, they had prior to Ms. Victor's self- representation, discussions that Ms. Victor was unaware of or did not consent to. However, in civil conspiracy, the State Bar of California has intentionally, with malice, and

oppression, failed to investigate all of Ms. Victor's complaints she had filed and has failed to prevent irreparable loss and injury to Ms. Victor. The State Bar of California is a named Defendant on the Plaintiff's separate claim filed in the United States District Court for the District of Massachusetts.

222. Section/Question 4 on the Case Management Order which is entitled "*Trial Setting*" had the first four, out of five, boxes checked off. The first box states "Plaintiff/Defendant has demanded jury and will post jury fees. (Code Civ. Proc., §631.) Plaintiff and Defendant are both circled with this answer and as stated above and herein, both Thompson Coburn and Mosley & Associates filed motions stating they both posted their jury fee's, which waived the Defendants right to compel arbitration and that a jury trial should have been expected. A logical question to be asked is WHY would Thompson Coburn and Mosley & Associates both post jury fee's if their case management statements state they would be stipulating to force arbitration and/or if they were allegedly forcing this case into the MSC program? Only one party is required to post jury fees, which would have been Mosley & Associates since Ms. Victor, from the very beginning, has demanded a jury trial. There was NO obligation for the Defense to pay jury fees or agree to a jury trial on the case management order if they planned to file a

motion to compel arbitration. Thompson Coburn, waived their right and authority to compel or demand an arbitration, yet again. Ms. Victor is informed and believes that every move made by Thompson Coburn and Mosley & Associates had been done with malicious intent in order to benefit themselves and to manipulate the outcome of this litigation. However, a litigation can not be manipulated on the discovery of fraud. Thompson Coburn and Mosley & Associates did not anticipate that Ms. Victor would learn any legal knowledge or simply did not expect that Ms, Victor would have enough intelligence to discover most of their unlawful conduct and then fight endlessly for justice for the pain, suffering, injuries, and damages caused by their past, present, and potential future unlawful conduct in the furtherance of this civil conspiracy.

223. The second checked box in this section states that, "a final status conference is set for April 1, 2022 at 830AM or at 9AM, 830AM is crossed out. The third checked box in this section states, "The case is set for jury/court trial on April 11, 2022 at 10AM. Jury is circled which again means that both Thompson Coburn and Mosley & Associates agreed that a jury trial would be guaranteed to Ms. Victor, and they waived their right to compel arbitration. The last box checked states, "*Time estimated for trial is 7-10 days*." Again, suggesting and acknowledging that

Ms. Victor demanded a jury trial and should have reasonably expected to receive such jury trial.

224. The last question in this section was left blank and not answered, which asks 'The identity of the trial counsel is: (blank space). Set forth in parties' case management statements (Form CM-110): (blank space) as follows: For Plaintiff: (blank space). For Defendants: (blank space). If both counsels had a jury trial agreement on this Case Management Order and had allegedly paid jury fees then why would this question remain blank and unanswered? Wouldn't the trial counsel for the Plaintiff, at the time this form was submitted to the court, be named as Mosley & Associates and for the Defendants be named as Thompson Coburn? Instead such question was intentionally unanswered because it was never intended to take Ms. Victor's case to a jury trial. They merely filled out paperwork to file in the Court to make it appear as though they were working on behalf of their client, the victim, and Plaintiff, Ms. Victor, yet the only person they were working for was one another, in an oppressive and malicious civil conspiracy.

225. Section/Question 5 of the Case Management Order is entitled "*Other Issues*". The box checked states, "*The court further orders as follows: MSC intake form due by January 7, 2022*". Whoever filled out this form on behalf of Ms. Victor also

checked that notice is waived, which waived Ms. Victor's right to see this fraudulent Case Management Order or what was agreed to on her behalf fraudulently by Mosley & Associates in collusion with Thompson Coburn. Waiving the right to notice was an intentional, malicious, and calculated move made by Thompson Coburn, Mosley & associates, and the Court, so that Ms. Victor would not see a document she would surely analyze and question which would stall the activity of their civil conspiracy. The Case Management Order was signed by a Scribbled name on the Judicial Officer line, however, that is not Judge Yolanda Orozco's official signature nor her Court stamp which is presented on several other court documents, so what Judicial Officer signed this Case Management Order? Why is this Case Management Order not stamped with Judge Yolanda Orozco's official court stamp like all of the other malicious orders the Judge has stamped throughout Ms. Victor's prior litigation?

226. On January 12, 2021, Mr. Mosley & Ms. Contreras had a phone call with Ms. Victor, days after they submitted their fraudulent Case Management Statement to the LASC, on Ms. Victor's behalf without her knowledge or consent. This phone call did not discuss the Case Management Statement, nor was Ms. Victor made aware of such statement on this phone call. This phone call was a threat by Mosley & Associates who refused to

accept Ms. Victor's decision to not do arbitration and her persistence on filing an opposition to a motion to compel, that eventually never came. Mr. Mosley made the remark, "*It's real cute you think you're f&%king Kim Kardashian and everything with your legal notes but why don't you let the actual lawyers do their job.*" At one point in the conversation, Ms. Contreras threatened Ms. Victor that she would need to find new legal counsel if Ms. Victor did not start doing what her and Mr. Mosley told her to do. Ms. Victor, being a woman who has a strong sense of self-will, did not care if her decision would mean finding new legal counsel, and still proceeded to tell Mr. Mosley and Ms. Contreras that she wanted her day in court. Later that day, Ms. Victor emailed Mosley & Associates that her decisions for a jury trial remained the same after discussing arbitration with her mother who works in a courthouse. Ms. Contreras told Ms. Victor the next step would me the Defense counsels motion to compel arbitration which they would then oppose, however, that motion to compel never came, rather Thompson Coburn and Mosley & Associates submitted to the court a stipulation binding Ms. Victor to arbitration which was granted by Judge Yolanda Orozco. However, since no actual Defendants had ever been served and since no Defendants had actually been named correctly, the stipulation binding Ms. Victor to arbitration is

void on its face and fraudulent. The entire litigation in the LASC has no legal merit or standing.

227. Ms. Victor could present further fraudulent documents, further unethical misconduct that had flooded her prior litigation but then this Complaint would be thousands of pages long. However, Ms. Victor has no problem submitting to this Court, on a motion for good cause, any or all documents necessary for evidentiary support.

228. Evidence of fraud, forgery, and other shockingly bad attorney misconduct had been presented to both Judge Yolanda Orozco and arbitrator Judge Miller on several different occasions. Both Judge Yolanda Orozco and Judge Miller had failed to take any corrective actions which they are obligated to do under the Code of Judicial Ethics. Ms. Victor is informed and believes that such failure to take corrective actions is due to their bias and prejudice against the Plaintiff, their complete lack of impartiality, and their social, political, financial, or personal investment into Ms. Victor's case. Judge Yolanda Orozco and Judge Miller can now be individually liable for any further damages and/or irreparable injury caused to Ms. Victor because they had acted in their full capacity under color of the law. Both Judge Orozco and Judge Miller are named Defendants on the

Complaint Ms. Victor filed in the United States District Court for the State of Massachusetts.

229. On January 28, 2021, Judge Orozco ordered a Stipulation binding Ms. Victor to arbitration that was done by all attorneys mentioned herein without Ms. Victor's consent or knowledge and on the basis of fraud. There would be absolutely no movement on the LASC court docket until July of 2021 after Ms. Victor fired Mosley & Associates and was forced to represent herself. Ms. Victor being put in that position by her prior legal counsel goes directly against the Professional Rules of Conduct which is meant to be enforced by the State Bar of California but is clearly not.

230. The end of May 2021 and beginning of June 2021, Ms. Victor suspected unethical misconduct by Mosley & Associates, whom she since had found out had, and has, colluded with the prior Defense Counsel, Thompson Coburn. Mosley & Associates and Thompson Coburn had colluded with one another to help all the named Defendants, sabotage Ms. Victor's prior litigation for an easy and illegal win in the LASC through an arbitration with JAMs. Such unethical misconduct, includes, but is not limited too, Ms. Victor being put into therapy sessions by Mr. Mosley with Dr. Sally D. Greig ("Dr. Greig"), whom was hired and referred to Mosley & Associates by Thompson Coburn using the

signed HIPAA form that was received and later altered by TDF. An unethical and illegal action taken for the Defendants to discover Ms. Victor's deepest, darkest secrets to then attempt to use such secrets against her in Court. To this day, Dr. Greig has refused to give Ms. Victor a copy of her records or to provide information on who referred her to the Plaintiff's legal matter.

231. After such unethical misconduct was discovered, Ms. Victor had sent Mosley & Associates a termination letter, a letter they refused to sign. Instead, they informed Ms. Victor that they had filed a Motion to Be Relieved as Counsel to Judge Orozco of Department 31, of the Stanley Mosk Courthouse. Ms. Victor requested a hearing on this Motion. In Ms. Victor's Motion, presented to Judge Orozco and the Court, Ms. Victor provided evidence of Mosley & Associates, Thompson Coburn, and TDF criminal activity including forgery. Judge Orozco ignored all of Ms. Victor's evidence of unethical misconduct by ALL of the attorney's involved in her prior litigation and took no corrective actions as required under the Code of Judicial Ethics. In fact, Judge Orozco allowed and witnessed Mr. Montoya commit perjury, under oath, on the stand, about events that had taken place prior to this hearing. Judge Orozco then granted Mosley & Associates an order to be relieved as counsel on the

grounds that Ms. Victor had become "*too difficult to work with*". Judge Orozco also stated that it was not her job to look into attorney misconduct, such as forgery or perjury, and if Ms. Victor had a complaint against said attorneys then such complaint would need to be filed with the State Bar of California. Judge Orozco made this suggestion knowing damn well that her affiliates at the State Bar of California would never investigate Ms. Victor's claims and that no one in their criminal organization would be subjected to any such consequences for any of their unlawful conduct.

232. Ms. Victor had requested in writing to TrustPoint One for the court reporters final product on this hearing and all hearings and such copies were NEVER given to Ms. Victor, hence, they covered up and/or destroyed evidence of Mr. Montoya committing perjury on the stand. This unlawful conduct is just the beginning of what the Defendants, each of them, have put Ms. Victor through in the past three years.

233. This was not the first nor the last time Judge Orozco had, and has, aided and abetted the Defendants throughout this litigation, ensuring that the Defendants conceal their criminal activity and that Ms. Victor is silenced, denied due process, denied a jury trial, and imprisoned in the most bias and prejudicial litigation; and it will not be the last time Judge

Orozco aids and abets each named Defendant unless she is immediately investigated and benched. Some examples of how Judge Orozco has helped the Defendants in their civil conspiracy is as follows: Motion for a Peremptory Challenge filed by Ms. Victor on July 9, 2021 concurrently with Declaration in Support, denied by Judge Orozco and she refused to recuse herself from the case; Motion to Disqualify Counsel filed on July 9, 2021 by the Plaintiff denied by Judge Orozco despite being presented evidence of criminal activity; Motion to Disqualify Defendants Counsel & Motion to Dismiss Counsels Motion to be Relieved as Counsel filed on July 16, 2021 by the Plaintiff was also denied by Judge Orozco despite receiving further evidence of criminal activity; all oppositions for these motions submitted to the LASC on July 16, 2021 was again denied by Judge Orozco; the Defense Counsel attempted to file a TRO request against Ms. Victor on July 30, 2021 named as a "Status Report" which attempted to get Ms. Victor's case dismissed for her social media, the entire pleading was a violation of Ms. Victor's First Amendment rights and Judge Orozco allowed the Defense to hold three separate hearings entertaining the idea of dismissal and allowed Thompson Coburn to filed a second Status Report against the Plaintiff; On August 2, 2021 Mr. Montoya filed a Declaration in support of their request to be relieved as counsel and on

August 3, 2021 Judge Orozco allowed Mr. Montoya to commit perjury on the stand in her courtroom; On August 3, 2021, Judge Orozco also allowed Thompson Coburn to hire and use court reporters who refused and still to this day refuse to give Ms. Victor a copy of any and all of the Court proceedings done in Judge Orozco's Courtroom as it would be solid evidence against each named Defendant herein; Ms. Victor submitting to the Court a Request for a Statement of Decision on August 12, 2021 and Judge Orozco not only denied it, refused to provide a copy to the Attorney General of the State of California, which is required by law, but she had the entire Motion deleted from the Court record which is against Federal law; Judge Orozoco made the mistake of leaving Ms. Victor's second filing on August 16, 2021 on the court docket which was an opposition and demand for a statement of decision after the original request was denied, this again was denied by Judge Orozco; Ms. Victor filed a request for immediate recusal of Judge Orozco pursuant to CCP 170.1 on August 19, 2021 which obtained Ms. Victor's social security number, the Deputy clerks of her office filed the pages incorrectly, left Ms. Victors Social Security Number, and filed this complaint via CCP 170.3 not 170.1, Judge Orozco answered the request for recusal herself and "striking" it from the record; Ms. Victor filed a motion on August 26, 2021 to have

Judge Orozco and her Deputy Clerks fix the filing and remove her private information as people were using her social security number to apply for apartments, cars, etc. The Deputy clerks re-uploaded the new Motion, however, intentionally, as retaliation kept Ms. Victor's original filing with her SSN exposed to cause her intentional and direct harm, loss, and injury; Ms. Victor submitted to the LASC on August 26, 2021 that Judge Orozco state the record of whether she was a referee, arbitrator, or private judge hired by the Defendants for this case, Judge Orozco did not respond or acknowledge this Motion by the Plaintiff; Ms. Victor filed a request to remove Walter Mosley as the attorney of record as she told the court he was terminated for unethical conduct and she was representing herself, this too was ignored by Judge Orozco and to this day Mr. Mosley has never been removed from the record; Ms. Victor submitted a fee waiver to the court of August 26, 2021 which was granted by Judge Orozco and two days later Wells Fargo wiped all of the money from Ms. Victor's bank account clean, this was NOT an accident; on September 1, 2021 Judge Orozco ordered Ms. Riccomini to "do what she needed to do" to get Ms. Victor's case into arbitration and so the case was unlawfully and illegally thrown into JAMS; the rest of the LASC court docket is evidentiary support of the civil conspiracy between the Defendants, Judge Orozco, and her

Deputy Clerks, whom were acting in their full capacity, under color of law.

234. After Judge Yolanda Orozco's wildly incorrect orders, Ms. Victor was then forced to represent herself in what has become a completely bias, prejudice, and unethical legal litigation where Ms. Victor was technically suing no real person, corporation, or entity. The entire year and half Ms. Victor was forced to represent herself in a bogus and fraudulent litigation resulted in extreme suffering for the Plaintiff.

235. All events that happened after the litigation within the Los Angeles Superior Court and after Victor's attempts to whistleblow to the Attorney General's Office of the State of California are discussed in Victor's separate action that was filed in the United States District Court for the District of Massachusetts.

236. Mr. Marciano, Maurice, and Mr. Navarro, their multiple attorneys, and their connections to other law firms, and the money they have, and use, to pay said attorney's and law firms is how they have reeked havoc on the Plaintiff's life and so many other Plaintiff's lives and continue to not be held accountable nor punished to the full extent of the law. Wally's, Mr. Navarro, Mr. Marciano, and Maurice hired and utilized Thompson Coburn, TDF, and Mosley & Associates to ensure that Ms.

Victor's case was handled incorrectly so that they could avoid legal accountability, financial accountability, and possible jail time for their repeated pattern of criminal behavior. What is meant by "repeated pattern of behavior" is that these men are named in multiple complaints within the LASC, for similar causes of action, none of which has been marked as related. These men also have related cases in District Courts spread out through the United States, none of which have been marked as related nor coordinated. With each separate case these frauds use different law firms and lawyers and pay these lawyers and law firms to ensure their cases never make it to Federal Court, are not investigated by any Federal agency, and never go to trial, which saves them money, avoids investigations, and ensures that they have no moral and legal accountability for their disgusting unlawful conduct.

237. Their disgraceful behavior continued with Judge Orozco, the Deputy Clerk's in Department 31 of the Stanley Mosk Courthouse, and the Deputy Clerks in the Civil Clerks office, Room 102 of the Stanley Mosk Courthouse, and has since continued through the U.S. District Court, Central District of California, the California Labor Commissioners Office, the State Bar of California, The U.S. District Attorney's office in Los Angeles

County, the Los Angeles Attorney General's Office, and all other third party affiliations.

238. Ms. Victor's fraudulent case was thrown into arbitration, unlawfully with JAMS, INC. ("JAMs") but only after Thompson Coburn and Mosley & Associates failed to throw the Plaintiff's case unlawfully into arbitration with the American Arbitration Association ("AAA"). The JAMs reference number to the discussed arbitration is **1220071214.** In fact, Ms. Riccomini attempted to send Ms. Victor an Offer to Compromise on December 24, 2021, under penalty of perjury, they put AAA and an entirely different case number and then ignored answered all of Ms. Victor's questions asking, demanding, for an explanation why Ms. Riccomini committed perjury once again. Was Ms. Victor's case always open with AAA and they just worked with JAMs to cover up their fraud and corruption? Why did Ms. Riccomini send an offer to compromise on behalf of AAA and with an entirely different case number?

239. Thompson Coburn and Mosley & Associates worked together with Judge Orozco to put Ms. Victor's case illegally into arbitration with AAA. However, their attempts failed because Ms. Victor caught on to their colluding and unethical conduct and stopped AAA, Thompson Coburn, and Mosley & Associates from putting her case with AAA.

240. Ms. Victor requested to exercise her right to amend her complaint, as the complaint filed by Mosley & Associates was entirely incorrect, the Defendants were not properly named nor was anyone ever served, but Judge Orozco refused to allow Ms. Victor the opportunity to exercise her legal right to amend her complaint. Instead Judge Orozco ordered Thompson Coburn "*to do what they needed to do to get this arbitration done*." Ms. Victor frantically attempted to send multiple emails to JAMs and the Defense Counsel to stop the arbitration, when those emails were ignored, Ms. Victor then attempted to reach out to multiple federal agencies for help, which resulted in a chain of Events described in detail in Ms. Victor's separate Complaint filed in the United States District Court for the District of Massachusetts.

241. Judge Miller was chosen by Thompson Coburn and the Defendants as the "*neutral*" arbitrator for JAMs. Ms. Victor was not involved in the decision of this arbitrator as such decision was made, conveniently, when her technology devices were hacked and Ms. Victor had no computer, no phone, and no access to her email. Judge Miller had ignored all of Ms. Victor's motions including requests for protection orders against all Defendants, each of them, and a motion to stay proceedings to give her time to amend her Complaint, which has been incorrect since Mosley &

Associates filed it on September 9, 2020. Despite being denied more rights, that should be guaranteed to Ms. Victor, she amended her complaint and sent such amended Complaint to Judge Miller and Thompson Coburn. Ms. Riccomini actually wrote an "*opposition*" to Ms. Victor being allowed to amend her complaint, JAMs and Judge Linda Miller actually allowed this. Ms. Victor's amended complaint included over two hundred pages of factual allegations and over one hundred pages of legal claims, resulting in over fifty causes of action, including civil rights violations and questions of Constitutional law.

242. Judge Miller should have read and acknowledged the drastic changes in Ms. Victor's legal claims, and should have allowed Ms. Victor's amended complaint, which is guaranteed by California State law, and then Judge Miller should have removed Ms. Victor's case to the Court of proper jurisdiction. However, Judge Miller, denied Ms. Victor the opportunity to amend her complaint and Judge Miller refused to remove the case to a Court of proper jurisdiction. This is after Thompson Coburn filed a doomsday motion for terminating sanctions against Ms. Victor. Thompson Coburn had asked Judge Miller to dismiss Ms. Victor's pending case with prejudice and demanded a judgement in favor of the Defendants in her pending case. Thompson Coburn even went as far as to ask that Ms. Victor be sanctioned from giving

testimony in HER OWN TRIAL. It is the most outrageous and ridiculous thing to witness, a victim being subjected to the powers and unlawful conduct of a criminal organization that can bend the rules as they deem fit.

243. The Defendants, each of them, have mastered victimizing themselves to minimize the pain and suffering of the actual victim, Ms. Victor. Thompson Coburn had intentionally, and with pleasure, caused Ms. Victor endless pain and suffering and Judge Orozco, Judge Miller, the Court, and JAMs had allowed this pain and suffering to protect themselves, their assets, and their reputation, alongside the other Defendants, each of them.

244. For over a year, since Ms. Victor began self-representing herself, the Defendants, each of them, have continued to interfere with Ms. Victors right to due process, robbed her of her civil rights, in addition to their continued harassment, discrimination, and retaliation against her.

245. On June 15, 2022, Ms. Victor filed a Notice of Related Cases in the LASC to Judge Orozco as well as Department 1 of the LASC, which was also served to Thompson Coburn, which had every case that Ms. Victor discovered on her own that should have been marked as related or coordinated to hers but was not. There is potentially many more cases to be discovered that should be related and are not. These cases all had discrepancies in how

Defendants were named. These cases all had similar causes of action. These cases all had similar Defendants. Yet none of them were marked as related. This was an intentional and calculated move made by the Defendants, each of them, to profit within their criminal organization which involves server processors, arbitrators, arbitration companies, lawyers, law firms, corporations, and Judges. Justice was not given to a single victim or Plaintiff in any of these cases. On July 7, 2022, Judge Orozco filed a minute order within the LASC stating that the Court did not find the cases related. The actions of the judicial system in the Los Angeles Superior Court are a horror.

246. On July 28, 2022, Ms. Victor, intentionally, emailed Thompson Coburn and JAMs an email stating that even if Judge Miller dismisses her case tomorrow by granting Ms. Riccomini's disgusting motion for terminating sanctions, it wouldn't matter, as Ms. Victor was technically not suing any real person, corporation, or entity, and she would just refile and reopen her case again (which is what Ms. Victor is doing now with this Complaint). Ms. Victor predicted that, prior to this email being sent, that Judge Miller would have made a judgement that benefited the Defendants, just as all prior decisions by Judge Miller had been made to benefit the Defendants and/or herself. Ms. Victor knew that her email would cause Thompson Coburn and

Judge Miller to engage in ex parte communications to plan their next unlawful moves accordingly. As expected on July 29, 2022, Judge Miller agreed with Thompson Coburn's motion but denied Thompson Coburn's Motion on the grounds of it being "harsh". Judge Miller also denied Ms. Victor's Motion for monetary and non-monetary sanctions against the Defendants and Thompson Coburn for their harassing and frivolous motion, begging the question, how is it possible to deny both?

247. During this hearing Judge Miller told Ms. Victor that she would be allowed to amend the Defendants but refused to allow Ms. Victor to add Defendants Delta, Christies, Christie's Christie's Wine, 3900 WA, Wally's Auction House, LLC and Mel-Jen ("Wally's), nor any other partner or affiliate of Wally's on the grounds that they are not "*liable*" for the actions of their partners or affiliates. This is false as a Plaintiff can hold partners, affiliates, and subsidiaries personally liable for the actions of her employer Wally's. Judge Miller kept stating, "*these businesses will not be coming into* ***my*** *arbitration*". Judge Miller's decision was bias not correct. Further, Judge Miller refused to allow Ms. Victor to add Defendants Mr. Bejelajac, Ms. Burns, Ms. Hunter, Ms. Jimenez, Mr. Poulin, Ms. Jones, and Ms. Fromer, stating they were witnesses and cannot be held personally liable. Ms. Victor argued that these people are NOT

witnesses and she does hold them personally liable and Judge Miller refused to allow them to be added to her complaint, again a decision made out of bias, not an accurate or lawful one, nor one that has any legal standing. Judge Miller then stated that she would allow all forty-four of Ms. Victor's legal claims to be arbitrated by her because all of the legal claims have to do with her employment with Wally's. These legal claims included sexual harassment, assault, battery, gender violence, and civil rights violations. During this hearing attorney Ms. Riccomini and Judge Miller shared multiple laughs amongst each other at Ms. Victor's expense. At one point Ms. Victor had asked both Judge Miller and Ms. Riccomini what was so funny because she too wanted to laugh. Judge Miller stated nothing was funny nor was there a joke, yet they were engaging in laughter together. Judge Miller, as usual, lacked impartiality.

248. On Monday August 1, 2022, Ms. Victor sent JAMs and Thompson Coburn an email. Ms. Victor followed up on her prior email in regards to JAMs rules and how her case was open in arbitration with JAMs with no commencement letter, no arbitration agreement, nor Ms. Victor's acknowledgement or consent. This was never answered because the arbitration was fraudulent. Ms. Victor also presented her argument on how all the Defendants she held personally liable for ALL of her damages

needed to be added, this too was ignored and denied. Further, Ms. Victor let Thompson Coburn and JAMs know that Judge Miller had allowed all forty-four of her legal claims to be arbitrated in her forum which included sexual harassment and sexual assault. With that being said, Under the Federal Laws of the United States, Chapter 9, section 402, which states "*at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.*" The legal claims approved for amendment by Judge Miller including sexual harassment and sexual assault, amongst other things, cannot be arbitrated pursuant to the Federal laws of this country, giving JAMs and Judge Miller no jurisdiction over Ms. Victor’s legal claims nor can such legal claim be disputed in any arbitration, anywhere in the United States. However, Thompson Coburn began to argue that Judge Miller did not agree to arbitrate Ms. Victor’s claims. Judge Miller, JAMs, and Thompson Coburn were actively working together to pretend that Judge Miller did not SAY Ms. Victor could amend her legal claims nor that she would arbitrate them

because they all know that Judge Miller cannot arbitrate Ms. Victor's claims nor does she have jurisdiction to make a single decision over Ms. Victor's case, now, or ever. Ms. Victor moved to have Judge Miller disqualified and her case removed from arbitration effective immediately, which was denied by JAMs, what a shocker…

249. On August 2, 2022, Ms. Victor filed a Notice of Intent to Move for a New Trial to the LASC which was also served on Thompson Coburn and JAMs. Thompson Coburn filed their opposition to this Motion in the LASC. However, Judge Orozco filed a minute order denying the Notice of Intent to Move for a New Trial on the grounds that the Defendants need to be served and had not been served. Well, Thompson Coburn, who represents the "fake" defendants that were named on Ms. Victor's complaint, were served so the only Defendants that had not been served yet, is everyone… cause the case was a fraud and never had any legal standing. Judge Orozco would only know this if she engaged in ex parte communications with Thompson Coburn. Further, in Judge Orozco's minute order, she denied a new trial on the grounds that per a hearing on July 14, 2022 it was agreed that the case was still being arbitrated with JAMs. On July 14, 2022, Thompson Coburn submitted to the court that Ms. Victor made a telephonic appearance in front of Judge Orozco with Thompson Coburn where

they pushed the hearing back until March of 2023. Ms. Victor did not make an appearance at this hearing nor did Ms. Victor have any acknowledgement that a hearing was being held. So not only did Thompson Coburn commit blatant perjury but this further proves what Ms. Victor has been arguing all along, that Judge Orozco was engaging in clear ex parte communications with Thompson Coburn and the Defendants, which is prohibited by the Code of Judicial Ethics. When you make telephonic appearances in the LASC you have to file online and receive a confirmation number and pay fifteen dollars if you do not have a fee waiver, which Ms. Victor did not do because she was not present at this hearing. Judge Orozco also would have started the hearing by confirming the presence of all parties and in doing so would have known Ms. Victor was not present because she was indeed not present. Again Judge Orozco, Thompson Coburn, JAMs, and all other Defendants worked together to protect themselves and their personal interests by denying Ms. Victor her guaranteed right to due process and while committing unlawful crimes such as perjury.

250. After every hearing with JAMs a memorandum was sent out that recapped what was discussed on each phone call. Weeks had passed by and Ms. Victor contacted JAMs asking why the memorandum had not been released. The hesitation came after Ms.

Victor’s email on August 1, 2022, which let Thompson Coburn and JAMs know that Ms. Victor was well aware that Judge Miller could not arbitrate the claims she agreed to arbitrate and asked for her case to be removed immediately from arbitration. Alison Sprague (“Ms. Sprague”), the case coordinator for JAMs, stated that the Memorandum could not be released until Thompson Coburn paid a bill of over six thousand dollars to JAMs and Judge Miller and JAMs could not release such memorandum until they received their payment… how convenient. Ms. Riccomini of Thompson Coburn told Ms. Victor that such memorandum was not necessary because Judge Miller did not agree to arbitrate Ms. Victor’s amended claims and if she did not engage in deposition by September 3, 2022 they would file a second Motion for Terminating Sanctions on the grounds that Ms. Victor was intentionally not engaging in discovery. Ms. Victor was suing no real entity, corporation, or person. There had been no legal amendments to her complaint. So Ms. Riccomini and JAMs were threatening and harassing Ms. Victor to engage in a discovery with non-legitimate corporations, entities, businesses, and/or individuals. Ms. Victor would not do such, in fact, Ms. Victor made the decision that moving forward she would not respond to Thompson Coburn or JAMs because the actions of the Defendants

are borderline domestic terrorism. Ms. Victor would not engage or be threatened by their terrorism.

251. On August 11, 2022, Ms. Victor filed a Motion to Leave to Amend Her First Complaint in the LASC, which was concurrently filed with her First Amended Verified Complaint. That Motion explained multiple acts of fraud and perjury committed by Mosley & Associates, TDF, and Thompson Coburn including their conspiracy with server processor One Legal, LLC ("One Legal") who had NEVER served any one in Ms. Victor's case, therefore the case had legitimately not even begun. This Motion to Leave also discusses the blatant and horrific judicial misconduct of Judge Orozco and Judge Miller and their refusal to recuse themselves. Why do you think they both wouldn't recuse themselves? It is because they both had, and have, personal and/or financial interests in the outcome of Ms. Victor's case. Whether that be financially, politically, or socially, Judge Orozco and Judge Miller were, and are, invested in Ms. Victor's case for themselves NOT for justice. The civil clerks of the Stanley Mosk Courthouse added Ms. Victor's Motion to Leave to the court docket but had refused to add Ms. Victor's First Amended Verified Complaint which was filed concurrently with her Motion to Leave. Such refusal to post to the court docket was intentional. Ms. Victor could not get a date earlier then

November 10, 2022 for a hearing on her Motion to Leave, which was cancelled by the Deputy clerks of Department 31 prior to the hearing date for non-legitimate reasons, simply just public corruption on display for the public.

252. The Plaintiff stopped engaging with the Thompson Coburn and JAMs and filed a separate action in the United States District Court for the District of Massachusetts for a multitude of federal crimes, including her attempted murder, which all was a result for her demanding justice IN THIS CASE. Ms. Victor waited on Judge Miller to dismiss her case in favor of the Defendants which she was always going to do so that she could file a real case against the actual Defendants for true allegations made against them.

253. Ms. Victor received an email from Ms. Sprague on January 12, 2023, with Judge Miller's Arbitration Reward which stated that Ms. Riccomini's terminating sanctions against the Plaintiff would be so ordered, including banning her from giving REAL testimony, and ordering Ms. Victor to pay the Defendants an amount of money.

**VIII. ADDITIONAL FACTUAL ALLEGATIONS**

1. Beginning on July 6, 2021 - July 18, 2021 Plaintiff received emails from <dse@docusign.net> with the subject line "Verify a New Device", each email had a new verification code.

These emails and the new devices were not Plaintiff's but she believes it was Mosley, Contreras, Montoya Solis, and defense counsel logging into her docusign to forge her signature on multiple documents they needed to create before the hearing on August 3, 2021 where Judge Yolanda Orozco would recuse them of their duty to counsel because Plaintiff was "difficult to work with." An example of the forged documents would be the fraudulently created "PLAINTIFF DANIELLE VICTOR'S SUPPLEMENTAL RESPONSES TO FORM INTERROGATORIES - EMPLOYMENT LAW (SET ONE) PROFOUNDED BY DEFENDANTS" and "PLAINTIFF DANIELLE VICTOR'S SUPPLEMENTAL RESPONSES TO REQUEST FOR ADMISSIONS (SET ONE) PROFOUNDED BY DEFENDANTS" which Plaintiff never saw nor reviewed with her prior counsel but her signature was on said documents. These documents were never submitted to court as timely required by law. They were falsely created documents made by the Defendants to cover their corruption and collusion.

2. On June 18, 2021 Riccomini on behalf of Thompson Coburn, drafted a letter to Mosley, Contreras, and Montoya Solis which Plaintiff did not see until representation was terminated. In this letter Riccomini claims that Plaintiff's supplemental responses were deficient and stated that Plaintiff did not produce any documents, but Plaintiff never knew of these legal correspondences only her prior counsel did. Further, Riccomini

admits in writing in this letter that Thompson Coburn had been in settlement discussions with Mosley, Contreras, and Montoya Solis without Plaintiff's knowledge or consent and against Rules of Professional conduct. Riccomini further writes and requests that the Defendants have an extended 45 days to submit a Motion to Compel Arbitration, despite the fact that Defendants waived their right to compel arbitration when Bjelajac began correspondence with the Labor Commissioners office, and even further when Case Management was filed in the Los Angeles Superior Court and a date of trial was submitted on these statements. Thompson Coburn, Mosley, Contreras, and Montoya Solis created such writings to cover-up their attorney misconduct and illegal activity.

3. Plaintiff did not receive the Wally's Employee File nor the fraudulently created Wally's Handbook, created by Ervin Cohen & Jessup LLP until June 8, 2020, which gave the Defendants almost an entire year to destroy and falsify evidence. This email was sent to Plaintiff by Mosley via Dropbox link that has since expired. No copy of any complaint made by the Plaintiff against the staff of Wally's was in this Employee File; nor was any write up against Victor in this file. Nothing was in this file, except what the Defendants created to support their "defense."

4. On August 26, 2021 Plaintiff submitted a Motion to the Los Angeles Superior Court a filing to correct the record because the Motion had Plaintiff's social security number on it. This Motion was ignored by Judge Yolanda Orozco. Plaintiff believes this was an act of retaliation. Plaintiff's case was found by people online and her social security number was used for car loan applications, apartment lease applications, etc. The actions of Judge Yolanda Orozco and the court affects Plaintiff's credit and finances.

5. On August 13, 2021 Judge Orozco made an Order denying a Statement of Decision before deleting Plaintiff's Request for a Statement of Decision and the Order denying said request from the Court docket.

6. On August 16, 2021 Plaintiff submitted "Plaintiff's Opposition & Demand for a Statement of Decision", a motion to lodge with the court Tracy Dryness CSR #12323 transcript from the August 3, 2021 hearing, and a request for an electronic copy from Tracy Dryness CSR#12323. Judge Orozco denied all motions in order to prevent Plaintiff from obtaining evidence that can be used against the Defendants as perjury and false declarations under oath were committed by Plaintiff's prior counsel and the defense and Judge Orozco during the August 3, 2021 hearing.

7. Plaintiff filed a Motion to remove Judge Yolanda Orozco via Code of Civil Procedure via 170.6. Judge Yolanda Orozco made an order denying this Motion on July 9, 2021, this was also removed from the Court docket.

8. On August 21, 2021 Judge Yolanda Orozco approved Plaintiff's fee waiver which obtained Plaintiff's banking information with Wells Fargo National Bank. Days later Wells Fargo National Bank drained all the money from Plaintiff's bank account then closed and restricted Plaintiff's account. Plaintiff believes this was an act of retaliation against the Plaintiff for seeking redress and excising her equal rights.

9. On January 15, 2021, Mosley; Contreras, Headworth, and Esparza were emailed picture evidence from Plaintiff to support Plaintiff's allegations against Navarro and his creepy online behavior with her social media. Mosley and his associates conveniently lost this evidence. After Plaintiff's devices were hacked the evidence she had on them was also deleted by the Defendants.

10. Judge Orozco ordered a Mandatory Settlement Conference on January 7, 2021 which proves that Plaintiff's prior counsel were engaging in settlement discussions without her consent or knowledge against California Civil Code of Procedure.

11. Thompson Coburn via Ricominci sent Plaintiff their first 998 offer on January 12, 2021 for $12,000 which Plaintiff denied as she demanded a Jury Trial.

12. On January 11, 2021 Amanda Headworth emailed Plaintiff that jury fees in her case were posted on her behalf.

13. A Tentative Ruling was emailed to Plaintiff from Montoya Solis on August 2, 2021 around 7pm the night before the August 3, 2021 hearing. Montoya Solis, under penalty of perjury stated that no court reporter would be present at the August 3, 2021 hearing and that it would not be necessary for the Plaintiff to be present. Plaintiff attended this hearing anyways where there was indeed a court reporter present and Montoya Solis and Thompson Coburn made false declarations to the court of record.

14. Plaintiff emailed court report Tracy Dyrness CSR#12323 on August 9, 2021 <dyrness1@gmail.com>, asking for a copy of the August 3, 2021 hearing's transcripts. Tracy Dyrness did not respond nor supply any record to Plaintiff.

**IX. CAUSES OF ACTION**

**CAUSE OF ACTION NO. 1**

**Sexual Harassment, Sexual Assault, and Hostile Work Environment**

**(Against Southwest Wine & Spirits, LLC; Wally's Auction House, LLC; Mel-Jen; Wally's Management; Christie's Wine; Christie's**

**NY; Christie's NJ; Delta Air Lines; Guess? Retail, Inc.; 3900 WA, LLC; and Individual Managers/Staff Responsible for Oversight)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

2. Plaintiff was employed by Southwest Wine & Spirits, LLC dba Wally's Beverly Hills ("Wally's") as a front desk hostess at its Beverly Hills location. During her employment, Plaintiff was subjected to a persistent and escalating pattern of sexual harassment, including lewd comments, inappropriate touching, and sexual advances by customers while on shift; in addition to lewd comments from management.

3. Wally's management and ownership were made aware of the harassment by both Plaintiff and other staff but took no remedial or disciplinary action to prevent it. Instead, management fostered a workplace culture that normalized inappropriate behavior and enabled wealthy clientele to violate the personal boundaries of staff.

4. In 2019, while employed at Wally's, Plaintiff was solicited by a Wally's manager to bartend a private "poker night" event in Los Angeles, California. Although Plaintiff was not a bartender for Wally's she did have previous bartending

experience. Plaintiff had never been assigned to work private off-site events, she was encouraged to participate.

5. Upon arrival, Plaintiff discovered the event was not a standard poker night, but appeared to be a front for a sex trafficking operation involving wealthy men and celebrities. The women hired to do this event were expected to engage in sexual activity with the men in exchange for poker chips/ cash out. The atmosphere was sexualized and coercive, and Plaintiff was expected to engage with attendees in ways outside the scope of her employment.

6. Plaintiff was expelled from the event when she refused to participate in any inappropriate or sexualized conduct. On Plaintiffs next working shift, while on duty at Wally's, a female manager paid Plaintiff for the event in cash on Wally's property, and asked if Plaintiff knew "*other girls who might be interested*." Plaintiff understood this to be an attempt to recruit additional young women for similar events, amounting to attempted sex trafficking under federal law.

7. The owners and management of Wally's facilitated and enabled this conduct by failing to supervise staff assignments, ignoring unlawful behavior at "off-site" events, and allowing known harassment by customers and staff. These actions

contributed to a hostile work environment and exposed Plaintiff to illegal conduct that endangered her safety.

8. Plaintiff's refusal to participate in this sex trafficking scheme was met with adverse employment actions, including retaliatory scheduling, intimidation, and ultimately wrongful termination.

9. Plaintiff alleges that Christie's, Christie's- New York, Christie's - New Jersey, Delta Air Lines, and 3900 WA maintained close business and promotional affiliations with Wally's Beverly Hills, participated in co-sponsored events, and had knowledge of and/or supported the unlawful practices occurring at or through Wally's and its affiliated events. These entities knowingly benefited from and failed to report or prevent the illicit conduct, including Plaintiff's harassment, attempted trafficking, and retaliation.

10. Defendants' conduct violates federal and state anti-discrimination and anti-trafficking statutes, including **Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.**, and constitutes tortious acts including sexual harassment, battery, intentional infliction of emotional distress, and wrongful termination.

11. Plaintiff seeks general and special damages, punitive damages, injunctive relief.

**CAUSE OF ACTION NO. 2**

**Sexual Harassment and Hostile Work Environment – Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) (Against Southwest Wine & Spirits, LLC; Wally's Auction House, LLC; Mel-Jen; Wally's Management; Christie's Wine; Christie's NY; Christie's NJ; Delta Air Lines; Guess? Retail, Inc.; 3900 WA, LLC; and Individual Managers/Staff Responsible for Oversight)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

2. Plaintiff was employed by Southwest Wine & Spirits, LLC dba Wally's Beverly Hills ("Wally's") as a front desk hostess. During her employment, she was subjected to repeated, unwelcome sexual comments, gestures, and conduct by customers and management while on duty in the restaurant.

3. The harassment included sexually explicit remarks, inappropriate staring, touching, and propositions, all occurring in plain view of management and other staff members and/ or being done by management or other staff members. This conduct was consistent and ongoing throughout her employment.

4. Plaintiff notified her supervisors and management of the harassment and unsafe working conditions on multiple occasions.

However, management failed to take any corrective action. Instead, managers allowed the behavior to continue, discouraged reporting, and in some cases implied that tolerating customer misconduct was part of the job.

5. The work environment created by Wally's management was sexually charged, demeaning, and discriminatory. It normalized the objectification of female employees and exposed Plaintiff to constant anxiety, discomfort, and fear.

6. This environment was not only tolerated but enabled and perpetuated by the company's leadership, thereby creating a hostile work environment in violation of Title VII of the Civil Rights Act of 1964.

7. Plaintiff experienced severe emotional distress and trauma due to the continued harassment, which affected her mental and physical health, personal relationships, and ability to work.

8. Defendants' actions and omissions created and maintained a hostile work environment on the basis of Plaintiff's sex and failed to implement any effective anti-harassment policies or protections.

9. Plaintiff seeks general and special damages, punitive damages, injunctive relief.

**CAUSE OF ACTION NO. 3**

**Employment Retaliation – Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-3(a)), and Public Policy Tort (Against Southwest Wine & Spirits, LLC; Wally's Auction House, LLC; Mel-Jen; Individual Management of Wally's; and Affiliated Entities, including Christie's, Delta Air Lines, and 3900 WA, for knowledge and/or participation in retaliatory actions)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

2. During her employment at Wally's Beverly Hills, Plaintiff engaged in protected activity by reporting sexual harassment by customers and coworkers, unsafe working conditions, misconduct at private events, and unlawful conduct that included potential trafficking and exploitation.

3. Rather than investigating or remedying the misconduct, Wally's management and affiliated entities retaliated against Plaintiff. Retaliatory actions included reduction of hours, intimidation, verbal hostility, sudden negative performance feedback without basis, exclusion from work opportunities and non-work shift accommodation's, and eventual wrongful termination.

4. Plaintiff was also retaliated against for refusing to participate in activities related to the "poker night" event

that had indicators of a sex trafficking operation. Her refusal and complaints triggered further hostility from management, including suggestions that she was "not a team player," and exclusion from future work assignments and advancement.

5. Management, including individuals acting on behalf of or in coordination with affiliated entities such as Christie's, Delta, and 3900 WA, participated in or enabled this retaliation by jointly sponsoring or profiting from events where Plaintiff's safety and rights were compromised, and by permitting or ignoring the unlawful treatment she endured.

6. After raising concerns and refusing to comply with inappropriate demands, Plaintiff was retaliated against through termination, blacklisting, defamation, and threats aimed at silencing her, including threats of legal action, reputational damage, and financial harm.

7. The adverse actions taken against Plaintiff were directly caused by her engagement in protected activity and her opposition to unlawful employment practices, in violation of Title VII and public policy.

8. Defendants' conduct was willful, malicious, and in reckless disregard of Plaintiff's federally protected rights.

9. Plaintiff seeks general and special damages, punitive damages, injunctive relief.

**CAUSE OF ACTION NO. 4**

**(Violation of 18 U.S.C. §201 – Bribery of Public Officials and Witnesses)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Under 18 U.S.C. §201(b), it is unlawful for any person to directly or indirectly give, offer, or promise anything of value to a public official with intent to influence any official act, or to influence such person to commit or aid in committing, collude in, or allow any fraud, or to induce such person to act in violation of their lawful duty.

3. Upon information and belief, various Defendants engaged in efforts to unlawfully influence public officials and legal actors through bribes, favors, or other improper incentives in order to:

a. Obstruct or derail Plaintiff's legal claims and judicial process;

b. Protect individuals and corporations named as defendants from liability;

c. Secure favorable rulings, prevent filings from being docketed, or ensure procedural dismissals; and

d. Undermine Plaintiff’s ability to obtain a fair hearing or redress for her injuries.

4. These efforts included improper relationships and alleged influence exerted over individuals in the Office of the Attorney General (Robert Bonta), judicial officers such as Judge Yolanda Orozco, and clerks at the Stanley Mosk Courthouse, as well as possible interactions with bar regulators and public law enforcement personnel.

5. The individuals and entities against whom this cause of action is brought include:

• Walter Mosley, individually and through Walter Mosley, A Professional Corporation

• Nathalie Meza Contreras, individually and through Contreras Law

• Carlos Eduardo Montoya Solis

• Juan J. Dominguez and The Dominguez Law Firm

• The Bloom Firm, Inc. and Lisa Bloom

• Alan Goldstein

• Public officials including Robert Bonta, and others unnamed at this stage, who accepted or facilitated the influence

• The State Bar of California, California Civil Rights Department, and other regulatory agencies that failed to act or were influenced by improper relationships

6. These acts constitute bribery and corruption in violation of 18 U.S.C. §201, and were carried out to suppress Plaintiff's constitutional and statutory rights, tamper with evidence and proceedings, and protect wrongdoers from legal consequences.

7. As a direct and proximate result of Defendants' conduct, Plaintiff suffered substantial harm including obstruction of her access to justice, emotional distress, reputational damage, and the continued denial of her legal claims.

8. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 5**

**(Violation of 18 U.S.C. §208 – Acts Affecting a Personal Financial Interest by Government Officers or Employees)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Under 18 U.S.C. §208, it is unlawful for any officer or employee of the executive branch of the U.S. government (or of any independent agency) to participate personally and substantially in any particular matter in which, to their knowledge, they, their spouse, minor child, general partner,

organization in which they serve, or with whom they are negotiating future employment, has a financial interest.

3. Upon information and belief, various government actors, including but not limited to public officials, attorneys, and state-employed legal professionals, engaged in or allowed participation in judicial or administrative proceedings directly related to Plaintiff's matters despite holding personal, political, or financial interests in the outcome of those matters.

4. These conflicts of interest tainted proceedings in which:

• Filings were removed or not docketed;

• Plaintiff's claims were dismissed without due consideration;

• Investigations and complaints were either not pursued or mishandled;

• Judicial officers and legal professionals appeared to be acting to protect individuals and entities with whom they had undisclosed ties.

5. Defendants and entities implicated in this cause of action include:

• Judge Yolanda Orozco (referenced but not named as a Defendant due to Judicial immunity), whose actions included

allegedly removing or blocking Plaintiff's filings while under possible undisclosed influences;

• Robert Bonta, the Attorney General of California, and officials within his office, for failing to address or acknowledge documented misconduct despite being directly informed;

• Unnamed officials in the California Civil Rights Department, Department of Industrial Relations, and State Bar of California who may have had personal or political ties to Defendant corporations or law firms and whose inaction protected those interests;

• Walter Mosley, Nathalie Meza Contreras, Carlos Eduardo Montoya Solis, and affiliated attorneys and firms, whose actions or collusion may have also influenced public agency outcomes or were protected by those with conflicts.

6. These government actors had a duty to recuse themselves or disclose any potential conflicts of interest but failed to do so, resulting in direct injury to Plaintiff through obstruction of justice and deprivation of fair administrative and judicial process.

7. As a direct and proximate result of these unlawful actions, Plaintiff has suffered damages including loss of legal redress, mental and emotional distress, and reputational harm.

8. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 6**

**(Violation of 18 U.S.C. §241 – Conspiracy Against Rights)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Under 18 U.S.C. §241, it is a federal crime for two or more persons to conspire to injure, oppress, threaten, or intimidate any person in the free exercise or enjoyment of any right or privilege secured by the Constitution or laws of the United States.

3. Defendants named herein, acting under color of law and in concert with one another, knowingly and willfully conspired to deprive Plaintiff of her federally protected rights, including but not limited to:

• Her right to seek redress and access the courts;

• Her right to a fair legal process free from corruption and bias;

• Her rights under Title VII of the Civil Rights Act of 1964;

• Her rights under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution;

- Her right to be free from sexual harassment, retaliation, and coercion in the workplace;
- Her right to bodily integrity and personal safety.

4. These conspiracies included acts of retaliation, fabrication of legal filings and rulings, coordination between defense counsel and prior counsel to sabotage Plaintiff's litigation, concealment of material evidence, illegal arbitration practices, removal of court filings, and coercive threats.

5. Defendants involved in this conspiracy include, but are not limited to:

- Walter Mosley, Nathalie Meza Contreras, Carlos Eduardo Montoya Solis, and Juan J. Dominguez, JAE HYUN KIM (Plaintiff's former legal counsel), for engaging in collusion with defense attorneys;
- Arthur F. Silbergeld, Kacey Riccomini, and others associated with Thompson Coburn LLP, for coordinated litigation misconduct;
- Nancy Hunter, Christian Navarro, Paul Marciano, and Maurice Marciano, and all other Wally's staff and management for orchestrating workplace abuse and retaliatory schemes;

• Individuals associated with Wally’s Auction House LLC, Navarro Online LLC, Christie’s Inc., and 3900 WA Associates LLC, as entities involved in and benefiting from the scheme;

• Officials and agencies including Judge Yolanda Orozco, Robert Bonta, California Civil Rights Department, State Bar of California, and Stanley Mosk Courthouse, for knowingly participating in or turning a blind eye to constitutional violations.

6. The actions of these Defendants were not only coordinated but intentional and malicious, designed to silence Plaintiff, obstruct justice, preserve institutional power, and protect those accused of sexual harassment, assault, and misconduct.

7. As a direct and proximate result of this conspiracy, Plaintiff has sustained damages including emotional distress, reputational harm, professional retaliation, financial loss, and deprivation of constitutional rights.

8. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 7**

**(Violation of 18 U.S.C. § 242 – Deprivation of Rights Under Color of Law)**

**(Against All Defendants Acting In Their Full Capacity Under Color of Law)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Under 18 U.S.C. §242, it is unlawful for any person acting under color of any law, statute, ordinance, regulation, or custom to willfully deprive any person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

3. Numerous Defendants, acting individually and in coordination, did so while using the authority of their official positions or affiliations with legal, governmental, and corporate institutions, thereby acting under color of law.

4. Defendants who willfully deprived Plaintiff of her constitutional and statutory rights under color of law include, but are not limited to:

• Judge Yolanda Orozco, for unlawfully removing filings from the court docket, including a request for admissions addressed to Attorney General Robert Bonta;

• Robert Bonta, in his capacity as California Attorney General, for knowingly allowing or participating in unconstitutional practices and failures to investigate or intervene;

• State of California Civil Rights Department, California Labor Commissioner's Office, and State Bar of California, for willful inaction, ignoring filings, and creating roadblocks to redress despite having jurisdiction and legal obligations;

• Walter Mosley, Nathalie Meza Contreras, Carlos Eduardo Montoya Solis, Juan J. Dominguez, and Jae Hyun Kim, Plaintiff's prior attorneys, for failing to represent Plaintiff zealously, withholding key filings, and engaging in misconduct while holding state bar licenses;

• Defense counsel including Arthur F. Silbergeld, Kacey Riccomini, and others at Thompson Coburn LLP, who engaged in fraud and false filings with the court;

• Clerks and court staff at Stanley Mosk Courthouse who failed to file or processed altered versions of Plaintiff's submissions.

5. These actions deprived Plaintiff of her:

• Right to petition the government for redress;

• Right to equal protection under the law;

• Right to due process;

• Right to a fair and impartial tribunal;

• Right to be free from abuse by those in positions of authority.

6. The deprivation was not only unlawful but willful, malicious, and done with knowledge that Plaintiff's rights were being violated.

7. As a direct and proximate result of these constitutional deprivations under color of law, Plaintiff has suffered extensive harm including loss of employment opportunities, damage to her legal claims, emotional trauma, and continuing retaliation.

8. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 8**

**(Violation of 18 U.S.C. §285 – Taking or Using Papers Relating to Claims)**

**(Against All Defendants Who Is An Officer or Employee of the United States of America)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

2. This cause of action is brought under 18 U.S.C. §285, which prohibits any officer or employee of the United States from taking or using any paper or document related to a claim against the government for their own personal interest or gain.

3. Plaintiff alleges that documents filed with the court, specifically Requests for Admission directed to Robert Bonta,

the Attorney General of California, were unlawfully removed or withheld from the docket by agents of the court. This conduct was committed in collusion with individuals acting under color of law to conceal legal evidence relevant to Plaintiff's case.

4. Although Judge Yolanda Orozco is not a named defendant in this action due to judicial immunity, her actions are included here as evidence of broader misconduct and abuse of authority within the judicial process relevant to the obstruction and manipulation of Plaintiff's litigation.

5. Plaintiff alleges that such removal or interference was not only unauthorized but served to protect the interests of other defendants and to suppress Plaintiff's claims and rights in ongoing litigation, in violation of federal law.

6. The individuals and entities responsible for causing or benefiting from this interference include attorneys previously retained by Plaintiff, agents of the State of California, and affiliated legal professionals who engaged in a pattern of coordinated obstruction, including but not limited to Nathalie Meza Contreras, Walter Mosley, Carlos Eduardo Montoya Solis, and others as further detailed in the complaint.

7. These actions constituted willful and unlawful misconduct in violation of 18 U.S.C. §285.

8. Plaintiff seeks general and special damages, punitive damages, injunctive relief.

**CAUSE OF ACTION NO. 9**

**(Violation of 18 U.S.C. §472 – Forgery of Documents Submitted to the Court)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

2. This cause of action arises under 18 U.S.C. §472, which criminalizes the act of passing, uttering, publishing, or attempting to pass as true and genuine any falsely made, forged, or counterfeited document, with intent to defraud.

3. Plaintiff alleges that multiple documents bearing Plaintiff's forged signature were knowingly submitted to the court by Plaintiff's prior attorneys in collusion with defense firm Thompson Coburn LLP and its individual attorneys and staff, including but not limited to Walter Mosley, Nathalie Meza Contreras, Carlos Eduardo Montoya Solis, and others.

4. These documents included:

• A falsified Employee Record Authorization Form,

• A fraudulent HIPAA Authorization Form,

• A forged retainer agreement with a date fraudulently backdated to reflect a month prior to Plaintiff's actual employment at Wally's,

• Additional falsified or forged legal documents presented to the court as authentic.

5. These forged documents were deliberately used to misrepresent facts, override Plaintiff's consent, and manipulate litigation outcomes in favor of corporate defendants including but not limited to Southwest Wine & Spirits, Mel-Jen LLC, Delta, and others.

6. The submission and use of these forged documents were intended to deceive the court, defraud Plaintiff, obstruct justice, and protect powerful defendants by manufacturing false legal narratives, thereby violating 18 U.S.C. §472.

7. These actions were coordinated and systematic, occurring with the knowledge and/or direction of licensed legal professionals who had a fiduciary and ethical duty to Plaintiff.

8. Plaintiff seeks general and special damages, punitive damages, injunctive relief.

**CAUSE OF ACTION NO. 10**

**(Violation of 18 U.S.C. § 494 – Falsifying Documents with Intent to Defraud)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

2. This cause of action arises under 18 U.S.C. §494, which prohibits knowingly making or using any false writing with the intent that it be used or acted upon as true by another, particularly in legal or official proceedings.

3. Plaintiff alleges that her prior attorneys, including but not limited to Walter Mosley, Nathalie Meza Contreras, Carlos Eduardo Montoya Solis, and others, knowingly executed and submitted falsified legal documents during the course of her litigation in collusion with the defense firm Thompson Coburn LLP and its individual attorneys, including Kacey Riccomini, Richard Gene Reinis and Arthur F. Silbergeld.

4. These documents included:

• A Stipulation into Arbitration falsely suggesting Plaintiff's voluntary agreement to arbitrate claims, despite Plaintiff never knowingly signing or consenting to arbitration;

• Multiple Case Management Statements misrepresenting Plaintiff's position and facts regarding litigation readiness;

• Mandatory Settlement Conference documents containing falsified positions, signatures, or consent terms that were never reviewed or approved by Plaintiff.

5. These documents were presented to the Los Angeles Superior Court and opposing parties as truthful and accurate, with the intent to deceive the court, misrepresent Plaintiff's legal position, and derail her claims in favor of the defendants.

6. The defendants responsible for or involved in these falsified filings include, but are not limited to:

• Walter Mosley, Nathalie Meza Contreras, and Carlos Eduardo Montoya Solis (prior counsel),

• Walter Mosley, A Professional Corporation and Nathalie Meza Contreras Law, A Professional Corporation (prior counsel's firms),

• The Dominguez Firm, Juan J. Dominguez, Jae H. Kim and others,

• Thompson Coburn LLP and its attorneys,

• Other parties knowingly benefiting from the fraud, including Southwest Wine & Spirits, LLC, Wally's Auction House LLC, Mel-Jen LLC, and affiliated corporate defendants.

7. The falsification of these documents materially harmed Plaintiff's ability to prosecute her claims, constituted a breach of ethical and fiduciary duties, and violated federal law under 18 U.S.C. §494.

8. Plaintiff seeks general and special damages, punitive damages, injunctive relief.

**CAUSE OF ACTION NO. 11**

**(Violation of 18 U.S.C. §641 – Theft of Public Money, Property, or Records)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. This cause of action arises under 18 U.S.C. §641, which prohibits the embezzlement, theft, knowing conversion, or unauthorized sale or disposal of any record, money, or thing of value belonging to the United States or any department or agency thereof.

3. Plaintiff alleges that during the pendency of her civil litigation in the Los Angeles Superior Court, Judge Yolanda Orozco, while acting in her official capacity, concurrently engaged in undisclosed service as a private judge affiliated with the American Arbitration Association (AAA), a for-profit arbitration company.

4. Plaintiff was never informed, nor did she consent, to Judge Orozco serving in any private or alternative judicial capacity outside her role as a Superior Court judge.

5. Without Plaintiff's knowledge or consent, Judge Orozco was retained and compensated in connection with Plaintiff's litigation by both prior counsel and defense counsel, including but not limited to Walter Mosley, Nathalie Meza Contreras, Carlos Eduardo Montoya Solis, Thompson Coburn LLP, Richard Gene Reinis, and Arthur F. Silbergeld, constituting unlawful receipt of funds for judicial influence, services, or access.

6. Plaintiff submitted a written motion requesting that Judge Orozco state on the record the legal capacity in which she was presiding over Plaintiff's matter, whether as a Superior Court judge, referee, private judge, or otherwise. Despite the motion being properly filed and served, Judge Orozco refused to respond to or address the inquiry, effectively concealing the nature of her role and compensation.

7. Plaintiff later confirmed through statements by Andrew Barton, the owner of AAA, that Judge Orozco was concurrently an active judge affiliated with AAA, reinforcing the belief that she had a financial relationship with a private entity while presiding over public judicial matters, without disclosure.

8. This arrangement constituted an unauthorized conversion and misuse of public judicial authority for private or commercial benefit and a breach of duty to disclose financial conflicts, in violation of 18 U.S.C. §641.

9. The following defendants were responsible for or complicit in this conduct:

• Judge Yolanda Orozco (not named as a defendant due to judicial immunity),

• Walter Mosley, Nathalie Meza Contreras, Carlos Eduardo Montoya Solis (prior counsel),

• Thompson Coburn LLP, Richard Gene Reinis, and Arthur F. Silbergeld (defense counsel),

• AAA (American Arbitration Association, Inc.) and Andrew Barton,

• Additional benefiting parties, including but not limited to Southwest Wine & Spirits, LLC, Wally's Auction House, LLC, Mel-Jen, LLC, and corporate affiliates Christie's, Delta Air Lines, and 3900 WA Associates, LLC.

10. This conduct resulted in irreparable harm to Plaintiff's constitutional rights, compromised the impartiality of the court proceedings, and tainted the legitimacy of judicial rulings and orders.

11. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 12**

**(Violation of 18 U.S.C. §872 – Extortion by Officers or Employees of the United States)**

**(Against All Defendants Who Are Officers of Employees of the United States of America)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. This cause of action arises under 18 U.S.C. §872, which prohibits any officer or employee of the United States from extorting money, property, or anything of value under the pretense of official authority.

3. Plaintiff alleges that various individuals employed by, or acting in cooperation with, public agencies and institutions, including the California Department of Industrial Relations, Equal Employment Opportunity Commission (EEOC), California Civil Rights Department, Los Angeles Superior Court, United States Attorneys, and members of the State Bar of California, used the color of their official roles and authority to suppress Plaintiff's protected complaints and intimidate Plaintiff into silence.

4. After Plaintiff attempted to report misconduct, including sexual assault, discrimination, unlawful arbitration practices, and judicial corruption, officials and attorneys acting on behalf of the State of California and the United States pressured her to withdraw claims, accept unjust settlements, or stop pursuing litigation altogether.

5. These threats were accompanied by tactics including:

• The filing of falsified legal documents and misrepresentations to the court;

• Withholding of key filings or redirection of filings intended for oversight entities (e.g., documents addressed to California Attorney General Robert Bonta removed from the record by Judge Orozco);

• Sudden removals of Plaintiff's filings from court dockets;

• Intimidating communications implying criminal or civil penalties for continuing to pursue certain claims;

• Threats from prior attorneys, Walter Mosley, Nathalie Meza Contreras, and others, stating Plaintiff would be left without representation if she didn't start "*doing what they told her to do*", financially ruined, or face reputational harm if she continued pursuing litigation against high-profile defendants.

6. These actions were used to wrongfully coerce Plaintiff into silence, drop her claims, and abandon her constitutional rights, all while being carried out under the appearance of legal or judicial authority.

7. The conduct of these individuals and institutions was not within the lawful bounds of their official duties and was undertaken for the improper benefit of private actors, including

Wally's-related defendants, defense firms, and third-party arbitration companies.

8. The following defendants and individuals were responsible for or complicit in this conduct:

- Walter Mosley, Nathalie Meza Contreras, Carlos Eduardo Montoya Solis, Jae H. Kim, and Juan J. Dominguez (Plaintiff's prior attorneys),
- State Bar of California, California Civil Rights Department, and Department of Industrial Relations,
- Judge Yolanda Orozco (referenced but not named due to judicial immunity),
- United States Attorneys and California State Officials who failed to act and instead suppressed Plaintiff's filings,
- Thompson Coburn LLP, Kacey Riccomini, Richard Gene Reinis, Arthur F. Silbergeld, and affiliated parties who directly benefited from suppression of Plaintiff's claims,
- Affiliated corporate defendants including Wally's, Christie's, Delta, 3900 WA, and their counsel.

9. This conduct constitutes a violation of 18 U.S.C. §872, as public actors used the color of law to wrongfully extract silence, cooperation, or dismissal of Plaintiff's legal rights under pretense of lawful authority.

10. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 13**

**(Violation of 18 U.S.C. §873 – Blackmail)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. This cause of action arises under 18 U.S.C. §873, which criminalizes the act of demanding money or something of value under threat of revealing or withholding information that could harm another person's reputation, standing, or legal position.

3. Plaintiff alleges that certain defendants, including her former attorneys and opposing counsel, as well as individuals affiliated with the State of California and the United States government, engaged in a pattern of coercive threats and intimidation designed to silence Plaintiff, compel her to drop her legal claims, and ensure protection of wealthy or connected defendants.

4. These threats included, but were not limited to:

• Threats from Walter Mosley, Nathalie Meza Contreras, and Carlos Eduardo Montoya Solis that continuing to pursue claims against powerful defendants like Wally's, Guess?, Marciano, and others would result in Plaintiff being left without proper legal

representation in the middle of litigation, unable to secure future counsel, and she would be "financially destroyed" if she kept demanding a jury trial instead of arbitration which they demanded she partake in.

• Defense counsel, including Thompson Coburn LLP, Richard Gene Reinis, and Arthur F. Silbergeld, in collusion with Plaintiff's prior counsel, used court filings and procedural motions to create a record portraying Plaintiff as dishonest, uncooperative, or unstable, as a form of reputational coercion.

• Members of the State Bar of California, California Civil Rights Department, and Department of Industrial Relations allegedly weaponizing their institutional authority to discourage Plaintiff from submitting further complaints by implying or threatening that she could face legal repercussions or retaliation if she continued.

5. Plaintiff further alleges that these actions were motivated by a desire to shield corporate and individual defendants from liability and to protect professional reputations, business interests, and ongoing legal or political relationships.

6. These defendants and individuals effectively blackmailed Plaintiff by threatening her legal standing, reputation, and financial survival unless she complied with their unlawful

demands to remain silent or drop her litigation efforts or accept an insulting settlement for the gross misconduct she endured, and continues to endure.

7. The conduct described above was not part of legitimate legal advocacy or representation, it was coercive, extralegal, and in direct violation of 18 U.S.C. §873.

8. The following individuals and entities are identified as responsible for or complicit in this conduct:

• Walter Mosley, Nathalie Meza Contreras, Carlos Eduardo Montoya Solis, Juan J. Dominguez, and Jae Hyun Kim (Plaintiff's prior attorneys),

• Richard Gene Reinis, Arthur F. Silbergeld, Kacey Riccomini, and Thompson Coburn LLP (defense counsel),

• State Bar of California, California Civil Rights Department, and Department of Industrial Relations, etc.,

• Judge Yolanda Orozco (referenced, not named as defendant due to judicial immunity),

• Corporate defendants with influence or control over legal counsel or proceedings, including Wally's, Guess?, Christie's, Delta, and 3900 WA.

9. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 14**

**(Violation of 18 U.S.C. §1001 – False Statements or Concealment of Material Facts)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. This cause of action arises under 18 U.S.C. §1001, which prohibits knowingly and willfully falsifying, concealing, or covering up a material fact, making any materially false or fraudulent statement or representation, or making or using any false writing or document knowing it contains materially false or fraudulent information, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the government of the United States.

3. Plaintiff alleges that numerous defendants knowingly submitted false statements, fraudulent documents, and concealed material facts in court filings, discovery responses, and formal communications, both with the Court and federal or state agencies.

4. Specific false statements and concealments include, but are not limited to:

• Forged or fraudulently altered documents submitted to the Los Angeles Superior Court by prior counsel and defense counsel, including but not limited to a fake employee record

authorization form, HIPAA authorization, a backdated retainer agreement, and fabricated arbitration agreements, fabricated and fraudulent case management statements, fabricated and fraudulent mandatory settlement documents, etc., all presented as genuine to influence judicial proceedings.

- False and misleading statements made in pleadings, stipulations, and settlement filings by Walter Mosley, Nathalie Meza Contreras, Carlos Eduardo Montoya Solis, Thompson Coburn LLP, Richard Gene Reinis, Kacey Riccomini, and Arthur F. Silbergeld, intending to distort the factual and legal record to prejudice Plaintiff's claims.

- Defense attorneys falsely asserting Plaintiff had agreed to binding arbitration, despite Plaintiff never knowingly consenting to any such agreement.

- Judge Yolanda Orozco's removal of key filings (including Requests for Admission addressed to the California Attorney General Robert Bonta) from the public court docket, thereby concealing material information from the record. Although she is not a named defendant, her conduct is referenced as part of the judicial misconduct that contributed to the violation.

- Refusals by individuals and agencies, including the State Bar of California, California Department of Industrial Relations, and others, to acknowledge or report misconduct when

presented with substantial evidence by Plaintiff, which further concealed material facts relevant to ongoing proceedings.

5. These misrepresentations and concealments were made knowingly and willfully in matters under the jurisdiction of the United States courts, administrative agencies, and in communications with federal authorities, and directly obstructed Plaintiff's access to justice and due process.

6. The following individuals and entities are specifically named as responsible for violations of 18 U.S.C. §1001:

- Walter Mosley, Nathalie Meza Contreras, Carlos Eduardo Montoya Solis, Juan J. Dominguez, Amanda Headworth, Gracie Esparza, and Jae Hyun Kim (Plaintiff's prior attorneys) and their firms,
- Thompson Coburn LLP, Richard Gene Reinis, Arthur F. Silbergeld, Kacey Riccomini, and Blanca Gutierrez (defense counsel and their staff),
- The State Bar of California, California Department of Industrial Relations, and California Civil Rights Department,
- ONE Legal LLC, the service processor involved in filings related to the submission of false documents,
- Wally's, Guess?, Christie's, and other corporate entities that acted through their agents or attorneys to submit or rely on fraudulent information,

• Judicial officer Yolanda Orozco, referenced but not named as a defendant due to judicial immunity.

7. These falsehoods directly injured Plaintiff by obstructing fair proceedings, concealing crucial facts, and fabricating procedural justifications for decisions adverse to Plaintiff's legal interests.

8. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 15**

**(Cover-Up and False Representations Under Color of Law – 18 U.S.C. §1001, in conjunction with 18 U.S.C. § 241, 242, 1018, 1505, 1510)**

**(Against All Defendants Acting In Their Full Capacity Under Color of Law)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. This cause of action concerns the deliberate concealment, misrepresentation, and obstruction of justice committed under color of law by individuals and institutions acting in official, professional, or quasi-legal capacities.

3. Under 18 U.S.C. §1001, it is unlawful to knowingly and willfully make materially false statements or conceal facts in matters within the jurisdiction of any department or agency of

the United States. Further, 18 U.S.C. §241 and 242 criminalize conspiracies and acts carried out under color of law to deprive individuals of constitutional rights.

4. Plaintiff alleges that various state officials, court officers, prior counsel, defense counsel, and related institutions engaged in a coordinated pattern of concealment and false representation to obstruct Plaintiff’s access to justice, protect the interests of politically and financially connected defendants, and cover up unlawful acts, including workplace abuse, attempted sex trafficking, forged legal documents, and judicial corruption.

5. Specific conduct includes, but is not limited to:

• Judge Yolanda Orozco, while presiding over Plaintiff’s case in Los Angeles Superior Court, failed to disclose her dual role as a private arbitrator for AAA and JAMS, and refused to state on the record her legal capacity in the proceedings after Plaintiff filed a motion demanding clarification. Her actions suppressed material facts under color of judicial authority.

• Prior attorneys, including Walter Mosley, Nathalie Meza Contreras, Carlos Eduardo Montoya Solis, and Jae Hyun Kim, engaged in deliberate sabotage of Plaintiff’s case, including collusion with defense counsel, submission of fraudulent

documents, and coordinated concealment of Plaintiff's filings and complaints.

• Defense counsel from Thompson Coburn LLP, along with attorneys Richard Gene Reinis, Arthur Silbergeld, Kacey Riccomini, and others, knowingly relied on false stipulations, concealed fabricated records, and made misrepresentations to the court to benefit defendants.

• Public agencies, including the California Civil Rights Department, State Bar of California, and California Department of Industrial Relations, were formally notified of the above misconduct and willfully refused to investigate or report violations, thereby contributing to the cover-up of crimes and constitutional violations.

• Los Angeles Superior Court clerks and administrative staff failed to process and docket critical filings submitted by Plaintiff, including motions and requests for admission addressed to high-level officials, including California Attorney General Robert Bonta. In some instances, these filings were removed from the record entirely.

6. The cumulative effect of these actions constitutes a cover-up under color of law, designed to shield the defendants from accountability, suppress Plaintiff's evidence, and interfere with both state and federal legal proceedings.

7. Some Defendants and parties implicated in this cover-up include:

• Judge Yolanda Orozco (named for reference only),

• Walter Mosley, Nathalie Meza Contreras, Carlos Eduardo Montoya Solis, Jae Hyun Kim, and their respective law firms,

• Thompson Coburn LLP, Richard Gene Reinis, Arthur F. Silbergeld, Kacey Riccomini, and Blanca Gutierrez,

• The State Bar of California, California Civil Rights Department, California Department of Industrial Relations, etc.

• ONE Legal, LLC, responsible for handling filing and service,

• Any Doe defendants who participated in concealing or suppressing evidence or filings under official capacity.

8. These coordinated acts were executed with willful intent, under color of law, and deprived Plaintiff of due process and the right to a fair and impartial judicial proceeding.

9. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 16**

**(False Testimony Under Oath – 18 U.S.C. §1621)**

**(Against Thompson Coburn & all attorney's and staff; Walter Mosley & Nathalie Meza Contreras and their corporations and**

**their staff; Montoya Solis, Amanda Headworth, The Dominguez Firm; Juan J. Dominguez; Jae H. Kim, and all other Defendants who made false testimony under oath)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Under 18 U.S.C. §1621, it is a federal offense to willfully state or subscribe any material matter which one does not believe to be true while under oath in any proceeding before a competent tribunal, officer, or person.

3. Plaintiff alleges that multiple individuals, including prior attorneys, defense attorneys, and affiliated professionals, knowingly provided false statements under oath in written declarations, pleadings, and in-court testimony during proceedings before the Los Angeles Superior Court and associated arbitration forums.

4. A specific and egregious example includes Plaintiff's former attorney, Carlos Eduardo Montoya Solis, who appeared under oath on August 3, 2021, at a hearing before the Los Angeles Superior Court, represented as a "status report." In truth, the hearing was an orchestrated attempt by Defendants to obtain a Temporary Restraining Order (TRO) against Plaintiff, motivated by her public exposure of alleged corruption and

misconduct on social media, a violation of her First Amendment Rights.

5. At that hearing, Carlos Montoya, while purporting to speak on behalf of Plaintiff, knowingly gave false statements under oath regarding Plaintiff's mental health, litigation position, and conduct, statements which Plaintiff had never authorized, agreed to, or verified. These false statements were material and were presented as though Plaintiff had personally adopted them as true. Carlos Montoya also demanded on behalf of his firm that they be recused as Plaintiffs counsel due to her becoming a difficulty to work with. A difficulty to work with because she found and reported egregious attorney misconduct.

6. The hearing was recorded, but Trust One Point, a third-party court service, allegedly refused to release the recordings and hearing transcripts to Plaintiff despite her repeated requests, thereby impeding her access to critical exculpatory evidence. The prolonged delay in prosecuting these claims has, by design or result, given defendants and their counsel years to destroy, withhold, or otherwise eliminate the evidentiary record supporting Plaintiff's claims of perjury and misconduct.

7. In addition to Montoya, other individuals engaged in false testimony under oath by submitting declarations and court

filings containing knowingly false material facts. This includes:

- Walter Mosley, Nathalie Meza Contreras, and Amanda Headworth, who submitted pleadings and documents falsely representing Plaintiff’s consent to arbitration, medical disclosures, and fabricated employment records.
- Defense counsel from Thompson Coburn LLP, including Richard Gene Reinis, Arthur F. Silbergeld, and Kacey Riccomini, who willfully misrepresented Plaintiff’s work history, workplace conduct, and internal investigations under penalty of perjury.

8. The false testimony led to direct harm to Plaintiff, including:

- The imposition of improper litigation restraints,
- Delayed access to justice and key evidence,
- Dismissal or obstruction of valid claims,
- Psychological and reputational injury.

9. Defendants who engaged in or facilitated false testimony under oath include:

- Carlos Eduardo Montoya Solis
- Walter Mosley and Walter Mosley, P.C.
- Nathalie Meza Contreras and Contreras Law, P.C.
- Thompson Coburn LLP
- Richard Gene Reinis

• Arthur F. Silbergeld

• Kacey Riccomini

• Amanda Headworth

• Any Doe defendants who assisted in drafting, submitting, verifying, or covering up false statements

10. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 17**

**(False Writings and Certificates – 18 U.S.C. §1018)**

**(Against Thompson Coburn & all attorney's and staff; Walter Mosley & Nathalie Meza Contreras and their corporations and their staff; Montoya Solis, Amanda Headworth, The Dominguez Firm; Juan J. Dominguez; Jae H. Kim; One Legal, LLC; and all other Defendants who made false writings and certificates)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Under 18 U.S.C. §1018, it is a federal crime for any person authorized by law to make or issue a certificate or writing to knowingly make and deliver as true any document which is false in any material matter.

3. Plaintiff alleges that multiple attorneys and firms acting in the capacity of legal officers of the court and representatives of Plaintiff and Defendants, submitted false

writings, certificates, and filings to the Los Angeles Superior Court and other forums under penalty of perjury and color of law.

4. These false writings included but were not limited to:

- A fraudulent and forged retainer agreement purporting to show that Plaintiff had retained prior counsel a full month before she had begun employment at Wally's.

- A falsified HIPAA release form, giving unauthorized access to Plaintiff's medical history.

- An Employee Record Authorization Form fabricated without Plaintiff's knowledge or consent.

- Fraudulent case management statements, mandatory settlement conference briefs, and stipulations into arbitration falsely reflecting Plaintiff's consent.

- False declarations and pleadings signed under penalty of perjury by Plaintiff's former attorneys and opposing counsel, claiming material facts that were knowingly untrue.

5. These writings were submitted by:

- Walter Mosley and Walter Mosley, P.C.
- Nathalie Meza Contreras and Contreras Law, P.C.
- Carlos Eduardo Montoya Solis
- Jae Hyun Kim
- Thompson Coburn LLP

• Richard Gene Reinis, Arthur F. Silbergeld, Kacey Riccomini

• Amanda Headworth

• Gracie Esparza

• Any Doe defendants who knowingly participated in the creation or submission of these documents

6. These documents were intended to manipulate and obstruct the judicial process, mislead the court, and deprive Plaintiff of fair adjudication of her claims.

7. The documents bore official-looking formats, law firm letterheads, and were submitted through authorized e-filing services such as One Legal, LLC, lending them false legitimacy and resulting in severe legal prejudice to Plaintiff.

8. Plaintiff further alleges that officers of the court, including court clerks or administrators, accepted and filed such documents without due diligence, and in some cases, refused to acknowledge Plaintiff's objections or contrary filings.

9. The submission and acceptance of these false writings materially influenced court rulings and contributed to the sabotage of Plaintiff's claims.

10. Defendants against whom this claim is asserted:

• Walter Mosley, Walter Mosley, P.C.

• Nathalie Meza Contreras, Contreras Law, P.C.

- Carlos Eduardo Montoya Solis
- Jae Hyun Kim
- Thompson Coburn LLP, including:
- Richard Gene Reinis
- Arthur F. Silbergeld
- Kacey Riccomini
- Amanda Headworth
- Gracie Esparza
- One Legal, LLC
- Doe defendants who knowingly authored, processed, or filed the false documents.

11. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 18**

**(Obstruction of Court Orders – 18 U.S.C. §1509)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Under 18 U.S.C. §1509, it is a federal crime to willfully prevent, obstruct, impede, or interfere with the due exercise of rights under a court order, or to attempt to do so.

3. Plaintiff alleges that various Defendants, including attorneys, court officers, law firms, and administrative

entities, deliberately and systematically interfered with lawful court orders and filings submitted by Plaintiff, including but not limited to:

- Blocking, delaying, or removing Plaintiff's motions and evidence from the docket without explanation or legal basis (including a key Request for Admissions addressed to the California Attorney General).

- Interfering with discovery by withholding audio/video evidence of hearings, including the August 3, 2021 hearing in which Carlos Montoya, Plaintiff's former counsel, gave false testimony under oath.

- Failing to enforce protective orders and obligations under court rules that would have shielded Plaintiff from retaliatory tactics by opposing parties.

- Coordinating efforts among opposing counsel and certain judges to obstruct Plaintiff's legal access, including restricting her filings, service of process, and responses.

4. One such incident involved Judge Yolanda Orozco, who presided over the state litigation in the Los Angeles Superior Court, and refused to clarify her capacity when Plaintiff submitted a motion demanding she state for the record whether she was presiding as a referee or otherwise.

5. Judge Orozco's refusal to respond to the motion, coupled with her removal of Plaintiff's filings from the record, constitutes obstruction of Plaintiff's right to a transparent and impartial judicial process.

6. These actions were allegedly coordinated or abetted by:

• Walter Mosley, Nathalie Meza Contreras, Carlos Montoya, Juan J. Domiguez, and Jae Hyun Kim (Plaintiff's former counsel), Gracie Esparza

• Thompson Coburn LLP and its attorneys, including:

• Arthur F. Silbergeld

• Kacey Riccomini

• Richard Gene Reinis

• Amanda Headworth

• Court personnel including unidentified clerks and administrative staff at the Los Angeles Superior Court

• One Legal, LLC, which processed and submitted filings but failed to notify Plaintiff of removals or rejections, in addition to never properly serving any real company or person but with signatures from service processors who cannot be found in database.

• Doe defendants including any staff, judges, or officials who intentionally impeded Plaintiff's access to or enforcement of lawful court orders

7. As a result of these acts, Plaintiff's ability to litigate fairly and to enforce court protections was severely compromised, leading to prolonged delay, denial of evidence, and increased exposure to retaliatory conduct by opposing parties.

8. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 19**

**(Obstruction of Proceedings Before Government Agencies – 18 U.S.C. §1505)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Under 18 U.S.C. §1505, it is unlawful to obstruct, impede, or influence any proceeding before a department or agency of the United States government through corrupt means, threats, or force.

3. Plaintiff alleges that multiple Defendants knowingly and willfully interfered with official agency proceedings related to her employment discrimination, civil rights violations, and criminal misconduct complaints by:

• Submitting fraudulent or misleading documents to state and federal agencies (including the EEOC, Department of Fair Employment and Housing (DFEH), California Civil Rights

Department, California Labor Commissioner's Office, and the State Bar of California).

- Withholding or tampering with evidence relevant to ongoing investigations or filings before those agencies, including video recordings, employment records, and settlement communications.
- Blocking or discouraging the filing of legitimate complaints through threats, coercion, or procedural manipulation.
- Concealing or altering internal complaints and discovery documents to mislead government agency reviewers.

4. Defendants further obstructed agency proceedings by conspiring to divert Plaintiff's claims into arbitration, even in sexual assault and civil rights matters, thereby removing them from administrative or public oversight. This conduct was aided by the use of fraudulent arbitration agreements (see related cause under 9 U.S.C. §402).

5. Plaintiff's submissions to the following agencies were directly impacted by Defendants' obstruction:

- Equal Employment Opportunity Commission (EEOC)
- California Civil Rights Department (formerly DFEH)
- United States Department of Justice
- California Labor Commissioner's Office

• State Bar of California

6. Specific Defendants who participated in this obstruction include:

• Walter Mosley, Montoya Solis, Nathalie Meza Contreras, Juan J. Dominguez and Jae Hyun Kim (Plaintiff's former attorneys)

• Thompson Coburn LLP, including Arthur F. Silbergeld, Kacey Riccomini, and Richard Gene Reinis

• Amanda Headworth, Gracie Esparza, and Blanca Gutierrez

• The Bloom Firm, including Lisa Bloom, Alan Goldstein, and associated attorneys

• Christie's Inc, Navarro Online, LLC, Guess? Retail Inc., and their respective in-house counsel; and all other corporate defendants

• JAMS, JAMS ADR Services, and AAA (American Arbitration Association)

• Judge Yolanda Orozco (non-defendant), whose refusal to clarify her judicial role and continued obstruction of Plaintiff's filings further hindered related investigations

7. These coordinated efforts served to shield corporate defendants from liability, frustrate administrative due process, and deprive Plaintiff of her right to a full and fair investigation.

8. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 20**

**(Obstruction of Criminal Investigations – 18 U.S.C. §1510)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Under 18 U.S.C. §1510, it is unlawful to willfully prevent, obstruct, delay, or attempt to prevent the communication of information relating to a violation of any criminal statute of the United States to a criminal investigator.

3. Plaintiff alleges that multiple Defendants conspired to obstruct criminal investigations by:

- Withholding and concealing evidence relevant to federal crimes, including alleged sex trafficking activities connected to "poker night" events orchestrated by management of Wally's.
- Forging documents and falsifying records to undermine the credibility of Plaintiff and derail potential federal inquiries.
- Diverting Plaintiff's complaints away from criminal forums and into closed arbitration or confidential settlement channels where criminal activity could not be publicly investigated.

• Coercing, threatening, or manipulating legal filings to prevent Plaintiff from submitting accurate and timely information to law enforcement and federal agencies.

4. Plaintiff's attempts to report misconduct to appropriate authorities were repeatedly obstructed, delayed, or rerouted through unethical legal maneuvering. Several law enforcement and oversight bodies, including the U.S. Department of Justice, California Attorney General, and California Civil Rights Department, received materially incomplete or distorted information due to the actions of Defendants.

5. Specific individuals and entities involved in obstructing criminal investigations include:

• Walter Mosley, Carlos Montoya, Nathalie Meza Contreras, Juan J. Dominguez, and Jae Hyun Kim (Plaintiff's prior counsel)

• Thompson Coburn LLP and affiliated attorneys (Arthur Silbergeld, Kacey Riccomini, Richard Reinis)

• Amanda Headworth, Gracie Esparza, and Blanca Gutierrez

• Lisa Bloom, Alan Goldstein, and The Bloom Firm

• Christie's Inc., Navarro Online, LLC, Guess? Retail Inc., Wally's Auction House, and related affiliated companies

• JAMS, ADR Services, and AAA (American Arbitration Association)

• Judge Yolanda Orozco (not named as a defendant due to judicial immunity), whose refusal to clarify judicial standing and manipulation of court proceedings contributed to concealment of criminal issues

6. In particular, Plaintiff's attempts to pursue criminal complaints related to sexual assault, forgery, perjury, and public corruption were chilled by coordinated legal tactics designed to shield individuals and corporations from criminal liability and public exposure.

7. These acts constitute obstruction of criminal investigations under federal law and deprived Plaintiff of her right to report crimes and seek legal accountability.

8. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 21**

**(Subornation of Perjury – 18 U.S.C. §1622)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Under 18 U.S.C. §1622, it is a federal offense to procure another to commit perjury, known as subornation of perjury, in any proceeding before a competent tribunal.

3. Plaintiff alleges that multiple Defendants, including legal professionals and law firms, knowingly encouraged or procured false testimony under oath in connection with state and federal court proceedings to sabotage Plaintiff's litigation and protect co-conspirators.

4. Specifically, on or about August 3, 2021, Carlos Montoya, Plaintiff's then-counsel, appeared before the court for a hearing labeled a "status report," which Plaintiff alleges was a covert attempt to impose a temporary restraining order (TRO) against her in retaliation for her public criticism of judicial misconduct and corruption via social media, in violation of her First Amendment Rights.

5. During this hearing, Montoya falsely testified on Plaintiff's behalf, representing positions and facts that Plaintiff did not authorize and that directly undermined her claims. The court relied on these statements in favor of the defense's coordinated litigation strategy.

6. Plaintiff never received a transcript or recording of this hearing, and her attempts to retrieve the record were blocked. Trust One Point, the transcript service provider, allegedly denied her access to the recordings, further frustrating the exposure of this false testimony.

7. Plaintiff alleges that Montoya's false testimony was not spontaneous, but rather encouraged and arranged by other Defendants, including:

- Walter Mosley, Jae Hyun Kim, Nathalie Meza Contreras – Plaintiff's prior counsel
- Thompson Coburn LLP, Arthur Silbergeld, Kacey Riccomini, Richard Reinis
- Christie's Inc., Navarro Online LLC, Guess? Retail Inc., and related parties
- The Dominguez Law Firm, which worked in tandem with Plaintiff's prior attorneys
- Individuals within the court system who failed to intervene or disclose irregularities

8. These coordinated actions constitute subornation of perjury, as the false testimony given by Montoya was willfully induced by other Defendants acting in their own legal and financial interest.

9. The suborned perjury harmed Plaintiff's case, damaged her reputation, and obstructed justice by distorting the record of proceedings.

10. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 22**

**(False Declarations Before Court – 18 U.S.C. §1623)**

**(Against Thompson Coburn & all attorney's and staff; Walter Mosley & Nathalie Meza Contreras and their corporations and their staff; Montoya Solis, Amanda Headworth, The Dominguez Firm; Juan J. Dominguez; Jae H. Kim; One Legal, LLC; and all other Defendants who conspired to make false declarations before court)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Under 18 U.S.C. §1623, it is a federal offense for any person to knowingly make false material declarations while under oath in any proceeding before or ancillary to any court or grand jury of the United States.

3. Plaintiff alleges that various Defendants, including her former attorneys and opposing counsel, knowingly made false material statements under oath or submitted declarations to the court containing knowingly false statements, for the purpose of misleading the court, prejudicing Plaintiff, and protecting the interests of Defendants engaged in civil conspiracy, fraud, and obstruction of justice.

4. These knowingly false statements included, but were not limited to:

- False representations about Plaintiff's agreement to arbitration;
- Mischaracterizations of Plaintiff's position in pleadings and oral argument;
- Fabricated or materially altered case management documents, declarations, and stipulations;
- False statements made by Plaintiff's former attorney Carlos Montoya during the August 3, 2021 hearing, misrepresenting Plaintiff's conduct and intentions without her consent;
- False written declarations filed by Nathalie Meza Contreras, Walter Mosley, and others purporting to represent Plaintiff's legal position.

5. These false declarations were made in matters directly related to Plaintiff's civil litigation in the Los Angeles Superior Court, but also in connection with federal agencies, including the U.S. Equal Employment Opportunity Commission (EEOC), The California Labor Commissioners Office, and the Civil Rights Department of California, in an attempt to derail Plaintiff's legal rights and misrepresent the facts of her claims.

6. Defendants who allege submitted or procured these false declarations include but are not limited to:

- Carlos Eduardo Montoya Solis
- Walter Mosley, Walter Mosley Corp.
- Nathalie Meza Contreras, Contreras Law, APC
- Thompson Coburn LLP, Arthur F. Silbergeld, Kacey Riccomini, Richard Reinis
- Dominguez Law Firm, PLLC
- Christie's Inc., Guess? Retail, Inc., Navarro Online, LLC, Delta, 3900 WA, and other corporate defendants
- State Bar of California, Los Angeles Superior Court officers

7. The false declarations made by or at the direction of these individuals and entities were material to the legal outcomes sought by Plaintiff and constitute intentional deception under penalty of perjury, violating 18 U.S.C. §1623.

8. These actions obstructed justice, harmed Plaintiff's credibility, and caused direct and ongoing damage to Plaintiff's civil and legal interests.

9. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 23**

**(Concealment, Removal, or Mutilation of Records – 18 U.S.C. §2071)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Under 18 U.S.C. §2071, it is a criminal offense for any person to willfully and unlawfully conceal, remove, mutilate, obliterate, or destroy any record, proceeding, document, or other item filed or deposited in any public office or with any clerk or officer of any United States court.

3. Plaintiff alleges that key court records and filings related to her civil action and constitutional complaints were intentionally removed, concealed, or altered from official court dockets or judicial record keeping systems in an effort to prevent their consideration or to deny Plaintiff due process and access to justice.

4. Specifically, Plaintiff alleges:

• A Request for Admissions addressed to California Attorney General Robert Bonta, submitted by Plaintiff in the Los Angeles Superior Court, was unlawfully removed or omitted from the docket without judicial explanation or hearing;

• Court filings including motions, oppositions, and complaints filed by Plaintiff were altered or removed from the system, obstructing their accessibility to parties and the public;

• Judicial officers, including Judge Yolanda Orozco, failed to preserve and protect the integrity of filings and did not respond to Plaintiff's requests for clarification regarding the status or nature of certain filings and orders;

• Several filings made on OneLegal (court filing platform used by the California courts) were not served to any known person; corporation; or entity, acknowledged, or docketed without justification, especially during critical phases of litigation;

• Staff members from the Los Angeles Superior Court, in coordination with defendants' counsel and/or arbitrators from ADR organizations, knowingly permitted or enabled the removal or concealment of filings related to arbitration agreements, objections, and constitutional challenges.

5. The concealment and tampering with Plaintiff's court records directly prejudiced her legal standing, undermined her claims, and constituted obstruction of court proceedings under federal law.

6. Defendants or culpable individuals include, but are not limited to:

• Los Angeles Superior Court

• Clerks or administrative personnel involved in civil operations of Stanley Mosk Courthouse

- Judge Yolanda Orozco (named in the complaint for judicial misconduct, not as a defendant due to immunity)
- Thompson Coburn LLP
- One Legal, LLC
- Walter Mosley and Walter Mosley Corp.
- Nathalie Meza Contreras and Contreras Law, APC
- Dominguez Law Firm, PLLC
- AAA and Andrew Barton
- JAMS, Inc. and JAMS ADR
- Corporate defendants who conspired to have these documents removed

7. The actions described above were intentional and undertaken with the purpose of obstructing justice and depriving Plaintiff of her legal remedies and right to a fair judicial process.

8. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 24**

**(Failure of Court Officer to File Required Reports – 18 U.S.C. §2075)**

**(Against all Defendants)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Under 18 U.S.C. §2075, any clerk of a district court of the United States or their deputies who willfully refuses or neglects to make or forward any report, certificate, statement, or document required by law shall be subject to criminal penalties.

3. Plaintiff alleges that officers and clerks of both the Los Angeles Superior Court and the United States District Court for the Central District of California have willfully refused and neglected to process and file documents required by law and court procedure.

4. In particular:

• In Plaintiff’s federal case filed in the Central District of California in 2022, the court’s docket reflects over 672 days of total inaction by court clerks and judges, with no docket activity, no orders issued, and no service of process undertaken despite Plaintiff being granted in forma pauperis status and having submitted all required materials.

• Plaintiff filed motions requesting the court make a statement on the record explaining its failure to diligently prosecute the matter, including the failure to serve defendants, a duty of the clerk’s office once a fee waiver is granted. No response or acknowledgment was ever made by the court, nor were the motions entered into the docket.

• Plaintiff alleges this conduct constitutes a willful obstruction of justice, effectively denying her access to the courts and aiding the defendants in escaping liability for widespread misconduct.

• Plaintiff further alleges that clerks at the Stanley Mosk Courthouse within the Los Angeles Superior Court engaged in similar behavior, failing to docket motions, wrongfully rejecting filings, and suppressing pleadings that challenged judicial bias, fraud on the court, and unlawful arbitration orders.

5. This prolonged inaction and failure to report filings, process motions, or serve defendants was not a clerical error or isolated event but a deliberate refusal to perform duties under color of official authority, serving to protect high-profile defendants, obstruct Plaintiff's access to redress, and facilitate retaliation.

6. The responsible parties include:

• Clerks and deputy clerks of the United States District Court for the Central District of California

• Clerks and supervisors of the Stanley Mosk Courthouse (Los Angeles Superior Court)

• Administrative staff of the Central District

• One Legal, LLC, acting in collusion with local court staff to suppress filings and sabotage litigation, in addition to allowing attorneys to submit to the court, as genuine and true, false documents that are signed and/ or approve by One Legal.

• Thompson Coburn LLP, Walter Mosley Corp., and related firms who materially benefited from the suppression of Plaintiff's case.

• Southwest Wine & Spirits, Wally's Auction House, Delta, 3900 WA, Christie's and all related defendants who materially and financially benefited from the suppression of Plaintiff's case.

7. The above acts directly injured Plaintiff by denying her right to due process, obstructing her pursuit of justice, and perpetuating the unlawful actions of the defendants.

8. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 25**

**(Refusal of U.S. Clerk to Make Reports – 18 U.S.C. §2076)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. 18 U.S.C. §2076 provides that any clerk or officer of a United States court who willfully refuses or neglects to make or forward any report, certificate, statement, or document as required by law shall be subject to criminal penalties.

3. Plaintiff alleges that clerks and administrative officers of the United States District Court for the Central District of California knowingly and willfully refused to carry out their mandatory reporting and docketing duties in her federal civil case filed in 2023.

4. Specifically:

• Despite Plaintiff’s in forma pauperis status being granted, which obligates the clerk to serve summons on behalf of Plaintiff, no summons were issued or served.

• Plaintiff filed several documents and motions in this action, including motions to compel service, motions for judicial explanation regarding court inaction, and motions to object to clerical failures, yet court staff failed to docket, process, or respond to these filings.

• When Plaintiff inquired about the status of her case and filings, she was met with silence, deflection, or contradictory information, and no efforts were made to correct these administrative failures.

• Plaintiff's formal written requests asking the Court to issue a statement of record regarding its failure to diligently prosecute, and specifically its failure to comply with the obligations under Fed. R. Civ. P. 4(c)(3), were ignored.

5. Plaintiff further alleges that this willful neglect and refusal to make reports, docket filings, or carry out basic case functions was not an oversight, but a deliberate effort to suppress Plaintiff's civil rights claims and protect powerful defendants including law firms, corporations, and judicial officers.

6. Defendants whose conduct is implicated under this statute include:

• Clerks and supervisory officials of the United States District Court for the Central District of California

• Administrative Office of the U.S. Courts, to the extent it failed to investigate or remedy the conduct despite notice

• One Legal, LLC, which Plaintiff believes coordinated with court personnel to suppress filings

• Thompson Coburn LLP, Walter Mosley, and related legal professionals who benefitted from this suppression and encouraged the inaction

• Southwest Wine & Spirits, Wally's Auction House, Mel-Jen, Delta, Christie's, 3900 WA, and all other Defendants, know and unknown, who benefited from the suppression of Plaintiff's case

7. These failures directly harmed Plaintiff by obstructing her access to redress, delaying prosecution, and providing unlawful advantage to defense counsel and institutional defendants.

8. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 26**

**(Fraudulent Arbitration Related to Sexual Assault – 9 U.S.C. §402)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Under 9 U.S.C. §402, arbitration agreements or clauses cannot be validly or enforceably applied to claims involving sexual assault or sexual harassment unless the party bringing the claim voluntarily agrees to arbitration after the dispute arises.

3. Plaintiff alleges that Defendants, including Southwest Wine & Spirits, LLC, Wally's Auction House, LLC, Mel-Jen LLC, Southwest Wine & Spirits LLC, and affiliated entities,

unlawfully and fraudulently attempted to force her sexual assault and harassment claims into private arbitration, despite:

- The claims involving non-consensual sexual conduct by customers and management, facilitated and concealed by management and ownership.
- The arbitration clause being buried in pre-employment paperwork that Plaintiff never saw or signed, or that was forged after the fact by counsel for Defendants in coordination with Thompson Coburn LLP and Walter Mosley.

4. Plaintiff's signature was forged on documents purporting to be binding agreements to arbitrate and/or her prior legal counsel signed on her behalf knowing such information was incorrect, including a stipulation to arbitration and waivers, none of which were knowingly or voluntarily executed by Plaintiff.

5. Plaintiff opened a Labor and Wage complaint with the California Labor Commissioners Office in August 2019 regarding her employment at Wally's. Defendants were formally made aware of this action and did not attempt to compel arbitration at that time, thereby waiving their right to arbitration under applicable legal standards.

6. Plaintiff also has email evidence confirming her demand to her then-counsel Nathalie Meza Contreras for a jury trial, to

which Contreras responded that the defense would then be filing a Motion to Compel Arbitration, despite her simultaneous collusion with Thompson Coburn LLP on a fraudulent stipulation to arbitration that was later submitted to the court as if validly executed.

7. The fraudulent arbitration clause was then improperly used in federal and state courts to:

• Prevent Plaintiff from pursuing her sexual harassment, hostile work environment, and sexual assault claims in court.

• Justify multiple fraudulent court filings and orders.

• Silence Plaintiff through coerced arbitration, despite the Justice for Sexual Assault Survivors Act prohibiting mandatory arbitration of such claims.

8. Defendants implicated in this cause of action include:

• Wally's Auction House, LLC

• Mel-Jen LLC

• Southwest Wine & Spirits, LLC

• Christie's Inc. and all other corporate Defendants

• Thompson Coburn LLP

• Walter Mosley and Walter Mosley, P.C.

• JAMS, Inc., JAMS ADR Services, and American Arbitration Association for accepting and facilitating arbitration

proceedings knowing the nature of the claims and that consent was not validly obtained.

• The State Bar of California, for failing to investigate clear misconduct despite Plaintiff’s complaints regarding the forced arbitration of sexual misconduct claims.

9. Plaintiff never voluntarily agreed to arbitration for these claims after the disputes arose, and was coerced, misled, and excluded from legal process by the above-named defendants, causing significant emotional, financial, and professional damage.

10. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 27**

**(Tampering with and Removing Court Records – 18 U.S.C. §1506)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Under 18 U.S.C. §1506, it is a federal crime to willfully and unlawfully alter, remove, falsify, or obliterate court records, or to present false documentation in a court proceeding with the intent to influence the outcome of a case.

3. Plaintiff alleges that Defendants, in coordination with court officers and clerks in the Los Angeles Superior Court and

the United States District Court for the Central District of California, unlawfully removed, altered, suppressed, or falsified multiple critical records from her case files to influence and obstruct the legal proceedings and ensure favorable rulings for Defendants.

4. These actions include, but are not limited to:

• The removal of Plaintiff's Request for Admissions addressed to California Attorney General Robert Bonta, which was filed with the Los Angeles Superior Court but later deleted from the docket without court order or explanation.

• The refusal to file or respond to Plaintiff's motions, filings, and requests in her federal case, resulting in over 672 days of no movement in a pending matter where Plaintiff had been granted a fee waiver and service of process was the court's responsibility.

• The alteration or omission of entries on the docket, particularly filings concerning judicial misconduct and conflicts of interest involving Judge Yolanda Orozco, who later presided over the matter in an unauthorized or concealed capacity.

• The failure by the court to acknowledge Plaintiff's motion demanding Judge Orozco state for the record her role (e.g., judge, referee, arbitrator) and in what authority she was

presiding, despite the court's obligation to respond to motions on the record. The failure by the court to enforce Judge Yolanda Orozco to recuse herself pending severe Conflict Of Interests.

5. Some of the Defendants and responsible parties include:

• Thompson Coburn LLP

• Walter Mosley and Walter Mosley, P.C.

• Judicial clerks and officers of the Los Angeles Superior Court

• Clerks and officers of the U.S. District Court for the Central District of California

• JAMS, JAMS ADR Services, AAA, for participating in the concealment of records related to arbitration without verifying authenticity or jurisdiction

• Any co-conspiring defendants who benefitted from the suppression or disappearance of court filings.

6. These acts were done with the intent to obstruct justice, to cover up misconduct, and to block Plaintiff from accessing a fair and public hearing, thus causing substantial due process violations.

7. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 28**

**(Civil RICO – 18 U.S.C. §1962)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Under 18 U.S.C. §1962(c), it is unlawful for any person employed by or associated with any enterprise engaged in interstate or foreign commerce to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

3. Plaintiff alleges that Defendants collectively formed an enterprise, both formally and informally, which conducted its affairs through a pattern of racketeering activity involving fraud, obstruction of justice, forgery, extortion, blackmail, bribery, witness tampering, perjury, amongst other things, with the specific intent of silencing Plaintiff, retaliating against her, and obstructing her access to a fair and lawful legal process.

4. The RICO enterprise includes, but is not limited to:

- Wally's Auction House
- Mel-Jen
- Southwest Wine & Spirits, LLC
- Paul Marciano, Maurice Marciano, and Matthew Marciano
- Christian Navarro and Navarro Online, LLC

• Thompson Coburn LLP and its individual attorneys (including Richard Reinis, Arthur Silbergeld, Kacey Riccomini)

• Walter Mosley and Walter Mosley, P.C.

• Nathalie Meza Contreras and Contreras Law

• Montoya Solis, Juan Dominguez, and Jae H. Kim

• JAMS, Inc., and JAMS ADR Services

• Delta, 3900 WA, Christie's, and all other associates, affiliates, and/or partners

• Judge Yolanda Orozco (named in her judicial capacity but not as a defendant)

• Clerks and officers of the Los Angeles Superior Court and the Central District of California

• AAA (American Arbitration Association) and its owner Andrew Barton

• Lisa Bloom, Alan Goldstein, and The Bloom Firm

• DocuSign, Inc., which was used to forge Plaintiff's signature on arbitration stipulations, HIPAA releases, and fraudulent retainers

• CALBAR Holdings LLC and The State Bar of California, which failed to act on known legal misconduct despite being repeatedly notified

5. The racketeering activity includes:

• Forgery of legal documents including retainer agreements, settlement stipulations, and medical releases

• Submission of false documents to courts (18 U.S.C. §494, 1018)

• Perjury and subornation of perjury during court hearings and arbitration proceedings (18 U.S.C. §1621, 1622)

• Obstruction of justice, including concealment and removal of court filings and suppression of hearings and motions (18 U.S.C. §1503, 1505, 1506)

• Bribery of a public official (Judge Yolanda Orozco) and unlawful influence over judicial proceedings (18 U.S.C. §201)

• Extortion and blackmail by threatening Plaintiff with reputational damage and retaliatory litigation if she spoke out (18 U.S.C. §872, 873)

• Misuse of federal court resources to carry out the scheme (18 U.S.C. §641, 2071, 2075)

• Conspiracy to violate civil rights under color of law (18 U.S.C. §241, 242)

6. Plaintiff further alleges that these acts were not isolated incidents but instead part of a coordinated effort across multiple institutions including law firms, courts, alternative dispute resolution entities, and regulatory

agencies, showing a pattern of racketeering activity as defined in 18 U.S.C. §1961(5).

7. As a direct result of this enterprise, Plaintiff has suffered:

- Severe emotional distress and psychological harm
- Loss of employment opportunities and income
- Unlawful arbitration of her claims despite her explicit objection
- The denial of a jury trial and public adjudication of her case
- Years of obstruction, retaliation, and reputational harm

8. Plaintiff seeks general and special damages, treble damages as permitted under RICO, punitive damages, attorneys' fees, and injunctive relief.

**CAUSE OF ACTION NO. 29**

**(Falsification or Concealment of Documents by Public Officers – 18 U.S.C. §2073)**

(Against All Defendants)

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. 18 U.S.C. §2073 makes it a federal offense for a clerk or other officer of a United States court to willfully falsify, hide, remove, or mutilate any record or proceeding in the court.

3. Plaintiff alleges that clerks, administrative officers, and judicial staff of the United States District Court for the Central District of California, acting in concert with certain judicial officers and opposing parties' attorneys, engaged in willful concealment and suppression of Plaintiff's filings, evidence, and motions.

4. Since 2023, Plaintiff's federal civil action has been effectively stalled by the refusal of the Clerk's Office to process, serve, or acknowledge filings including, but not limited to, motions, amended complaints, requests for entry of default, and judicial misconduct complaints.

5. These federal court officers failed to serve the defendants in Plaintiff's case, despite Plaintiff having been granted a fee waiver, thereby unlawfully shifting the service burden onto Plaintiff and obstructing her constitutional access to the court.

6. Plaintiff filed a formal motion demanding an official explanation from the Court as to why there had been over 672 consecutive days of no docket activity or movement on her case, and why clerks refused to act on filed documents. This motion, too, was ignored, concealed from the docket, or summarily denied without explanation.

7. These actions reflect a pattern of suppression, obstruction, and collusion, carried out by federal judicial personnel acting under color of law and in coordination with opposing counsel and parties to deny Plaintiff her right to a fair and impartial adjudication.

8. As a result of the falsification, concealment, and failure to act on required filings, Plaintiff has suffered extreme emotional distress, a denial of due process, and irreparable harm to her legal claims and access to justice.

9. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 30**

**(Cyberstalking and Retaliatory Harassment – 18 U.S.C. §2261A)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. 18 U.S.C. §2261A prohibits any person from using electronic communications, mail, or other means to engage in a course of conduct that places a person in reasonable fear of death or serious bodily injury, or causes substantial emotional distress, particularly when done with intent to harass, intimidate, injure, or surveil.

3. Following Plaintiff's attempts to report, expose, and seek judicial redress for widespread attorney misconduct, corruption, fraud on the court, and judicial abuse, especially surrounding the conduct of Judge Yolanda Orozco, Thompson Coburn LLP, and other named and unnamed officials, Plaintiff became the target of coordinated acts of digital surveillance, hacking, and stalking.

4. These retaliatory actions were committed by Defendants and their agents, co-conspirators, and affiliated government entities, known and unknown, and included unauthorized access to Plaintiff's personal electronic devices, real-time surveillance of private conversations, disruption of Plaintiff's communications with counsel, and interference with her digital legal records.

5. Plaintiff has experienced repeated signs of surveillance, including but not limited to: deleted files and documents, corrupted evidence, remotely controlled changes to her devices, unauthorized access to her email and cloud storage, and unusual or targeted advertisements and alerts relating to confidential matters she discussed privately.

6. The digital surveillance was accompanied by real-world stalking and intimidation, including unusual vehicles near her residence, strange contacts attempting to elicit private

information, and social media monitoring by anonymous or proxy accounts.

7. These acts were intended to silence Plaintiff, deter her from pursuing her case, destroy evidence, and punish her for blowing the whistle on systemic corruption in California courts and law firms.

8. Plaintiff's safety, mental health, and capacity to litigate were severely compromised. The fear and distress caused by this stalking conduct were significant, prolonged, and traumatizing.

9. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

CAUSE OF ACTION NO. 31

**Violation of 18 U.S.C. §669 – Theft or Embezzlement in Connection with Health Care**

**(Against Sally D. Greig, Sally D. Greig, LLC, and all named and unnamed co-conspirators)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Defendant Sally D. Greig, a licensed therapist operating through Sally D. Greig, LLC, unlawfully accepted a referral to treat Plaintiff in connection with her workplace-related trauma under the guise of providing mental health care. However, the

true purpose of this referral was to gather personal, sensitive, and privileged information under false pretenses to be used against Plaintiff in ongoing litigation.

3. This referral and engagement were orchestrated by Plaintiff's former attorneys and defense counsel, in coordination with the defendants, without Plaintiff's informed consent or knowledge of the financial and personal connections between Greig and those parties.

4. Sally D. Greig failed to disclose to Plaintiff:

a. Who retained or paid for her services;

b. That her spouse had personal and financial ties to certain named defendants;

c. That her role was not purely therapeutic, but served the interests of opposing parties.

5. Greig's conduct included violations of HIPAA, breach of fiduciary duty, and the weaponization of therapy to exploit and extract confidential information for litigation purposes.

6. Furthermore, Greig has refused to release Plaintiff's complete medical records or account for how her reports and evaluations were used in court filings by adverse parties.

7. Defendant Greig's actions constitute theft and embezzlement in connection with a health care benefit program under 18 U.S.C. §669, because she knowingly and willfully

obtained health care payments or benefits while engaging in deceptive and harmful conduct that was outside the scope of legitimate medical treatment.

8. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 32**

**Violation of 18 U.S.C. §880 – Receiving the Proceeds of Extortion**

**(Against Thompson Coburn & all attorney's and staff; Walter Mosley & Nathalie Meza Contreras and their corporations and their staff; Montoya Solis, Amanda Headworth, The Dominguez Firm; Juan J. Dominguez; Jae H. Kim; One Legal, LLC; and all other Defendants who received Proceeds of Extortion)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. During the course of Plaintiff's litigation and whistleblowing efforts, certain attorneys retained to represent Plaintiff, Walter Mosley, Nathalie Meza Contreras, Carlos Montoya, and Juan J. Dominguez, Jae H. Kim, engaged in coordinated efforts with defense counsel Thompson Coburn LLP to obstruct Plaintiff's access to justice and to protect high-profile defendants.

3. These attorneys, while purporting to represent Plaintiff's interests, were unlawfully compensated or received indirect financial benefit from co-defendants and/or associated entities for the purpose of sabotaging Plaintiff's legal claims.

4. The proceeds received by these individuals and law firms were the product of extortion, coercion, and obstruction, specifically, they were obtained in exchange for silence, betrayal of client interests, and the manipulation of court proceedings to ensure dismissal or suppression of Plaintiff's claims.

5. Examples include:

a. Submission of fraudulent documents with forged signatures to courts;

b. Stipulation to arbitration without Plaintiff's knowledge or consent;

c. Collusion with defense to delay or sabotage proceedings;

d. Deliberate failure to respond to critical motions or preserve evidence.

6. These acts violated 18 U.S.C. §880, which prohibits knowingly receiving, possessing, or disposing of money or property obtained through extortion. The attorneys and firms named herein benefitted from corrupt payments and knowingly retained the proceeds of these illicit agreements.

7. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

CAUSE OF ACTION NO. 33

(18 U.S.C. §1035 – False Statements Relating to Health Care Matters)

(Against All Defendants)

1. Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

2. Defendants Sally D. Greig, Sally D. Greig, LLC, and other defendants known and unknown, in conspiracy with Walter Mosley, Nathalie Meza Contreras, Thompson Coburn LLP, and Christie's/Wally's affiliated parties, knowingly and willfully made materially false, fictitious, and fraudulent statements and representations in connection with the delivery of and payment for health care benefits, items, and services involving Plaintiff.

3. Defendant Sally D. Greig, a therapist improperly inserted into Plaintiff's legal matters without Plaintiff's consent, engaged in therapy sessions under pretenses directly tied to litigation purposes and not for legitimate medical or therapeutic purposes. Defendant Greig was unlawfully and

unethically referred to Plaintiff through defense-aligned parties.

4. The sessions were held without proper disclosures, including failing to inform Plaintiff who had retained or paid for Greig's services. Plaintiff was not given access to her full patient file, and her privacy rights under HIPAA were violated.

5. Defendants used falsified or manipulated documentation and records created during or related to these purported therapy sessions to influence the outcome of legal proceedings, and these documents were submitted or referenced in connection with health care benefits, services, and/or insurance billing in violation of 18 U.S.C. §1035.

6. These false statements were made in furtherance of a broader scheme to discredit Plaintiff, extract privileged or damaging information, and gain unfair legal advantage in the underlying employment and civil rights litigation.

7. The conduct of Defendants constitutes a direct violation of 18 U.S.C. §1035.

8. Plaintiff seeks general and special damages, punitive damages, injunctive relief.

**CAUSE OF ACTION NO. 34**

**(18 U.S.C. § 1341 – Mail Fraud)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

2. Defendants Thompson Coburn LLP, Walter Mosley, Nathalie Meza Contreras, Sally D. Greig, Southwest Wine & Spirits, and affiliated individuals and entities, in concert and conspiracy with each other and with other parties known and unknown, engaged in a scheme to defraud Plaintiff and to obstruct justice through materially false representations, forged documents, and deceptive practices.

3. In furtherance of the scheme, Defendants knowingly used the United States Postal Service and private interstate carriers to send and receive falsified legal documents, forged agreements (including arbitration stipulations, retainer agreements, HIPAA forms, and employee records), court filings containing perjured testimony, and communications designed to coerce, mislead, or silence Plaintiff.

4. These documents were used to secure legal outcomes favorable to the defendants through deception, to interfere with Plaintiff’s right to a jury trial, and to fraudulently conceal critical facts and relationships between defendants and judicial officers.

5. Defendants also used the mail to transmit false and misleading correspondence purporting to represent legal authority, including improper discovery responses, fraudulent notices, forged court stipulations, and communications purporting to have Plaintiff's consent or participation.

6. The mailing of these materials was an essential part of the fraudulent scheme to undermine Plaintiff's litigation and constitutional rights.

7. The conduct of Defendants constitutes multiple violations of 18 U.S.C. §1341.

8. Plaintiff seeks general and special damages, punitive damages, injunctive relief.

**CAUSE OF ACTION NO. 35**

**(18 U.S.C. §1347 – Health Care Fraud)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

2. Defendant Sally D. Greig, a licensed therapist, in coordination with Thompson Coburn LLP, Nathalie Meza Contreras, Walter Mosley, Juan Dominguez, and other defendants known and unknown, engaged in a fraudulent scheme under the guise of providing mental health services to Plaintiff.

3. Defendant Greig was fraudulently referred to Plaintiff under the pretense of offering therapeutic treatment, when in reality her role was to extract private and privileged information from Plaintiff in order to relay it to defense counsel and use it against Plaintiff in litigation.

4. Plaintiff never voluntarily sought treatment from Greig; rather, she was coerced into sessions under misleading and deceptive circumstances initiated by her legal representatives and/or opposing parties. Greig failed to provide proper disclosures about the nature of her engagement, who had retained her services, or how her records would be used.

5. Greig refused to provide Plaintiff with access to her own patient file and has to this date failed to disclose who retained or paid her, in violation of professional standards and patient rights.

6. Upon information and belief, Greig submitted claims or records related to her services to a health care benefit program (including but not limited to private insurance or state healthcare funding), while knowing that the services provided were not for legitimate treatment, but instead part of a collusive legal strategy to harm the Plaintiff.

7. Greig’s spouse also maintains professional and/or financial ties to Defendants, creating further conflict of interest and evidence of collusion.

8. These acts constitute a fraudulent scheme to defraud a health care benefit program in violation of 18 U.S.C. §1347.

9. Plaintiff seeks general and special damages, punitive damages, injunctive relief.

**CAUSE OF ACTION NO. 36**

**(18 U.S.C. §1349 – Attempt and Conspiracy to Commit Fraud)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

2. Defendants Thompson Coburn LLP, Nathalie Meza Contreras, Carlos Montoya, Sally D. Greig, AAA (Alternative Arbitration Association), Judge Yolanda Orozco (as a non-party referenced for her misconduct), and various law firms, corporate defendants, and their affiliates and agents, knowingly conspired and attempted to defraud Plaintiff through a calculated and extensive scheme.

3. As part of this conspiracy, Defendants falsified legal documents including stipulations to arbitration, HIPAA authorizations, and employment forms, all bearing forged

signatures of Plaintiff, and submitted them as legitimate filings in court proceedings.

4. Defendants colluded to enter Plaintiff into private arbitration without her informed consent, despite her having filed a public complaint with the California Labor Commissioner's Office and requesting a jury trial through her legal counsel. This conduct was intended to deprive Plaintiff of her right to a fair trial and public judicial process.

5. The fraudulent scheme further included suppressing evidence, obstructing Plaintiff's access to records, influencing court proceedings via bribery, and violating federal laws through acts of perjury, forged documentation, blackmail, and stalking.

6. Defendants' actions were executed in coordination with third-party individuals, including Sally D. Greig, who acted under the false pretense of offering therapy while in reality extracting confidential information for litigation purposes.

7. All parties named and unnamed acted knowingly and willfully, with intent to defraud Plaintiff of her legal rights, financial entitlements, and access to justice.

8. These actions constitute a conspiracy to commit fraud in violation of 18 U.S.C. §1349.

9. Plaintiff seeks general and special damages, punitive damages, injunctive relief.

**CAUSE OF ACTION NO. 37**

**(18 U.S.C. §1513 – Retaliating Against a Witness or Victim)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

2. After Plaintiff began to expose misconduct and criminal violations by defendants, including but not limited to judicial corruption, legal malpractice, forgery, bribery, and fraudulent arbitration agreements, she became the target of severe and ongoing retaliation.

3. Defendants Thompson Coburn LLP, Carlos Montoya, Nathalie Meza Contreras, Wally's, Sally D. Greig, AAA, and affiliated entities and individuals, acting in concert, took retaliatory actions designed to intimidate, silence, and punish Plaintiff for asserting her legal rights and reporting unlawful conduct.

4. Such retaliatory actions included (a) falsification and forgery of legal documents and court filings, (b) interference with Plaintiff's litigation and denial of access to evidence, (c) blackmail and coercive threats, (d) disclosing or exploiting

private therapy communications, and (e) obstructing criminal and civil investigations.

5. Plaintiff's attempt to file whistleblower complaints, labor grievances, and public disclosures through legal filings and social media was met with coordinated acts of retaliation, including attempts to obtain restraining orders under false pretenses, which were intended to intimidate Plaintiff into silence.

6. Plaintiff was further subjected to digital surveillance, hacking of devices, and stalking, believed to be organized by defendants and third-party co-conspirators, including unknown government actors and private security firms.

7. Plaintiff was a victim and witness of multiple violations of federal law and engaged in protected conduct by reporting these offenses and attempting to expose the individuals responsible.

8. The retaliatory conduct of the named defendants constitutes a violation of 18 U.S.C. §1513.

9. Plaintiff seeks general and special damages, punitive damages, injunctive relief.

**CAUSE OF ACTION NO. 38**

**(18 U.S.C. §1518 – Obstruction of Criminal Investigations of Health Care Offenses)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

2. Plaintiff was unlawfully referred to therapist Sally D. Greig during the course of the litigation involving her former employer Wally's. Said referral was not voluntary, transparent, nor made in the interest of Plaintiff's care or well-being.

3. Upon beginning treatment, Plaintiff realized that Greig's true purpose was to extract confidential and sensitive information from Plaintiff that could later be used against her in the legal proceedings, this was right before a scheduled deposition.

4. Greig failed to disclose to Plaintiff who had retained her, refused to provide access to her full patient file when requested, and withheld information regarding any reports or records she may have provided to opposing counsel.

5. Upon investigation, Plaintiff discovered that Sally D. Greig and her husband had personal and financial ties to one or more defendants, including Wally's, Paul Marciano, Christian Navarro, Thompson Coburn LLP, and their associated agents, thereby presenting a clear conflict of interest and rendering her referral and participation unlawful.

6. Plaintiff believes that Defendants, including Greig and those who facilitated her retention, engaged in a coordinated scheme to obstruct and interfere with criminal investigations related to health care fraud, specifically regarding unauthorized therapy, potential insurance billing fraud, and unlawful mental health evaluations conducted without proper consent.

7. These actions were designed to suppress evidence, manipulate the judicial process, and chill Plaintiff's protected conduct under federal law.

8. The conduct of Defendants in relation to this cause of action constitutes a violation of 18 U.S.C. §1518.

9. Plaintiff seeks general and special damages, punitive damages, injunctive relief.

**CAUSE OF ACTION NO. 49**

**(18 U.S.C. §1519 – Destruction, Alteration, or Falsification of Records in Federal Investigations and Bankruptcy)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

2. Throughout the course of Plaintiff's legal proceedings in both Los Angeles Superior Court and United States District

Court for the Central District of California, various defendants and their counsel, Thompson Coburn LLP, Prior Counsel Carlos Montoya, and others, knowingly submitted falsified, altered, and forged legal documents to the courts.

3. These documents included, but were not limited to:

a. Forged arbitration agreements and stipulations;

b. Case management statements;

c. Mandatory settlement conference forms;

d. Retainers and employment records with fabricated dates and forged signatures.

4. Plaintiff also discovered that relevant court filings were fraudulently backdated or modified after submission. Multiple original records disappeared from the docket or were quietly replaced, including Plaintiff's Request for Admission served on California Attorney General Robert Bonta, which was unlawfully removed by Judge Yolanda Orozco from the official court file without explanation or judicial order.

5. The Clerk's Office of the Central District of California also failed to properly process, record, or acknowledge critical motions submitted by Plaintiff. More than 672 days elapsed without court activity, while clerks ignored Plaintiff's request for an official statement on the status of her case, despite her approved fee waiver.

6. Upon information and belief, Defendants and court officials acted in coordination to alter, suppress, or destroy filings and records in order to obstruct justice, mislead the court, and protect institutional and financial interests.

7. These acts were in direct violation of 18 U.S.C. §1519, which prohibits knowingly altering, destroying, mutilating, concealing, or falsifying records or documents with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States.

8. Plaintiff seeks general and special damages, punitive damages, injunctive relief.

**CAUSE OF ACTION NO. 40**

**(18 U.S.C. § 1702 – Obstruction of Correspondence)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

2. Beginning in or around 2020 and continuing thereafter, Plaintiff experienced repeated and unexplained interference with both her physical mail and electronic court communications while engaged in legal proceedings in the Los Angeles Superior Court and U.S. District Court for the Central District of California.

3. On numerous occasions, Plaintiff's filings, including court motions, requests for admission, and correspondence to opposing counsel, were either:

a. Not received or acknowledged by the courts;

b. Removed from the docket without explanation;

c. Returned without legal justification;

d. Intercepted or not delivered to intended recipients, including the California Attorney General's Office.

4. Plaintiff also submitted formal requests for hearing recordings and exhibits to Trust One Point and the LASC Clerk's Office, which were never fulfilled, despite being official components of her case and necessary to preserve the record. Plaintiff was denied access without reason.

5. Upon information and belief, Defendants and/or their agents, including court clerks, officials, and defense attorneys, willfully intercepted, delayed, or concealed Plaintiff's legal correspondence, both incoming and outgoing, in order to frustrate her ability to access the courts, assert her rights, or expose misconduct.

6. Such acts were in direct violation of 18 U.S.C. §1702, which prohibits knowingly and willfully taking, opening, or destroying any letter, postal card, or package with intent to

obstruct the correspondence or communication of the sender or recipient.

7. Plaintiff seeks general and special damages, punitive damages, injunctive relief.

**CAUSE OF ACTION NO. 41**

**(Defamation – Slander and Libel)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

2. During the course of Plaintiff's employment and subsequent legal proceedings, Defendants and their attorneys engaged in a coordinated campaign to defame and slander Plaintiff in order to discredit her, destroy her credibility before the court, and justify their retaliation and discriminatory conduct.

3. Specifically, false and malicious statements were circulated among defense attorneys, judicial officers, third-party professionals (including court-appointed therapists and arbitrators), and court officials falsely claiming that Plaintiff was a prostitute who solicited or seduced high-profile clients at Wally's restaurant, and that she engaged in inappropriate conduct while on the premises.

4. These defamatory claims were entirely false and were retaliatory in nature after Plaintiff reported sexual assault and harassment by male clientele and objected to a manager's request that she participate in a private "poker night" event, which Plaintiff later discovered to be a covert sex trafficking operation.

5. Plaintiff was subjected to humiliating personal attacks on her character and reputation, including repeated references to her past participation on the reality TV show Bad Girls Club, which Defendants weaponized to portray Plaintiff as immoral, unstable, and untrustworthy.

6. These defamatory statements were made orally (slander) and in written court filings and private emails (libel), and were communicated to third parties, including but not limited to opposing counsel, court officials, arbitrators, and affiliated corporations.

7. Defendants' statements were not only false but made with actual malice, intending to ruin Plaintiff's professional and personal reputation, deter her from seeking justice, and manipulate the court into dismissing her claims.

8. As a result of these defamatory statements, Plaintiff suffered emotional distress, reputational damage, economic losses, and loss of career opportunities.

9. Plaintiff seeks general and special damages, punitive damages, injunctive relief.

**CAUSE OF ACTION NO. 42**

**(Violation of First Amendment – Retaliation for Protected Speech)**

**(Against All Defendants, including government-affiliated individuals and agencies, known and unknown)**

1. Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

2. Plaintiff engaged in constitutionally protected speech under the First Amendment by speaking out about corruption in the judiciary, misconduct by attorneys, sexual exploitation at her workplace, and systemic abuse of power.

3. In retaliation for this protected activity, Defendants, including public officials, attorneys, and private parties acting in concert with state actors, conspired to silence Plaintiff through retaliatory litigation tactics, false accusations, defamation, obstruction of justice, denial of access to court proceedings, and hacking and surveillance of her electronic devices.

4. Defendants' actions were taken with the intent and effect of chilling Plaintiff's free speech and punishing her for

speaking on matters of public concern, including workplace abuse and judicial corruption.

5. These retaliatory acts constituted a violation of Plaintiff's First Amendment rights to free speech, petitioning the government for redress of grievances, and association.

6. Plaintiff seeks general and special damages, punitive damages, injunctive relief.

**CAUSE OF ACTION NO. 43**

**(Violation of Plaintiff's Fourth Amendment Rights – Unlawful Search, Seizure, and Invasion of Privacy)**

**(Against All Defendants and third-party government agents, including but not limited to defense counsel acting in concert with unknown government actors)**

1. Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

2. The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures and guarantees the right to privacy in one's person, home, and personal effects.

3. Beginning in or around 2021 and continuing through the present, Plaintiff experienced ongoing invasions of privacy through the unauthorized access, monitoring, and intrusion into

her personal and digital devices, including but not limited to her phone, computer, email accounts, and cloud storage.

4. Plaintiff believes and alleges that these intrusions were coordinated acts of surveillance and digital harassment carried out in retaliation for her whistleblowing activities and complaints of misconduct and corruption within the Los Angeles Superior Court and among private law firms.

5. Plaintiff further alleges that said surveillance and access were facilitated by or in cooperation with certain law firms named as defendants in this matter, as well as agents and individuals affiliated with government agencies acting under color of law, without any warrant, probable cause, or judicial authorization.

6. These acts were unlawful, unauthorized, and committed in violation of Plaintiff’s Fourth Amendment rights. Plaintiff did not consent to any such access, and no legal basis for the intrusion was ever presented to her or approved by a court of law.

7. As a direct and proximate result of these violations, Plaintiff suffered significant harm, including emotional distress, fear for her safety, disruption of her communications and private life, and the deprivation of her constitutional rights.

8. Plaintiff seeks general and special damages, punitive damages, injunctive relief, and any other relief the Court deems just and proper.

**CAUSE OF ACTION NO. 44**

**(Violation of Plaintiff's Fifth Amendment Rights – Denial of Due Process and Property Interests)**

**(Against All Defendants including but not limited to judicial officers acting under color of law)**

1. Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

2. The Fifth Amendment to the United States Constitution provides that no person shall be *"deprived of life, liberty, or property, without due process of law."* It guarantees fair procedures and safeguards against governmental and quasi-governmental abuse.

3. Plaintiff's right to due process was repeatedly and systematically violated throughout the course of her employment dispute, litigation proceedings in the Los Angeles Superior Court, and subsequent actions taken by counsel, court officers, and affiliated private parties.

4. Plaintiff was fraudulently coerced into arbitration without informed consent, despite a pending California Labor

Commissioner complaint filed in August 2019, which should have precluded private arbitration under state law and judicial precedent. No valid agreement to arbitrate was ever executed.

5. Plaintiff's prior counsel, in collusion with opposing counsel and other defendants, fabricated and submitted a fraudulent stipulation into arbitration, stripping Plaintiff of her right to a jury trial and depriving her of control over the resolution of her claims.

6. Plaintiff was further denied access to evidence, fair hearings, judicial transparency, and enforcement of lawful motions due to the refusal of clerks and judicial officers to act upon or even file her motions, including her motion demanding that Judge Yolanda Orozco disclose in what capacity she was presiding over the case. These actions, or failures to act, deprived Plaintiff of meaningful participation in the legal process.

7. Defendants also deprived Plaintiff of property interests, including but not limited to: her right to wages earned, legal control over her case and contractual rights, privacy of her medical and employment records, and her ability to work free from blacklisting, retaliation, and defamation.

8. The cumulative effect of these actions amounted to an arbitrary and unjust denial of Plaintiff's constitutional right

to due process, under both legal and procedural standards required by the Fifth Amendment.

9. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 45**

**(Violation of Plaintiff's Sixth Amendment Rights – Right to a Fair and Public Trial)**

**(Against All Defendants named in the complaint who participated in the litigation process, including but not limited to judicial officers acting under color of law)**

1. Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

2. The Sixth Amendment guarantees, among other rights, the right to a fair and public trial by an impartial tribunal, the right to be informed of the nature and cause of accusations, and the right to have the assistance of counsel for defense.

3. Although typically invoked in criminal cases, the principles of fundamental fairness and transparency derived from the Sixth Amendment have been judicially extended to certain quasi-criminal, civil, or administrative contexts where significant personal liberties are at stake.

4. In this case, Plaintiff was deprived of the right to a fair and public adjudication of her claims. Instead, Defendants manipulated the judicial process by conspiring to move her employment dispute into a secretive, private arbitration forum (AAA) then JAMs, despite no binding agreement to do so and over Plaintiff’s express objections.

5. Defendants, including her own prior attorneys, falsified arbitration agreements, case management statements, and other documents to strip Plaintiff of her right to be heard in a public court of law, where misconduct and evidence of corruption would be on record.

6. Plaintiff was not allowed to confront or challenge the witnesses or accusations being made against her, including defamatory statements that she was a sex worker or mentally unstable. These accusations were used strategically to destroy her credibility and to justify adverse rulings, but Plaintiff was never afforded a fair forum in which to defend herself.

7. Further, Plaintiff’s Sixth Amendment rights were violated when the court and its officers denied her meaningful access to counsel of her choosing, actively suppressed her motions, and ignored her attempts to hold bad actors accountable. Her prior counsel acted against her interest, and

current officials have obstructed her ability to secure fair representation.

8. Collectively, these actions denied Plaintiff the protections that are fundamental to due process and the rule of law, in violation of her constitutional rights under the Sixth Amendment.

9. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 46**

**(Violation of Plaintiff's Fourteenth Amendment Rights – Due Process and Equal Protection)**

**(Against All Defendants, including but not limited to officers of the court acting under color of law)**

1. Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

2. The Fourteenth Amendment of the United States Constitution guarantees all persons equal protection under the law and prohibits any state from depriving a person of life, liberty, or property without due process of law.

3. Defendants, both private and public actors acting jointly and under color of law, deprived Plaintiff of her

fundamental rights by obstructing her access to a fair and impartial judicial process.

4. Plaintiff was subjected to discrimination and disparate treatment because of her gender, whistleblower activity, and status as a former reality television personality. Instead of receiving equal protection, she was targeted with retaliatory conduct, character assassination, and judicial manipulation.

5. Plaintiff's case in Los Angeles Superior Court was secretly diverted to private arbitration without her consent or legal authority, based on falsified documents and collusion between both sides of the litigation, including her own counsel. This denial of a public trial and adjudication constitutes a clear violation of her due process rights.

6. Despite filing motions and complaints alerting the court to forgery, judicial bias, and extrajudicial payments involving Judge Yolanda Orozco and arbitration entities such as AAA, Plaintiff was ignored. Later, Clerks and officials of the U.S. District Court Central District of California, refused to serve the defendants despite Plaintiff being granted a fee waiver, and Plaintiff's case sat dormant for over 672 days without action by the court.

7. The Fourteenth Amendment also protects against arbitrary state action. Here, public officials, including clerks, judges,

and attorneys working under the authority of the state, actively conspired or willfully failed to fulfill their duties, thereby facilitating a cover-up and denial of Plaintiff's rights.

8. Plaintiff was further denied equal protection by the failure of the court to investigate or respond to credible claims of criminal misconduct, gender-based harassment, discrimination of protected traits, and retaliation, which would not have been ignored if raised by someone with political or social power.

9. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 47**

**(Violation of Civil Rights — Race and Gender Discrimination (42 U.S.C. §1981 and §1983)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as though fully set forth herein.

2. Defendants, including Wally's, their owners and management, and other named entities and individuals acting under color of law and/or in joint action with state actors, intentionally discriminated against Plaintiff on the basis of her race (Black) and gender (female), in violation of 42 U.S.C. §1981 and §1983.

3. Plaintiff was subjected to a hostile work environment, sexual harassment, and physical sexual assault by customers while working as a hostess at Wally's. Plaintiff's complaints to management were ignored, dismissed, or met with retaliation. Rather than protecting her, Defendants enabled and permitted the conduct to continue. Similarly situated employees outside of Plaintiff's protected classes were treated more favorably, including being protected from customer misconduct and not subjected to the same pattern of workplace hostility or retaliation.

4. Defendants further retaliated against Plaintiff for reporting discrimination and misconduct, interfering with her legal claims and engaging in coordinated efforts, alongside attorneys, court officials, and affiliated entities, to obstruct justice, discredit her, and sabotage her litigation through fraud and corruption.

5. The conduct of the Defendants deprived Plaintiff of her equal rights to make and enforce contracts, to the enjoyment of all benefits, privileges, terms, and conditions of her employment, and to the full and equal benefit of the law, as guaranteed by the Civil Rights Act of 1866 (42 U.S.C. §1981),

and of her constitutional rights under color of law as protected by §1983.

6. Plaintiff was injured by this discrimination and suffered loss of employment, emotional distress, reputational harm, and the denial of her fundamental civil rights.

7. Plaintiff seeks general and special damages, punitive damages, injunctive relief.

**CAUSE OF ACTION NO. 48**

**(Violation of Civil Rights — Conspiracy to Interfere with Civil Rights - 42 U.S.C. §1985(2) and (3))**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as though fully set forth herein.

2. Defendants, including but not limited to Wally's, owners, management, affiliated entities such as Christie's and Delta, law firms including Thompson Coburn LLP, various attorneys involved in Plaintiff's case, and individuals acting under color of law, including court officials and third-party government actors known and unknown, conspired to interfere with Plaintiff's civil rights in violation of 42 U.S.C. §1985(2) and (3).

3. In violation of §1985(2), Defendants conspired to deter and intimidate Plaintiff from attending or testifying truthfully

in court proceedings relating to her employment claims, civil rights complaints, and judicial misconduct reports. The conspiracy involved coordinated fraudulent filings, false testimony, threats, and retaliatory litigation tactics designed to dissuade Plaintiff from pursuing her claims, including efforts to discredit her and destroy her credibility.

4. In violation of §1985(3), Defendants engaged in a coordinated and racially and sexually discriminatory conspiracy to deprive Plaintiff, a Black female, of her constitutional and statutory rights, including equal protection under the law, access to the courts, and freedom from retaliation. The conspirators took numerous overt acts in furtherance of their objective, including fabricating court documents, forging Plaintiff's signature, colluding with prior counsel, enlisting corrupt judicial officers, and refusing to file Plaintiff's motions or serve defendants in her case despite a fee waiver.

5. The conspiracy has caused Plaintiff significant harm, including the denial of access to the courts, interference with her legal proceedings, reputational damage, mental and emotional distress, and the loss of her rights guaranteed under federal law.

6. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 49**

**(Violation of Civil Rights — Neglect to Prevent Conspiracy - 42 U.S.C. §1986)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as though fully set forth herein.

2. This cause of action is brought against individuals and entities, including but not limited to:

• Officers of the court in the Central District of California,

• Employees of the Los Angeles Superior Court,

• Attorneys associated with Thompson Coburn LLP, prior counsel to Plaintiff, and

• Any and all officials, individuals, or government actors who had knowledge of the unlawful acts described in Plaintiff's allegations but failed to act.

3. Under 42 U.S.C. §1986, any person who knows of a conspiracy to interfere with civil rights (as described under 42 U.S.C. §1985) and has the power to prevent or aid in preventing it, but neglects or refuses to do so, is liable for the resulting harm.

4. Plaintiff alleges that the aforementioned parties were aware of the coordinated conspiracy to violate her civil and

constitutional rights through fraudulent legal filings, forged documents, false testimony, use of a compromised judge, and intentional sabotage of her litigation. These individuals, despite their legal and ethical obligations, failed to intervene or take any preventative measures.

5. Court clerks refused to file or process Plaintiff's motions. Judges allowed falsified records and denied Plaintiff due process. Plaintiff's prior counsel actively conspired with opposing parties, and supervising attorneys and officials failed to report or correct these acts. Despite Plaintiff's repeated whistleblowing efforts and filed motions, none of the responsible individuals acted to prevent further violations.

6. The failure to act allowed the conspiracy to continue unabated, resulting in substantial harm to Plaintiff, including the deprivation of legal remedies, emotional distress, reputational damage, and an ongoing denial of equal protection and due process rights.

7. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 50**

**(Violation of Civil Rights — Racial Discrimination in Making and Enforcing Contracts - 42 U.S.C. §1981)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as though fully set forth herein.

2. This cause of action is brought against Wally's, its owners and management, affiliated entities including Christie's, Delta, and 3900 WA, as well as prior counsel and defense counsel who participated in contract-related decisions and interference. As well as all Defendants who conspired with said Defendants mentioned above.

3. Under 42 U.S.C. §1981, all persons within the jurisdiction of the United States shall have the same right to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws as is enjoyed by white citizens.

4. Plaintiff, a Black woman, alleges that her employment and contractual rights were intentionally undermined and obstructed on the basis of her race. Plaintiff was offered less protection than similarly situated non-Black employees at Wally's. She was forced to endure and report repeated sexual harassment and assault by clientele and staff, while management failed to take action or provide a safe and equitable work environment.

5. Plaintiff further alleges that her employment and any implied contractual relationships were terminated in retaliation

for asserting her rights and reporting misconduct, while non-Black employees who did not report misconduct were treated more favorably. Moreover, the forced arbitration stipulation, forged documents, and coordinated litigation sabotage were executed with discriminatory intent to deny her equal access to the courts and to enforce employment-related claims.

6. Additionally, Defendants' fabricated defamatory narratives, including falsely branding Plaintiff as a prostitute, were racially charged and intended to degrade and discredit her based on stereotypes tied to her identity as a Black woman and former reality television figure.

5. The deliberate use of the legal system to obstruct Plaintiff's access to enforcement of her rights under employment and civil law, including through the use of falsified documents, corrupt judicial conduct, and coordinated retaliation, further evidences a discriminatory intent to deprive Plaintiff of the full benefits of her contractual and legal rights.

6. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 51**

**(Violation of Title VII of the Civil Rights Act of 1964 - 42 U.S.C. §2000e et seq. – Employment Discrimination)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Under Title VII, it is unlawful for an employer to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin.

3. Plaintiff is a Black woman and thus a member of multiple protected classes under Title VII.

4. Throughout Plaintiff's employment with Defendants, she was subjected to pervasive and unwelcome sexual harassment by customers and tolerated by management, including being propositioned, groped, and treated as a sexual object, while management did nothing to intervene or discipline offenders.

5. Plaintiff also experienced racially motivated differential treatment in the workplace, including being passed over for favorable assignments and opportunities given to similarly situated non-Black or male employees with less experience.

6. When Plaintiff complained to management and human resources about the harassment and discrimination, she was met with hostility, threats, and eventual retaliation, including

reduced hours, exclusion from shifts, public humiliation, and eventual wrongful termination.

7. Plaintiff's reports of discrimination and harassment were either ignored or actively suppressed, and instead of investigating or remedying the issues, Defendants allowed and facilitated further discrimination and retaliation against her.

8. These acts constitute unlawful employment discrimination in violation of Title VII.

9. Plaintiff had filed a complaint with the U.S. Equal Employment Opportunity Commission (EEOC) and was willing to comply with any procedural requirements, however, EEOC failed to investigate and prevent.

10. Plaintiff seeks general and special damages, back pay, front pay, punitive damages, injunctive relief, attorneys' fees and costs, and any other relief the Court deems just and proper.

**CAUSE OF ACTION NO. 52**

**(Declaratory Relief – 28 U.S.C. §2201)**

**(Against All Defendants, Including United States of America)**

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. An actual and substantial controversy exists between Plaintiff and Defendants, including but not limited to government agencies, private employers, legal representatives,

and affiliated entities, regarding the legality and constitutionality of Defendants' conduct as alleged throughout this Complaint.

3. Plaintiff seeks a declaratory judgment from this Court pursuant to 28 U.S.C. §2201 to determine her rights and legal status, and to clarify the obligations of the Defendants under the U.S. Constitution, federal civil rights laws, and applicable statutory and common law.

4. Plaintiff alleges that Defendants engaged in coordinated acts of retaliation, discrimination, constitutional violations, fraud upon the court, abuse of process, obstruction of justice, and violations of federal civil rights statutes and criminal laws, culminating in the deprivation of Plaintiff's rights under color of law.

5. Specifically, Plaintiff seeks a declaration that:

a. The arbitration agreements and stipulations relied upon by Defendants are void due to fraud and misconduct;

b. Judicial officers, including but not limited to Judge Yolanda Orozco, violated Plaintiff's constitutional rights while acting outside the bounds of lawful judicial immunity;

c. The United States, through its agents, including court clerks, judicial officers, and agencies, violated

Plaintiff's civil and constitutional rights and failed to provide equal protection under the law;

d. The acts of retaliation, hacking, surveillance, false filings, and obstruction of court access were unlawful and unconstitutional;

e. Plaintiff has a right to a public jury trial on all claims involving constitutional and statutory violations.

6. A declaratory judgment is necessary to resolve uncertainty and dispute, to prevent further harm to Plaintiff, and to guide the parties in future conduct.

7. Plaintiff has no adequate remedy at law or in equity unless the Court declares her rights and legal status with respect to the controversy at issue.

8. Plaintiff seeks a judicial declaration of the rights and legal relations of the parties pursuant to 28 U.S.C. §2201.

**CAUSE OF ACTION NO. 53**

**(Negligent Hiring, Retention, and Supervision)**

**(Against Wally's, Thompson Coburn LLP, prior counsel, and affiliated entities including Christie's, Delta, and 3900 WA)**

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Defendants Wally's, and affiliated entities had a duty to exercise reasonable care in the hiring, retention, and

supervision of their employees, contractors, agents, attorneys, and representatives, including individuals directly responsible for Plaintiff's workplace safety, legal representation, and the integrity of court proceedings.

3. These Defendants knew or should have known that the individuals they employed, retained, or relied upon, including attorneys, security personnel, managers, and affiliated third parties, posed a risk of harm, unethical conduct, and legal malpractice based on their behavior and histories.

4. Despite this knowledge, Defendants negligently hired and retained individuals who engaged in misconduct, including:

a. Permitting or facilitating sexual harassment and assault at Wally's;

b. Failing to act on Plaintiff's complaints of workplace abuse;

c. Participating in fraudulent legal filings and proceedings;

d. Submitting forged documents and false information to the courts;

e. Colluding with opposing counsel to sabotage Plaintiff's legal claims;

f. Using the judicial process to defame, retaliate against, and silence Plaintiff.

5. As a result of Defendants' failure to properly screen, supervise, and remove these individuals, Plaintiff suffered significant damages, including economic losses, emotional distress, reputational harm, and ongoing deprivation of her civil rights.

6. Defendants' negligent conduct created foreseeable risks of harm, which directly and proximately caused the injuries suffered by Plaintiff.

7. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

CAUSE OF ACTION NO. 54

(Wrongful Termination in Violation of Public Policy)

(Against Southwest Wine & Spirits, Mel-Jen, Delta Corporation, Christie's, 3900 WA, and all affiliated corporate entities and individual managers/owners named as defendants)

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Plaintiff was wrongfully terminated from her position as a front desk hostess at Wally's in direct retaliation for engaging in legally protected activity, including but not limited to:

• Reporting incidents of sexual harassment and sexual assault by customers and individuals allowed on the premises;

• Refusing to participate in illegal activities, including an attempted sex trafficking scheme disguised as a “poker night”;

• Filing a formal Labor & Wage complaint with the California Labor Commissioner in August 2019;

• Asserting her rights under California and federal labor and anti-discrimination laws;

• Whistleblowing on judicial and legal corruption affecting ongoing litigation;

• Demanding a jury trial and objecting to fraudulent arbitration procedures, including forged stipulations and legal filings.

3. In addition to retaliatory motives, Plaintiff’s wrongful termination was also grounded in race and gender discrimination. Management and ownership conspired to push Plaintiff out of her position under the pretext that she did not “fit the vibe” of the restaurant, a coded, discriminatory reference used specifically in relation to Black or ethnic employees. This targeted bias extended beyond Plaintiff and reflected a broader pattern and practice of race-based employment discrimination.

4. Despite her attempts to maintain her employment and advocate for her rights, Defendants created a hostile environment and constructively sought her resignation before

ultimately wrongfully terminating her in violation of public policy.

5. Plaintiff suffered significant harm, including emotional distress, reputational damage, and loss of income and career opportunities as a direct result of the unlawful termination.

6. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 55**

**(Civil Conspiracy - California Common Law)**

**(Against All Defendants)**

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Defendants knowingly and willfully entered into an agreement, express or implied, to engage in unlawful acts and/or to use lawful means to accomplish unlawful ends. The objective of this conspiracy was to silence, discredit, retaliate against, and ultimately destroy Plaintiff’s credibility, employment prospects, legal claims, and safety.

3. The civil conspiracy included, but was not limited to:

• Retaliatory termination following protected activity;

• Participation in a cover-up involving judicial and attorney misconduct;

• Fabrication and forgery of legal documents, including falsified stipulations and arbitration agreements;

• Filing false and misleading information with the courts to prejudice Plaintiff's claims;

• Coordinated efforts to deprive Plaintiff of her constitutional and statutory rights under color of law;

• Targeting Plaintiff through surveillance, hacking, intimidation, and harassment to deter legal action and chill her speech;

• Enabling and concealing incidents of sexual harassment, racial discrimination, and potential sex trafficking activities at Wally's;

• Illegally appointing a private judge (Yolanda Orozco) without disclosure or consent, and ensuring she maintained control over litigation to protect defense interests.

4. Each Defendant had knowledge of the conspiracy, intended to participate in it, and took overt acts in furtherance of its unlawful goals. As a direct and proximate result of this conspiracy, Plaintiff has suffered substantial damages, including economic loss, emotional harm, reputational injury, and deprivation of her civil rights.

5. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 56**

**(Breach of Fiduciary Duty)**

**(Against Plaintiff's former attorneys and the law firms and any other associated firms or attorneys retained by Plaintiff)**

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. As Plaintiff's legal counsel, the above-named Defendants owed Plaintiff a fiduciary duty to act with loyalty, honesty, integrity, and care, and to represent her best interests at all times. This duty included full disclosure of all material facts, avoidance of conflicts of interest, and diligent, competent advocacy in her employment and civil rights litigation.

3. These attorneys willfully and intentionally breached their fiduciary duties by:

• Colluding with opposing counsel, including Thompson Coburn LLP, to sabotage Plaintiff's case;

• Falsifying or allowing the falsification of Plaintiff's signature on critical legal documents, including a fraudulent arbitration agreement, HIPAA form, and retainer agreements;

• Agreeing to fraudulent stipulations and submitting forged documents to the court;

• Misrepresenting key facts under oath and providing false testimony on Plaintiff's behalf;

• Failing to disclose conflicts of interest and their improper communications with defense counsel;

• Participating in or enabling a fraudulent transfer of the case into private arbitration without Plaintiff's knowing and voluntary consent;

• Concealing from Plaintiff material information about the status and handling of her case, including decisions that directly affected her legal rights;

• Abandoning Plaintiff's claims and legal filings, contributing to long delays and administrative sabotage in state and federal courts.

4. As a direct and proximate result of this breach, Plaintiff suffered significant harm, including the loss of legal claims, reputational damage, emotional distress, and interference with her ability to obtain justice and protect her rights.

5. Plaintiff seeks general and special damages, punitive damages, and restitution.

**CAUSE OF ACTION NO. 57**

**(Unfair Business Practices – Cal. Bus. & Prof. Code §17200)**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Defendants engaged in unlawful, unfair, and fraudulent business practices prohibited by California Business and Professions Code §17200 (the "UCL").

3. The unlawful prong is satisfied by Defendants' violations of state and federal law, including but not limited to employment discrimination, sexual harassment, wrongful termination, retaliatory conduct, forgery, obstruction of justice, and data/privacy violations.

4. The unfair prong is satisfied by Defendants' pattern of conduct that offends public policy, including targeting Plaintiff for removal from her job due to her race and gender, and conspiring to coerce or fraudulently move her claims into arbitration while presenting fraudulent documents to the court.

5. The fraudulent prong is met by the use of forged contracts, falsified employment records, and misrepresentations to government agencies, Plaintiff, and the courts for the purpose of avoiding liability, concealing misconduct, and impeding Plaintiff's pursuit of justice.

6. Defendants' conduct has caused and continues to cause substantial harm to Plaintiff, including economic loss, reputational damage, emotional distress, and loss of employment opportunities.

7. Plaintiff has standing under §17204 as she has suffered injury in fact and lost money or property as a result of the unfair competition described herein.

8. Plaintiff seeks restitution, disgorgement of profits wrongfully obtained, declaratory relief, and injunctive relief to prohibit the continuation of these unlawful and unfair business practices.

**CAUSE OF ACTION NO. 58**

**Abuse of Process**

**(Against All Defendants)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Defendants willfully and improperly used the judicial process for an ulterior or wrongful purpose not proper in the regular course of legal proceedings.

3. Defendants conspired to misuse the court system to silence, intimidate, and discredit Plaintiff by filing fraudulent documents, including forged arbitration agreements, falsified employment records, and false case management statements, for the sole purpose of ensuring Defendants would prevail.

4. Montoya Solis and Nathalie Contreras, while employed by Walter Mosley, (Montoya Solis was dually employed with The

Dominguez Firm), acted in concert with defense counsel, and private arbitration entity AAA and JAMs to divert Plaintiff's claims out of the public court system and into a privately selected forum that they could manipulate.

5. Defendants knowingly made misrepresentations to the court, used Plaintiff's forged signature on legal documents, and pursued fabricated claims such as a baseless TRO hearing based on false testimony in an attempt to suppress Plaintiff's speech and whistleblowing.

6. Defendants' acts had no legitimate legal purpose and were intended to harass Plaintiff, cause unnecessary delay, and obstruct the fair adjudication of her claims.

7. The abuse of process has caused Plaintiff damages, including emotional distress, legal fees, and the undermining of her right to a fair trial and due process.

8. Plaintiff seeks general and special damages, and punitive damages.

**CAUSE OF ACTION NO. 59**

**(Negligence / Gross Negligence)**

**(Against All Defendants)**

1. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Defendants owed Plaintiff a duty of care as her employers, workplace supervisors, business partners, and affiliates. This duty included providing a safe, non-discriminatory work environment; protecting her from foreseeable harm by customers and coworkers; investigating complaints of sexual harassment and assault; properly supervising staff; and ensuring all medical and legal referrals acted ethically and within professional boundaries.

3. Defendants breached this duty of care through numerous acts and omissions, including but not limited to:

a. Allowing wealthy and influential male customers to sexually harass and assault Plaintiff while she worked at Wally’s;

b. Failing to intervene or remove hostile customers or staff;

c. Retaliating against Plaintiff for reporting harassment and misconduct;

d. Participating in, or turning a blind eye to, the fabrication of false legal documents, forged signatures, and illegal arbitration agreements;

e. Referring Plaintiff to a therapist, Sally D. Greig, who was financially and personally tied to Defendants and who

accessed confidential mental health information for litigation purposes;

f. Failing to train or supervise managers who engaged in discriminatory hiring and firing practices, including claims that Black and ethnic employees "did not fit the vibe" of the restaurant;

g. Enabling or failing to prevent unlawful coordination with legal representatives and court officers to sabotage Plaintiff's legal efforts.

4. These acts and omissions were not only negligent, but so reckless, willful, and wanton as to constitute gross negligence. The harm to Plaintiff, physical, emotional, professional, reputational, and legal, was foreseeable and directly caused by Defendants' conduct.

5. As a direct and proximate result of Defendants' negligence and gross negligence, Plaintiff suffered economic damages, emotional distress, reputational harm, and other injuries according to proof.

6. Plaintiff seeks general and special damages, punitive damages, and any further relief the Court deems just and proper.

**CAUSE OF ACTION NO. 60**

**(Violation of HIPAA / Breach of Medical Confidentiality)**

**(Against All Defendants)**

1. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

2. During the course of litigation, Plaintiff was referred to therapist Sally D. Greig, who was presented as a neutral mental health provider for evaluation and/or treatment purposes.

3. Plaintiff later discovered that Sally D. Greig had personal and financial ties to Defendants, including but not limited to prior relationships with Defendants' business affiliates, law firms, and retained professionals. Additionally, Ms. Greig's husband also maintains financial connections to Defendants.

4. Ms. Greig's referral was not made in good faith, but as part of a fraudulent and coordinated scheme by Defendants and their legal representatives to extract Plaintiff's most sensitive and private mental health information in order to use it against her in litigation and arbitration.

5. Without Plaintiff's fully informed consent and in violation of the Health Insurance Portability and Accountability Act (HIPAA) and other medical privacy laws, Defendants and their co-conspirators obtained and/or shared Plaintiff's protected health information, including psychotherapy records, evaluation summaries, and sensitive personal history.

6. Ms. Greig has repeatedly refused to provide Plaintiff access to her full patient file and has concealed the identity of the party or parties who retained her. This concealment has caused substantial harm to Plaintiff’s ability to defend herself, challenge the credibility of alleged expert reports, and protect her dignity and medical privacy.

7. The release and misuse of Plaintiff’s medical information were done without proper authorization, without valid legal process, and in knowing violation of federal and state privacy protections. These acts also constitute an extreme breach of fiduciary duty by a licensed mental health professional.

8. As a direct and proximate result of these violations, Plaintiff suffered significant emotional distress, reputational harm, legal disadvantage, and ongoing invasion of her medical privacy.

9. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 61**

**(Violation of California Fair Employment and Housing Act (FEHA) - Cal. Gov’t Code §12900 et seq.)**

**(Against All Defendants)**

1. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

2. At all relevant times, Defendants were employers and/or joint employers subject to the requirements of the California Fair Employment and Housing Act (FEHA).

3. Plaintiff is a Black woman and was employed as a hostess at Wally's, a restaurant owned, operated, and managed by Defendants and their affiliates.

4. Throughout her employment, Plaintiff was subjected to ongoing sexual harassment, gender-based discrimination, racial discrimination, a hostile work environment, and ultimately wrongful termination, in violation of FEHA's prohibitions on discrimination and harassment based on sex, gender, race, and color.

5. Plaintiff reported instances of inappropriate touching, lewd remarks, sexual advances by high-profile clientele, and management's tolerance and encouragement of this behavior. She also complained internally about the disparate treatment and underrepresentation of Black and ethnic employees, including the comment by management that she and others did not "fit the vibe" of the restaurant.

6. Rather than address these issues, Defendants and their agents retaliated against Plaintiff, isolated her, diminished

her responsibilities, and ultimately wrongfully terminated her employment.

7. Plaintiff was also denied equal opportunity for advancement and was treated less favorably than similarly situated employees who were not Black and/or not women.

8. Defendants failed to prevent, investigate, or correct the discriminatory and harassing conduct, in violation of their legal obligations under FEHA.

9. As a direct and proximate result of Defendants' violations of FEHA, Plaintiff suffered and continues to suffer economic loss, emotional distress, humiliation, reputational damage, and related harm.

10. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**CAUSE OF ACTION NO. 62**

**(Whistleblower Retaliation - Cal. Labor Code §1102.5 and 98.6)**

**(Against All Defendants)**

1. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

2. California Labor Code §1102.5 prohibits an employer or any person acting on behalf of the employer from retaliating against an employee for disclosing information to a government or law enforcement agency, to a person with authority over the

employee, or to another employee with authority to investigate or correct violations, if the employee has reasonable cause to believe that the information discloses a violation of law.

3. Plaintiff, in good faith, made protected disclosures to various internal and external parties, including the California Labor Commissioner, attorneys, and courts, regarding unlawful activities she witnessed and experienced during her employment, including sexual harassment, workplace discrimination, falsification of documents, corruption, forgery, unauthorized surveillance, judicial misconduct, and systemic abuse.

4. Plaintiff also disclosed and protested the unethical and unlawful conduct of attorneys and court officers, including but not limited to fraud on the court, perjury, submission of falsified documents, secret arbitration agreements, and unauthorized legal representation.

5. In retaliation for these disclosures and Plaintiff’s refusal to participate in unlawful conduct, Defendants, jointly and in collusion, engaged in a campaign of harassment and retaliation that included:

- Wrongful termination,
- Defamation,
- Interference with future employment,
- Unlawful surveillance and harassment,

• Obstruction of justice and denial of court access,

• Submission of fraudulent legal filings,

• Hacking of Plaintiff’s devices, and

• Intentional delays, sabotage, and cover-ups of her legal claims.

6. These retaliatory acts violate California Labor Code §1102.5 and 98.6.

7. As a direct and proximate result of Defendants’ unlawful retaliation, Plaintiff has suffered and continues to suffer economic loss, emotional distress, reputational damage, and deprivation of legal rights.

8. Plaintiff seeks general and special damages, punitive damages, and injunctive relief.

**X. PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against all Defendants, jointly and severally, and issue the following relief:

1. Declaratory Relief:

• A declaration that Defendants’ actions and omissions, as described in this Complaint, violated Plaintiff’s rights under the United States Constitution, federal civil rights statutes, and applicable California state laws.

• A declaration that Plaintiff was wrongfully terminated in violation of public policy and applicable state and federal anti-discrimination laws.

• A declaration that the forged documents submitted to courts and arbitration bodies were fraudulent and void.

2. Injunctive Relief:

• An order enjoining Defendants and their agents, attorneys, affiliates, and representatives from continuing any further retaliatory conduct, harassment, surveillance, or communication with Plaintiff.

• An order enjoining the enforcement of any arbitration awards or proceedings based on fraudulent or coerced stipulations.

• An order directing the appropriate government agency (DOJ, OIG, etc.) to investigate the conduct of judicial officers, attorneys, and third-party actors named in this Complaint.

3. Compensatory Damages:

• For back pay, front pay, and lost employment benefits due to Plaintiff’s wrongful termination.

• For all economic losses sustained by Plaintiff as a result of the conduct of Defendants, including but not limited

to costs of therapy, relocation, loss of business opportunities, and future income impairment.

• For general damages, including emotional distress, pain and suffering, reputational damage, mental anguish, and loss of enjoyment of life.

4. Statutory and Liquidated Damages:

• Any statutory damages available under federal and state law, including but not limited to Title VII, FEHA, 42 U.S.C. §1981, 1983, 1985, and 1986.

• Liquidated damages under applicable wage and labor statutes, where permitted.

5. Punitive and Exemplary Damages:

• Against all non-governmental defendants and any officials sued in their personal capacity, for malicious, oppressive, reckless, or fraudulent conduct.

6. Restitution and Disgorgement:

• For restitution and disgorgement of ill-gotten gains, including but not limited to any profits derived from misuse of Plaintiff's private medical and employment data, forged arbitration awards, or corrupted judicial proceedings.

7. Equitable Relief:

• An order voiding and setting aside all legal proceedings, rulings, or arbitration outcomes procured through fraud, collusion, bribery, or deprivation of due process.

• An order restoring Plaintiff's good name and reputation in all records or databases reflecting the false accusations and defamatory claims made against her.

8. Attorneys' Fees and Costs:

• Pursuant to 42 U.S.C. §1988, California Code of Civil Procedure, and any other applicable authority, Plaintiff seeks reasonable attorneys' fees, expert witness fees, costs of suit, and litigation expenses.

9. Relief Under the Federal Tort Claims Act (FTCA):

• For compensatory damages against the United States of America for the negligent, reckless, or unlawful acts and omissions of federal employees acting within the scope of their employment.

• For any tortious conduct by federal agents or agencies that caused Plaintiff injury under 28 U.S.C. §1346(b).

10. Further Relief:

• Such other and further legal or equitable relief as the Court may deem just and proper in the interest of justice.

Dated: May 13, 2025

Respectfully Submitted,

______________________________

Danielle Victor
Plaintiff, Pro Se
4 Loring Road Methuen, MA 01844
daniellekvictor@gmail.com
978-857-4885

THE LIGHT OF GOD NEVER FAILS

**VERIFICATION**

I, Danielle Victor, am the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true to my own knowledge, except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this day, Tuesday, May 13, 2025 at Methuen, Massachusetts, Essex County.

______________________________

Danielle Victor
Plaintiff Pro, Se
THE LIGHT OF GOD NEVER FAILS!